

**U.S. Department of Justice**

*Civil Division*
*Consumer Protection Branch*

---

February 15, 2024

<u>**VIA CM/ECF**</u>
The Honorable Colm F. Connolly
U.S. District Court of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

   Re: *United States of America v. Walmart Inc. et al.*,
      C.A. No. 20-1744-CFC

Dear Chief Judge Connolly:

  The United States writes in response to the Court's February 12, 2024, Order permitting the parties to submit a letter addressing whether *Browning v. Fidelity Trust Co.*, 250 F. 321 (3d Cir. 1918), "decided the question of whether the mental state of one agent of a corporation can be aggregated with the act of another agent of the corporation to impose liability on the corporation." *Browning* decided that question by answering it in the affirmative.

  *Browning* involved a corporation that served as a trustee of a mortgage that secured bonds issued by a land developer. *Id.* at 322. The mortgage authorized the trustee to execute releases of tracts of land to the mortgagor provided that, to the trustee's knowledge, there was no existing default on payment of the principal or

interest. *Id.* The trustee executed two releases when there were existing defaults. *Id.* at 322-23. The plaintiff, who held some of the bonds, challenged the releases, alleging that the trustee executed them with knowledge of the defaults and thereby breached its trust duties. *Id.* To prove knowledge, the plaintiff relied on evidence that a teller in the trustee's banking department knew that the mortgagor had not deposited funds sufficient to honor bond coupons that had been presented for payment. *Id.* at 323-24. The teller also had read letters from the mortgagor which referenced disputes that the mortgagor claimed relieved it from any obligation to pay coupons on the bonds. *Id.* at 326. The trustee argued that the teller's knowledge was insufficient to impose liability because the trustee's trust officers, not the teller, performed the act of executing the releases, and the trust officers did so without knowledge of the default. *Id.* at 324.

The *Browning* court rejected the trustee's argument that only the knowledge of the trustee's trust officers was relevant, finding that the teller's knowledge "[c]learly" was "knowledge chargeable to the corporation itself," *id.*, and thus the trust officers' execution of the release violated the trust's duties. Underlying the court's finding was the principle "that the trustee cannot thus divide itself into units or parts and cannot escape liability, when based upon knowledge, because one of its parts was without it while another possessed it." *Id.* Here, because liability similarly is based upon Walmart's knowledge, Walmart may not divide itself into

2

parts and escape liability by making the argument that the Third Circuit rejected in *Browning*, namely that the agent who performed the challenged action also must be the agent with knowledge.

*Browning*'s conclusion—that the teller's knowledge was imputed to the trustee—fully addresses the question raised by this Court. After deciding the imputation issue, the *Browning* court discussed other issues irrelevant to this Court's question and relevant in *Browning* only because of facts not present here. First, the court found that the trustee only "technically" violated its duty because even the teller had incomplete information. *Id.* (describing teller's knowledge of default in interest payments as "not actual in the sense of being complete in detail"). The teller did not know that the mortgagor had defaulted, but instead had information that put the trustee "on inquiry, which, had it been made, would have revealed the actual default." *Id.* This analysis makes clear that, if the teller had learned details sufficient to know of the actual default, that knowledge would have been chargeable to the trustee, and the violation would not have been merely technical.

In sharp contrast to the information available to the trustee in *Browning*, Walmart, through one or more compliance team members, had full knowledge of the invalidity of prescriptions issued by certain prescribers. The Second Amended Complaint alleges not merely that one or more compliance team members

3

negligently failed to make inquiries that would have confirmed that Walmart's pharmacies were filling invalid prescriptions. Rather, the United States alleges that one or more team members knew, at a minimum through willful blindness, that certain prescribers issued prescriptions outside the usual course of professional practice, that those prescriptions thus were invalid, and that Walmart's pharmacies would be presented with and would fill those prescriptions. *See* D.I. 109 at II.B.1.a, II.B.1.b. Such knowledge, chargeable to Walmart and combined with the pharmacists' act of filling the prescriptions, is sufficient to establish liability under 21 C.F.R. § 1306.04 and consistent with the principle established in *Browning* that knowledge and action need not reside in the same corporate agent.

    The *Browning* court also considered—again, based on facts not present here—whether the trustee's employees acted merely negligently, or with bad faith or gross negligence, in executing the releases despite the default. Importantly, this inquiry was not required by law but by the parties' contractual immunity clause, which shielded the trustee from liability for any "act, default or neglect or misconduct" of its agents that fell short of "bad faith." *Browning*, 250 F. at 324. The court found that because the trustee's employees acted with negligence rather than gross negligence or bad faith, the immunity clause shielded the trustee from liability. *Id.* at 327. There is no such immunity clause here. The government must

4

allege and prove only Walmart's knowledge, rendering the *Browning* court's discussion of negligence and the nature of the trustee's motives irrelevant.

In support of Walmart's theory that, for purposes of Section 1306.04, the pharmacist must have the requisite knowledge, Walmart may attempt to rely on *Browning*'s determination that the teller's imputed knowledge was insufficient to establish the trustee's gross negligence or bad faith.  But the *Browning* court found the requisite *mens rea* lacking because no trustee employee—neither the teller nor the trust officers—had sufficiently complete information to establish gross negligence or bad faith.  Moreover, there is no indication that the teller's failure to inform the trust officers of the default was intentional.

By contrast, the United States alleges that Walmart's compliance team deliberately chose to withhold information from its pharmacists.  *See* D.I. 109 at II.B.1.b.i, II.B.1.b.iii.  In this situation—where a knowledgeable corporate agent makes a conscious choice not to share necessary information with the agents the corporation has empowered to act on its behalf—*Browning*'s principle that a corporation cannot organize itself out of liability applies.

The *Browning* court's finding that the immunity clause ultimately relieved the trustee of liability does not alter the impact of its threshold finding that the teller's knowledge could be aggregated with the trust officers' acts to establish the trustee's liability.  Section 1306.04 contains no requirement that the government

establish the bad faith or gross negligence that was contractually required in *Browning*. The government amply alleges that compliance personnel acted with the knowledge required by 21 C.F.R. § 1306.04(a), and *Browning* dictates that such knowledge can be combined with acts carried out by other employees of the corporation to establish liability.

In sum, *Browning* is consistent with the authorities cited in the United States' Response in Opposition to Motion to Dismiss in Part, *see* D.I. 93, 112, which stand for the principle that the knowledge of one corporate actor can be aggregated with the actions of another agent to impose liability on the corporation. And as in *Browning*, Walmart should not be permitted to escape liability by "divid[ing] itself into units or parts," 250 F. at 324, and insulating its pharmacists from knowledge possessed by its compliance team members.

Respectfully,

*/s/ Katherine M. Ho*
Admitted *pro hac*
U.S. Department of Justice
Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
katherine.ho@usdoj.gov
202-353-7835

Cc:    Counsel of Record (via ECF)