Kelly E. Farnan
302-651-7705
Farnan@rlf.com



February 15, 2024

**VIA CM/ECF AND HAND DELIVERY**
The Honorable Colm F. Connolly
United States District Court
 for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

> Re: *United States of America v. Walmart Inc., et al.*,
> C.A. No. 20-1744-CFC

Dear Chief Judge Connolly:

The Court's Order asked whether *Browning v. Fidelity Trust Co.*, 250 F. 321 (3d Cir. 1918), "decided the question of whether the mental state of one agent of a corporation can be aggregated with the act of another agent of the corporation to impose liability on the corporation." It did not. Rather, *Browning* confirms that inadequate corporate communication can lead to "negligent" breaches, which can sometimes trigger *contractual* liability. But Walmart cannot be liable for criminal and civil CSA penalties for "knowingly" filling invalid prescriptions absent "actual knowledge" on the part of the pharmacists "acting for the corporation"—just like the trust company in *Browning* could not be liable for "gross negligence" absent "actual knowledge" on the part of the officers who took the action that allegedly breached the mortgage agreement there. *Id.* at 326-27.

*Browning* involved an alleged breach of duty under a mortgage agreement that "required" the corporate trustee to "execute releases when requested by the mortgagor" if there was "no existing default to the knowledge of the trustee." *Id.* at 322, 324. A teller in the trust company's banking department knew of a default, but officers in its trust department—who were not told about the default—later executed releases. *See id.* at 324.

The Third Circuit rejected the claim, because the evidence "did not suggest, even remotely, that the trustee had knowledge of the default." *Id.* at 323. While the teller's knowledge was "chargeable to the corporation," in that it was "sufficient to put the corporation on inquiry, which, had it been made, would have revealed the actual default," *id.* at 324, the officers "acting for the corporation" in "execut[ing] the release" did not have "actual knowledge" of default, and acted "without ulterior motive, furtive purpose or design to injure anyone," *id.* at 326. So their misconduct was only "technically negligent." *Id.* at 327. And the contract immunized the trustee for misconduct short of "gross negligence" or "bad faith." *Id.*

*Browning*'s result supports dismissing Count II. The trust company was not liable because its conduct—one agent executing a release while another agent knew of a default—"did not amount to gross negligence," or "recklessness, indifference, [or] wilfulness." *Id.* It was only "technically negligent." *Id.* Like that trust contract,

The Honorable Colm F. Connolly
February 15, 2024
Page 3

21 C.F.R. § 1306.04(a)—which carries serious criminal penalties under the CSA—does not impose liability for "negligent" (or even "reckless") misconduct; nor does the Government contend otherwise. Yet, as *Browning* confirms, the "compliance theory" in Count II is ultimately just a corporate negligence claim in disguise.

Before rejecting the claim, *Browning* observed that the teller's knowledge was "chargeable to the corporation," thereby creating, at least "technically," a "violation of the trustee's duty, occasioned" by "negligence," absent "some provision in the mortgage relieving it of liability." *Id.* at 324. That was *dicta* because the court ultimately concluded there was such a provision and rejected the claim; neither the Third Circuit nor any court within it has ever cited *Browning* for this point.

In any event, the *dicta* is inapposite here. *Browning* addressed the "[l]egal consequences" of imputed knowledge in the context of "contracts." *Restatement (Third) of Agency* § 5.03 cmt. d(1) & Illustr. 13 (2006). Indeed, one of the Restatement's illustrations was inspired by *Browning*. *See id.*, Rep.'s Notes, (c). But the Restatement provides a more demanding rule when it comes to "criminal liability or other penal consequences"—including "within certain licensing regimes"—where the rule of lenity also comes into play. *Id.* cmt. (d)(7); *see Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (applying lenity where a statute has "both criminal and noncriminal applications"). In those contexts, "the relevant personal

The Honorable Colm F. Connolly
February 15, 2024
Page 4

knowledge is that of the individual who took the action that the statute criminalizes, or … of the individual who directed or ratified the action taken." *Restatement (Third) of Agency* § 5.03 cmt. d(7). That is the rule that governs in securities-fraud cases, and it is the rule that governs here. Indeed, *Browning* itself rejected imputed knowledge as sufficient for "bad faith" liability, which is similar to the typical requirements of criminal law. *See Ruan v. United States*, 597 U.S. 450, 457 (2022) ("[A]s a general matter, our criminal law seeks to punish the 'vicious will.'" (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952))).

*Browning*'s imputation *dicta* is also factually inapposite, because it involved the knowledge of the teller, "whose business it was to be informed and to learn of defaults." 250 F. at 324. Here it was the "business" of the *pharmacists* to determine whether to fill any given prescription, and Count II admits those pharmacists did not know any particular prescriptions were invalid. D.I. 109, ¶ 767. There is no basis, even under *Browning*, to impose liability based on imputed knowledge allegedly held by compliance employees, who "played no role" in dispensing any given prescription. *In re TSAWD Holdings, Inc.*, 2018 WL 6885922, at *6 (Bankr. D. Del. Nov. 26, 2018).

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)

cc: Counsel of Record (By ECF)