## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,   )
                                )
        Plaintiff,          )
                                )
     v.                 )     C.A. No. 20-1744-CFC
                                )
WALMART INC. AND WAL-MART )
STORES EAST, LP,         )
                                )
        Defendants.      )

## [PROPOSED] ORDER REGARDING DISCOVERY OF DOCUMENTS
## AND ELECTRONICALLY STORED INFORMATION ("ESI")

1.    The Parties[1] anticipate that disclosure and discovery activity in the above-captioned action (this "Litigation") will involve the production of Documents, including ESI.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Order Regarding Discovery of Documents and Electronically Stored Information ("ESI Order" or "Order").

### I.    General Provisions.

2.    <u>Cooperation.</u>  The Parties are expected to work cooperatively on planning and conducting discovery under Federal Rules of Civil Procedure 26 through 36.  Absent further Order of the Court or agreement of the Parties, this Order shall govern the disclosure of all discovery of Documents (defined in Paragraph 12),

---

[1] The Parties to this litigation are the United States and Walmart Inc. and Wal-Mart Stores East, LP (together, "Walmart").

1

including ESI (defined in Paragraph 13).  Additionally, Parts III - V of this Order

shall govern issues related to Privileged Information (defined in Paragraph 14),

consistent with the requirements of Federal Rule of Civil Procedure 26.

3.   <u>Protective Order.</u>  All disclosure and discovery in this case shall be

governed by and conform to the Protective Order entered in this case on November

18, 2022 (D.I. 88) ("Protective Order").  Nothing herein shall be construed to alter

the Protective Order in any way.

4.   <u>Discoverability, Relevancy, Authenticity, Admissibility, and Non-

Waiver.</u>  Consistent with the Protective Order, nothing in this Order shall be

construed to prejudice the Parties' rights regarding or affect the discoverability,

relevancy, authenticity, or admissibility of any Document subject to this Order.

Further consistent with the Protective Order, all objections to the discoverability,

relevancy, authenticity, or admissibility of any Document are preserved and may be

asserted at any time.  The existence of this Order must not be used by either Party as

a basis for discovery that is otherwise improper under the Federal Rules of Civil

Procedure or the terms of the Protective Order.  The Parties and their attorneys do not

intend by this Order to waive their rights to any protection, grounds for not producing

discovery, privilege (including the attorney-client privilege and work product

doctrine), or the non-waiver protection provided in the Protective Order.

2

5.   <u>Proportionality</u>.  The Parties are expected to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information.

6.   <u>Modification</u>.  The Parties will meet and confer, as needed, regarding interpretation, application, or modification of this ESI Order.  The Court on motion, or the Parties, by consent and agreement, in writing, may modify the terms of this Order, consistent with proportionality or as needed in particular circumstances.

## II.   Definitions.

7.   <u>Party</u>.  The term "Party" means any of the parties in this Litigation at the time this Order is entered.  If additional parties are added to this Litigation, they shall be bound, by agreement or Court order, to this Order.

8.   <u>Producing Party</u>.  "Producing Party" means any Party that produces or otherwise makes available Documents, communications, or tangible things to a Receiving Party.

9.   <u>Receiving Party</u>.  "Receiving Party" means any Party subject to the Protective Order and this Order that receives Documents, communications, or tangible things from a Producing Party.

10.   <u>Challenging Party</u>.  A "Challenging Party" means any Party that challenges a Producing Party's claims of "Privileged Information."

11.   <u>Issuing Party</u>.  An "Issuing Party" means any Party that issues a non-party subpoena.

3

12.    <u>Documents</u>.  The term "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.  The term "Document" shall include hard-copy documents, electronic documents, and, as defined herein, ESI.

13.    <u>ESI</u>.  The term "ESI" refers to any electronically stored information in the possession, custody, or control of a Party that is reasonably accessible— including, but not limited to: email, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible ESI in which it is reasonably anticipated that relevant information may be found.

14.    <u>Privileged Information</u>.  The term "Privileged Information" means information contained in any Documents, communications, or tangible things that is protected by statute or regulation from disclosure or subject to a claim of attorney-client privilege, attorney work product protection, common-interest privilege, executive privileges, or any other privilege, immunity, or protection from production or disclosure.

