# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-01744-CFC |
| ) | |
| WALMART INC. and ) | **CONFIDENTIAL** |
| WAL-MART STORES EAST, LP, ) | **FILED UNDER SEAL** |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF UNITED STATES' RESPONSE TO DEFENDANTS' DISCOVERY DISPUTE LETTER

Dear Judge Tennyson,

Walmart accuses the United States of, among other things, attempting to "ambush" the company, "subverting" subpoenas, and "playing games." Walmart's accusations are unsupported, and the straightforward application of the law to the facts here demonstrates that the United States has properly responded to Walmart's first and second interrogatories and that there is no basis for the Court to reconsider its ruling that the other agencies are not parties. Walmart simply is attempting to use its unfounded discovery disputes to frustrate the government's efforts to cooperatively pursue fact discovery, and more brazenly, to dictate the government's case.

**Issue 1**: The United States has produced to Walmart the preliminary lists of prescriptions that this Court directed the government to produce in its September 25, 2024 Order. In asking the Court to address again what was resolved on September 25, Walmart attempts to manufacture a new dispute by claiming that the United States wants to "start over" and has admitted that the preliminary lists of prescriptions "have nothing to do with the prescriptions" in the Complaint. D.I. 183, at 2. These assertions are untrue. Walmart nonetheless asks the Court to revisit its prior order and bar the United States—before Walmart has produced *any* dispensing data in this litigation and more than a year before the close of fact discovery—from supplementing the provisional lists the government has disclosed.

The Court previously directed the United States to produce a list of prescriptions that the United States had "provisionally put together" during its pre-filing investigation based on "a consulting expert's opinions" and the limited universe of dispensing data Walmart produced during the investigation. D.I. 151, at 15:18-16:3, 20:9-15. Because the list was provisional and because "[d]iscovery is ongoing," the United States would "certainly . . . have the ability to supplement" the list. *Id.* at 16:5-6. The Court therefore requested "the parties to be reasonable when it comes to necessary changes that may need to be made" to the list. *Id.* at 20:15-17.

In compliance with this Court's Order, on September 27 and October 22 and 25, 2024, the United States disclosed spreadsheets listing approximately 143,000 invalid prescriptions. Although not required by the Court's Order, the United States subsequently, on November 21, 2024, also disclosed a list of 21 data specifications that were used to generate the provisional lists. All these data specifications—and the prescriptions meeting those specifications—fell within the red flag combinations enumerated in the Complaint. D.I. 109, at 136-146. The United States expressly reserved its right supplement, clarify, revise, or correct the lists.

This Court's prior order—and the United States' compliance with it—are consistent with Rule 26(e) of the Federal Rules of Civil Procedure, under which "[l]itigants commonly supplement their discovery responses after reviewing discovery received from an opposing party." *Aaron, MacGregor & Assocs., LLC v. Zheijiang Jinfei Kaida Wheels Co., Ltd.*, 2017 WL 4875904, at *5 (N.D. Ind. Oct. 30, 2017); *see also, e.g.*, *Simpson v. Ocwen Loan Serv., LLC*, 2020 WL 1465740, at *4 (N.D. W.Va. Mar. 25, 2020) (authorizing plaintiff in civil penalty action to supplement its list of violations after obtaining additional information in discovery). Courts find it particularly appropriate to permit supplementation when, as here, the interrogatory relates

to anticipated expert testimony. *See Ziemack v. Centel Corp.*, 1995 WL 729295, at *2-3 (N.D. Ill. Dec. 7, 1995); *BB&T Corp. v. U.S.*, 233 F.R.D. 447, 450 (M.D.N.C. 2006) (quashing as "premature" "contention deposition" in tax case when government had yet to obtain "a sufficient, comprehensive view of the facts" through discovery and contentions would "touch on" expert matters). Courts also generally find supplementation appropriate in the case of contention interrogatories, like Interrogatory 1. *E.g. Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 489 (W.D.N.C. 1998).