**III.   Privilege Issues.**

15.    <u>Privilege Protections</u>.  Nothing herein alters the Protective Order in any way.  The protections provided by the Protective Order are incorporated herein, including the following:

4

(i)     Nothing in this Order alters or overrides the non-waiver provisions of the Protective Order (*see, e.g.*, Protective Order at ¶ 66); and

(ii)     Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing Documents, communications, and tangible things that the attorney knows or reasonably should know to contain Privileged Information or information that is otherwise protected under the Protective Order and to inform the Producing Party that such Documents, communications, and tangible things have been produced (*see, e.g.*, Protective Order at ¶ 74).

16.     Each Document, communication, or tangible thing that is withheld from production on grounds that it contains Privileged Information must be listed on a privilege log consistent with the specifications identified in Part IV herein.

**IV.     Specific Privilege Log Protocols.**

17.     The privilege log shall identify the Documents, communications, or tangible things redacted or withheld as containing Privileged Information and the basis for any claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the Receiving Party to assess the applicability of the privilege or protection.

18.     Privilege logs shall be produced on a rolling basis.  The Producing Party shall make a good faith effort to produce a privilege log, within sixty (60) days of the

production of each production volume, which concerns Documents, communications, or tangible things withheld or redacted from that volume.

19.     When the deposition of a custodian is scheduled for a date following the substantial completion of production of that deponent's custodian file, the Producing Party shall make a good faith effort to provide the privilege logs involving Documents from the deponent's custodial file no fewer than ten (10) days prior to the deposition.

20.     The Producing Party shall make a good faith effort to identify (in its privilege log cover letter) the primary production volume(s) and/or custodian(s) to which the privilege log relates.

21.     Privilege logs shall be produced in Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) cumulatively, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) sequentially, using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the Receiving Party.

22.     With the exception of Documents that fall within Paragraphs 25 and 26 below, each log entry should comply with Federal Rule of Civil Procedure 26(b)(5), and include the following:

        (i)     a unique identifying privilege log number (different from any Bates numbering);

6

(ii)    a column identifying the Bates number(s) if the Document has been redacted for privilege;

(iii)    a description of the nature of the Document, communication, or tangible thing (over which a privilege is asserted) in a manner that, without revealing information itself privileged or protected, will enable the Receiving Party to assess the claim;

(iv)    the date of the Document, communication, or tangible thing to the extent it is reasonably ascertainable; the authors and recipients of the Document, based on the From (or Author), To, CC, and BCC fields from electronically-generated metadata associated with the Document, to the extent applicable and reasonably available;

(v)    For email chains, the Parties will provide information gathered from the metadata for the most recent email in the chain.  For emails, the log entry will identify whether the email contains an attachment, but only to the extent such metadata exists and is reasonably accessible for the Document. Further, if the attorney(s) giving rise to the privilege claim is/are not within the metadata of the most recent email, the Producing Party will include the name(s) of any such attorney(s) within the description or within an "Earlier in Chain" column;

7

    (vi)   the subject of the Document, based on the Subject field (or other similar category) from electronically-generated metadata associated with the Document, to the extent applicable and reasonably available;

    (vii)  indication (e.g., with an asterisk) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney); and

    (viii)  the name of or other identifying information for the source in which the Document subject to a privilege claim was found (listing of all custodians holding the Document constitutes sufficient identifying information).

If any of the above contains or is itself Privileged Information (i.e., filename, subject line), the Producing Party may omit or redact such information from the log, but shall flag the omission or redaction and describe the basis for the redaction consistent with the requirements of section (iii) of this Paragraph.

23.    The Producing Party shall provide—either in the log entries or as a list in a separate Excel spreadsheet appendix to the log—the names that appear on the log along with corresponding email addresses or employer information to the extent such information is reasonably available and electronically generated from the metadata.