Walmart prematurely seeks a final list of invalid prescriptions but has refused, for months, to produce the dispensing data necessary for the United States to provide such a list. In effect, Walmart seeks to improperly and "artificially narrow" the universe of violations at issue by forcing the United States to "prematurely commit . . . to positions" before it has obtained meaningful discovery from Walmart. *Ziemack*, 1995 WL 729295, at *2; *see also Jimenez v. Smith & Nephew, PLC*, 2010 WL 11590923, at *3 (D.N.M. Jan. 25, 2010) (same).

Walmart's letter brief nowhere acknowledges, much less addresses, Rule 26(e) or this Court's prior instruction that permits supplementation. Rather, Walmart argues that this Court should bar the United States from amending the list (except to eliminate prescriptions) because, in Walmart's opinion, the United States may seek penalties only for the tens of thousands of violative prescriptions that Walmart believes are explicitly referenced in the Complaint.

That contention rests entirely on Walmart's theory that the meaning of the term "violation" in the CSA's civil penalties provision, 21 U.S.C. § 842(c)(1), is "coterminous" with the meaning of the term "claim" in Rule 26(b)(1). As the United States further detailed in its letter brief asking this Court to compel Walmart to produce dispensing data and associated fields, the only authority Walmart has offered in support of its argument are decisions providing generic definitions of the term "claim," *none* of which involve the CSA or any other civil penalty statute and *none* of which compare the meaning of "claim" and "violation," let alone equate the terms, as Walmart seeks to do. D.I. 184, Ex. 4, at 2; Ex. 5, at 2-3.

"Claim" in Rule 26(b)(1) refers to Rule 8's notice pleading standard that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and therefore does not require "that complaints contain all of the evidence needed to prevail at trial" or "all of the facts," as code-pleading demanded, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Rather, "Rule 8 . . . authorizes notice pleading with discovery to follow." *Matter of Excello Press, Inc.*, 967 F.2d 1109, 1115 (7th Cir. 1992). Put differently, "plaintiffs need not prove their case at the pleading stage" because "it may not be until discovery that a plaintiff has access to the evidence it needs to detail" the facts supporting its claims. *BSD Crown, Ltd. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 1002 (N.D. Cal. 2023).[1]

---

[1] Walmart speculates that "[h]ad the government actually pled the claim at the level of generality for which it is now trying to seek discovery, it would never have survived a motion to dismiss."

2

To require the government to specifically enumerate in the Complaint thousands of violations of the CSA and allege supporting facts for each such violation would contradict the purpose of Rule 8, which was to prevent plaintiffs from "larding their complaints with facts and legal theories," *Bennett*, 153 F.3d at 518, and would conflict with the Federal Rules' framework of notice-pleading followed by broad discovery. That is particularly true given that the information necessary to identify specific violations lies in the control of Walmart, and therefore is unavailable absent discovery.

Walmart challenges what courts routinely permit. As the United States did here, plaintiffs (including the government) frequently bring civil penalty actions in which a complaint provides specific examples of violations while also alleging more generally that a defendant's conduct resulted in additional violations. In such cases, courts routinely allow the plaintiff to engage in discovery related to violations closely related to the unlawful actions described in the complaint, even when the violations were not specifically referenced in the complaint. *See, e.g.*, *Orange Cnty. Coastkeeper v. Bodycote Thermal Proc., Inc.*, 2024 WL 174467, at *1-2 (C.D. Cal. Jan. 12, 2024) (Clean Water Act); *Corteva Agriscience LLC v. Monsanto Co.*, 2023 WL 6880348, at *1 (D. Del. Oct. 18, 2023) (patent infringement); *Simpson*, 2020 WL 1465740, at *4 (state consumer credit protection act); *U.S. ex rel. Bibby v. Wells Fargo Bank*, 165 F. Supp. 3d 1340, 1343, 1355-56 (N.D. Ga. 2015) (civil penalty action related to mortgage fraud); *In re RFC and ResCap Liquidating Trust Lit.*, 2015 WL 12819152, at *5-6 (D. Minn. Apr. 13, 2015) (contract representation and warranty violations); *U.S. ex rel. Hudalla v. Walsh Constr. Co.*, 834 F. Supp. 2d 816, 823 (N.D. Ill. 2011)[2] (False Claims Act); *United States v. Nat'l Dynamics Corp.*, 1981 WL 2070, at *1 (S.D.N.Y. Apr. 30, 1981) (Federal Trade Commission Act), *aff'g* 1981 WL 2054, at *2 (S.D.N.Y. April 8, 1981); *see also* D.I. 184, at 3 (citing additional cases). Courts authorize such discovery because "Rule 26 certainly contemplates" that "additional alleged violations could be unearthed during discovery." *Simpson*, 2020 WL 1465740, at *4 (citing Rule 26(e) and allowing plaintiff to identify additional statutory violations through discovery). All these cases necessarily reject Walmart's argument that, in the context of civil penalty statutes, "claims" are coextensive with "violations" and discovery is limited to specifically enumerated violations. Walmart never has articulated any reason why the CSA should be interpreted differently than penalty provisions in these other civil statutes or causes of action.[3]