24.    To the extent that a Party redacts any Document for privilege in connection with this Litigation, consistent with the Protective Order, the Document

8

shall be listed on the Party's privilege log and produced within sixty (60) days of production of said Document.  The log shall follow the same format and include the same type of information as outlined in Paragraphs 21 and 22 above.  Any redactions (whether based upon any privilege or for any other reason) applied to a Document shall be made so that they are easily identified by the Receiving Party (e.g., in black blocks or in white boxes with identifying "redacted" or "privileged" text).

25.    The Parties agree that the United States may use categorical logging, as opposed to document-by-document logging, for certain forms or other Documents in which the same set of redactions is applied across multiple variations of the same type of Document (e.g., DEA-6 forms).  The categorical log entry should provide sufficient information to understand the nature of the privilege asserted and the universe of documents included in the category.  Documents that are withheld in their entirety or in which such redactions exist along with other, substantive redactions, must be individually included in the log consistent with Paragraph 22.

26.    The Parties agree that communications regarding any litigation, potential litigation, or investigation related to both Walmart and controlled substances are presumptively privileged and shall not be logged if they are: (1) between Walmart and its Outside Counsel (as defined in the Protective Order), (2) among Walmart's Outside Counsel, (3) between attorneys working in the Civil Division of the Department of Justice or the Civil Division of a U.S. Attorney's Office who have

9

worked on or contributed to this Litigation or any federal civil investigation leading

to this Litigation ("DOJ Attorneys") and the Drug Enforcement Administration or (4)

among the DOJ Attorneys.  The Parties also agree that communications regarding

this Litigation, on or after the date that the original complaint was filed, that are (1)

among DEA Office of Chief Counsel attorneys ("DEA Attorneys"), (2) between

DEA Attorneys and DEA, (3) among Walmart's In-House Counsel (as defined in the

Protective Order), or (4) between Walmart's In-House Counsel and Walmart, are

presumptively privileged and shall not be logged.  The Parties may also confer and

agree that certain other categories of Privileged Information may be excluded from

any logging requirements without further order of the Court.

27.    Nothing herein precludes the Parties from conferring and agreeing that

alternatives to document-by-document logs can be exchanged for certain categories

of Privileged Information.  If the Parties reach such an agreement, they shall further

confer and agree to the specifications that shall apply.

### V.      Privilege Challenge Protocols.

28.    The Parties shall meet and confer in good faith and endeavor to resolve

any disputes regarding privilege-related claims or challenges before submitting such

disputes to the Court.  The following procedure shall constitute satisfaction of the

good faith meet and confer requirement prior to submitting privilege-related disputes

to the Court:

(i)     A Party challenging (the "Challenging Party") a Producing Party's claims of Privileged Information shall provide written notification of those challenges, including the bases for the challenges and/or requests for additional clarifying information, to the Producing Party, and offer to meet and confer with the Producing Party regarding the same.  The offer to meet and confer shall include multiple potential dates and times for a meet and confer during the fourteen (14) day period following the date of the written challenge notification.

(ii)     If the Challenging Party provides written notification and an opportunity to meet and confer as outlined in Paragraph 28(i), the Producing Party shall meet and confer with the Challenging Party within the fourteen (14) day period following the date of the written challenge notification, and shall provide the Challenging Party with a written response (providing further information supporting its claims and/or indicating which privilege claims, redactions, etc., the Producing Party maintains and which it withdraws, downgrades, or modifies) within twenty (20) days following the date of the written challenge notification.

(iii)     The time periods set forth in this Paragraph 28 may be modified in emergent circumstances, as agreed to by the Producing Party and the Challenging Party, or as ordered by the Court.

11

29.    The procedure outlined in Paragraph 28 may result in the withdrawing or narrowing of privilege claims, privilege redactions, other redactions, or work product claims.  To the extent that any such claims or redactions are downgraded, modified, or withdrawn by the Producing Party, as a result of the meet and confer process outlined in Paragraph 28 or on the Producing Party's own accord, the Producing Party shall, within fourteen (14) days or within a time frame as agreed to by the Challenging and Producing Parties or as ordered by the Court, apply any such downgrades, modifications, or withdrawals to any other similar claims or redactions, and provide written notice to the Challenging Party regarding which other privilege claims, privilege redactions, other redactions, or work product claims have been downgraded, modified, or withdrawn by the Producing Party.