---

D.I. 183, at 2. Walmart initially made that argument in its motion to dismiss, contending that the government was required to make "prescription-by-prescription allegations" and asking for dismissal of specific Complaint paragraphs that it did not believe included sufficiently particularized allegations. D.I. 84, at 16-19. The United States squarely addressed that argument in its motion-to-dismiss brief. D.I. 93, at 7, 18-21. Walmart withdrew its motion on that point, D.I. 110, at 1 n.1; thus, those allegations remain and the United States may take related discovery.

[2] The *Hudalla* Court had ordered the defendant to produce records related to projects not specifically referenced in the complaint. D.I. 78, No. 05 C 5930 (N.D. Ill. Nov. 23, 2010).

[3] Not only do courts allow discovery related to violations not specifically enumerated in a complaint, they also impose civil penalties related to such additional violations. *E.g.*, *S.E.C. v.*

That the United States was able to obtain a limited sample of dispensing data from Walmart—certain fields for prescriptions issued by several hundred prescribers—through an administrative subpoena issued during its pre-filing investigation does not serve to restrict this action to the violative fills explicitly enumerated in the Complaint.  "The inquiry required by [the Federal Rules] is a brief pre-filing investigation, not pre-filing discovery."  *Excello*, 967 F.2d at 1115.  And, in fact, Walmart did not produce much of the dispensing data requested in the administrative subpoena.  The limited data Walmart produced supported the United States' overarching claims, and therefore the government elected to move forward with filing its Complaint and into civil discovery rather than engage in prolonged efforts to obtain all of the subpoenaed data.  Were this Court to accept Walmart's argument, it would improperly incentivize investigative targets to not comply with validly issued investigative subpoenas.

Walmart's recalcitrance distinguishes this case from the unreported discovery order in *U.S. v. Ridley's Family Mkts. Inc.*, No. 1:20-cv-173, D.I. 74, at 13-15 (D. Utah June 27, 2022).  *Ridley's* nowhere suggests that the defendant did not fully comply with the government's pre-filing investigation such that the government could not identify all violations before filing.  The scope of alleged wrongdoing also differed in *Ridley's*: whereas the government's allegations in *Ridley's* related almost exclusively to prescriptions filled by one location of the defendant pharmacy chain for two patients, *id.* at 2-3, Walmart concedes, as it must, that the United States' operative Complaint alleges tens of thousands of specific invalid prescriptions filled by Walmart at stores across the country.  And whereas the *Ridley's* complaint included a single allegation that "the apparent absence of corporate policies and oversight" at the single location under investigation suggested that invalid fills likely occurred at other *Ridley's* locations, *Ridley's*, D.I. 2, ¶ 95, the Complaint here provides detailed allegations regarding invalid fills at Walmart pharmacies across the country, D.I. 109, at 126-150.

Walmart's refusal to produce nationwide dispensing data and associated fields also renders hollow its assertion that it will be prejudiced because, without a complete and final list of violations, it will be "impossible for Walmart to seek fact discovery."  D.I. 183, at 3.  To begin, any prejudice is of Walmart's own making based on its failure to produce dispensing data and is therefore not an appropriate basis for relief.  Further, Walmart does not state exactly what "prescription-by-prescription" "fact discovery" it believes it needs to engage in; perhaps it would involve depositions of prescribers, patients, and pharmacists and subpoenas for patient-specific records.  But the Scheduling Order to which Walmart agreed authorizes only 150 hours of third-party depositions—orders of magnitude fewer than the thousands of hours of depositions that its claimed need for prescription-by-prescription discovery would entail.