30.    For any challenges remaining following the above procedure outlined in Paragraphs 28 and 29, the Challenging Party can submit its remaining challenges to the Court according to the guidelines established for submission of discovery disputes, or as otherwise agreed to by the Challenging and Producing Parties. Consistent with the Protective Order, the Producing Party bears the burden of establishing the privileged or protected nature of any claim of Privileged Information.

31.    Consistent with the Protective Order, nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of Documents or other information (including metadata) for relevance, responsiveness, and/or

12

segregation of Privileged Information or otherwise protected information before production. Nothing in this Order shall limit the right to request an in-camera review of any Privileged Information.

## VI.   Specific Document Discovery Issues.

32.   <u>Production timeframe</u>. The Parties shall produce Documents on a rolling basis.

33.   <u>Search methodology</u>. Each Party shall conduct a reasonable inquiry of reasonably accessible sources it has reason to believe contain relevant and unique Documents responsive to the opposing Party's discovery requests. The Parties agree that they may use one or more search methodologies and technologies to locate, collect, review, and produce relevant, responsive, nonprivileged Documents. The Parties shall meet and confer on the identification of custodians, sources, search terms, and the use of technology assisted review or other analytic tools to identify relevant and responsive Documents.

34.   <u>On-site inspection of electronic media</u>. Such an inspection shall not be permitted absent a demonstration by the requesting Party of specific need and good cause.

35.   <u>Email domains</u>. A Producing Party may utilize an ESI search process to identify and exclude certain non-responsive categories of ESI, such as emails from domains typically associated with junk email (e.g., retailer advertising or newsletters

or alerts from non-industry sources).  To the extent a Party opts to exclude uniquely

identifiable email domain names typically associated with junk or irrelevant topics as

part of its initial filter of potentially responsive ESI, the Parties agree to disclose

search terms and domain names excluded under this Paragraph and to meet and

confer on the timing for such disclosures.

36.   <u>Format</u>.  Unless otherwise specified in Paragraph 37 or elsewhere in this

Order, the Parties shall produce Documents in tagged image file format ("TIFF").

TIFFs shall convey the same information and image as the original Document,

including all commenting, versioning, and formatting that is visible in any view of

the Document in its native application.  All hidden text will be expanded, extracted,

and rendered in the TIFF file and, to the extent possible, the Producing Party will

instruct its vendor to force off Auto Date.  Any TIFFs produced shall be single-page,

300 DPI, Group IV TIFF files.  After initial production in image file format is

complete, a Party must demonstrate particularized need for production of ESI in its

native format.  Responsive Documents containing color shall be produced in color.

37.   <u>Native files</u>.  The following file types shall be produced in native format:

files that cannot be accurately represented in TIFF format or are otherwise not easily

converted to image format; spreadsheets (including Excel and Access); computer

slide presentations (including PowerPoint); audio files; and video files, unless the

Document requires redactions.  To the extent such a Document requires redactions,

reasonable efforts shall be made to produce a comprehensive, inclusive version, including but not limited to TIFF format. For each ESI produced in native format, the Producing Party shall also produce a corresponding cover page in TIFF image format, specifying that the ESI has been "produced in native format" and endorsed with the Bates Number and confidentiality designation, if applicable, which will be inserted into the image population in place of the native file. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, *i.e.*, its original formatting and metadata.

38.   <u>Parent-child relationships</u>. The Parties agree that they will make reasonable efforts to preserve parent-child relationships within a Document family (the association between an embedded attachment and its parent Document or between embedded Documents and their parent) that are already in existence from the ordinary course of business. Responsive non-privileged ESI attached to an email or embedded within other ESI and hard-copy Documents attached or appended to hard-copy Documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent Documents and ending number of the last attachment must be populated for each child and parent Document.