---

*Kokesh*, 884 F.3d 979, 984-85 (10th Cir. 2018); *United States v. Chen*, 402 Fed. App'x 185, 188 (9th Cir. 2010); *United States v. Krizek*, 111 F.3d 934, 940-41 (D.C. Cir. 1997); *S.E.C. v. Tourre*, 4 F. Supp. 3d 579, 583-84 (S.D.N.Y. 2014); *Waterkeeper v. Corona Clay Co.*, 2024 WL 94112, at *23 (C.D. Cal. Jan. 2, 2024).

**Issue 2**: Interrogatory 2, which was not part of the earlier discovery dispute brought to the Court, asks the United States to identify (a) the "reason(s)" it "contends" the prescriptions violated the CSA, (b) the "methodologies" used to identify the prescriptions and any "conclusions" about the prescription, and (c) "electronic scripts, codes, or analytical programs" used to implement the "methodologies." D.I. 183, Ex. E, at 2. The United States responded by providing exemplary and preliminary data specifications used to identify the prescriptions in the government's provisional lists provided to Walmart in response to Interrogatory 1. All of these data specifications and the prescriptions they generated that fall within the red-flag combinations described in the Complaint. In doing so, the United States explicitly reserved its right to supplement, clarify, revise, or correct the data specifications based on additional information obtained in discovery, including Walmart's dispensing data.

In meet-and-confer correspondence, the United States explained that Interrogatory 2 is a quintessential "contention interrogatory." D.I. 183, Ex. N, at 4; *Novanta Corp. v. Iradion Laser, Inc.*, 2016 WL 4987110, at *7 (D. Del. Sept. 16, 2016) ("Contention interrogatories ask a party to state what it contends [or] all the facts upon which it bases a contention."). A party generally need not answer a contention interrogatory until the end of or after discovery because discovery may reveal additional information that supports its contention. *See, e.g.*, *Novanta*, 2016 WL 4987110, at *7 ("courts tend to deny contention interrogatories filed before substantial discovery has taken place, [and instead] grant them if discovery almost is complete" (quoting *Amgen Inc. v. Sandoz Inc.*, 2016 WL 1039029, at *3 (N.D. Cal. Mar. 15, 2016)); *BB&T*, 233 F.R.D. at 450; *see also* Fed. R. Civ. P. 33(a)(2). Courts are particularly loath to enforce a contention interrogatory when the proponent has failed to produce discovery relevant to responding to the interrogatory. *E.g. In re Wells Fargo Res. Mortg. Lending Discr. Lit.*, 2009 WL 1771368, at *6-7 (N.D. Cal. June 19, 2009) ("Neither Fed. R. Civ. P. 33(a)(2) nor applicable case law requires Plaintiffs to answer the contention interrogatories until [defendant] has produced the information necessary for them to do so.").

Under this well-established authority, the United States' response was more-than-adequate at this point in discovery. Because contention interrogatories need not be answered until the end of fact discovery, the United States would be well within its rights to withhold *any* substantive response until later in discovery. That is particularly true given Walmart's failure to produce dispensing data, which prevents the United States from responding in full.

Rather than relying on any legal authority, Walmart misleadingly quotes statements by the United States during the Court's discovery teleconference in a misplaced effort to assert that the government has "change[d] [its] course" with respect to the red-flag combinations. Specifically, Walmart claims the government had advanced a "*per se* theory of invalidity" and then "changed course" by explaining to Walmart that the government may not pursue penalties for prescriptions in certain situations based on information known to Walmart, such as a patient's cancer diagnosis. D.I. 183, at 3. But during the teleconference, the United States made clear that validity of a particular fill depends "on the face of the prescription *and in some cases . . . other factors*." D.I. 151, at 12:22-13:8 (emphasis added). The United States' position with respect to its "red-flag" claim is, and has always been, that facts known to Walmart at the time it dispensed