39.   <u>Deduplication</u>.  A Producing Party shall make reasonable efforts to globally deduplicate identical ESI within its own productions, as follows:

(i)   *Non-Email ESI.*  Duplicate non-email ESI (such as Microsoft Word Documents) should be identified using an accepted method (e.g., MD5 or SHA-1 hash values).  All ESI bearing an identical hash value are a duplicate group.  The Producing Party should produce only one image or native file for duplicate ESI Documents within the duplicate group; however, the Producing Party shall identify the additional custodian(s) (i.e., AllCustodian or Duplicate Custodians metadata field) for duplicate ESI Documents not produced to the extent such information can be automatically populated by the processing of the Documents and to the extent such information is reasonably available.

(ii)   *Email.*  Duplicate email or other messaging files should be identified using an accepted method (e.g., MD5 hash values) and based upon the email family, which includes the parent email and all attachments.  Email families bearing an identical hash value are considered a duplicate group.  The Producing Party should produce only one image or native file for duplicate ESI Documents within the duplicate group; however, in the event that email is collected from a custodial source the Producing Party shall identify each custodian (i.e., AllCustodian or Duplicate Custodians metadata field) from whom the duplicate email was collected, to the extent such information can be

16

automatically populated with industry standard ESI processing tools and to the extent such information is reasonably available.

40.    If the Producing Party makes supplemental productions following an initial production (in the case of rolling productions), that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the "Duplicate Custodian" field.  The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

41.    Email threading.  The Parties may use industry standard analytic tools to employ "email thread suppression."  As used in this Order, email thread suppression means producing the most inclusive email in a conversation thread, as well as all attachments within the thread, and not producing the individual messages from that thread as separate Documents.  Only email messages that are included within the more complete and produced thread part will be considered appropriate for exclusion from production.  Metadata will be produced for the most inclusive email in a thread. Metadata will not be produced for email thread parts suppressed under this Paragraph and the suppressed thread parts need not be reflected on the Producing Party's privilege log.

42.    De-NISTing.  ESI collections will be De-NISTed, removing commercially available operating system and application file information contained

17

on the current NIST file list. If a Producing Party proposes to apply additional filters that identify common system files or non-user-generated files, the Producing Party will meet and confer with the Receiving Party, and shall provide details to the Parties regarding the filters, how they work, and what impact (if any) they will have on the collections or productions. The Parties will have ten (10) days after such disclosure to object to the use of any additional filters. In the event that the Parties cannot reach agreement, the Parties shall raise any disputes regarding the proposed additional filters to the Court.

43. <u>Embedded objects</u>. The Parties agree that non-substantive embedded objects (as distinct from embedded files), including, but not limited to, logos, icons, emoticons, and footers, may be culled from a Document set and need not be produced as separate Documents by a Producing Party (e.g., such embedded objects will be produced within the Document itself, rather than as separate attachments).

44. <u>Zero-byte files</u>. The Parties shall filter out files identified as zero bytes in size.

45. <u>Data productions</u>. The Parties shall meet and confer regarding sources, scope, and fields for any structured data production, including any codes, abbreviations, or other information necessary to ensure the production is reasonably usable.

46.    Metadata fields.  For each Document produced, the Parties are obligated to provide the metadata fields identified in the attached **Appendix**, and as directed in that Appendix, but only to the extent such metadata exists, is reasonably accessible for the Document.  If any of the metadata fields in the Appendix contain information that is itself privileged (i.e., filename, subject line), the Producing Party may claim privilege over such information.  In such circumstances, the Producing Party may omit or redact such information, but shall flag the omission or redaction.  The Receiving Party may request information about an omission or redaction consistent with Section IV.

47.    Numbering/Endorsement.  All produced Documents will have a unique Bates number and a Production Volume Number (for any storage device containing such files, such as a hard drive, USB, CD, etc.), regardless of the format of the Document, and the file produced will be named with the unique Bates number.  For Documents produced in TIFF image format, each TIFF image will have a legible, unique Bates number electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source Document.  A Producing Party should use a consistent format for the Bates numbers it uses across its productions.  If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), those technical problems

19

shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed," along with a log identifying each such file; the associated metadata for the file with the technical problem shall be produced if technically possible.  A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

48.    Protected Materials.  Documents containing Protected Material as defined in the Protective Order shall be marked in accordance with the provisions of that Protective Order.