5

a particular prescription are relevant to whether dispensing the prescription violated the CSA. To the extent Walmart's dispensing data system provided additional information bearing on the validity of the prescription—like whether a patient suffered from cancer or whether the pharmacist resolved a "red flag"—that information is relevant, and the United States never has asserted otherwise. Walmart's effort to manufacture a change in course on this issue is particularly misplaced when Walmart has refused to provide a complete list of data fields in its dispensing data system—information necessary for the United States to finalize the data specifications it will use to identify invalid prescriptions. It is also precisely why courts refuse to compel litigants to respond to contention interrogatories that would "prematurely commit Plaintiffs to positions and artificially narrow issues," like Interrogatory 2. *Ziemack*, 1995 WL 729295, at *2.

**Issue 3:** The Court should not reconsider its order requiring Walmart to seek discovery from the other Agencies through third-party subpoenas. It remains true that none of these non-party agencies were part of the prosecuting team or contributed significantly to the investigation leading to the filing of the Complaint. D.I. 151, at 55:6-9.

Walmart does not contend that anything has changed about CMS's, HSI's, VA's, or FBI's involvement in the investigation. With respect to HHS and DOD, Walmart points out that one of the United States' interrogatory responses provides information about interviews of Walmart witnesses and disclosed that HHS and DOD investigators attended certain interviews. Walmart has known for years that the United States conducted a False Claims Act (FCA) investigation into Walmart's dispensing of controlled substances. HHS and DOD were involved in the FCA investigation, and the government explained to Walmart that these particular interviews were conducted for purposes of the FCA investigation but attended by someone involved in the parallel CSA investigation. Ex. 1. That is consistent with the government's explanation at the hearing that HHS was involved in the FCA investigation. D.I. 151, at 46:9-14. And these joint interviews do not show that HHS and DOD contributed significantly to the CSA investigation that resulted in the filing of this Complaint.

Walmart further speculates that the Consumer Protection Branch (CPB) is engaged in a "joint effort to subvert the subpoenas," and thus, encourages the Court effectively to hold the case team responsible for the third-party agencies' responses to the subpoenas. To be clear, CPB is not engaged in such an effort. Other attorneys at CPB, who are not otherwise involved in this case, represent the non-party agencies in responding to Walmart's subpoenas (just as DOJ lawyers from another section or division would). Walmart has provided no authority to suggest that internal DOJ staffing decisions should have any impact on whether an agency should be considered a party for purposes of discovery.

|  | Respectfully submitted, |
|---|---|
|  | SHANNON T. HANSON<br>Acting United States Attorney |
| BY: | /s/ Elizabeth Vieyra<br>Elizabeth Vieyra<br>Assistant United States Attorney<br>1313 N. Market Street<br>P.O. Box 2046<br>Wilmington, Delaware 19899-2046<br>Telephone: 302-573-6148<br>Facsimile: 302-573-6220<br>Elizabeth.Vieyra@usdoj.gov |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>WALMART INC. *et al.*,<br><br>        Defendants. | Case No. 1:20-cv-01744-CFC<br><br>**CONFIDENTIAL**<br>**FILED UNDER SEAL** |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025 true and correct copies of the foregoing document were caused to be served on the following counsel of record via electronic mail:

Robert W. Whetzel, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
Email: whetzel@rlf.com
Email: farnan@rlf.com

William G. Laxton, Jr., Esq.
Jeffrey R. Johnson, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Email: wglaxton@jonesday.com
Email: jeffreyjohnson@jonesday.com

Karen P. Hewitt, Esq.
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Email: kphewitt@jonesday.com

Jason S. Varnado, Esq.
Andrew J. Junker, Esq.
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2172
Email: jvarnado@jonesday.com
Email: ajunker@jonesday.com

James W. Carlson, Esq.
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Email: jamescarlson@jonesday.com

Laura Jane Durfee, Esq.
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
Email: ldurfee@jonesday.com

David W. Ogden, Esq.
Charles C. Speth, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20006
Email: david.ogden@wilmerhale.com
Email: charles.speth@wilmerhale.com

*/s/ Elizabeth Vieyra*