49.    Redactions.  As set forth in Part V of the Protective Order, a Party may use redactions to protect against unauthorized disclosure of certain Protected Material or Privileged Information as defined herein and in the Protective Order.  Where a responsive Document contains both redacted and nonredacted content, the Producing Party shall produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions.  Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a Document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log (unless excepted herein).  Redacted versions of spreadsheets, computer slide presentations, and word processing files

20

containing hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) shall be produced in color in TIFF format. The Parties shall honor reasonable requests for the production of particular redacted Documents in other formats where the TIFF image is not reasonably usable.

**VII.  Third-Party Discovery.**

50.    A Party that issues a non-party subpoena shall include a copy of this Order and the Protective Order with the subpoena and state that the Parties in the Litigation have requested that non-parties produce Documents in accordance with the specifications set forth herein.

51.    Within a reasonable time period, the Issuing Party shall produce a copy to all other Parties of any Documents obtained under subpoena to a non-party. Such production shall include all information produced to the Issuing Party in the format in which it was initially produced, including with any metadata, load files, and accompanying text files. If the non-party production is not Bates-stamped, the Issuing Party shall endorse the non-party production with a unique Bates prefix and numbering scheme prior to reproducing the production to all other Parties.

52.    To the extent that a Party reproduces any Document received from a third party, whether these documents were received by the United States during the investigation preceding the filing of this Litigation or pursuant to a subpoena or request in connection with this Litigation, the reproducing Party is not obligated to

draft or create a privilege log.  If the third-party provides a privilege log, the reproducing Party shall produce that privilege log to the Receiving Party.

### VIII.  Productions From Other Proceedings And Investigations.

53.     To the extent that the United States is in custody of documents produced by Walmart to the United States in this Litigation, and such documents are responsive to requests for production issued by Walmart in this Litigation, the Department of Justice need not reproduce these documents back to Walmart.  Nothing in this Paragraph shall alter a Party's obligation under the Federal Rules of Civil Procedures to respond to a written request for production.

54.     The reproduction of Documents that were previously produced by the Parties in any other proceeding or government investigation may be made in the format in which they were previously produced, including any previously produced metadata, load files, and accompanying text files.

55.     To the extent a Producing Party is reproducing documents that were previously produced in an investigation or proceeding separate from this Litigation, a Producing Party is not required to create a log of redactions that were applied to the documents during the previous production or documents that were withheld from the prior production, but shall produce such a log if it exists from the prior production.  If a redaction is not logged, the Receiving Party may request information about a redaction consistent with Section IV.

*/s/ Kelly E. Farnan*
Robert W. Whetzel (#2288)
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
whetzel@rlf.com
farnan@rlf.com

*Attorneys for Walmart Inc. and*
*Wal-Mart Stores East, LP*

OF COUNSEL:

Yaakov M. Roth
William G. Laxton, Jr.
Jeffrey R. Johnson
Kristen A. Lejnieks
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
(202) 879-3939

Karen P. Hewitt
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
(858) 314-1200

Jason S. Varnado
Andrew J. Junker
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2172
(832) 239-3939


Laura Jane Durfee

DAVID C. WEISS
United States Attorney for the
District of Delaware

*/s/ Dylan Steinberg*
DYLAN STEINBERG
ELIZABETH VIEYRA
Assistant United States Attorneys
1313 N. Market Street
Wilmington, DE 19801
dylan.steinberg@usdoj.gov
elizabeth.vieyra@usdoj.gov
302-573-6277

RACHAEL DOUD
Assistant Director
JOSHUA FOWKES
Trial Attorney
Admitted pro hac vice
KATHLEEN G. BRUNSON
Admitted pro hac vice
KATHERINE M. HO
Admitted pro hac vice
U.S. Department of Justice
Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
katherine.ho@usdoj.gov
202-353-7835

*Attorneys for the United States of America*

JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215-2673
(614) 281-3895

David W. Ogden
Charles C. Speth
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

SO ORDERED this 15th day of May 2024.

_____
The Honorable Colm F. Connolly
Chief United States District Court Judge

24

**Appendix:**

**Metadata and Coding Fields**

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | 2 |
| Confidential | Confidentiality designation, if any, of the document. | All | Confidential<br>Highly Confidential |
| Custodian | Names of all custodians who possessed the document, including deduplicated values, in format: Lastname, Firstname.<br><br>Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions. For instance: Smith, John A. and Smith, John B.<br><br>For documents from centralized repositories where custodian name(s) are | All | Doe, John; Smith, John; Smith, Jane |

1

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | unavailable, identifying source information should be provided. | | |
| Duplicate Custodian | Names of all other custodians who possessed the document. | ESI | |
| Duplicate Custodian File Name | The names of unproduced duplicate copies of files. | ESI | |
| Source | Source shall be used in connection with documents obtained from non-parties and identify the non-party having provided the particular material.  If the non-party's production of documents included individual custodian information, such information shall also be included in the "CUSTODIAN" field. | | |
| Subject/E-Subject | Subject line of an e-mail. | E-mails | Text of the subject line |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last | E-attachments; Electronic | 01/01/2015 |

2

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | modified. | documents | |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| Family Date | Date last modified or, for e-mails, sent date of the parent. | Electronic documents; E-attachments | 01/01/2015 |
| Family Time | Time last modified or, for e-mails, sent time of the parent. | Electronic documents; E-attachments | 12:30:00 |
| DateReceived | Date email was received. | E-mails | 01/01/2015 |
| TimeReceived | Time email was received. | E-mails | 12:30:00 |
| DateAccessed | Date document last accessed. | Electronic documents; E-attachments | 01/01/2015 |
| Date Last Printed | Date the document was last printed. | E-attachments; Electronic documents | 01/01/2015 |
| Time Last Printed | Time the document was last printed. | E-attachments; Electronic documents | 12:30:00 |
| Date Last Saved | Date the document was last saved. | E-attachments; Electronic documents | 01/01/2015 |
| Importance | Level assigned by creator. | E-mails | High |
| Conversation | E-mail conversation designation. | E-mail | Re: Smith Summary |
| Conversation Index | | E-mail | |
| Title/E-Title | Title of document. | E-attachments; Electronic documents | Smith Summary |
| Redaction | Basis for redactions in | E-attachments; | |

3

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | document. | Electronic documents | |
| FileName | File name of original document. | Electronic documents; E-attachments | Microsoft Word 2007/2010 |
| File Type | Application type. | Electronic documents; E-attachments | Word |
| File Size | Size of file. | All | 40 gb |
| File Extension | The file extension of the document. | E-attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document_12345.doc |
| Author | Document author/creator. | E-attachments; Electronic documents | John Doe |
| Company | Party making the production. | All | Company X |
| Title | Document Title. | E-attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value. | Electronic documents; E-attachments; E-mails | |
| Prod Volume | Production Volume. | All | Defendant X Volume 1 |
| File Path | | | |
| AttachDocID | | Electronic documents; E-attachments; E-mails | |
| ATTACHNAME | | | |
| ATTACHRANGE | | | |
| FOREIGN LANGUAGE | | | |
| TIME ZONE PROCESSED | | | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| E-LAST MODIFIED BY | | | |
| MESSAG E TYPE | | | |
| CALENDAR MEETING STOP/START | | | |
| RECORD TYPE | | | |
| HAS HIDDEN DATA | | | |
| HIDDEN COLUMNS | | | |
| HIDDEN NOTES | | | |
| HIDDEN ROWS | | | |
| HIDDEN SHEETS | | | |
| HIDDEN SLIDES | | | |
| HIDDEN TEXT | | | |
| HIDDEN TRACK CHANGES | | | |
| MESSAGE ID | | | |
| NUMBER OF ATTACHMENT S | | | |
| ORIGINAL FOLDER PATH | | | |
| IS EMBEDDED | | | |
| TextPath | Relative file path to each extracted text/OCR text file on the production media. | All | \Text\Document_12345.txt |

5