# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01744-CFC |
| | ) | |
| WALMART INC. and | ) | UNDER SEAL |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## <u>PLAINTIFF UNITED STATES' RESPONSE TO DEFENDANTS' DISCOVERY DISPUTE LETTER</u>

Dear Judge Tennyson,

**Issue 1:** This case is about Walmart's alleged failure to comply with the CSA. Yet Walmart has demanded vast quantities of documents from the federal government, taking a sweeping view of relevance without any consideration for the proportionality of its requests. Indeed, Walmart has propounded 145 RFPs, many with multiple subparts. *See* Exs. A, B. Some RFPs are so overbroad as to encompass a substantial amount of agencies' regulatory activities, *see, e.g.,* Ex. B at RFP 85, going far beyond the bounds of Rule 26 reasonableness. *See* Exs. C, D.

The United States has negotiated with Walmart in good faith and is producing large volumes of documents on a rolling basis. To date, the United States has agreed to produce dozens of U.S. Attorney and DEA investigative files; to search a variety of DEA, FDA, and CDC central sources; to search the files of 119 DEA employees, 16 FDA employees, and 13 CDC employees; and to provide third-party documents and communications from central sources and the files of 22 DOJ employees. The government also has agreed to run broad search terms across these sources, including variations of the term "Walmart" without limiters. Ex. E. Still, Walmart seeks to dictate and expand the United States' discovery. As recently as April 18, 2025, Walmart demanded that the United States add dozens of additional, specified custodians—several for the first time—plus many other unnamed individuals. D.I. 210, Walmart Ex. E. On that same day, Walmart also proposed edits to the government's search terms, as well as entirely new terms. Ex. F.

The United States thus shares Walmart's concerns about discovery deadlines. The solution, however, is not interim production deadlines, but for Walmart to stop moving the goalposts. If Walmart refuses to agree on custodians and search terms, the United States cannot define the universe of documents to be produced, much less certify it has completed any particular percentage of production. As the government has explained, it will continue to make rolling productions. Indeed, the United States has already made 15 productions, totaling approximately 577,000 documents.[1] And even as Walmart demands more custodians and search terms, the United States is reviewing documents for agreed-upon custodians and expects to begin producing them shortly.

**Issue 2:** Walmart next demands, in connection with DOJ's Walmart and Identified Prescriber investigations,[2] collection of files from more than **100** DOJ custodians and sources, including **88** current and former DOJ employees, **18** U.S. Attorney's Offices, and three DOJ sections. When pressed about the types of relevant, unique, non-privileged documents Walmart believes DOJ custodians possess, Walmart identified (1) documents from and communications with third parties ("third-party documents"), and (2) documents related to presentations about the CSA (which Walmart admitted would be a "needle in a haystack").

---

[1] Walmart has agreed to 18 custodians for this case, only one of whom was not a custodian in the MDL or opioid state-court litigation. Between this case and all other opioid litigation, Walmart has produced documents from 131 custodians total, fewer than the number of custodians already agreed to by the United States. In response to the government's RFPs, Walmart has produced fewer than 2,000 documents that it had not already produced in the MDL or state litigation.

[2] Until recently, *see* Ex. F, the United States understood Walmart to focus on DOJ custodians connected with the Walmart investigation rather than the Identified Prescriber investigations.

Walmart's demands are disproportionate to the needs of the case and seem intended principally to burden the government. First, any presentations by individual attorneys about the CSA (e.g., at conferences) are not relevant. Walmart has claimed that such presentations would be "interesting," but "interest" does not suffice: "[t]he discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Dale v. Deutsche Telekom AG*, 2024 WL 4416761, at *1 (N.D. Ill. Oct. 4, 2024). Second, Walmart's proposed DOJ custodian list is haphazard at best—e.g., it includes attorneys who were not even employed by DOJ at the time the Complaint was filed but omits DOJ attorneys litigating this case who Walmart knows were involved in the investigation. Third, Walmart demands that DOJ collect and search all files for the identified DOJ custodians and offices. Yet, most of Walmart's proposed DOJ custodians are attorneys whose communications and documents—except third-party materials— are almost entirely privileged.[3] *See Varbero v. Belesis*, 2020 WL 7043503, at *2 (S.D.N.Y. Dec. 1, 2020) (courts are "particularly concerned about the burdens" when lawyers are the subject of discovery). Collecting entire custodial files for these individuals would result in a "staggering" quantity of non-discoverable material. *See Dale*, 2024 WL 4416761, at *3-5.

In contrast, the United States' collection methodology and custodian selection are reasonable and proportionate. As the United States has made clear repeatedly, most discoverable materials related to the Walmart and Identified Prescriber investigations are contained in investigative files. The United States accordingly is producing DEA and U.S. Attorney's Office case files for the relevant investigations as well as third-party productions the United States received during the Walmart investigation. To supplement these files, the United States is also producing from 119 DEA custodians' files. As a tertiary step, the United States has agreed to search for and produce third-party documents and communications from the files of 22 current DOJ employees who worked on the Walmart investigation. To do so, United States is not relying exclusively on DOJ personnel to "self-collect" as Walmart asserts.[4] In addition to directing the 22 employees to identify and collect third-party documents from their files, the United States also directed litigation support personnel to collect documents by applying search terms[5] to these same individuals' files. The combined collected materials will be reviewed by the litigation team and produced as appropriate. Given the small quantity of potentially discoverable material, this approach is reasonable. *See Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 3498161, at *2 (E.D. Pa. June 29, 2020) ("[t]he producing party . . . is in the best position to determine the method by which they will collect documents"); *see also LifeSan, Inc. v. Smith*, 2022 WL 20853087, at *11 (D.N.J. July 29, 2022).

---

[3] As an aside, Walmart suggests without any basis in fact or law that the United States waived privilege over a significant volume of materials because it agreed to produce to Walmart the files provided to defendants in the related criminal investigations. The United States disagrees.

[4] Even if the United States were relying on self-collection, appropriately supervised employee collection is sufficient, *see, e.g., Mirmina v. Genpact LLC*, 2017 WL 3189027, at *2 (D. Conn. July 27, 2017), and proportional to the materials sought.

[5] The search terms are based on Walmart's proposal and include the following: (Walmart OR "Walmart" OR WMT OR (("Sam's" or "Sams") w/3 (pharm* or club*))) and identified external email domains. Slightly different variants are being run by the Main Justice and Executive Office for United States Attorneys litigation support personnel based on different technical capabilities.

Respectfully,

SHANNON T. HANSON
Acting United States Attorney

BY:     */s/ Elizabeth F. Vieyra*
Elizabeth F. Vieyra
Assistant United States Attorney
1313 N. Market Street
Wilmington, Delaware 19899-2046
Telephone: 302-573-6148
Facsimile: 302-573-6220
Elizabeth.Vieyra@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on May 6, 2025, true and correct copies of the foregoing document were caused to be served on the following counsel of record via electronic mail:

Robert W. Whetzel
Kelly E. Farnan
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
Email: whetzel@rlf.com
Email: farnan@rlf.com

William G. Laxton, Jr.
Jeffrey Johnson
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Email: wglaxton@jonesday.com
Email: jeffreyjohnson@jonesday.com

Karen P. Hewitt
Jones Day
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Email: kphewitt@jonesday.com

Jason S. Varnado
Andrew J. Junker
Jones Day
717 Texas, Suite 3300
Houston, TX 77002-2172
Email: jvarnado@jonesday.com
Email: ajunker@jonesday.com

James W. Carlson
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Email: jamescarlson@jonesday.com

Laura Jane Durfee
Jones Day
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
Email: ldurfee@jonesday.com

David W. Ogden
Charles C. Speth
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20006
Email: david.ogden@wilmerhale.com
Email: charles.speth@wilmerhale.com

*/s/ Elizabeth F. Vieyra*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 20-1744-CFC |
| v. | ) |
| | ) |
| WALMART INC. AND WAL-MART | ) |
| STORES EAST, LP, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION AND
## FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendants, Walmart Inc. and Wal-Mart Stores East, LP (collectively, "Walmart"), serve these First Set of Requests for Production ("Requests") and First Set of Interrogatories to Plaintiff ("Interrogatories," and collectively the "Discovery") and request that Plaintiff respond within 30 days after service, to be supplemented as required by Plaintiff's duties under Rule 26. All interrogatories must be answered fully, in writing under oath. Responses must be delivered to undersigned counsel.

## DEFINITIONS

1. "Allegedly Invalid Prescription" means any prescription filled by a Walmart pharmacist for which You contend or will contend in This Litigation Walmart should be liable under Counts I or II of the Complaint. *See* Am. Compl. ¶ 760, 765.

2.      "Communication" or "Communications" mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communication, includes any Document evidencing such oral Communication.  "Communications" includes both internal communications (*e.g.*, Communications within a federal agency or between two or more federal agencies) and external communications (*e.g.*, Your Communications with State Agencies, DEA Registrants, healthcare practitioners, or patients).

3.      "Complaint" means the Second Amended Complaint that You filed in This Litigation on February 1, 2024.

4.      "Controlled Substance" means any substance identified as a Schedule II-V substance pursuant to 21 U.S.C. § 812 between January 1, 2010 and December 20, 2020.

5.      "Controlled Substances Act" or "CSA" means the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*., inclusive of all regulations adopted thereunder.

6.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.  The term "Document" shall include hard-copy documents, electronic documents, and, electronically stored information ("ESI"). A draft or non-identical copy is a separate Document within the meaning of this term.

In all events, the definition of "Document" shall include "Communication" and "Investigative Reports" as defined here.

7.     "Government Healthcare Facility" means a healthcare facility operated, owned, affiliated with or supported by the United States Government, including VA, DOD, or HHS (including IHS, PHS, or THS).

8.     "Identified Prescribers" means: (1) the individual Prescribers identified by initials in the Complaint and later identified in full by You in correspondence dated February 5, 2024; and (2) any other Prescribers You claim wrote any Allegedly Invalid Prescriptions.

9.     "Investigative Report" means reports generated by a federal agency in connection with a criminal, civil, or administrative investigation and any associated inserts, exhibits, or appendices.  Examples of Investigative Reports include the DEA Forms 6 and 6a (Report of Investigation), DEA Form 82 (Notice of Inspection of Controlled Premises), FBI Forms FD-302 and FD-302a (Form for Reporting Information That May Become Testimony), VA Form 0119 (Report of Contact), and HHS-OIG Investigation and Interview Memoranda, including HHS OIG Forms "OI-3" Report of Interview, "OI-3A" Report of Investigative Activity, and "IM" Investigative Memorandum.

10.    "Opioid Litigation" means This Litigation; *In re National Prescription Opioid Litigation*, MDL Case No. 2804 in the United States District Court for the

Northern District of Ohio ("MDL"); and any other proceeding in federal and state court regarding the marketing, sales, distribution, or dispensing of opioid products, including any enforcement action against any Prescriber or patient referenced in the Complaint.

11. "Person" means any natural person or any business, legal, or governmental entity, or association.

12. "Prescriber" refers to any physician, surgeon, nurse practitioner, physician assistant, physiatrist, psychiatrist, dentist, podiatrist, nurse, or other person who is or was licensed and registered to prescribe prescription medications.

13. "Related to," "relates to," or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, refuting, constituting, involving, comprising, or concerning.

14. "State Agencies" means state healthcare licensing boards (*e.g.*, boards of pharmacy, medicine, osteopathy, nursing, etc.), healthcare-related agencies, law enforcement agencies, and other agencies that regulate or oversee activities relating to prescribing, dispensing, or distributing Controlled Substances.

15. "Statement" means any account, whether formal or informal, of facts, views, opinions, plans, or events given to You by any Person, including any transcripts, recordings, and notes of testimony made or interviews conducted.

16.    "This Litigation" means the above-captioned litigation.

17.    "Walmart" means Walmart Inc. and Wal-Mart Stores East, LP.

18.    "You" and "Your" refer to the United States of America, and its agencies, officers, and employees, including:

(a)    The Department of Justice ("DOJ"); the U.S. Drug Enforcement Administration ("DEA"); U.S. Attorney's Offices; the Federal Bureau of Investigation ("FBI"); the U.S. Department of Veterans Affairs ("VA"); the U.S. Department of Defense ("DOD"); the U.S. Department of Health and Human Services ("HHS") and any relevant components thereof, such as the Public Health Service ("PHS"), Indian Health Service ("IHS"), and Tribal Health Service ("THS"); the Centers for Disease Control and Prevention ("CDC"); the U.S. Food and Drug Administration ("FDA"); Centers for Medicare & Medicaid Services ("CMS"); the Substance Abuse and Mental Health Services Administration ("SAMHSA"); the U.S. Government Accountability Office ("GAO"); the Merit Systems Protection Board ("MSPB"); and the Office of Inspector General ("OIG") for any of the above-named entities; and

(b)    Any Government Healthcare Facilities, including any Prescribers, pharmacists, or other healthcare professionals who work there.

## INSTRUCTIONS

1.   The Discovery seeks all information, documents, and communications responsive to the Requests and Interrogatories, regardless of creation date and to the broadest scope allowable under the Federal Rules of Civil Procedure.

2.   The Protective Order in This Litigation (D.I. 88) governs all information produced or disclosed in This Litigation, including responses to this Discovery.  Any Protected Material under the terms of that Order should be designated consistent with the instructions in that Order.

3.   The obligation to provide the information sought by this Discovery is continuing and shall be supplemented in accordance with Fed. R. Civ. P. 26(e).

4.   If no documents or information exist that are responsive to a specific Request or Interrogatory, that fact shall be stated in your response.

5.   If you object to any Request or Interrogatory, You shall identify the specific grounds for the objection in full.  If any objection is based on a claim of privilege or attorney work product, state which documents or information will be withheld and which documents or information will be produced or provided notwithstanding such objections.

6.      If You object to part of any Request, You shall specify in the objection the part of the Request objected to and shall produce all documents responsive to the remainder of the Request.

    (a)      If You object to any part of an Interrogatory, You shall specify in the response the part of the Interrogatory objected to, the basis for the objection, and shall respond to the remainder of the Interrogatory.

7.      If any information is withheld by You under a claim of privilege (including work product), provide an explanation of the privilege asserted and the following information:

    (a)      Date of the document;

    (b)      Author(s) of the document;

    (c)      Recipient(s) of the document;

    (d)      Custodian of the document;

    (e)      Description of the subject matter of the document sufficient to allow Defendants and/or the Court to determine the appropriateness of the privilege claim.

8.      If any requested document cannot be produced in full, you are to produce it to the extent possible, identifying which document, or portion of such document, is being withheld, and the reason that the document, or portion of such document, is being withheld.

9.    If You include in a response that you are unable to comply with a Request for any reason, You shall provide the reason for your inability to respond and specify whether the inability to comply is because the requested documents are no longer in Your control or have been lost, discarded, destroyed, or otherwise missing.  For any such documents, You shall identify the type of document, the general subject matter, the date, and the names of the person known or believed to have possession, custody, or control of those documents or category of documents.

10.    The requested documents shall be produced as they are kept in the usual course of business or shall be organized and labeled according to the number of the document request.

11.    The duty to produce documents shall not be limited or affected by the fact that the same document is available through another source.  All documents should be produced which are not subject to an objection and are known by, possessed or controlled by, or available to You or any of Your attorneys, consultants, representatives, employees, officers, directors, partners, or other agents.

12.    Unless otherwise agreed upon by the Parties and pending entry of an agreed-upon ESI Order, ESI is to be produced in accordance with Fed. R. Civ. P. 34(b) and in the following manner:

(a)    Responsive electronically stored information and hard copy should be produced in TIFF image format, with all applicable metadata extracted and provided in a load file.

(b)    Images should be sequentially Bates numbered and the Bates number should be an endorsement on each image.

(c)    Images should be OCR'd.  An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The extracted/OCR text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

(d)    Images should be accompanied by cross reference file that associates each Bates number with its corresponding single-page TIFF image file.

(e)    Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment.  This load file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.

(f)    All hidden text (*e.g.*, track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.  All non-graphic

embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced.

(g)    All spreadsheet and presentation files (*e.g.*, Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number.

(h)    For any data provided, all available characteristics/fields and codes typically provided should be produced.

13.    "All," "any," and "each" shall be construed in the conjunctive and not in the disjunctive, and shall not be interpreted to limit the scope of a request. "And" and "or" encompass both "and" and "or." The use of the word "including" shall be construed to mean "without limitation." The use of a verb in any tense shall be construed as the use of the verb in all other tenses and the singular form shall be deemed to include the plural, and vice-versa.

## REQUESTS FOR PRODUCTION

1.    All Documents previously produced by You in prior Opioid Litigation.

2.    All Documents relating to Your investigation of Walmart preceding the filing of the Complaint in This Litigation, including:

(a)   Data and Documents obtained by, accessed by, or shared with You in connection with the investigation from any individual, entity, or third-party other than Data and Documents produced to You by Walmart;

(b)   Documents obtained by or shared with You from any State Agency or other government agency;

(c)   Transcripts, recordings, and notes of interviews conducted by You related to the investigation;

(d)   Documents related to any Communications with any other individual, entity, third party, or government agency related to the investigation;

(e)   Documents relating to the December 7, 2016, search of a Walmart pharmacy in Texas pursuant to a search warrant, as referenced in Paragraphs 124 and 191 of the Complaint;

(f)   All subpoenas or formal or informal requests for testimony, documents, materials, or information issued to any person or entity, including any cover letters and responses to those subpoenas or requests; and

(g)   All Investigative Reports related to the investigation.

3.   Documents sufficient to identify any current or former employee of Walmart whom You have contacted or attempted to contact in connection with This Litigation, whether or not Your contact or attempted contact resulted in communications with any such employee.

4.     All Statements taken by You or on Your behalf from any Person relating to the claims and allegations in the Complaint, including Statements taken from any current or former employee of Walmart and Statements taken from any individual who has previously had a Controlled Substance prescription filled at Walmart.

5.     Documents relating to any investigation, enforcement, or disciplinary action concerning any Identified Prescriber, including without limitation all related Investigative Reports, interviews, notes, data, and data analyses.

6.     Documents sufficient to identify, for each alleged violation of the Controlled Substances Act, the Prescriber, patient, prescription, dispensing date, and controlled substance that constitutes the alleged violation.

7.     All Documents referenced in, cited in, referred to, or relied upon by You in drafting the Complaint.

8.     All documents related to Your response to the below Interrogatories.

## INTERROGATORIES

1.     Identify each Allegedly Invalid Prescription that serves as the basis for any claim You assert or may assert in This Litigation.  For each such prescription, identify:  (a) the date of the prescription; (b) the store where the prescription was dispensed; (c) the medication, including dosage and strength; (d) the issuing practitioner (including DEA registration number and business address); (e) the date of the issuing practitioner's DEA registration and

expiration or revocation (if any); and (f) whether You obtained or reviewed the relevant medical records from any Prescriber associated with the patient who received the prescription.

2. For each Allegedly Invalid Prescription identified in Your response to Interrogatory 1, identify: (a) the reason(s) You contend dispensing of the prescription violated 21 C.F.R. 1306.04(a); (b) the methodology or methodologies You used to identify the prescription and to reach any conclusions about the prescription; and (c) any electronic scripts, codes, and analytical programs You used to implement said methodologies.

3. For each Allegedly Invalid Prescription identified in Your response to Interrogatory 1, identify: (a) the individual(s) You contend knew that the prescription was invalid prior to dispensing; (b) the basis for any such knowledge; and (c) any evidence that the dispensing pharmacist did not adequately evaluate the prescription pursuant to his or her professional judgment prior to dispensing. If You contend that any individual dispensed a prescription with knowledge that it was invalid because they were aware of a high risk of invalidity and took affirmative acts to shield themselves from knowledge of the true facts, identify: (a) the reasons You contend any such individual was aware of the high risk of invalidity; and (b) any affirmative

13

acts You contend such individual took to shield themselves from knowledge of the true facts.


OF COUNSEL:

Yaakov M. Roth
William G. Laxton, Jr.
Jeffrey R. Johnson
Kristen A. Lejnieks
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113

Karen P. Hewitt
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134

Jason S. Varnado
Andrew J. Junker
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2172

Laura Jane Durfee
JONES DAY
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215-2673

Dated:  April 23, 2024

*/s/ Kelly E. Farnan*
Robert W. Whetzel (#2288)
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(320) 651-7700
whetzel@rlf.com
farnan@rlf.com

*Attorneys for Walmart Inc. and Wal-Mart Stores East, LP*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2024, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
David C. Weiss
United States Attorney
Dylan Steinberg
Elizabeth F. Vieyra
Assistant United States Attorney
U.S. Attorney's Office
Hercules Building
1313 N. Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Amanda N. Liskamm
Rachael L. Doud
Joshua Fowkes
Kathleen B. Brunson
Katherine M. Ho
Kimberly R. Stephens
U.S. Department of Justice
Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044

**BY ELECTRONIC MAIL**
Lindsay Sax Griffin
Carolyn B. Tapie
USDOJ - Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602

**BY ELECTRONIC MAIL**
Amanda A. Rocque
Jasand P. Mock
USDOJ - District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

**BY ELECTRONIC MAIL**
C. Michael Anderson
Andrew Kasper
USDOJ - Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

**BY ELECTRONIC MAIL**
Elliot M. Schachner
Megan Freismuth
USDOJ - Eastern District of New York
U.S. Attorney's Office
Eastern District of NY
271 Cadman Plaza East
7th Floor
Brooklyn, NY 11201

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1744-CFC |
| | ) | |
| WALMART INC. AND WAL- | ) | |
| MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' SECOND SET OF
## REQUESTS FOR PRODUCTION TO PLAINTIFF

Pursuant to Federal Rules of Civil Procedure 26, and 34, Defendants, Walmart Inc. and Wal-Mart Stores East, LP (collectively, "Walmart"), serve this Second Set of Requests for Production to Plaintiff (the "Requests") and request that Plaintiff respond within 30 days after service, to be supplemented as required by Plaintiff's duties under Rule 26.  Responses must be delivered to undersigned counsel.

## DEFINITIONS

1.    "Allegedly Invalid Prescription" means any prescription filled by a Walmart pharmacist for which You contend or will contend in This Litigation Walmart should be liable under Counts I or II of the Complaint. *See* Sec. Am. Compl. ¶ 760, 765.

2.    "Blanket Refusal to Fill" refers to a decision made by a Walmart pharmacist to no longer fill any controlled-substance prescriptions written by a single prescriber.

3.    "Central Block" or "Corporate Block" refers to a prohibition on filling any controlled-substance prescription written by a single prescriber imposed on all Walmart pharmacists.

4.  "Communication" or "Communications" mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communication, includes any Document evidencing such oral Communication. "Communications" includes both internal communications (*e.g.*, Communications within a federal agency or between two or more federal agencies) and external communications (*e.g.*, Your Communications with State Agencies, DEA Registrants, healthcare practitioners, or patients).

5.  "Complaint" means the Second Amended Complaint that You filed in This Litigation on February 1, 2024.

6.  "Controlled Substance" means any substance identified as a Schedule II-V substance pursuant to 21 U.S.C. § 812 between January 1, 2010 and December 20, 2020.

7.  "Controlled Substances Act" or "CSA" means the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.*, inclusive of all regulations adopted thereunder.

8.  "Document" is defined to be synonymous in meaning and equal in scope to the meaning of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include hard-copy documents, electronic documents, and, electronically stored information ("ESI"). A draft or non-identical copy is a separate Document within the meaning of this term. In all events, the definition of "Document" shall include "Communication" and "Investigative Reports" as defined here.

9.  "Government Payor" means any federal government body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including Medicare, Medicaid, TRICARE, the Veterans Health Administration program, the Indian Health Service program, and Federal Employees Health Benefit Plan.

10. "Government Healthcare Facility" means a healthcare facility operated, owned, affiliated with or supported by the United States Government, including VA, DOD, or HHS (including IHS, PHS, or THS).

11. "Identified Prescribers" means: (1) the individual Prescribers identified by initials in the Complaint and later identified in full by You in correspondence dated February 5, 2024; and (2) any other Prescribers You claim wrote any Allegedly Invalid Prescriptions.

12. "Investigative Report" means reports generated by a federal agency in connection with a criminal, civil, or administrative investigation and any associated inserts, exhibits, or appendices. Examples of Investigative Reports include the DEA Forms 6 and 6a (Report of Investigation), DEA Form 82 (Notice of Inspection of Controlled Premises), FBI Forms FD-302 and FD-302a (Form for Reporting Information That May Become Testimony), VA Form 0119 (Report of Contact), and HHS-OIG Investigation and Interview Memoranda, including HHS OIG Forms "OI-3" Report of Interview, "OI-3A" Report of Investigative Activity, and "IM" Investigative Memorandum.

13. "Opioid Litigation" means This Litigation; *In re National Prescription Opioid Litigation*, MDL Case No. 2804 in the United States District Court for the Northern District of Ohio ("MDL"); and any other proceeding in federal or state court regarding the marketing, sales, distribution, or dispensing of opioid products, including any enforcement action against any Prescriber or patient referenced in the Complaint.

14. "PDMP Data" means data from an electronic database operated by a state or local government—typically referred to as a Prescription Drug Monitoring Program or Prescription Monitoring Program—that tracks prescriptions for Controlled Substances in a state.

15. "Person" means any natural person or any business, legal, or governmental entity, or association.

16. "Prescriber" refers to any physician, surgeon, nurse practitioner, physician assistant, physiatrist, psychiatrist, dentist, podiatrist, nurse, or other person who is or was licensed and registered to prescribe prescription medications.

17. "Refuse to Fill" or "Refusal to Fill" refers to a decision made by an individual Walmart pharmacist not to fill a single controlled-substance prescription written by a single prescriber.

18. "Related to," "relates to," or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, refuting, constituting, involving, comprising, or concerning.

19. "Relevant Time Period" means January 1, 2010, through December 20, 2020, unless otherwise specified.

20. "State Agencies" means state healthcare licensing boards (*e.g.*, boards of pharmacy, medicine, osteopathy, nursing, etc.), healthcare-related agencies,

law enforcement agencies, and other agencies that regulate or oversee activities relating to prescribing, dispensing, or distributing Controlled Substances.

21.    "Statement" means any account, whether formal or informal, of facts, views, opinions, plans, or events given to You by any Person, including any transcripts, recordings, and notes of testimony made or interviews conducted.

22.    "This Litigation" means the above-captioned litigation.

23.    "Walmart" means Walmart Inc. and Wal-Mart Stores East, LP.

24.    "You" and "Your" refer to the United States of America, and its agencies, officers, and employees, including:

(a)    The Department of Justice ("DOJ"); the U.S. Drug Enforcement Administration ("DEA"); U.S. Attorney's Offices; the Federal Bureau of Investigation ("FBI"); the U.S. Department of Veterans Affairs ("VA"); the U.S. Department of Defense ("DOD"); the U.S. Department of Health and Human Services ("HHS") and any relevant components thereof, such as the Public Health Service ("PHS"), Indian Health Service ("IHS"), and Tribal Health Service ("THS"); the Centers for Disease Control and Prevention ("CDC"); the U.S. Food and Drug Administration ("FDA"); Centers for Medicare & Medicaid Services ("CMS"); the Substance Abuse and Mental Health Services Administration ("SAMHSA"); the U.S. Government Accountability Office ("GAO"); the Merit Systems Protection Board ("MSPB"); and the Office of Inspector General ("OIG") for any of the above-named entities; and

(b)    Any Government Healthcare Facilities, including any Prescribers, pharmacists, or other healthcare professionals who work there.

## INSTRUCTIONS

1.    Unless otherwise stated, these Requests seek all responsive information, documents, and communications during the Relevant Time Period, regardless of creation date and to the broadest scope allowable under the Federal Rules of Civil Procedure.

2.    The Protective Order in this Litigation (D.I. 88) governs all information produced or disclosed in This Litigation, including responses to this

Discovery.  Any Protected Material under the terms of that Order should be designated consistent with the instructions in that Order.

3.      The obligation to provide the information sought by these Requests is continuing and shall be supplemented in accordance with Fed. R. Civ. P. 26(e).

4.      If no documents or information exist that are responsive to a specific Request, that fact shall be stated in Your response.

5.      If you object to any Request, You shall identify the specific grounds for the objection in full.  If any objection is based on a claim of privilege or attorney work product, state which documents or information will be withheld and which documents or information will be produced or provided notwithstanding such objections.

   (a)      If You object to part of any Request, You shall specify in the objection the part of the Request objected to and shall produce all documents responsive to the remainder of the Request.

6.      If any information is withheld by You under a claim of privilege (including work product), provide an explanation of the privilege asserted and the following information:

   (a)      Date of the document;

   (b)      Author(s) of the document;

   (c)      Recipient(s) of the document;

   (d)      Custodian of the document;

   (e)      Description of the subject matter of the document sufficient to allow Defendants and/or the Court to determine the appropriateness of the privilege claim.

7.      If any requested Document cannot be produced in full, you are to produce it to the extent possible, identifying which Document, or portion of such Document, is being withheld, and the reason that the Document, or portion of such Document, is being withheld.

8.      If You include in a response that you are unable to comply with a Request for any reason, You shall provide the reason for your inability to respond and

specify whether the inability to comply is because the requested Documents are no longer in Your control or have been lost, discarded, destroyed, or otherwise missing.  For any such Documents, You shall identify the type of Document, the general subject matter, the date, and the names of the person known or believed to have possession, custody, or control of those documents or category of Documents.

9.      The requested Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled according to the number of the Document request.

10.     The duty to produce Documents shall not be limited or affected by the fact that the same Document is available through another source.  All Documents should be produced which are not subject to an objection and are known by, possessed or controlled by, or available to You or any of Your attorneys, consultants, representatives, employees, officers, directors, partners, or other agents.

11.     All Documents and ESI shall be produced pursuant to the ESI Order ultimately entered into by the Parties in This Litigation.

12.     "All," "any," and "each" shall be construed in the conjunctive and not in the disjunctive, and shall not be interpreted to limit the scope of a request.  "And" and "or" encompass both "and" and "or."  The use of the word "including" shall be construed to mean "without limitation."  The use of a verb in any tense shall be construed as the use of the verb in all other tenses and the singular form shall be deemed to include the plural, and vice-versa.

13.     Individuals identified by initials in these Requests are the same individuals identified by initials in the Complaint and later identified in full by You in correspondence dated February 5, 2024.

## REQUESTS FOR PRODUCTION

1.    All Documents on which You have relied or intend to rely in support of Your allegations, claims, and defenses in This Litigation.

2.    All Documents relied upon by You to support Your allegation in Paragraph 8 of the Complaint that "[t]he usual course of professional pharmacy practice requires identification and resolution of 'red flags' – signs indicating the potential invalidity of a prescription."

3.    All Documents relied upon by You to support Your allegation in Paragraph 59 of the Complaint that a pharmacist has a "corresponding responsibility" to "independently determine that the prescription was issued in the usual course of professional practice and for a legitimate medical purpose."

4.    All Documents relied upon by You to support Your allegation in Paragraph 71 that "one of the key professional responsibilities of a pharmacist, when presented with a prescription for controlled substances, is to identify the presence of red flags of diversion."

5.    All Documents relied upon by You to support Your allegation in Paragraph 72 purporting to identify certain "red flags" that are "indicative of invalidity."

6.    All Documents relied upon by You to support Your allegation in Paragraph 73 of the Complaint that a "basic professional obligation of pharmacists presented with a controlled-substance prescription is to resolve each red flag they identify" and purporting to identify certain actions the pharmacist might undertake for such resolution.

7.    All Documents relied upon by You to support Your allegations in Paragraph 74 of the Complaint, including:

(a)    That "if a pharmacist identifies and resolves red flags, the pharmacist has an additional professional responsibility to document that resolution;"

  (b) That "the absence of documentation can indicate that the pharmacist did not successfully resolve the red flag;" and

  (c) That "pharmacists presented with a controlled-substance prescription bearing a red flag must investigate and either (a) resolve the red flag before dispensing and document the resolution, or (b) refuse to fill the prescription."

8. All Documents relating to the March 2011 Memorandum of Agreement referenced in Paragraph 95 of the Complaint, including:

  (a) Documents relating to Walmart's compliance or non-compliance with the Memorandum of Agreement;

  (b) Documents provided to You pursuant to the Memorandum of Agreement as described in Paragraphs 98 and 108; and

  (c) Documents relating to any action or inaction by You regarding any RTF submitted to You by Walmart under the terms of said Memorandum of Agreement.

9. All Documents relied upon by You to support Your allegation in Paragraph 103 of the Complaint that "the compliance team also had the ultimate authority to instruct Walmart's pharmacists to refuse to fill specific prescriptions."

10. All Documents relied upon by You to support Your allegations in Paragraph 161 that ████████████ "was sentenced to 20 years' imprisonment for CSA violations" and that "[a] pharmacist contacted the state medical board because of her concerns about the amount of controlled substances that [████] prescribed."

11. All Documents relied upon by You to support Your allegations in Paragraph 162 that "pharmacy shopping occurred … between Walmart and competing pharmacies."

12. All Documents relied upon by You to support Your allegations in Paragraph 165 that an unidentified Prescriber "admitted in 2021 to the Nevada Board of Medical Examiners that he failed to adequately supervise his son, who was

not a licensed medical practitioner and who prescribed controlled substances without determining whether they were medically necessary."

13. All Documents relied upon by You to support Your allegations in Paragraph 168 that "[c]ompliance team members knew… that the compliance team had the ability to slow or stop, or by contrast, encourage the stream of invalid prescriptions by their policies" and that "[t]he fewer controls they put in place, the more likely it was that invalid prescriptions would continue to be presented at their pharmacies."

14. All Documents relied upon by You to support Your allegations in Paragraph 168 that Walmart's policies were "more liberal" compared to those of other retail chain pharmacies.

15. All Documents relied upon by You to support Your allegation in Paragraph 177 that "the compliance team chose to make little use of refusal-to-fill information, even though they recognized the value in the information."

16. All Documents relied upon by You to support Your allegation in Paragraph 184 that the compliance team "generally did nothing to investigate individual Prescribers" and "failed to retrieve readily available public information showing that certain reported pill-mill prescribers faced administrative actions by state medical licensing boards and criminal prosecutions by state and federal authorities," including the "public information" that was allegedly "readily available" to the compliance team.

17. All Documents relied upon by You to support Your allegation in Paragraph 184 that the compliance team "often failed to contact other non-Walmart pharmacies that had decided not to fill prescriptions for reported pill-mill prescribers."

18. All Documents relied upon by You to support Your allegation in Paragraph 189 of the Complaint that the compliance team "did nothing to ensure that they would learn the details of the pill-mill prescribers before any pharmacist decided to blanket refuse those prescribers."

19. All Documents relied upon by You to support Your allegation in Paragraph 190 of the Complaint that "members of the compliance team were uninterested in the details of government investigations of certain prescribers."

20. All Documents relied upon by You to support Your allegation in Paragraph 190 of the Complaint that "[e]ven when DEA asked Walmart to voluntarily stop filling for a prescriber, B.N. believed that Walmart should not comply."

21. All Documents relied upon by You to support Your allegation in Paragraph 195 of the Complaint that "since a pill-mill prescriber practices outside the usual course, all prescriptions from such a prescriber are invalid."

22. All Documents relied upon by You to support Your allegation in Paragraph 195 of the Complaint that "the compliance team, for years, acted to keep the information about pill-mill prescribers to themselves."

23. All Documents relied upon by You to support Your allegation in Paragraph 198 of the Complaint that the compliance team "did not consider the need to be urgent" to disseminate refusal-to-fill information to its pharmacists.

24. All Documents relied upon by You to support Your allegation in Paragraph 207 of the Complaint that "the compliance team not only chose for years not to adequately distribute refusal-to-fill information but also affirmatively refused specific requests for the information."

25. All Documents relied upon by You to support Your allegation in Paragraph 213 of the Complaint that, "[b]y clearly prohibiting blanket refusals, the compliance team members knew they were creating a bias toward filling prescriptions, thus making it more probable that pharmacists would fill invalid prescriptions."

26. All Documents relating to or relied upon by You to support Your allegation in Paragraph 216 of the Complaint that "[t]his prohibition against blanket refusals was not … required by law" and Your allegation in Paragraph 218 that "blanket refusals were permitted under state law."

27. All Documents relied upon by You to support Your allegation in Paragraph 219 of the Complaint that, "[b]y forbidding blanket refusals, Walmart's compliance team knew they were encouraging pharmacists to fill, rather than question, prescriptions."

28. All Documents relating to the DEA investigation of the unidentified Prescriber You reference in Paragraph 219 of the Complaint.

29. All Documents relied upon by You to support Your allegation in Paragraph 221 of the Complaint that "[t]he compliance team chose to withhold… information that would have revealed to its pharmacists that certain prescribers were pill mills," and Documents sufficient to show the information that You allege was withheld.

30. All Documents relied upon by You to support Your allegation in Paragraph 227 of the Complaint that "[t]he decisions regarding refusal-to-fill information, blanket refusals, and corporate blocks all reflected a decision to leave pharmacists on their own."

31. All Documents relied upon by You to support Your allegation in Paragraph 227 of the Complaint that "the compliance team regularly declined specific requests for help."

32. All Documents relating to the unidentified Prescriber You reference in Paragraphs 229 and 230 of the Complaint, including Documents relating to the one-year suspension of that Prescriber, and the referenced investigation by the Oregon State Board of Nursing.

33. All Documents relied upon by You to support Your allegations regarding Damon Cary in Paragraphs 159 and 236-244 of the Complaint, including:

    (a) Your allegation in Paragraph 159 that ██████ "prescribing habits violated the Delaware Medical Practices Act."

    (b) Your allegations in Paragraph 236 of the Complaint that ████: (i) "prescribed excessive doses of opioids without appropriately discussing the risks with his patients, monitoring his patients, or

incorporating other treatments," and (ii) "was known for prescribing Percocet (oxycodone-acetaminophen) after performing what one person described as the 'most trivial' of exams."

(c)    Your allegations in Paragraphs 243 and 244 of the Complaint regarding the investigation of ██████ by the Delaware Division of Public Health, the "multi-day hearing"; and ████████ suspension by the Delaware Secretary of State.

34.    All Documents relied upon by You to support Your allegations regarding ████████████ in Paragraphs 128 and 245-254 of the Complaint, including:

(a)    Your allegations in Paragraph 245 of the Complaint that ████████ (i) "prescribed massive quantities of controlled substances, including the trinity combination of an opioid, a benzodiazepine, and carisoprodol"; (ii) "prescribed this dangerous cocktail more frequently to Medicare patients than did any other physician in the United States"; (3) "accepted only cash for his office visits"; (iii) "falsely claimed to work for the Department of Justice and displayed a fake police badge to intimidate patients"; and "exploited female patients and coerced some of them into providing sexual favors in exchange for controlled substances."

(b)    Your allegation in Paragraph 251 of the Complaint that "[a]s other pharmacies in Savannah stopped filling ████████ prescriptions, individuals turned to Walmart to get them filled."

(c)    Your allegations in Paragraph 254 of the Complaint regarding ████████ 2019 trial, conviction, and sentencing.

35.    All Documents relied upon by You to support Your allegations regarding ████ ████████ in Paragraphs 162, 255-262, and 531-537 of the Complaint, including:

(a)    Your allegation in Paragraph 255 of the Complaint that ████████ "rarely conducted physical or diagnostic examinations of his patients, ignored signs of drug diversion, and prescribed excessive amounts of opiates, including oxycodone, hydrocodone, hydromorphone, and morphine."

(b)    Your allegations in Paragraph 256 of the Complaint that "[d]uring the investigation of ████████": (i) "he and his business partner asked an undercover agent to smuggle a Hungarian national into the United

States"; (ii) "[i]n return, [███] prescribed the agent an increased amount of oxycodone and hydromorphone, and [███]'s business partner paid the agent $5,000 in cash"; and (iii) "[███] instructed the agent to fabricate an injury to justify the increased amounts of opioids and explained to the agent how to falsify his patient history."

(c)     Your allegations in Paragraph 262 of the Complaint regarding [███] 2017 trial, conviction, and sentencing.

36.   All Documents relied upon by You to support Your allegations regarding [███] in Paragraphs 162 and 263-275 of the Complaint, including:

(a)     Your allegations in Paragraph 263 of the Complaint that: (i) [███] "has a record of criminal and professional misconduct going back to 2005"; (ii) the Medical Licensing Board of Indiana ("MLBI") suspended [███] in 2005; (iii) the MLBI found "that his practice would present a 'clear and immediate danger to the public health and safety' if allowed to continue because he had allowed an unlicensed individual to prescribe drugs using [███]'s DEA registration number and to treat [███]'s patients"; and (iv) [███] ad hired that individual knowing that the individual was not licensed to practice medicine and had paid him $20 per hour."

(b)     Your allegation in Paragraph 264 of the Complaint that the "indefinite probation" of [███] medical license in 2006 "did not have a substantial effect on his ability to practice medicine or prescribe controlled substances."

(c)     Your allegations in Paragraph 265 of the Complaint that in May 2011, "in an interview with law enforcement officers," [███] admitted "providing medical treatment to his live-in housekeeper, with whom he was in a romantic relationship" and "also admitted knowing that she was addicted to controlled substances and prescribing hydrocodone to her when she experienced withdrawal symptoms."

(d)     Your allegation in Paragraph 266 of the Complaint regarding the MLBI's 2015 suspension of [███] license and finding, "among other things, that [███] 'prescribed and/or administered narcotic controlled substances to [the housekeeper], a known drug addict and other patients without objective evidence of medical necessity for the prescribed narcotic medications'; and that he prescribed and/or administered

narcotic controlled substances to patients, including the housekeeper, 'outside the safe and generally accepted medical principles and protocols regulating the practice of medicine.'"

37. All Documents relied upon by You to support Your allegations regarding ███████████ and ██████████ in Paragraphs 222, 276-289, and 455-457 of the Complaint, including:

(a) Your allegations in Paragraph 276 of the Complaint that ██████ "admitted that he managed the clinic 'like a pill mill that herded patients through . . . and prescribed [controlled and dangerous substances] in large quantities based upon little to no physical examination or with no legitimate medical purpose.'"

(b) Your allegations in Paragraph 276 of the Complaint that: (i) [l]ocal law enforcement reported that a lot of prescriptions found "on the street" came from the clinic; (ii) patients recalled being asked by other patients whether they wanted to sell their pills; and (iii) the clinic's patients came from at least 10 states, some traveling as far as 1,800 miles round-trip.

(c) Your allegations in Paragraph 277 of the Complaint that ██████: (1) "would see 50 to 60 patients a day"; (2) "made no attempt to treat pain through means other than prescribing controlled substances, and he would not attempt to decrease the dosages of controlled substances prescribed to his patients"; and (3) "ignored warning signs that patients were abusing their prescriptions."

(d) Your allegations in Paragraph 279 of the Complaint that "other pharmacies had stopped filling for the clinic."

(e) Your allegations in Paragraphs 288 and 289 of the Complaint regarding the 2014 Oklahoma State Board of Medical Licensure and Supervision complaints against ██████ and ██████, ██████ subsequent surrender of his license, and the 2015 revocation of ██████ license.

38. All Documents relied upon by You to support Your allegations regarding ██████████████ in Paragraphs 290-302, 458-460, 498-499, and 506 of the Complaint, including:

(a)     Your allegations in Paragraph 290 of the Complaint that "[i]n 2016, ███████ ranked second in the State of Texas for the number of doses of hydrocodone prescribed and seventh for the number of oxycodone doses."

(b)     Your allegations in Paragraph 291 of the Complaint that "[b]etween 2010 and 2017, seven overdose deaths were connected to prescriptions written by ████████."

(c)     Your allegations in Paragraph 291 of the Complaint that: (i) "[a] medical assistant from [██████]'s Paris, Texas, office recalled that the office would receive calls from individuals expressing concern about their family members misusing their prescriptions"; (ii) "[w]hen [██████] was not in the office, he instructed his medical assistant to issue electronic prescriptions, including prescriptions for Schedule II controlled substances, as if they were being prescribed by [██████]"; (iii) "[a]nother medical assistant viewed posts on [██████]'s clinic's Facebook page in which patients discussed selling drugs"; and (iv) "[a]nother employee reported that she encountered patients who came to the office and appeared to be 'under the influence.'"

(d)     Your allegations in Paragraphs 302 and 499 of the Complaint regarding ███████ 2017 indictment, trial, conviction, and sentencing.

(e)     Your allegations in Paragraph 506 of the Complaint regarding ███████ investigation by the Texas Medical Board.

39.    All Documents relied upon by You to support Your allegations regarding ███ ███ in Paragraphs 303-311 and 496 of the Complaint, including:

(a)     Your allegations in Paragraph 303 of the Complaint that ███████ "practice exhibited numerous signs of a pill-mill operation" and that ████: (i) "prescribed large dosages of opioids to 680 patients in 2015 alone"; (ii) "prescribed controlled substances to patients from nine states outside New Mexico"; (iii) "prescribed the trinity combination of an opioid, a benzodiazepine, and carisoprodol"; and (iv) "ignored evidence that his patients were abusing and/or diverting controlled substances."

(b)     Your allegations in Paragraph 303 of the Complaint that "[m]edical records for many of his patients were incomplete or appeared to be

templates, and, in many instances, the patient files did not include any records to corroborate the diagnoses of chronic pain conditions for which [ ███ ] prescribed controlled substances."

(c)    Your allegations in Paragraph 310 of the Complaint that a patient with the initials S.B. "died from the toxic effects of multiple drugs, including oxycodone, alprazolam, and morphine."

(d)    Your allegations in Paragraphs 310 and 311 of the Complaint regarding the New Mexico Medical Board's investigation of ███, the 2016 suspension of ███ license, and ███ voluntary surrender of his medical license in 2017.

40.    All Documents relied upon by You to support Your allegations regarding ████████ in Paragraphs 162, 312-320, and 495 of the Complaint, including:

(a)    Your allegations in Paragraph 312 of the Complaint that: (1) "[ ███ ] would write prescriptions for patients whom she did not meet or examine and who did not even come to her office"; (2) "patients' family members and/or friends would go to [ ███ ]'s office to pick up prescriptions written by [ ███ ] in the patients' names for large quantities of controlled substances"; (3) "[p]atient records were largely identical for each visit and did not reflect the individualized analysis that would be expected from visit to visit"; and (4) "patients … traveled long distances to her clinic from cities in Florida, including Port Saint Lucie (202 miles), Tamarac (263 miles), Ft. Lauderdale (270 miles), and Graceville (383 miles)."

(b)    Your allegations in Paragraph 313 of the Complaint relating to DEA's revocation of ███'s registration in 2006 "after she prescribed controlled substances to three undercover law enforcement officers who had admitted to her that they actually were not suffering from any pain," the later restoration of her registration, and any monthly reporting provided pursuant to that revocation.

(c)    Your allegations in Paragraph 313 of the Complaint that "[i]n three separate administrative complaints filed in 2013, the Florida Department of Health alleged that [ ███ ] prescribed excessive and/or inappropriate amounts of opioids without adequate justification."

(d)     Your allegations in Paragraph 320 of the Complaint regarding ███'s guilty plea, sentencing, and ███ "admi[ssion] that she wrote prescriptions, including prescriptions for controlled substances, in the name of certain individuals but then gave the prescriptions to their family members, never having seen or examined the individuals [███] knew would be the ultimate users of the drugs."

41.    All Documents relied upon by You to support Your allegations regarding ████████ in Paragraphs 321-334 of the Complaint, including:

(a)     Your allegations in Paragraph 321 of the Complaint that ██████ (i) "was a Prescriber primarily to United States military personnel in the TRICARE network"; (ii) "was known for prescribing the trinity combination of an opioid, a benzodiazepine, and a muscle relaxant"; (iii) in 2012, "was the nation's number-seven prescriber of the trinity combination"; and (iv) was described by a former patient, a military veteran, "as a 'pill pusher' and 'upscale dope dealer.'"

(b)     Your allegation in Paragraph 322 of the Complaint that "[██████] received a January 2013 admonition by the Colorado State Board of Nursing for prescribing 'excessive' dosages of OxyContin that were inconsistent with the patient's underlying condition."

(c)     Your allegations in Paragraph 334 of the Complaint regarding [██████]'s disciplinary action and 2017 surrender of his nursing license and Your allegation that he "admitted that his treatment plans for 12 patients were 'inappropriate' and that he had continued opioid therapy in cases where the patient was not benefiting and despite a patient's violation of an opioid agreement" and that "his documentation was 'substandard.'"

42.    All Documents relied upon by You to support Your allegations in Paragraphs 328-330 and 552 of the Complaint regarding a patient with the initials A.D., including:

(a)     Your allegation in Paragraph 330 of the Complaint that "[a]ccording to A.D., Walmart pharmacists never asked her any questions about her prescriptions, and she did not recall Walmart contacting [██████] to discuss her prescriptions."

17

(b)     Your allegations in Paragraph 552 of the Complaint that "A.D. later admitted, she was addicted to the opioids, but Walmart pharmacists always filled her prescriptions without asking her any questions" and "[s]he also did not recall Walmart contacting her Prescriber to discuss her prescriptions."

43.    All Documents relied upon by You to support Your allegations in Paragraphs 331-333 and 553 of the Complaint regarding a patient with the initials M.H., including:

(a)     Your allegation in Paragraph 333 of the Complaint that "M.H. … does not recall any Walmart pharmacists calling [███████████]'s office to ask questions about her prescriptions."

(b)     Your allegations in Paragraph 553 of the Complaint that "M.H. did not recall any Walmart pharmacists ever calling her Prescriber's office to ask questions about her prescriptions, and Walmart never refused to fill any of her prescriptions."

44.    All Documents relied upon by You to support Your allegations regarding ███████████ in Paragraphs 162, 335-344, 481, and 503 of the Complaint, including:

(a)     Your allegations in Paragraph 335 of the Complaint that ████: (i) had a "medical practice [with] all the features of a classic pill-mill operation"; (ii) "falsified medical records to justify prescriptions for dangerously excessive amounts of controlled substances"; (iii) "permitted his patients to choose their opioid medications during their brief encounters with him"; (iv) "prescribed medications that he knew would be diverted"; and (v) "prescribed the trinity combination frequently and in large doses."

(b)     Your allegations in Paragraph 336 of the Complaint regarding ██████ arrest, guilty plea, and sentencing.

(c)     Your allegations in Paragraphs 336, 337, and 344 of the Complaint regarding the three Florida Department of Health administrative complaints filed against ████, the 2013 amended complaint, and the April 2016 voluntary relinquishment of his license.

(d)   Your allegations in Paragraph 338 of the Complaint that "[b]ecause the Florida Department of Health records were public, Walmart's compliance team learned about the Department's complaints in September 2012."

(e)   Your allegations in Paragraph 339 of the Complaint that "[j]ust a few weeks after ███████]'s plea, Walmart's compliance team became aware of M.M.'s criminal conviction."

45.   All Documents relied upon by You to support Your allegations regarding ███████████████████ referenced in Paragraphs 345-354, 529-530, and 555 of the Complaint, including:

(a)   Your allegations in Paragraph 345 of the Complaint that: (1) ███████ ████ "flooded his community with opioids"; (2) "[f]rom January 2013 through March 19, 2018, [███████████] wrote prescriptions totaling more than seven million dosage units" and "[m]ore than 60 percent of those prescriptions were for Schedule II controlled substances, and less than two percent of the prescriptions were for non-scheduled drugs"; (3) "[t]he top-10 drugs he prescribed were all opioids"; and (4) "[t]he most common drug he prescribed was hydrocodone-acetaminophen 10/325mg, and the second-most common was oxycodone 30mg."

(b)   Your allegations in Paragraph 346 of the Complaint that: (1) "[██████ ██████]'s practice bore many other signs of being a pill mill"; (2) "[h]is patients' medical records were often cut-and-paste from one visit to another and contained no medical justification for the large quantities of Schedule II controlled substances he prescribed; (3) his "appointments were very short"; "typically [he] saw 80 to 90 patients per day, and each follow-up appointment lasted for just a few minutes"; (4) "[e]mployees … recalled receiving multiple calls a day from his patients' family members expressing concern about [███████████]'s treatment; and (5) "[e]mployees observed patients in the waiting room who appeared intoxicated, with one employee recalling an instance where a patient fell asleep on the toilet while giving a urine sample."

(c)   Your allegations in Paragraph 351 of the Complaint that "[o]ne of [███████████]'s former employees who worked at his office in 2015

19

observed that office staff told patients where to fill [▮▮▮▮▮▮▮]'s prescriptions, usually instructing them to go to Walmart Store 2036."

46.   All Documents relied upon by You to support Your allegations regarding ▮▮▮▮▮▮▮ in Paragraphs 146, 162, 355-366, 461-465, and 549 of the Complaint, including:

(a)    Your allegations in Paragraph 355 of the Complaint that: "[a]lthough [▮▮▮] was not trained or certified in pain management, 75 to 80 percent of [▮▮▮]'s patients came to him for pain management" and "[r]oughly half of his patients paid in cash."

(b)    Your allegations in Paragraph 356 of the Complaint that: (1) "[▮▮▮] was well known in Delaware for overprescribing opioid medications"; (2) "[t]wo former employees of [▮▮▮]'s practice said that people would frequently refer to [▮▮▮] as "Candy Man" because of the number of opioid pills he prescribed"; (3) "[a] pharmacist at a non-Walmart pharmacy in Milford, Delaware, reported that, immediately after opening in 2013, they began to receive a deluge of prescriptions from [▮▮▮]," described [▮▮▮] as "operating the 'Disneyland for opiates' and concluded, based on his corresponding responsibility as a pharmacist, that he should not fill any prescriptions from [▮▮▮]"; and (4) "[a]n emergency room doctor told investigators that the emergency room would see five to 10 patients a night experiencing opioid withdrawal and that these were largely patients who had been seen by [▮▮▮]."

(c)    Your allegations in Paragraph 365 of the Complaint that "Walmart had filled three of the specific prescriptions for which [▮▮▮] was convicted" and that "[o]f the 13 patients whose prescriptions formed the basis of [▮▮▮]'s conviction, eight had filled other prescriptions from [▮▮▮] at Walmart stores for the same drugs."

(d)    Your allegation in Paragraph 463 of the Complaint that a "pharmacy manager reported [▮▮▮]'s unprofessional practices to others."

(e)    Your "survey" and interview of the pharmacists in the Milford area described in Paragraphs 463 and 464 of the Complaint, or relied upon by You to support Your allegations in Paragraphs 463 and 464, including that: (1) "DEA diversion investigators… spoke with the manager and another pharmacist at Store 1741"; (2) "[t]he manager

explained that she knew that [████] did not have credentials to practice as a pain management physician"; (3) "[s]he reported that there was an influx of [████] patients on Thursdays, probably because [████]'s office was closed on Fridays"; (4) "[s]he observed that his patients arrived within three minutes of one another and 'if the pharmacy does not have the medication . . . the word spreads in the parking lot and patients attempt to go to other pharmacies to get their prescriptions filled'"; (5) "[s]he told the investigators that most patients paid cash for their prescriptions even though they had Medicaid"; and (6) "[s]he and the other pharmacist explained that many individuals from the same family received the same medication in the same quantity from [████], and that multiple people from the same address received the same medications."

47.    All Documents relied upon by You to support Your allegations regarding [████] in Paragraphs 367-380 and 466-469 of the Complaint, including:



(a)    Your allegations in Paragraph 367 of the Complaint that: (1) "[i]n 2014, 2015, and 2016, [████] was the top Prescriber of opioids in the Commonwealth of Pennsylvania"; and (2) "[f]rom January 2014 to July 31, 2017 [████] prescribed approximately 9.5 million units of oxycodone, hydrocodone, oxycontin, and fentanyl to his patients."

(b)    Your allegations in Paragraph 368 of the Complaint that: (1) "[i]t was common knowledge in Mt. Carmel and Shamokin that patients could easily get narcotics from [████]" (*see also* Paragraph 466); (2) "[████] was the 'go to' for pain pills" (*see also* Paragraph 466); (3) [s]ome patients referred to him as "the Maniac" because of the large number of controlled-substance prescriptions he wrote; and (4) "[a] police detective from Coal Township, which surrounds Shamokin, reported in mid-2015 that [████] had prescribed most of the narcotic pills that ended up being sold and used on the streets of the township."

(c)    Your allegations in Paragraph 373 of the Complaint that a patient with the initials R.C. died of an overdose on May 3, 2015, and that "[████] … prescribed the drugs on which R.C. overdosed."

(d)     Your allegations regarding Your August 25, 2015, interview of the Walmart pharmacy manager at Store 2481 in Coal Township, Pennsylvania, described in Paragraph 467 of the Complaint, or relied upon to support Your allegations in Paragraph 467, including that: (1) "[t]he pharmacy manager explained that most of the prescriptions that were refused at Store 2481 were issued by [▮▮▮▮▮] and that "many patients attempted to refill narcotic prescriptions early and that [▮▮▮▮] wrote many narcotic prescriptions for the same patient just days apart"; and (2) "[t]he pharmacy manager later stated that the four pharmacists who worked at the store consulted with each other."

(e)     Your allegations regarding an August 28, 2015, report by a Walmart pharmacist from Store 2481 described in Paragraph 467 of the Complaint, or relied upon to support Your allegations in Paragraph 467, including that: (1) a pharmacist reported that "it was not uncommon for the pharmacy to sell out of narcotics on the weekends because of the high volume of narcotics that [▮▮▮▮▮]'s patients were attempting to fill"; and (2) "[o]n Saturday mornings, [▮▮▮▮▮]'s patients would line up outside the pharmacy before it opened."

48.     All Documents relied upon by You to support Your allegations regarding [▮▮▮▮▮▮▮] in Paragraphs 162, and 381-394 of the Complaint, including:

(a)     Your allegations in Paragraph 381 of the Complaint that [▮▮▮▮▮] practice "exhibited numerous signs of pill-mill activity," including that: (1) it "operated on a cash-only basis and did not accept insurance"; (2) "[n]umerous 'patients' who came to [▮▮▮▮] traveled to his Miami clinic from other states, including large numbers of individuals travelling in groups from southeastern Kentucky"; (3) "[m]any of these individuals were sponsored by drug dealers in Kentucky, who paid for their travel costs in exchange for receiving a portion of the pills"; (4) "[t]he waiting room of [▮▮▮▮]'s practice was crowded, and, at times, standing-room only; and (5) "[▮▮▮▮] would prescribe opioids to patients after spending only a few minutes with them, without performing any type of physical examination, and without requesting or reviewing patients' previous medical or prescription records."

(b)     Your allegations in Paragraph 383 of the Complaint that [▮▮▮▮▮] patients "fanned out across the United States" to fill their prescriptions.

22

49.    All Documents relied upon by You to support Your allegations regarding ███████████ in Paragraphs 124, 213, 395-402, and 470-475 of the Complaint, including:

(a)    Your allegations in Paragraph 395 of the Complaint that a DEA investigation of ██████ revealed that: (1) "for a period of time, [██████] prescribed most of his patients hydrocodone, Xanax, and Soma," and that ██████ referred to this "as the 'cocktail'"; (2) "'mules' recruited patients from out of town to obtain substances from [██████], purportedly for illicit use"; (3) "a number of patients sold controlled substances prescribed by [██████] on the street"; and (4) a patient interviewed by DEA "said that she began seeing [██████] after being told he would prescribe anything she wanted."

(b)    Your allegations regarding Your December 2016 interview of the Walmart employee at Store 206 in McKinney, Texas, described in Paragraph 399 of the Complaint, including that: (1) "the employee observed the number of [██████]'s prescriptions filled by her pharmacy had significantly increased from 2014 to 2016, while competitor pharmacies had stopped filling [██████'s prescriptions"; (2) "she stated that she had observed multiple red flags in [██████]'s prescribing habits: prescriptions for cocktails of drugs that she knew were abused, for high-dose opioids for long periods of time, and for excessive quantities of opioids"; and (3) "she also stated she believed several of [██████]'s patients did not need the medications for medical purposes, based on their disruptive behavior, including their complaints that they could not get early refills and their demands that they needed their medications 'NOW!'"

(c)    Your allegations regarding Your December 2016 interview of the Walmart employee at Store 206 in McKinney, Texas, described in Paragraph 400 of the Complaint, including that: (1) "she told DEA agents that, in retrospect, she would not have filled several of [██████]'s prescriptions"; and (2) "[s]he admitted to continuing to fill his prescriptions despite the concerns triggered by the number of the prescriptions he wrote for the same cocktail of drugs, the number of individuals who traveled long distances to get their prescriptions filled at her pharmacy, and the fact that other area pharmacies had stopped filling [██████]'s prescriptions."

(d)    Your allegations regarding Your interview of R.P. described in Paragraph 401 of the Complaint, including that: (1) "[i]n May 2015, R.P. was arrested for selling hydrocodone and Xanax prescribed to her by [████] and filled at Walmart"; (2) "[i]n an interview with DEA, R.P. said that she filled her prescriptions at Walmart because it was one of the only pharmacies that would fill [████]'s prescriptions"; and (3) "[i]n August 2017, R.P. was indicted by a grand jury for illegally conspiring with [████] to distribute controlled substances."

50.    All Documents relied upon by You to support Your allegations regarding [████] in Paragraphs 146, 156, 162, 228, 403-415, and 551 of the Complaint, including:

(a)    Your allegations in Paragraph 403 of the Complaint that [████]s practice "exhibited numerous signs of pill-mill activity"; "[f]or example, [████]'s business hours typically began at 4:00 p.m. or later and he would see the patients until late in the evening."

(b)    Your allegations in Paragraph 404 of the Complaint that: (1) "[████]'s patient examinations, when he conducted examinations at all, were perfunctory and standardized and not necessarily relevant to the patients' complaints"; (2) "[d]iagnostic tests, even if ordered, rarely resulted in any change in treatment or pain management"; and (3) "[████] prescribed opioids, typically in a set monthly dosage of 120 pills, at the first visit and every subsequent visit, without accounting for differences in patient history, without exploring alternative treatment options, without conducting legitimate urine drug screenings, without conducting random pill counts, and all the while ignoring warning signs of addiction and abuse in favor of continuing opioid prescribing."

(c)    Your allegations in Paragraph 405 of the Complaint that: (1) "[████] ran a cash-based clinic and generally charged a flat rate of $200 cash per patient visit"; (2) "[e]ven patients who carried insurance paid for their prescriptions in cash"; and (3) "[████]'s business grew by word of mouth within the pill-seeking community around New Bern, North Carolina."

(d)    Your allegation in Paragraph 408 of the Complaint that "[████] began sending patients to more distant pharmacies when local pharmacies started rejecting his prescriptions."

24

(e)     Your allegation in Paragraph 409 of the Complaint that "[███]" was, however, available late at night and answered his own phone to validate prescriptions."

(f)     Your allegations in Paragraph 413 of the Complaint that "[███]" gave one of his patients—who was at that time working as a confidential source for law enforcement—a list of pharmacies that he believed would still fill his prescriptions," and that "Walmart was second from the top of that list."

51.     All Documents relied upon by You to support Your allegations regarding [███] in Paragraphs 162, 416-425, and 486 of the Complaint, including:

(a)     Your allegations in Paragraph 416 of the Complaint that: (1) "[u]pon retiring from his gynecology practice, [███] worked part-time at a pain clinic"; (2) "[t]he pain clinic actively advertised to cash patients, highlighted quick service, and called over-the-counter aspirin 'useless and awful for your body'"; and (3) the clinic "publicly solicited names of pharmacists and pharmacies in Bradenton and Sarasota that refused to fill [███]"'s prescriptions and advised patients to use two specific mail-in pharmacies to fill Schedule II pain medications."

52.     All Documents relied upon by You to support Your allegations regarding [███] in Paragraphs 162, 426-435, and 525-528 of the Complaint, including:

(a)     Your allegations in Paragraph 426 of the Complaint that: (1) prior to 2013, "[███] served as the director of an unlicensed pain clinic in Knoxville, Tennessee"; (2) at that clinic, "[███] was supposed to supervise advanced practice nurses, but he gave the nurses 'no guidance' whatsoever and did not review patient charts"; (3) the clinic "engaged in egregious prescribing habits, including continuing to prescribe a patient opiates and benzodiazepines after a positive urine drug screen for cocaine"; and (4) "[i]n 2013, [███] also prescribed controlled substances from a clinic in Pikeville, Kentucky."

(b)     Your allegations in Paragraph 432 and 435 of the Complaint that "the Tennessee Board of Medical Examiners revoked [███]"'s medical license in January 2014 as a result of his failure to supervise

25

nursing staff in what the board described as 'egregious prescribing habits' related to controlled substances"; "[███████]'s licenses to practice medicine in Colorado, Kentucky, Washington, and Florida were later suspended or revoked"; and "[o]n June 15, 2015, the Florida Board of Medicine suspended his license, and DEA thereafter revoked his registration."

53. All Documents relied upon by You to support Your allegations regarding ███████ in Paragraphs 162 and 436-445, including:

(a) Your allegations in Paragraph 436 of the Complaint that: (1) ████ had a "cluttered, disheveled office [that] had all the outward features of a stereotypical 'pill mill' clinic, with large numbers of patients who drove in groups for long distances to appointments"; (2) "[t]he great majority of [███]'s patients had criminal histories, and approximately half of his patient population had criminal drug histories"; (3) "[p]atients in the crowded waiting area could be seen sleeping, losing consciousness, and falling out of their chairs, and they could be overheard openly discussing illegal narcotics"; (4) "[p]atients paid cash for excessively high dosages of opioids that were prescribed after little to no clinical evaluation"; and (5) "[███ kept a pet Cockatoo named 'Cyrus' in his exam room and often spent more time talking to his bird than to patients."

54. Documents sufficient to define or inform the meaning of the phrase "obvious combinations of red flags," as used in Paragraph 447 of the Complaint.

55. All Documents relied upon by You to support Your allegations in the Complaint regarding the practice of pharmacy, including:

(a) Your allegation in Paragraph 449 of the Complaint that "schools of pharmacy generally included, in their standard curricula, courses covering red flags";

(b) Your allegation in Paragraph 450 of the Complaint that "it was recognized in the pharmacy profession that pharmacists had an obligation to assess red flags and determine whether a prescription was valid";

(c) Your allegations in Paragraph 545 of the Complaint that "[i]t has long been recognized in the professional field of pharmacy that a pharmacist

presented with a controlled-substance prescription has to take certain fundamental steps to review the prescription" and "[p]harmacists who do not take such steps fail to follow the usual course of professional practice";

(d)    Your allegation in Paragraph 547 of the Complaint that "the basic professional obligations of pharmacists require a pharmacist, when presented with a controlled-substance prescription bearing a red flag, to—as part of the usual course of professional pharmacy practice—take three basic steps: (a) identify the red flag, (b) investigate and resolve the red flag or refuse to fill the prescription, and (c) if the red flag is resolved, document the resolution"; and

(e)    Your allegation in Paragraph 548 of the Complaint that "[e]ven if a prescription turns out to be valid, a failure to take these basic steps [listed in Paragraph 547 of the Complaint] violates the usual course of professional practice for pharmacists".

56.    All Documents relied upon by You to support Your allegations regarding ██ ██ in Paragraphs 180 and 474-475 of the Complaint, including:

(a)    Your allegations in Paragraph 475 of the Complaint that "[t]he pharmacy manager admitted that, notwithstanding the knowledge that [██] was not adhering to the usual course of professional practice, the pharmacy filled seven Schedule II controlled-substance prescriptions by [██] between September 2015 and November 2015".

57.    All Documents relied upon by You to support Your allegation in Paragraph 476 of the Complaint that some Walmart "pharmacists were willfully blind to the prescriptions' invalidity" and "chose not to resolve the obvious red flags before filling the prescriptions, despite their subjective awareness of the high probability that the prescriptions were invalid."

58.    All Documents relied upon by You to support Your allegations in the following Paragraphs of the Complaint that "trained pharmacists were aware" that the following prescriptions or combination of prescriptions "presented obvious red flags" or otherwise contained characteristics You contend demonstrate that the prescriptions or combination of prescriptions were

written for other than "a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice":

(a)     "multiple immediate-release opioids prescribed together or close in time" (Paragraph 479);

(b)     "immediate-release opioid and methadone" (Paragraph 484);

(c)     "classic trinity," defined by You as "(a) an opioid; (b) a benzodiazepine; and (c) the muscle-relaxer carisoprodol (brand name Soma)" (Paragraph 494);

(d)     "zolpidem trinity," defined by You as "(a) an opioid, (b) a benzodiazepine, and (c) the sedative zolpidem (brand name Ambien)" (Paragraph 497);

(e)     "stimulant trinity," defined by You as "(a) an opioid, (b) a benzodiazepine, and (c) a stimulant" (Paragraph 500);

(f)     "trinity plus," defined by You as "(a) two or more different immediate-release opioids (including different strengths of the same opioid); (b) a benzodiazepine; and (c) either carisoprodol or zolpidem" (Paragraph 504);

(g)     "extraordinarily high dosages of opioids" or "high-MME prescriptions" (Paragraphs 510, 513);

(h)     "an individual's request to fill a controlled-substance prescription early" (Paragraph 514);

(i)     "early refills" (Paragraph 517);

(j)     "prescriptions [] paid for in cash" (Paragraph 521);

(k)     "old prescriptions" (Paragraph 528);

(l)     patient "shared part of a surname with" Prescriber (Paragraphs 530, 555);

(m)     "high dosage," "large dosage," or "high dose" (Paragraphs 530, 533, 534);

(n)     "long history of such prescriptions" (Paragraph 534);

28

(o)    "out-of-state prescriptions" (Paragraphs 521, 539).

59.    All Documents relied upon by You to support Your allegations regarding ███ ████ in Paragraphs 483 and 505 of the Complaint, including Documents relating to the surrender of the ████ 's medical license.

60.    All Documents relating to or relied upon by You to support Your allegations in Paragraph 499 of the Complaint that a patient with the initials T.H. "died from an overdose on July 25, 2014"; that "[t]he cause of death on the toxicology report was listed as probable morphine toxicity"; and that "[a] federal grand jury later indicted [████████] for causing the dispensing of controlled substances to T.H. without a legitimate medical purpose and not in the usual course of professional practice."

61.    All Documents relied upon by You to support Your allegations regarding ████ referenced in Paragraphs 501, 502, and 615 of the Complaint.

62.    All Documents relied upon by You to support Your allegations regarding ██████ referenced in Paragraph 507 of the Complaint.

63.    All Documents relating to or relied upon by You to support Your allegations in Paragraphs 531-537 of the Complaint regarding a patient with the initials M.I., including:

(a)    Your allegations in Paragraph 535 of the Complaint that (i) "M.I. lived in Sarasota, Florida, nearly an hour from [████]'s Tampa office and 30 minutes from the Punta Gorda office"; (ii) "[████] performed a brief physical examination on M.I.'s first visit but did not physically examine her during any other appointments"; (iii) "[s]he paid for [████]'s appointments in cash"; (iv) "[o]ver time, [████] increased the amount of opioids prescribed to M.I."; (v) "[i]n 2015, M.I. was admitted to the emergency room, and the emergency room doctor told her that [████] was 'going to kill her with everything he was prescribing her'"; and (vi) "M.I. admitted that she was addicted to opioids when she was ████]'s patient."

(b)    Your allegations in Paragraph 536 of the Complaint that (i) "M.I. had first tried filling her prescriptions from [████] at a competing retail pharmacy, but she was told the pharmacy did not have the quantity or dosage in stock"; and (ii) "M.I. tried another pharmacy, but

she could not afford the prescriptions there since she was paying in cash" and "then began filling at Walmart."

64. All Documents relating to or relied upon by You to support Your allegations in Paragraph 551 of the Complaint regarding a patient with the initials R.F., including Your allegations that "R.F., a customer, stated that despite numerous red flags, including that he drove considerable distances across North Carolina to get heavy doses of opioids and almost always bought his opioids from Walmart with cash, the Walmart pharmacist on duty never asked R.F. any questions about his prescriptions and never contacted his doctor to verify them."

65. All Documents relied upon by You to support Your allegations in Paragraphs 552 and 553 of the Complaint that Walmart filled controlled-substance prescriptions "without checking and resolving red flags."

66. All Documents relied upon by You to support Your allegations in Paragraph 555 of the Complaint that "in many instances Walmart pharmacists filled controlled-substance prescriptions showing a combination of obvious red flags and there is reason to believe the pharmacist did not resolve the red flags before filling the prescription."

67. All Documents relating to Your past or present guidance or policies, whether formal or informal, related to the dispensing of Controlled Substances; Your development, issuance, application, revision, or repeal thereof; and Your receipt of and response to requests for guidance or recommendations on such issues, including:

    (a)    All versions of the Pharmacist's Manual published by DEA since 2010, including DEA's development, issuance, application, revision, or repeal of all such versions. The start date for this Request, as it relates to the Pharmacist's Manual published by DEA, is January 1, 2009;

    (b)    Recommendations, publications, Statements, or presentations that You have provided related to the dispensing of Controlled Substances, including DEA presentations to State Agencies;

(c)  Guidance or other Communications provided by You to any pharmacy or pharmacist regarding the dispensing of Controlled Substances, "red flags" indicative of potential diversion, or "corresponding responsibility" under 21 C.F.R. § 1306.04; and

(d)  Guidance or other Communications provided by You to any pharmacy or pharmacist regarding the dispensing of Controlled Substances, "red flags" or other characteristics of a prescription indicative of potential diversion, or "acting in the usual course of his professional practice" under 21 C.F.R. § 1306.06.

68.  All Documents relating to processes, policies, or trainings applicable to Your regulation, oversight, investigation, or discipline of any pharmacy or pharmacist relating to their dispensing of Controlled Substances, including:

(a)  Your development, issuance, application, enforcement, revision, and repeal of such processes, policies, or trainings;

(b)  Your review of and action upon DEA registration or renewal applications submitted by pharmacies;

(c)  Your inspection, audit, or investigation of pharmacies; and

(d)  Your evaluation and determination of whether a pharmacy or pharmacist filled a prescription or prescriptions for a Controlled Substance in compliance with the CSA.

69.  All Documents relating to any Allegedly Invalid Prescription filled by a Walmart pharmacist.

70.  All Documents relating to any patient for whom a Walmart Pharmacist filled any Allegedly Invalid Prescription.

71.  For each Walmart prescription you contend was filled with knowledge that the prescription was written not for a legitimate medical purpose, data sufficient to show all relevant information about prescriptions bearing the same characteristics written by You, dispensed by You, or for which any Government Payor provided coverage.

72. All Documents relating to any inspections, audits, visits, subpoenas, inspection warrants, orders to show cause, or immediate suspension orders to any Walmart pharmacy where You contend any Allegedly Invalid Prescription was filled. This includes requests for records or transcripts from any undercover operations targeting such Walmart pharmacy.

73. All Documents relating to Your review or analysis of Walmart's policies or processes relating to dispensing Controlled Substances.

74. All Documents relating to any instance in which You considered or acted upon a DEA registration or renewal application for any Walmart pharmacy where You contend any Allegedly Invalid Prescription was filled.

75. All Documents relating to any instance in which You investigated, prosecuted, or brought a disciplinary or enforcement action against Walmart or a Walmart employee for violations of the CSA related to the dispensing of Controlled Substances.

76. All Documents relating to a Refusal to Fill or Blanket Refusal to Fill by Walmart's pharmacists or a Central Block implemented by Walmart.

77. All Documents relating to determinations made by non-Walmart pharmacists not to fill an individual Controlled Substance prescription written by a certain Prescriber or to no longer fill any Controlled Substance prescriptions written by a certain Prescriber.

78. All Documents relating to the determination made by a non-Walmart pharmacy, company, or entity to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber by that pharmacy, which is then imposed on all pharmacists within that pharmacy, company, or entity.

79. All Documents relating to any instance in which You provided guidance, recommendations, direction, instruction, or advice to a pharmacy or pharmacist relating to:

(a)    The determination by a pharmacist not to fill an individual Controlled Substance prescription written by a certain Prescriber;

(b)    the determination by a pharmacist to no longer fill any Controlled Substance prescription written by a certain Prescriber; and

(c)    the determination made by a pharmacy, company, or entity to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber by that pharmacy, which is then imposed on all pharmacists within that pharmacy, company, or entity.

80.    All Documents relating to "red flags" as that term is used in the Complaint, including:

(a)    Any presentation by You that discusses or identifies "red flags";

(b)    Reports, presentations, and declarations of expert witnesses retained by You in any Opioid Litigation that discuss or identify "red flags";

(c)    Deposition transcripts and trial testimony of expert and fact witnesses that discuss or identify "red flags" in matters where You are a party; and

(d)    Correspondence with third parties, including pharmacies, that discuss or identify "red flags."

81.    All Documents relating to Walmart's November 2020 petition to the DEA to promulgate rules clarifying the obligations of Prescribers, pharmacists, and pharmacies under the CSA.

82.    All Documents relating to Controlled Substances and the following third-party healthcare associations:

(a)    National Association of Boards of Pharmacy (NABP) and/or Carmen Catizone;

(b)    American Medical Association (AMA);

(c)    National Community Pharmacists Association;

(d)    National Association of State Controlled Substance Authorities;

(e)     National Association of Chain Drug Stores (NACDS) (*e.g.*, the letter sent by Thomas W. Prevoznik, Deputy Assistant Administrator, Diversion Control Division, to Kevin N. Nicholson, Vice President, Public Policy and Regulatory Affairs, NACDS, regarding DEA's position on the medical basis of specific prescription drug therapies);

(f)     Independent Retail Pharmacy Association;

(g)     American Pharmacists Association (APhA); and

(h)     state or local associations of pharmacists, doctors, or other medical professionals.

83.     All Documents relating to Your past and present guidance or policies, whether formal or informal, relating to the prescribing of Controlled Substances; Your development, issuance, application, revision, or repeal thereof; and Your receipt of and response to requests for guidance or recommendations relating to such issues, including:

(a)     CDC's 2016 Guideline for Prescribing Opioids for Chronic Pain;

(b)     CDC 2016 Pharmacists: On the Front Lines. Addressing Prescription Opioid Abuse and Overdose;

(c)     CDC Advises Against Misapplication of the Guideline for Prescribing Opioids for Chronic Pain (April 24, 2019);

(d)     CDC's 2022 Clinical Practice Guideline for Prescribing Opioids for Pain;

(e)     CDC (National Center for Injury Prevention and Control) Presentation titled "Draft Updated CDC Guideline for Prescribing Opioids: Background, Overview, and Progress" (July 16, 2021);

(f)     CDC (National Center for Injury Prevention and Control) Presentation titled "Overview of the Process for Updating the CDC Guideline for Prescribing Opioids" (July 16, 2021);

(g)     CDC (National Center for Injury Prevention and Control) Presentation titled "Observations of the Opioid Workgroup of the Board of Scientific Counselors of the National Center for Injury Prevention and Control on the Updated CDC Guideline for Prescribing Opioids" (July 16, 2021);

(h)    The May 6, 2019, Draft Final Report of the Pain Management Best Practices Inter-Agency Task Force;

(i)    The May 2022 VA/DoD Clinical Practice Guideline for the Use of Opioids in the Management of Chronic Pain;

(j)    CMS' August 2023 "A Prescriber's Guide to Medicare Prescription Drug (Part D) Opioid Policies";

(k)    CMS' April 2, 2018, NOTE TO: Medicare Advantage Organizations, Prescription Drug Plan Sponsors, and Other Interested Parties, Announcement of Calendar Year (CY) 2019 Medicare Advantage Capitation Rates and Medicare Advantage and Part D Payment Policies and Final Call Letter; and

(l)    Recommendations, publications, Statements, or presentations that You have provided related to the prescribing of Controlled Substances, including DEA presentations to State Agencies.

84.    All Documents related to the implementation or contemplated implementation of opioid-specific prescribing policies for Medicare Part D sponsors, including, for example, safety alerts, safety edits, hard safety edits, Drug Management Programs, opioid overutilization policies, opioid care coordination edits, or any similar opioid-specific policy or practice.  This includes, by way of example only, the implementation of safety edits to alert pharmacists about duplicative opioid therapies or concurrent use of opioids and benzodiazepines, or the implantation of hard safety edits or opioid care coordination edits set at specific MME levels.

85.    All Documents relating to past or present processes, policies, or trainings applicable to Your registration, regulation, oversight, investigation, or discipline of Prescribers relating to their prescribing of Controlled Substances, and Your development, issuance, application, enforcement, revision, and repeal of such processes, policies, or trainings.

86.    All Documents, from January 1, 2006, to the present, relating to any Identified Prescriber, including:

(a)  Documents relating to any complaint, audit, investigation, enforcement, or disciplinary action concerning any such Prescriber, including without limitation all related Communications, Investigative Reports, interviews, notes, data, and data analyses;

(b)  Documents relating to Walmart's cooperation in any complaint, audit, investigation, or enforcement or disciplinary action concerning any such Prescriber;

(c)  Documents relating to any instance in which You considered or acted upon a DEA registration or renewal application for any such Prescriber, including any investigatory and due diligence efforts conducted as part of such consideration;

(d)  Documents relating to whether You included or considered including any such Identified Prescriber in HHS OIG's "Exclusions Program" for individuals who are excluded from federally-funded health care programs;

(e)  Communications involving DEA personnel regarding any such Prescriber;

(f)  Communications between You and any such Prescriber;

(g)  Presentence Report(s) and Sentencing Memoranda regarding any such Prescriber;

(h)  Communications with local, state, or federal law enforcement agencies regarding any such Prescriber;

(i)  Communications with Walmart regarding any such Prescriber;

(j)  Communications with third parties, including non-Walmart pharmacies and pharmacists regarding any such Prescriber;

(k)  Documents relating to Your consideration of whether to issue an Order to Show Cause or Immediate Suspension Order with respect to any such Prescriber; and

(l)  Documents relating to any criminal proceedings You brought against any such Prescriber.

87. All Documents relating to Your decision to make or not make information about the DEA registration status for Prescribers publicly available, including, for instance, through the "Cases Against Doctors" page that was previously accessible on DEA's website or through the "Cases Against Doctors" publication previously issued by DEA's Diversion Control Division.

88. All Documents relating to actions You have taken after receiving notice that a DEA registrant has had Controlled Substance prescriptions blocked or otherwise refused by Walmart or any other pharmacy.

89. All Documents relating to the Supreme Court's June 2022 decision in *Ruan v. United States* and *Kahn v. United States*, 142 S. Ct. 2370 (June 27, 2022).

90. All Documents relating to Government Payors' past or present processes, policies, or trainings to identify "invalid prescriptions" for Controlled Substances as that term is used in the Complaint (*see, e.g.*, Paragraphs 11, 13, 15), including Documents relating to Your development, issuance, application, enforcement, revision, or repeal of such processes, policies, or trainings.

91. All Documents relating to Government Payors' past or present processes, policies, or trainings to identify Prescribers that were prescribing controlled substances "outside the usual course of professional practice," as that term is used in the Complaint (*see, e.g.*, Paragraphs 11, 16), including:

    (a) Your past or present processes, policies, or trainings related to the identification of such Prescribers; and

    (b) Your development, issuance, application, enforcement, revision, or repeal of such processes, policies, or trainings.

92. All Documents relating to any Government Payor's consideration of limitations on or changes to coverage for Controlled Substances, such as limitations based on dosage, duration, concurrent use with other Controlled Substances, or receipt of Controlled Substances from multiple Prescribers or pharmacies.

93.   All Documents related to the implementation or contemplated implementation of prior authorization requirements on Medicare Part D participants for Controlled Substance prescriptions.

94.   All Documents relating to any Government Payor's consideration of the inclusion or exclusion of any Controlled Substances from federal prescription drug plan formularies.

95.   Claims data, and any compilations thereof, sufficient to show all prescriptions, both for Controlled Substances and non-Controlled Substances, written by an Identified Prescriber for which any Government Payor provided coverage.

96.   All Documents relating to processes, policies, or trainings implemented at any Government Healthcare Facility applicable to prescribing or dispensing Controlled Substances including Documents relating to:

(a)   The determination by a pharmacist to fill or not to fill an individual Controlled Substance prescription written by a certain Prescriber;

(b)   the determination by a pharmacist to no longer fill any Controlled Substance prescriptions written by a certain Prescriber;

(c)   the determination made by a Government Healthcare Facility—or a pharmacy within a Government Healthcare Facility—to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber, which is then imposed on all pharmacists within that Government Healthcare Facility;

(d)   the identification, resolution, or documentation of any "red flags";

(e)   record-keeping policies of information related to Controlled Substance prescriptions, including the implementation and audit of any such policies;

(f)   the filling or non-filling of Controlled Substance prescriptions that present any of the "red flags" or characteristics identified by You in the following Paragraphs of the Complaint:  479, 482-484, 493-494, 497-498, 489, 500, 504, 508, 509-510, 513, 514, 517, 521-525, 528-529, 530, 531-534, 539, 555;

(g)  the use of the Opioid Therapy Risk Report published by the Department of Veterans Affairs as part of its Opioid Safety Initiative; and

(h)  the referral, recommendation, permission, or guidance by You to your patients to use Walmart pharmacies for the dispensing of prescribed medications.

97.  All Documents relating to the provision of guidance, recommendations, direction, instruction, or advice to a pharmacy or pharmacist at a Government Healthcare Facility regarding:

(a)  The determination by a pharmacist to fill or not to fill an individual Controlled Substance prescription written by a certain Prescriber or prescriptions that present any of the "red flags" or characteristics identified by You in the Complaint (*see e.g.,* Paragraphs 479, 482-484, 493-494, 497-498, 489, 500, 504, 508, 509-510, 513, 514, 517, 521-525, 528-529, 530, 531-534, 539, 555);

(b)  the determination by a pharmacist to no longer fill any Controlled Substance prescriptions written by a certain Prescriber (*see e.g.,* Paragraph 132 of the Complaint);

(c)  the determination made by a Government Healthcare Facility—or a pharmacy within a Government Healthcare Facility—to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber, which is then imposed on all pharmacists within the Government Healthcare Facility; and

(d)  the identification, resolution, or documentation of any "red flags."

98.  All Documents relating to any instance in which:

(a)  A pharmacist working at a Government Healthcare Facility made a determination not to fill an individual Controlled Substance prescription written by a certain Prescriber;

(b)  a pharmacist working at a Government Healthcare Facility made a determination to no longer fill any Controlled Substance prescriptions written by a certain Prescriber;

(c)     a Government Healthcare Facility—or a pharmacy within a Government Healthcare Facility—made the determination to prohibit the filling of any Controlled Substance prescriptions written by a certain Prescriber, which was then imposed on all pharmacists within that Government Healthcare Facility.

99.     All Documents relating to any instance in which You considered or implemented any limitations on the prescribing or dispensing of Controlled Substances at a Government Healthcare Facility, such as limitations based on dosage, duration, concurrent use with other prescription medications, or receipt of Controlled Substances from multiple Prescribers or pharmacies.

100.    Data, and any compilations thereof, sufficient to show all prescriptions, both Controlled Substances and non-Controlled Substances, written by an Identified Prescriber and that were filled by a pharmacist working at a Government Healthcare Facility or filled at a pharmacy at a Government Healthcare Facility.

101.    All Documents relating to any complaint, inspection, audit, investigation, Investigative Report, or enforcement or disciplinary action concerning improper prescribing or dispensing of Controlled Substances, or refusal to prescribe or dispense such prescription medications, by any Prescriber, pharmacy, or pharmacist at a Government Healthcare Facility, including the following:

(a)     All reports concerning the prescribing practices of ███████ at the Tomah VA Medical Center in Tomah, Wisconsin (*e.g.*, VA OIG Report No. 15-02131-471);

(b)     VA OIG Healthcare Inspection: Opioid Management Practice Concerns John J. Pershing VA Medical Center, Poplar Bluff, Missouri (VA OIG Report No. 16-01077-255);

(c)     VA OIG Healthcare Inspection: Review of Opioid Prescribing Practices Clement J. Zablocki VA Medical Center, Milwaukee, Wisconsin (VA OIG Report No. 15-02156-346);

(d)    VA OIG Healthcare Inspection: Alleged Inappropriate Opioid Prescribing Practices Chillicothe VA Medical Center, Chillicothe, Ohio (VA OIG Report No. 14-00351-53);

(e)    U.S. Department of Defense, Inspector General:  Audit of Defense Health Agency Controls to Monitor Prescription Compliance with Federal and DoD Opioid Safety Standards (December 7, 2023) (Report No. DODIG-2024-036); and

(f)    U.S. Department of Defense, Inspector General:  Evaluation of the DoD Internal Controls Related to Patient Eligibility and Pharmaceutical Management Within the National Capital Region Executive Medicine Services (January 8, 2024) (Report No. DODIG-2024-044).

102.   All Documents relating to Your receipt, handling, analysis or use of any Refusal to Fill forms that You received from Walmart.

103.   All PDMP data in Your possession related to any Identified Prescriber and all Documents relating to Your attempts to access, ability to access, and utilization of such PDMP data in connection with Your regulatory and enforcement authority.

104.   All Documents relating to Your collection, analysis, utilization, and sharing of PDMP data—including within the Prescription Drug Monitoring Program Analytics System (PDMPAS) and any predecessor or successor systems—to support Your investigations and cases (including This Litigation), identification of pharmaceutical drug diversion, and any other purposes for which You utilize such data.

105.   All Documents relating to Your collection, analysis, utilization, and sharing of CDC Wonder and National Vital Statistics System Databases data, AHRQ All Payer Claims Databases and Medical Expenditure Panel Survey data, IQVIA Prescription data, or Market Scan Commercial Claims and Encounters data to support Your investigations and cases related to pharmaceutical drug diversion (including This Litigation).

106.  All testimony and expert reports You proffered in any case regarding the determination of whether a Controlled Substance prescription was invalid or otherwise issued outside the course of legitimate medical practice.

107.  All Documents relating to patient access to Controlled Substance prescriptions, including Documents relating to:

(a)  Complaints or concerns received from patients, healthcare providers, patient advocacy groups, professional medical associations, or State Agencies, including efforts to mitigate or respond to any such complaints or concerns;

(b)  Internal training materials, presentations, or manuals;

(c)  Studies, reports, or analyses that You conducted, commissioned, or funded;

(d)  Initiatives, programs, or outreach efforts;

(e)  External Statements or presentations—such as Statements presented by DEA personnel at meetings of the Florida Board of Pharmacy (or committees thereof) on or around June 5, 2012, June 4, 2013, October 7, 2014, and August 10, 2015—including all drafts thereof;

(f)  Congressional inquiries; and

(g)  Reports to Congress required under the Ensuring Patient Access and Effective Drug Enforcement Act of 2016.

108.  All Documents related to Statements from Janet Woodcock, Director of the Center for Drug Evaluation and Research at FDA; Patrizia Cavazzoni, Acting Director of the Center for Drug Evaluation and Research at FDA; or any other FDA or CDC personnel regarding the need for individualized patient assessments with respect to Controlled Substance prescribing or dispensing, including:

(a)  Correspondence dated September 10, 2013, from Janet Woodcock, Director of the Center for Drug Evaluation and Research at FDA, to Dr. and Mrs. Van Rooyan;

(b)  Correspondence dated 2019 from Janet Woodcock, Director of the Center for Drug Evaluation and Research at FDA, to Hon. Maggie Hassan; and

(c)  Correspondence dated September 10, 2013 from Janet Woodcock, Director of the Center for Drug Evaluation and Research at FDA, to Dr. Kolodny.

109.  All Documents regarding Your Statements about the establishment of limits by You or any entity on the maximum recommended daily dosages for Controlled Substances or on the duration of use for opioid therapies.

110.  All Documents relating to the implementation, potential implementation, or removal of hard limits on Controlled Substance dispensing at pharmacies, including any such efforts with respect to Controlled Substance prescriptions filled under Medicare Part D.

111.  All Documents relating to "Dear Healthcare Professional" and "Dear Registrant" correspondence from You or required by You to Controlled Substance Prescribers regarding the prescribing or dispensing of opioid medications.

112.  All Documents relating to any studies or publications conducted, commissioned, cited, or funded by You regarding the impact of labeling changes for any Controlled Substance medication on the number of prescriptions dispensed for Controlled Substances in the United States.

113.  All Documents regarding Your Statements about whether Controlled Substance prescriptions are appropriate for the treatment of non-acute pain and should not be limited for use in treating only acute pain.

114. All Documents regarding Your Statements about whether Controlled Substance prescriptions are appropriate for the treatment of acute pain.

115. All Documents relating to any studies or publications regarding the use of opioid analgesics for the treatment of non-acute pain, including studies or publications conducted, commissioned, or funded by You.

116. All Documents relating to any FDA committee meeting or discussion regarding the safety, efficacy, or abuse and misuse potential of any Controlled Substance medication, including meetings and discussions held by the Anesthetic and Life Support Drugs Advisory Committee, the Drug Safety and Risk Management Advisory Committee, or any Advisory Committee.

117. All Documents relating to any actual, proposed, or contemplated Risk Evaluation and Mitigation Strategy (REMS), Safety Labeling Change, Post-Marketing Requirement, abuse-deterrent formulation, safety related manufacturer certification, or other FDA drug safety program for Controlled Substance medications, including the expansion in 2018 of the REMS for extended-release and long-acting opioid products.

118. All education, information, or training materials provided by opioid analgesic companies pursuant to any Risk Evaluation and Mitigation Strategy (REMS) for opioid analgesics, including Documents relating to the provision, review, approval, or denial of such education, information, or training.

119. All Documents relating to communications or coordination efforts amongst the Drug Safety Oversight Board and any federal agency or body regarding Controlled Substance prescribing and dispensing or any safety-related actions regarding opioid analgesics.

120. All Documents from the Defense and Veterans Center for Integrative Pain Management, the National Pain Management Program, or the Veterans Health Administration Opioid Safety Initiative relating to the safety, efficacy, or abuse and misuse potential of any Controlled Substance medication, including

documents regarding "toolkits" or other resources for prescribers with respect
to Controlled Substance prescribing.

121. All Documents referenced by or relied on by the Use of Opioids in the
Management of Chronic Pain Work Group in drafting the Guideline for the
Use of Opioids in the Management of Chronic Pain published by the
Department of Defense and the Department of Veterans Affairs.

122. All Documents relating to the White House Medical Unit's Controlled
Substance Inventory and Management Policy (WHMU SOP 20-08), including
documents regarding the creation and implementation of such policy, and
adherence to such policy by the White House Medical Unit.

123. All Documents relating to any Statements by You that the effective
management of pain and the alleviation of suffering through the use of
Controlled Substance medications are public health priorities in the United
States.

124. Documents sufficient to identify individuals at any DEA division office who
either (i) held the title of "Diversion Program Manager" or "Special Agent in
Charge" (or equivalent thereof) or, (ii) were otherwise responsible for
overseeing Controlled Substance diversion initiatives and enforcement efforts
regarding retail pharmacies.

125. All Documents and communications You produced under the Freedom of
Information Act in response to the West Virginia Attorney General Patrick
Morrisey's document requests dated June 1, 2017 and March 15, 2019.

126. All Documents and communications provided to or received from the U.S.
Department of Justice Office of the Inspector General ("OIG") and the U.S.
Government Accountability Office ("GAO") in connection with the
investigations resulting in the following reports (collectively, "Reports"):

(a) February 2015 GAO Report titled DRUG SHORTAGES:  Better
Management of the Quota Process for Controlled Substances Needed;
Coordination between DEA and FDA Should Be Improved

(https://www.gao.gov/assets/670/668252.pdf) ("GAO Report 15-202");

(b)     June 2015 GAO Report titled Prescription Drugs: More DEA Information about Registrants' Controlled Substances Roles Could Improve Their Understanding and Help Ensure Access (https://www.gao.gov/assets/680/671032.pdf) ("GAO Report 15-471");

(c)     June 2016 GAO Report titled Additional Actions Needed to Address Prior GAO Recommendations (https://www.gao.gov/assets/680/677939.pdf) ("GAO Report 16-737T");

(d)     September 2019 OIG Report titled Review of the Drug Enforcement Administration's Regulatory and Enforcement Efforts to Control the Diversion of Opioids (https://oig.justice.gov/reports/2019/e1905.pdf) ("DOJ-OIG Report 19-05"); and

(e)     January 2020 GAO Report titled Drug Control:  Actions Needed to Ensure Usefulness of Data on Suspicious Opioid Orders ("GAO Report 20-118").

127.    All Documents relating to the Reports, including communications regarding Your draft or actual responses to allegations or conclusions in the Reports, and communications referencing or addressing allegations or conclusions in the Reports.

128.    All Documents reflecting presentations made by the DEA to pharmacies, pharmacists, or any State Agency regarding the prescribing or dispensing of Controlled Substances.

129.    All Documents reflecting presentations regarding the prescribing or dispensing of Controlled Substances made by the DEA at any conference relating to Controlled Substances, including any National Prescription Drug Abuse Conference and Pharmacy Diversion Awareness Conference.

130. All Documents relating to the determination and setting of Opioid Production Quotas and Opioid Procurement Quotas during the Relevant Time Period, including all policies and protocols You utilize to set quotas, communications with any agency regarding the quotas, and any documents and communications regarding any perceived need for an increase in said quotas to meet legitimate medical or scientific needs.

131. All Documents relating to the termination, demotion, or other adverse employment action taken by You against any individual based on that individual's views, Statements, actions, or inactions related to their opinions on the use, regulation, prescribing, or dispensing of Controlled Substances.

132. All Documents relating to Communications between You and any state, city, town, municipality, county, or other governmental entity, or their departments or agencies, concerning This Litigation or concerning any lawsuit or potential lawsuit by such other governmental entity related to prior Opioid Litigation.

133. All Documents relating to Your Communications with any current or former Walmart pharmacist or other employee regarding This Litigation or the dispensing of Controlled Substances.

134. All Documents relating to Your Communications with any patient who filled one or more Controlled Substance prescriptions at Walmart regarding This Litigation or the dispensing of Controlled Substances.

135. All Documents provided to, reviewed by, considered, or relied upon by any expert witnesses You intend to use in This Litigation.

136. All Documents You intend to use in connection with any motion or during trial in This Litigation.

137. All Documents relating to the article published by ProPublica on March 25, 2020, entitled, "Walmart Was Almost Charged Criminally Over Opioids. Trump Appointees Killed the Indictment," including:

(a)    Communications relating to the article, including any Communications between You and Jesse Eisinger or James Bandler.

(b)    Documents regarding any investigation You undertook to determine who provided the information and documents referenced in the article to ProPublica.

OF COUNSEL:
Yaakov M. Roth
William G. Laxton, Jr.
Jeffrey R. Johnson
Kristen A. Lejnieks
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113

Karen P. Hewitt
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134

Jason S. Varnado
Andrew J. Junker
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2172

Laura Jane Durfee
JONES DAY
325 John H. McConnell Blvd., Ste. 600
Columbus, OH 43215-2673

David W. Ogden
Charles C. Speth
WILMER CUTLER PICKERING
   HALE AND DOOR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006

Dated:  May 8, 2024

*/s/ Kelly E. Farnan*
Robert W. Whetzel (#2288)
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(320) 651-7700
whetzel@rlf.com
farnan@rlf.com*Attorneys for Walmart Inc. and*
*Wal-Mart Stores East, LP*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
David C. Weiss
United States Attorney
Dylan Steinberg
Elizabeth F. Vieyra
Assistant United States Attorney
U.S. Attorney's Office
Hercules Building
1313 N. Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Amanda N. Liskamm
Rachael L. Doud
Joshua Fowkes
Kathleen B. Brunson
Katherine M. Ho
Kimberly R. Stephens
U.S. Department of Justice
Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044

**BY ELECTRONIC MAIL**
Lindsay Sax Griffin
Carolyn B. Tapie
USDOJ - Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602

**BY ELECTRONIC MAIL**
Amanda A. Rocque
Jasand P. Mock
USDOJ - District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

**BY ELECTRONIC MAIL**
C. Michael Anderson
Andrew Kasper
USDOJ - Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

**BY ELECTRONIC MAIL**
Elliot M. Schachner
Megan Freismuth
USDOJ - Eastern District of New York
U.S. Attorney's Office
Eastern District of NY
271 Cadman Plaza East
7th Floor
Brooklyn, NY 11201

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-01744-CFC |
| ) | |
| WALMART INC. and ) | |
| WAL-MART STORES EAST, LP, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF UNITED STATES OF AMERICA'S**
**OBJECTIONS AND RESPONSES TO DEFENDANTS'**
**FIRST SET OF REQUESTS FOR PRODUCTION AND**
**FIRST SET OF INTERROGATORIES**

Under Federal Rules of Civil Procedure 26, 33, and 34, the Local Rules of Civil Practice

and Procedure of the U.S. District Court of Delaware, and the Court's Scheduling Order (D.I.

124), Plaintiff United States of America objects and responds to Defendants' First Set of

Requests for Production ("the Requests") and First Set of Interrogatories ("the Interrogatories"),

served on April 23, 2024, as follows:

**RESERVATION OF RIGHTS**

1.      The United States reserves the right to supplement, clarify, revise, or correct any

or all of its responses set forth herein at any time according to the Federal Rules of Civil

Procedure.  The responses set forth below are accurate to the best of the United States'

knowledge as of this date.  The United States' investigation is continuing, and thus the United

States may obtain additional responsive information through discovery and further investigation

and review of documents.

2.     The United States provides these responses without implying or admitting that the Requests, Interrogatories, responses, or referenced documents are relevant to any parties' claims or pled defenses.

3.     By providing the following responses to Defendants' Requests and Interrogatories, including by referring to documents that it will produce, the United States does not waive, and expressly reserves, its right to assert any and all objections to the admissibility of the responses or referenced documents into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, and privilege.

4.     If the United States produces any information or documents that could have been withheld based on any one or more of the objections set forth herein, the production of any such information and/or documents shall not constitute a waiver of such objections and shall not affect the United States' right to withhold from production any other existing information and documents governed by those objections.

5.     The enumeration of specific objections in the United States' responses shall not be deemed a waiver of other applicable objections.

6.     All responses are based on the United States' best understanding of the Requests and/or Interrogatories and/or terms used therein.  Such responses cannot properly be used as evidence except in the context in which the United States understood the Requests and Interrogatories and their terms.

7.     If Defendants are dissatisfied with any of the United States' responses, the United States will confer in good faith with the Defendants in an attempt to resolve any dispute, pursuant to Federal Rule of Civil Procedure 37, Judge Connolly's Procedures for "Disputes

Relating to Discovery Matters and Protective Orders," and the Court's Scheduling Order (D.I. 124 at ¶ 7).

## <u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>

These statements and objections apply to and are incorporated into each response as though restated in full in the United States' responses to each Request and Interrogatory:

1.    The United States objects to the Requests and Interrogatories to the extent they seek documents or information not relevant to the United States' claims or Defendants' pled defenses.  The sole issue of liability in this case is whether Defendants knowingly dispensed controlled substances pursuant to prescriptions that were issued not in the usual course of professional treatment, not for a legitimate medical purpose, or both, during the "Dispensing Violations Period," as defined in the Complaint.  *See* D.I. 109 at ¶ 17.  Documents or information that do not inform that analysis, or the factors pertinent to assessing a civil penalty or imposing injunctive relief, are irrelevant to the claims and pled defenses.  Irrelevant documents and information include, but are not limited to, documents and information pertaining to the Complaint's Third and Fourth Claims, which were dismissed on March 11, 2024.  *See* D.I. 117.

2.    The United States objects to Definition 4 ("Controlled Substance") to the extent that it limits the definition to substances classified as a controlled substance only between January 1, 2010, and December 20, 2020.

3.    The United States objects to Definition 7 ("Government Healthcare Facility") as vague by use of the vague and undefined terms "affiliated with" and "supported by."  The United States further objects to Definition 7 as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that

3

healthcare facilities that are "affiliated with" or "supported by" the United States government may include healthcare entities that partner with United States government agencies for purposes irrelevant to any claim or pled defense or that receive funding or grants from the United States government, which does not render their operations relevant to any claim or pled defense. Similarly, healthcare entities that are "operated" or "owned" by the United States government include entities whose operations are irrelevant to any claim or pled defense.

4.      The United States objects to Definition 10 ("Opioid Litigation") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent the definition includes litigation (a) without any time limitation; (b) without any limitation as to the parties to the proceedings in "federal and state court" and regardless of whether the United States participated in the litigation; (c) related to the "marketing, sales, [and] distribution . . . of opioid products," when the pending claims in this action allege violations related to only dispensing of controlled substances; (d) related to "opioid products," to the extent that this vague term includes products that are not controlled substances; and (e) regardless of whether the litigation related to unlawful dispensing of controlled substances by Defendants as alleged in the Complaint during the Dispensing Violations Period, or addressed sufficiently similar issues so that the litigation bears on the issues at stake in this action.

Unless otherwise specified herein, the United States will construe Definition 10 to include only documents and information from *In re National Prescription Opioid Litigation*, MDL Case No. 2804, in the United States District Court for the Northern District of Ohio ("MDL") and litigation initiated by the United States Department of Justice ("DOJ") or the Drug Enforcement Administration ("DEA") against Defendants or against any prescriber specifically

4

referenced in Section II.B.1.c of the Complaint or whose prescriptions serve as the basis for the United States' Second Claim.

5.      The United States objects to Definition 12 ("Prescriber") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent the definition includes health care practitioners who are licensed and registered to prescribe prescription medications but not medications containing a controlled substance.

6.      The United States objects to Definition 18 ("You" or "Your") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that "You" includes the United States and all its agencies and individual officers and employees.  The United States further objects on the same grounds to the extent that "You" includes the twelve federal agencies identified in Definition 18, 94 U.S. Attorney's Offices, and every Government Healthcare Facility and all their employed healthcare professionals.

Except where the United States expressly represents that it responds based on information known to other federal agencies or components, it will construe Definition 18 to include only the DEA and those DOJ components that participated in This Litigation or the investigation leading to This Litigation or that were responsible for a criminal case against any prescriber identified in Section II.B.1.c of the Complaint or any prescriber whose prescriptions serve as the basis for the United States' Second Claim.

7.      The United States objects to Instruction 1's request for responses with no time limitation as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses.  The United States' claims are based on

dispensing violations during the Dispensing Violations Period.  In addition, a portion of the claims rely on particular criminal cases and investigations that pre-date the Dispensing Violations Period.  Unless otherwise expressly indicated or agreed to, the United States will limit its responses to information from the Dispensing Violations Period for Requests and Interrogatories unrelated to a criminal case or investigation.  For Requests and Interrogatories related to a particular criminal case or investigation, the United States will respond based on information from the time periods during which the criminal case or the related investigation was pending.

8.      The United States objects to Instruction 4, which requires the United States to state whether "no documents or information exist that are responsive to a specific Request or Interrogatory," as unduly burdensome and premature at this point in the litigation.  The United States will be unable, before its search for responsive documents and information and at this stage of discovery, to determine whether no documents or information exist responsive to any particular Request or Interrogatory.

9.      The United States objects to Instruction 5, which requires the United States to "state which documents or information will be withheld [based on a claim of privilege or attorney work product] and which documents or information will be produced or provided notwithstanding such objections," as unduly burdensome at this point and before the United States is required to produce a privilege log under the Order Regarding Discovery of Documents and Electronically Stored Information, entered on May 15, 2024.  *See* D.I. 132 ("ESI Order").  The United States' identification, collection, and review of documents and information responsive to Defendants' Requests and Interrogatories are ongoing and the United States is unable to identify and describe documents or information at this time that will be withheld from

inspection and production on the basis of its stated objections.  The United States will provide a privilege log for any documents withheld in accordance with the ESI Order.

10.     The United States objects to Instruction 11 as overly broad and unduly burdensome to the extent that it includes a duty to produce documents that are "known by" but not in the possession, custody, or control of the United States.

11.     The United States objects to Instruction 12 to the extent that it is inconsistent with the ESI Order.

12.     The United States objects to the Requests and Interrogatories to the extent they seek documents or information protected by the deliberative process privilege.  Documents or information reflecting advisory opinions, recommendations, or deliberations by which governmental decisions and policies are formulated are protected from disclosure.  Such disclosures would reveal the deliberative process of agency officials and would serve to undermine the quality of agency decisions, which is the foundation for the deliberative process privilege.

13.     The United States objects to the Requests and Interrogatories to the extent they seek documents or information protected by either the attorney-client privilege or the work-product doctrine.  Communications made between attorneys (and their agents and support staff) and their clients for the purpose of obtaining or providing legal assistance to the clients are protected from disclosure.  Legal assistance given to the DEA by agency counsel or other lawyers within DOJ, if any, is covered by these privileges.  Similarly, documents prepared in anticipation of litigation, not only created by attorneys, but also those created by investigators and other agents, are also protected from disclosure.  The United States will withhold documents and information protected by the attorney-client privilege or the work-product doctrine.

7

14.     The United States objects to the Requests and Interrogatories to the extent they seek documents or information protected by the law enforcement privilege. Such privilege extends to and includes law enforcement techniques and procedures.

15.     The United States objects to the Requests and Interrogatories to the extent they seek documents or information protected by Federal Rule of Criminal Procedure 6(e). Federal Rule of Criminal Procedure 6(e) limits the disclosure of grand jury materials, to the extent they exist, to the circumstances defined in Rule 6(e)(3)(E), an exclusive list of exceptions to the general rule of grand jury secrecy.

## SPECIFIC RESPONSES AND OBJECTIONS TO<br>REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST 1**: All Documents previously produced by You in prior Opioid Litigation.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definitions 10 ("Opioid Litigation") and 18 ("You") and to Instruction 1 (absence of time limitation). These definitions and the absence of a time limitation render this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

Based on Definitions 10 and 18 and Instruction 1, the United States would be required to produce, for example, documents produced by the Department of Veterans Affairs in litigation related to a contractual dispute with a vendor over the sale of opioids to a VA hospital, and documents produced by a U.S. Attorney's Office to a criminal defendant prosecuted in 2000 for the distribution of heroin or non-prescription fentanyl. Because the Request is overly broad, it

seeks documents that are irrelevant to the parties' claims and pled defenses.

Further, by seeking documents from all federal agencies without any limitation, this Request would require the United States to canvass more than 400 federal agencies to provide a complete response. Even if limited to the twelve federal agencies identified in Definition 18, 94 U.S. Attorney's Offices, and every Government Healthcare Facility and all their employed healthcare professionals, the Request is overly broad and unduly burdensome because the Department of Veterans Affairs alone has approximately 1,321 healthcare facilities and tens of thousands of healthcare professionals employed at those facilities. With respect to the 94 U.S. Attorney's Offices, they do not share a common, central repository of historical information regarding their prior prosecutions; responding to the Request thus would require that each individual office search their records. Because the offices may not identify cases specifically as opioid cases, their searches would require looking in individual case files to identify those involving opioids and then those involving prescription versus non-prescription opioids such as heroin.

The United States further objects to the Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially irrelevant to the parties' claims and pled defenses because it seeks "all" documents produced in prior Opioid Litigation. In seeking "all" documents without limitation, the Request does not meet Rule 34's reasonable particularity requirement and seeks documents that are irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by Federal Rule of Criminal Procedure 6(e).

9

The United States further objects to the extent this Request seeks documents already in Defendants' possession or equally available to Defendants, including documents that Defendants received, or to which they have access, from the MDL.  Subject to and without waiving the foregoing objections, the United States will produce non-privileged documents in its possession, custody, or control that the United States produced in prior litigation against the prescribers identified in Section II.B.1.c of the Complaint and any prescriber whose prescriptions serve as the basis for the United States' Second Claim.

**REQUEST 2:**  All Documents relating to Your investigation of Walmart preceding the filing of the Complaint in This Litigation[.]

**RESPONSE**:  The United States responds to Requests 2(a)-2(g) by incorporating by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 18 ("You" and "Your").  Definition 18 renders this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that it seeks documents related to investigations of Defendants that preceded—in time—the filing of the Complaint but that were unrelated to the Complaint and thus irrelevant to the United States' claims in this action.  The United States construes this Request to seek documents relating to the investigation of Defendants that preceded and was related to the allegations in the Complaint in This Litigation.  Thus, to the extent that the United States will respond to this Request, as noted below, and subject to these objections, the United States will produce responsive non-privileged documents created on or after December 7, 2016, when DEA executed a search warrant of Walmart Store 206 and thus took investigative steps leading to This Litigation.

The United States further objects to the Request as overly broad, unduly burdensome,

disproportionate to the needs of the case, and, because of its breadth, potentially irrelevant to the parties' claims and pled defenses because it seeks "all" documents and pairs this broad term with an equally broad category ("investigation of Walmart"). In seeking "all" documents in this broad category without limitation, the Request does not meet Rule 34's reasonable particularity requirement and seeks documents that are irrelevant to the parties' claims and pled defenses. Further, the phrase "relating to Your investigation of Walmart preceding the filing of the Complaint in This Litigation" is so broad that it includes, for example, communications among DOJ attorneys regarding transferring documents and scheduling meetings, which are not important to the issues at stake in this action and not likely to help resolve the issues.

The United States further objects to the extent this Request seeks documents relevant to dismissed Claims Three and Four of the Complaint, as those documents are irrelevant to the pending claims.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).

The United States incorporates the foregoing objections with respect to each of its responses to Request 2's subparts. In addition, the United States further responds to each subpart as follows:

**REQUEST 2(a):** Data and Documents obtained by, accessed by, or shared with You in connection with the investigation from any individual, entity, or third party other than Data and Documents produced to You by Walmart[.]

**RESPONSE:** The United States specifically objects to this Request to the extent that it fails to identify a subject matter with reasonable particularity and thus seeks documents

11

irrelevant to the parties' claims and pled defenses. Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 2(b):** Documents obtained by or shared with You from any State Agency or other government agency[.]

**RESPONSE:** The United States specifically objects to this Request to the extent that it fails to identify a subject matter with reasonable particularity and thus seeks documents irrelevant to the parties' claims and pled defenses. Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 2(c):** Transcripts, recordings, and notes of interviews conducted by You related to the investigation[.]

**RESPONSE:** The United States specifically objects that this Request seeks documents protected by the attorney work-product doctrine.

**REQUEST 2(d):** Documents related to any Communications with any other individual, entity, third party, or government agency related to the investigation[.]

**RESPONSE:** The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses by its use of the term "any." In seeking documents "related to any Communications" without limitation, the Request does not meet Rule 34's reasonable particularity requirement and seeks documents that are irrelevant to the parties' claims and pled defenses. The Request fails, for example, to identify a subject matter and thus seeks irrelevant documents such as communications with third parties

12

and government agencies to schedule meetings. The United States further objects that this Request seeks documents protected by the attorney-client privilege and attorney work-product doctrine.

**REQUEST 2(e):** Documents relating to the December 7, 2016, search of a Walmart pharmacy in Texas pursuant to a search warrant, as referenced in Paragraphs 124 and 191 of the Complaint[.]

**RESPONSE:** The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses by its failure to identify with reasonable particularity documents that are important to the issues at stake in this action and likely to help resolve the issues. The United States further specifically objects that this Request seeks documents protected by the deliberative process and law enforcement privileges. Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 2(f):** All subpoenas or formal or informal requests for testimony, documents, materials, or information issued to any person or entity, including any cover letters and responses to those subpoenas or requests[.]

**RESPONSE:** The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses by its use of the terms "all" and "any." In seeking "all" documents in the broad categories of "formal and informal requests for testimony, documents, materials, or information" and "any person or entity," without limitation, the Request does not meet Rule 34's reasonable particularity

requirement and seeks documents that are irrelevant to the parties' claims and pled defenses. Further, because of the vague phrase "relating to Your investigation of Walmart preceding the filing of the Complaint in This Litigation," the Request may include, for example, emails from a U.S. Attorney's Office during its investigation of a prescriber identified in the Complaint to any potential witness, whether or not the United States intends to rely on that testimony in This Litigation or relied on it in the underlying investigation.

The United States construes this Request as seeking subpoenas or formal or informal requests for testimony, documents, materials, or information issued to any person or entity, including any cover letters and responses to those subpoenas or requests, that were issued on or after December 7, 2016, when DEA executed a search warrant of Walmart Store 206, for the specific purpose of DEA's investigation of Walmart. Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 2(g):** All Investigative Reports related to the investigation.

**RESPONSE:** The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses by its use of the term "all." In seeking "all" documents in the broad category of "Investigative Reports related to the investigation," without limitation, the Request does not meet Rule 34's reasonable particularity requirement and seeks documents that are irrelevant to the parties' claims and pled defenses. Further, because of the vague phrase "related to the investigation," the Request may include reports related to evidence that the United States will not use to support the claims in This Litigation. The United States further objects that this Request seeks documents and

information protected by the attorney work-product doctrine, law enforcement privilege, and Federal Rule of Criminal Procedure 6(e).

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 3:**  Documents sufficient to identify any current or former employee of Walmart whom You have contacted or attempted to contact in connection with This Litigation, whether or not Your contact or attempted contact resulted in communications with any such employee.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Requests that seek documents protected by the attorney work-product doctrine, law enforcement privilege, and documents protected by Federal Rule of Criminal Procedure 6(e).  The United States further objects to the extent that the Request assumes that the United States intended to contact employees who were then employed by Defendants and to the extent that any individuals became employed by Defendants following any interview by the United States.  Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 4:**  All Statements taken by You or on Your behalf from any Person relating to the claims and allegations in the Complaint, including Statements taken from any current or former employee of Walmart and Statements taken from any individual who has previously had a Controlled Substance prescription filled at Walmart.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Requests that

seek documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  The United States does not anticipate identifying any nonprivileged statements to produce in response to this Request.

**REQUEST 5:**  Documents relating to any investigation, enforcement, or disciplinary action concerning any Identified Prescriber, including without limitation all related Investigative Reports, interviews, notes, data, and data analyses.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses by its use of the terms "any" and "all."  In seeking "any" documents in the broad category of "investigation, enforcement, or disciplinary action" and "all related Investigative Reports, interviews, notes, data, and data analyses," without limitation, the Request does not meet Rule 34's reasonable particularity requirement and seeks documents that are irrelevant to the parties' claims and pled defenses.  In its breadth, the Request seeks documents arising from investigations or actions against any Identified Prescriber whether or not that investigation or action arose from their controlled-substance prescribing.  A responsive, but irrelevant, document would include, for example, documents from a disciplinary action by a state medical board for an Identified Prescriber's failure to adhere to continuing medical education requirements.  The United States further objects to this Request as overly broad and unduly burdensome to the extent it purports to require the identification and production of information that is not within the custody or control

16

of the United States and is equally available to Defendants. The United States further objects that the Request seeks documents protected by the attorney work-product privilege and Federal Rule of Criminal Procedure 6(e).

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control arising from criminal prosecutions of and state regulatory agency actions against any Identified Prescriber specifically referenced in Section II.B.1.c of the Complaint and relating to the Identified Prescriber's controlled substance prescribing.

**REQUEST 6:** Documents sufficient to identify, for each alleged violation of the Controlled Substances Act, the Prescriber, patient, prescription, dispensing date, and controlled substance that constitutes the alleged violation.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request on the grounds that it is premature. Responsive documents are or will be available in forthcoming discovery materials and materials to which Defendants already have access, including but not limited to Defendants' own dispensing data. Further, this Request seeks information that will be addressed by an expert or experts later in litigation. The United States maintains that production of information responsive to this Request should be deferred to a later time.

Subject to and without waiving the foregoing objections, the United States refers to and incorporates herein the response to Interrogatory 1 below. The requested information identifying each violation is reflected in the dispensing data provided by Defendants in response to a

subpoena issued by the DEA in connection with This Litigation.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this data.

**REQUEST 7:**  All Documents referenced in, cited in, referred to, or relied upon by You in drafting the Complaint.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to the vague terms "relied upon" and "drafting," which, depending on their meaning, potentially renders this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses.  A responsive document would include, for example, Strunk & White's *The Elements of Style*, if the United States referred to this resource in writing the Complaint.  And in seeking Documents from the "drafting" stage of the Complaint, the Request seeks Documents potentially irrelevant to the Complaint in its final form, as filed with the Court, as well as documents protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

Subject to and without waiving the foregoing objections, the United States construes this Request as one that seeks documents that are referred to or serve as the basis for an allegation in the Complaint, which includes the documents the United States identified in Exhibit A of its May 15, 2024, Initial Disclosures.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents to the extent they are documents previously produced by Defendants to the United States.

**REQUEST 8:**  All documents related to Your response to the below Interrogatories.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to the

Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that it seeks, without limitation, "all" documents "related to" the Interrogatories.  The United States further objects that, as stated below, Interrogatories 1-3 are premature and, for the same reason, this Request is premature.

Subject to and without waiving the foregoing objections, the United States will produce non-privileged documents in its possession, custody, or control that were relied upon to respond to Defendants' First Set of Interrogatories.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY 1:**  Identify each Allegedly Invalid Prescription that serves as the basis for any claim You assert or may assert in This Litigation.  For each such prescription, identify: (1) the date of the prescription; (b) the store where the prescription was dispensed; (c) the medication, including dosage and strength; (d) the issuing practitioner (including DEA registration number and business address); (e) the date of the issuing practitioner's DEA registration and expiration or revocation (if any); and (f) whether You obtained or reviewed the relevant medical records from any Prescriber associated with the patient who received the prescription.

**ANSWER:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein and further objects to this Interrogatory on the grounds that it is premature.  Responsive documents and information will be available in forthcoming discovery materials and are available in materials to which Defendants already have access, including, but not limited to, Defendants' own dispensing data.  Further, this Interrogatory seeks information that will be addressed by an expert or experts later in litigation.  The United States maintains that this Interrogatory should be deferred to a later time.

19

Subject to and without waiving these objections, the United States responds that Defendants unlawfully dispensed controlled substances each time an employed pharmacist filled a prescription with an obvious combination of red flags showing that the prescription was not issued for a legitimate medical purpose or was issued outside the usual course of professional practice, or both, as alleged in the Complaint, *see* § II.B.2.b.ii, including, but not limited to, prescriptions in the following categories: (1) prescriptions for dangerous combinations of opioids prescribed together or close in time, such as multiple immediate-release opioids and an immediate-release opioid and methadone; (2) prescriptions for "cocktails" of commonly abused drugs, such as an opioid and non-opioid "potentiator," including the following "cocktails": (a) opioid, benzodiazepine, and carisoprodol; (b) opioid, benzodiazepine, and zolpidem; (c) opioid, benzodiazepine, and stimulant; and (d) two or more different immediate-release opioids, benzodiazepine, and either carisoprodol or zolpidem; (3) prescriptions for high dosages of opioids filled repeatedly, which resulted in dangerously high average daily morphine milligram equivalent dosage levels; and (4) prescriptions dispensed to individuals who repeatedly requested early fills.

The United States further responds that Defendants unlawfully dispensed controlled substances each time an employed pharmacist filled a prescription written by certain prescribers, including those identified in the Complaint, *see* § II.B.1.c and II.B.2.b.i, who either the filling pharmacist or one or more members of the "compliance team," as defined in the Complaint, *see* ¶¶ 91-92, knew practiced outside the usual course of professional practice.

The United States specifically objects to Interrogatory 1(e) as overly broad and irrelevant to the parties' claims and pled defenses because the date any Identified Prescriber obtained a

DEA registration is not important to the issues at stake in this action and not likely to help resolve the issues.

The United States specifically objects to Interrogatory 1(f) as overly broad, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that "You" includes information and documents obtained by and medical reviews conducted by a U.S. Attorney's Office or Department of Justice component not in connection with or for purposes of This Litigation and that will not be relied upon in This Litigation.

Subject to and without waiving the foregoing objections, the United States refers to the documents that it will produce in response to Requests 2 and 5 and responds to Interrogatory 1(e) that, after conducting a reasonably diligent search, the list attached hereto as Exhibit A contains the DEA registration information for the prescribers specifically referenced in Section II.B.1.c of the Complaint. "N/A" indicates that no information is available.

**INTERROGATORY 2:** For each Allegedly Invalid Prescription identified in Your response to Interrogatory 1, identify: (1) the reason(s) You contend dispensing the prescription violated 21 C.F.R. 1306.04(a); (b) the methodology or methodologies You used to identify the prescription and to reach any conclusions about the prescription; and (c) any electronic scripts, codes, and analytical programs You used to implement said methodologies.

**ANSWER:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein and further objects to this Interrogatory on the grounds that it is premature. Responsive documents and information will be available in forthcoming discovery materials and are available in materials to which Defendants already have access, including, but not limited to, Defendants' own dispensing data. Further, this Interrogatory seeks

information that will be addressed by an expert or experts later in litigation. The United States maintains that this Interrogatory should be deferred to a later time.

Subject to and without waiving the foregoing objections, the United States answers as follows based upon information available to it at this time. The invalid prescriptions that Defendants filled with the knowledge of one or more members of the compliance team, and that have been identified so far by the United States, and those the United States anticipates identifying in litigation, are or will be based on prescriptions written by prescribers who practiced outside the usual course of professional practice. The United States bases its conclusion that the prescribers practiced outside the usual course of professional practice on the evidence identified in its Initial Disclosures and that it will produce in response to Request 2 and 5.

The invalid prescriptions that Defendants filled with the knowledge of the filling pharmacists and that have been identified so far by the United States, and those the United States anticipates identifying in litigation, are or will be based on prescriptions written by prescribers who the filling pharmacists knew practiced outside the usual course of professional practice, as alleged in the Complaint, *see* § II.B.2.b.i, and based on prescriptions with obvious combinations of red flags showing that the prescriptions were not issued for a legitimate medical purpose or were issued outside the usual course of professional practice, or both, as alleged in the Complaint, *see* § II.B.2.b.ii.

**INTERROGATORY 3:** For each Allegedly Invalid Prescription identified in Your response to Interrogatory 1, identify: (a) the individual(s) You contend knew that the prescription was invalid prior to dispensing; (b) the basis for any such knowledge; and (c) any evidence that the dispensing pharmacist did not adequately evaluate the prescription pursuant to his or her

professional judgment prior to dispensing.  If You contend that any individual dispensed a prescription with knowledge that it was invalid because they were aware of a high risk of invalidity and took affirmative acts to shield themselves from knowledge of the true facts, identify: (a) the reasons You contend any such individual was aware of the high risk of invalidity; and (b) any affirmative acts You contend such individual took to shield themselves from knowledge of the true facts.

**ANSWER:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein and further objects to this Interrogatory on the grounds that it is premature.  Responsive documents and information will be available in forthcoming discovery materials.  Further, this Interrogatory seeks information that will be addressed by an expert or experts later in litigation.  The United States maintains that this Interrogatory should be deferred to a later time.  The United States further objects to the extent that this Interrogatory seeks information that previously has been provided in the United States' Initial Disclosures, *see* Exhibit A.

Subject to and without waiving the foregoing objections, the United States responds as follows based upon information available to it at this time.  As alleged in the Complaint, ¶¶ 108 and 153, from 2011 through 2015, ██████████, and from October 2014 to April 2019, ██████████, knew, or were aware of the high probability, that prescriptions written by certain prescribers were invalid based on the information contained primarily in refusal-to-fill forms and also other sources, *see* ¶¶ 152, 156-161 .  Other members of the compliance team identified in the Complaint, *see* ¶¶ 154, 172, also knew the content of refusal-to-fill forms and received information from other sources and thus knew, or were aware of the high probability, that certain prescribers' prescriptions were invalid, *see* ¶¶ 152, 156-161.  The Complaint alleges that

23

compliance team members took deliberate steps to shield themselves from the truth that

Defendants were filling invalid prescriptions from certain prescribers in various ways alleged in

sections II.B.1.a.iii and II.B.1.b of the Complaint.

Dated: May 31, 2024

DAVID C. WEISS
United States Attorney for the
District of Delaware

DYLAN STEINBERG
Chief, Civil Division
ELIZABETH F. VIEYRA
Assistant United States Attorney
1313 N. Market Street
Wilmington, DE 19801
Elizabeth.vieyra@usdoj.gov
302-573-6148

/s/ Katherine M. Ho

AMANDA N. LISKAMM
Director
Consumer Protection Branch

RACHAEL DOUD
Assistant Director

KATHLEEN B. BRUNSON
KATHERINE M. HO
KIMBERLY R. STEPHENS
Trial Attorneys
U.S. Department of Justice, Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
katherine.ho@usdoj.gov
202-353-7835

ROGER B. HANDBERG
United States Attorney for the
Middle District of Florida

CAROLYN B. TAPIE
LINDSAY S. GRIFFIN
Special Attorneys to the Attorney General
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Carolyn.b.tapie@usdoj.gov
813-274-6000

BREON PEACE
United States Attorney for the Eastern
District of New York

ELLIOT M. SCHACHNER
MEGAN FREISMUTH
Special Attorneys to the Attorney General
271 Cadman Plaza East
Brooklyn, NY 11201
Elliot.schachner@usdoj.gov
718-254-7000

MICHAEL F. EASLEY, JR.
United States Attorney for the Eastern
District of North Carolina

C. MICHAEL ANDERSON
ANDREW KASPER
Special Attorneys to the Attorney General
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Michael.anderson7@usdoj.gov
919-856-4619

*Counsel for Plaintiff*
*United States of America*

EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____ )
UNITED STATES OF AMERICA,                )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )        Case No. 1:20-cv-01744-CFC
                                         )
WALMART INC. and                         )
WAL-MART STORES EAST, LP,                )
                                         )
            Defendants.                  )
_____ )

### PLAINTIFF UNITED STATES OF AMERICA'S
### OBJECTIONS AND RESPONSES TO DEFENDANTS'
### SECOND SET OF REQUESTS FOR PRODUCTION

Under Federal Rules of Civil Procedure 26 and 34, the Local Rules of Civil Practice

and Procedure of the U.S. District Court of Delaware, and the Court's Scheduling Order (D.I.

124), Plaintiff United States of America objects and responds to Defendants' Second Set of

Requests for Production ("the Requests"), served on May 8, 2024, as follows:

### RESERVATION OF RIGHTS

1.      The United States reserves the right to supplement, clarify, revise, or correct any

or all of its responses set forth herein at any time according to the Federal Rules of Civil

Procedure.  The responses set forth below are accurate to the best of the United States'

knowledge as of this date.  The United States' investigation is continuing, and thus the United

States may obtain additional responsive information through discovery and further investigation

and review of documents.

2.      The United States provides these responses without implying or admitting that the

Requests, responses, or referenced documents are relevant to any parties' claims or pled

defenses.

3.      By providing the following responses to Defendants' Requests, including by referring to documents that it will produce, the United States does not waive, and expressly reserves, its right to assert any and all objections to the admissibility of the responses or referenced documents into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, and privilege.

4.      If the United States produces any information or documents that could have been withheld based on any one or more of the objections set forth herein, the production of any such information and/or documents shall not constitute a waiver of such objections and shall not affect the United States' right to withhold from production any other existing information and documents governed by those objections.

5.      The enumeration of specific objections in the United States' responses shall not be deemed a waiver of other applicable objections.

6.      All responses are based on the United States' best understanding of the Requests and/or terms used therein.  Such responses cannot properly be used as evidence except in the context in which the United States understood the Requests and their terms.

7.      If Defendants are dissatisfied with any of the United States' responses, the United States will confer in good faith with the Defendants in an attempt to resolve any dispute, pursuant to Federal Rule of Civil Procedure 37, Judge Connolly's Procedures for "Disputes Relating to Discovery Matters and Protective Orders," and the Court's Scheduling Order (D.I. 124 at ¶ 7).

## <u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>

These statements and objections apply to and are incorporated into each response as though restated in full in the United States' responses to each Request:

1.      The United States objects to the Requests to the extent they seek documents or information not relevant to the United States' claims or Defendants' pled defenses.  The sole issue of liability in this case is whether Defendants knowingly dispensed controlled substances pursuant to prescriptions that were issued not in the usual course of professional treatment, not for a legitimate medical purpose, or both, during the "Dispensing Violations Period," as defined in the Complaint.  *See* D.I. 109 at ¶ 17.  Documents or information that do not inform that analysis, or the factors pertinent to assessing a civil penalty or imposing injunctive relief, are irrelevant to the claims and pled defenses.  Irrelevant documents and information include, but are not limited to, documents and information pertaining to the Complaint's Third and Fourth Claims, which were dismissed on March 11, 2024.  *See* D.I. 117.

2.      The United States objects to Definition 6 ("Controlled Substance") to the extent that it limits the definition to substances classified as a controlled substance only between January 1, 2010, and December 20, 2020.

3.      The United States objects to Definition 9 ("Government Payor") to the extent that it expands the meaning of "pay" to include entities that do not pay funds for health care services but only "administe[r]. . . . contrac[t] for, or provid[e]" medical items, services, and/or prescription drugs.

4.      The United States objects to Definition 10 ("Government Healthcare Facility") as vague by use of the vague and undefined terms "affiliated with" and "supported by."  The United States further objects to Definition 10 as overly broad, unduly burdensome, disproportionate to

the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that healthcare facilities that are "affiliated with" or "supported by" the United States government may include healthcare entities that partner with United States government agencies for purposes irrelevant to any claim or pled defense or that receive funding or grants from the United States government, which does not render their operations relevant to any claim or pled defense. Similarly, healthcare entities that are "operated" or "owned" by the United States government include entities whose operations are irrelevant to any claim or pled defense.

5.      The United States objects to Definition 13 ("Opioid Litigation") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent the definition includes litigation (a) without any time limitation; (b) without any limitation as to the parties to the proceedings in "federal and state court" and regardless of whether the United States participated in the litigation; (c) related to the "marketing, sales, [and] distribution . . . of opioid products," when the pending claims in this action allege violations related to only dispensing of controlled substances; (d) related to "opioid products," to the extent that this vague term includes products that are not controlled substances; and (e) regardless of whether the litigation related to unlawful dispensing of controlled substances by Defendants as alleged in the Complaint during the Dispensing Violations Period, or addressed sufficiently similar issues so that the litigation bears on the issues at stake in this action.

Unless otherwise specified herein, the United States will construe Definition 10 to include only documents and information from *In re National Prescription Opioid Litigation*, MDL Case No. 2804, in the United States District Court for the Northern District of Ohio ("MDL") and litigation initiated by the United States Department of Justice ("DOJ") or the Drug

Enforcement Administration ("DEA") against Defendants or against any prescriber specifically referenced in Section II.B.1.c of the Complaint or whose prescriptions serve as the basis for the United States' Second Claim.

6.      The United States objects to Definition 16 ("Prescriber") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent the definition includes health care practitioners who are licensed and registered to prescribe prescription medications but not medications containing a controlled substance.

7.      The United States objects to Definition 19 ("Relevant Time Period") to the extent that this definition limits the relevant time period to December 20, 2020, before the filing of the Complaint on February 1, 2024.

8.      The United States objects to Definition 20 ("State Agencies") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent it depends on the vague terms "health-related" and "oversee," and the vague phrase "activities relating to prescribing, dispensing, or distributing Controlled Substances."  An activity related to the dispensing of controlled substances includes, for example, employing pharmacists, an activity that would be subject to state regulations requiring workers' compensation insurance, which is irrelevant to the parties' claims and pled defenses.

9.      The United States objects to Definition 24 ("You" or "Your") as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses to the extent that "You" includes the United States and all its agencies and individual officers and employees.  The United States further objects on the same grounds to

the extent that "You" includes the twelve federal agencies identified in Definition 24, 94 U.S. Attorney's Offices, and every Government Healthcare Facility and all their employed healthcare professionals.

Except where the United States expressly represents that it is providing documents from other federal agencies or components, it will construe Definition 24 to include only the DEA and those DOJ components that participated in This Litigation or the investigation leading to This Litigation or that were responsible for a criminal case against any prescriber identified in Section II.B.1.c of the Complaint or any prescriber whose prescriptions serve as the basis for the United States' Second Claim.

10.    The United States objects to Instruction 1's ambiguous instruction that responses include documents limited to the Relevant Time Period but also "regardless of creation date." To the extent that the Instruction seeks responses with no time limitation, the United States objects to Instruction 1 as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and pled defenses.  The United States' claims are based on dispensing violations during the Dispensing Violations Period.  In addition, a portion of the claims rely on particular criminal cases and investigations that pre-date the Dispensing Violations Period.  Unless otherwise expressly indicated or agreed to, the United States will limit its responses to information from the Dispensing Violations Period for Requests and Interrogatories unrelated to a criminal case or investigation.  For Requests related to a particular criminal case or investigation, the United States will search for responsive documents from the time periods during which the criminal case or the related investigation was pending.

11.    The United States objects to Instruction 4, which requires the United States to state whether "no documents or information exist that are responsive to a specific Request," as

unduly burdensome and premature at this point in the litigation. The United States will be unable, before its search for responsive documents and at this stage of discovery, to determine whether no documents exist responsive to any particular Request.

12.     The United States objects to Instruction 5, which requires the United States to "state which documents or information will be withheld [based on a claim of privilege or attorney work product] and which documents or information will be produced or provided notwithstanding such objections," as unduly burdensome at this point and before the United States is required to produce a privilege log under the Order Regarding Discovery of Documents and Electronically Stored Information, entered on May 15, 2024. *See* D.I. 132 ("ESI Order"). The United States' identification, collection, and review of documents and information responsive to Defendants' Requests are ongoing and the United States is unable to identify and describe documents or information at this time that will be withheld from inspection and production on the basis of its stated objections. The United States will provide a privilege log for any documents withheld in accordance with the ESI Order.

13.     The United States objects to Instruction 10 as overly broad and unduly burdensome to the extent that it includes a duty to produce documents that are "known by" or "available to" but not in the possession, custody, or control of the United States.

14.     The United States objects to the Requests to the extent they seek documents or information protected by the deliberative process privilege. Documents or information reflecting advisory opinions, recommendations, or deliberations by which governmental decisions and policies are formulated are protected from disclosure. Such disclosures would reveal the deliberative process of agency officials and would serve to undermine the quality of agency decisions, which is the foundation for the deliberative process privilege.

15.     The United States objects to the Requests to the extent they seek documents or information protected by either the attorney-client privilege or the work-product doctrine. Communications made between attorneys (and their agents and support staff) and their clients for the purpose of obtaining or providing legal assistance to the clients are protected from disclosure.  Legal assistance given to the DEA by agency counsel or other lawyers within DOJ, if any, is covered by these privileges.  Similarly, documents prepared in anticipation of litigation, not only created by attorneys, but also those created by investigators and other agents, are also protected from disclosure.  The United States will withhold documents and information protected by the attorney-client privilege or the work-product doctrine.

16.     The United States objects to the Requests to the extent they seek documents or information protected by the law enforcement privilege. Such privilege extends to and includes law enforcement techniques and procedures.

17.     The United States objects to the Requests to the extent they seek documents or information protected by Federal Rule of Criminal Procedure 6(e).  Federal Rule of Criminal Procedure 6(e) limits the disclosure of grand jury materials, to the extent they exist, to the circumstances defined in Rule 6(e)(3)(E), an exclusive list of exceptions to the general rule of grand jury secrecy.

### SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST 1**:  All Documents on which You have relied or intend to rely in support of Your allegations, claims, and defenses in This Litigation.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection that this Request seeks documents protected by the attorney-client privilege and attorney work-product doctrine.

The United States further objects that this Request duplicates Requests 5 and 7 in Defendants' First Set of Requests for Production seeking "Documents relating to any investigation, enforcement, or disciplinary action concerning any Identified Prescriber, including without limitation all related Investigative Reports, interviews, notes, data, and data analyses" and "[a]ll Documents referenced in, cited in, referred to, or relied upon by You in drafting the Complaint." The United States further objects to this Request on the grounds that it is premature to the extent that it seeks documents related to expert testimony and documents not yet in the United States' possession, custody, or control.

Subject to and without waiving the foregoing objections, the United States responds by incorporating by reference its responses to Requests 5 and 7 in Defendants' First Set of Requests for Production and will produce responsive non-privileged documents in its possession, custody, or control.

**REQUEST 2:**  All Documents relied upon by You to support Your allegation in Paragraph 8 of the Complaint that "[t]he usual course of professional pharmacy practice requires identification and resolution of 'red flags' – signs indicating the potential invalidity of a prescription."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if set forth fully herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint," and partially duplicative of Request 55(d) below.

The United States further objects to the extent that this Request seeks information that will be addressed by an expert or experts later in litigation. The United States will provide responsive non-privileged documents when they are available. The United States further objects that this Request seeks documents protected by the attorney work-product doctrine, including documents related to the work of consulting experts. The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial

Disclosures.  The United States further refers to WMT_DCO_00000031 and WMT_DOJ_000136298, which support the referenced allegation.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 3:**  All Documents relied upon by You to support Your allegation in Paragraph 59 of the Complaint that a pharmacist has a "corresponding responsibility" to "independently determine that the prescription was issued in the usual course of professional practice and for a legitimate medical purpose."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the extent that this Request seeks information that will be addressed by an expert or experts later in litigation.  The United States will provide responsive non-privileged documents when they are available.  The United States further objects that this Request seeks documents protected by the deliberative process privilege and attorney work-product doctrine, including documents related to the work of consulting experts.  The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegation and to identify the documents as supportive specifically of the

allegation on an ongoing basis as discovery continues.  The United States construes this Request

as seeking documents on which the United States actually relied to support the referenced

allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects

to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegation and to do so by identifying the documents specifically as

supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers to its

response to Request 7 of Defendants' First Set of Requests for Production and First Set of

Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial

Disclosures.  The United States further refers to WMT_DCO_00000031 and

WMT_DOJ_000136298, which support the referenced allegation.  Pursuant to the ESI Order, *see*

¶ 53, the United States will not reproduce these documents, which were previously produced by

Defendants to the United States.  The United States also relies on 21 C.F.R. § 1306.04 and case

law interpreting that regulation, and objects to this Request to the extent that it seeks legal

authority, which is beyond the proper scope of Rules 26 and 34.

**REQUEST 4:**  All Documents relied upon by You to support Your allegation in

Paragraph 71 that "one of the key professional responsibilities of a pharmacist, when presented

with a prescription for controlled substances, is to identify the presence of red flags of

diversion."

    **RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint," and partially duplicative of Request 55(d) below.

    The United States further objects to the extent that this Request seeks information that will be addressed by an expert or experts later in litigation.  The United States will provide responsive non-privileged documents when they are available.  The United States further objects that this Request seeks documents protected by the deliberative process privilege and attorney work-product doctrine, including documents related to the work of consulting experts.  The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

    The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced

allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DCO_00000031 and WMT_DOJ_000136298, which support the referenced allegation. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 5:**  All Documents relied upon by You to support Your allegation in Paragraph 72 purporting to identify certain "red flags" that are "indicative of invalidity."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint," and partially duplicative of Request 55(d) below.

The United States further objects to the extent that this Request seeks information that will be addressed by an expert or experts later in litigation. The United States will provide responsive non-privileged documents when they are available. The United States further objects

14

that this Request seeks documents protected by the deliberative process privilege and attorney work-product doctrine, including documents related to the work of consulting experts. The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DCO_00000031 and WMT_DOJ_000136298, which support the referenced allegation. Pursuant to the ESI Order, *see*

¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 6:** All Documents relied upon by You to support Your allegation in Paragraph 73 of the Complaint that a "basic professional obligation of pharmacists presented with a controlled-substance prescription is to resolve each red flag they identify" and purporting to identify certain actions the pharmacist might undertake for such resolution.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint," and is partially duplicative of Request 55(d) below.

The United States further objects to the extent that this Request seeks information that will be addressed by an expert or experts later in litigation. The United States will provide responsive non-privileged documents when they are available. The United States further objects that this Request seeks documents protected by the deliberative process privilege and attorney work-product doctrine, including documents related to the work of consulting experts. The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_DCO_00000031, WMT_DOJ_000580152, and WMT_DOJ_000136298, which support the referenced allegation. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 7:**  All Documents relied upon by You to support Your allegations in Paragraph 74 of the Complaint, including:

(a)     That "if a pharmacist identifies and resolves red flags, the pharmacist has an additional professional responsibility to document that resolution;"

(b)     That "the absence of documentation can indicate that the pharmacist did not successfully resolve the red flag;" and

(c)     That "pharmacists presented with a controlled-substance prescription bearing a
red flag must investigate and either (a) resolve the red flag before dispensing and document the
resolution, or (b) refuse to fill the prescription."

**RESPONSE:**  The United States incorporates by reference the objections to the
definitions and instructions as if fully set forth herein.  The United States further objects to this
Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First
Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or
relied upon by [the United States] in drafting the Complaint," and partially duplicative of
Request 55(d) below.

The United States further objects that this request seeks information that will be
addressed by an expert or experts later in litigation.  The United States will provide responsive
non-privileged documents when they are available.  The United States further objects that this
Request seeks documents protected by the deliberative process privilege and attorney work-
product doctrine, including documents related to the work of consulting experts.  The United
States will provide a log of documents withheld based on privilege pursuant to Section IV of the
ESI.

The United States further objects to the vague phrase "relied upon by You to support
Your allegations," which, depending on how it is interpreted, potentially renders this Request
unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could
be read to include any document on which the United States relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to
require the United States to produce any document on which it might rely in the future to support
the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_DCO_00000031, WMT_DOJ_000136298, and WMT_EDTX_00192238, which support the referenced allegations.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 8:**  All Documents relating to the March 2011 Memorandum of Agreement referenced in Paragraph 95 of the Complaint, including:

**REQUEST 8(a):**  Documents relating to Walmart's compliance or non-compliance with the Memorandum of Agreement[.]

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  Subject to those objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 8(b):**  Documents provided to You pursuant to the Memorandum of Agreement as described in Paragraphs 98 and 108[.]

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein and further objects that this request seeks documents in Defendants' possession, custody, or control.  Subject to and without waiving the foregoing objections, the United States responds that responsive documents consist of the forms that Defendants submitted to the DEA pursuant to the March 2011 Memorandum of Agreement and that Defendants produced in response to DEA subpoenas MW-19-322366, MW-18-817060, MW-18-817014, MW-18-816990, and MW-18-768156.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents to the extent they are documents previously produced by Defendants to the United States.

**REQUEST 8(c):**  Documents relating to any action or inaction by You regarding any RTF submitted to You by Walmart under the terms of said Memorandum of Agreement.

**RESPONSE:**  The United States incorporates the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 24 ("You").  The United States specifically objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control that are responsive to the parties' claims or pled defenses as applied against the United States, following a reasonable

inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 9:**  All Documents relied upon by You to support Your allegation in Paragraph 103 of the Complaint that "the compliance team also had the ultimate authority to instruct Walmart's pharmacists to refuse to fill specific prescriptions."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_DOJ_000101620, which was relied upon to support the referenced allegation in Paragraph 103 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this document, which was previously produced by Defendants to the United States.

**REQUEST 10:**  All Documents relied upon by You to support Your allegations in Paragraph 161 that ████████████ "was sentenced to 20 years' imprisonment for CSA violations" and that "[a] pharmacist contacted the state medical board because of her concerns about the amount of controlled substances that █████ prescribed."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced

22

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues.  The United States construes this Request

as seeking documents on which the United States actually relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

objects to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegations and to do so by identifying the documents specifically as

supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers

Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and

First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024

Initial Disclosures.  The United States further refers to WMT_DOJ_000453809, which was

relied upon to support the referenced allegations in Paragraph 161 at the time the Second

Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the

United States will not reproduce this document, which was previously produced by Defendants

to the United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Verdict Form, ███████████████ (E.D.N.C.), Case No. ███████████,

Docket Entry 406, 4/16/2018; (2) Judgment in a Criminal Case, ███████████████

(E.D.N.C.), Case No. ████████████, Docket Entry 447, 8/27/2018.

**REQUEST 11:**  All Documents relied upon by You to support Your allegations in

Paragraph 162 that "pharmacy shopping occurred … between Walmart and competing pharmacies."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and

First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States refers to the refusal-to-fill forms submitted for prescriptions written by ███████████████████████████████████████████ ████████████████████████████████████████████████, which were relied upon to support the referenced allegations in Paragraph 162 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.  The United States will produce a list of the refusal-to-fill forms identified by Bates numbers.

**REQUEST 12:**  All Documents relied upon by You to support Your allegations in Paragraph 165 that an unidentified Prescriber "admitted in 2021 to the Nevada Board of Medical Examiners that he failed to adequately supervise his son, who was not a licensed medical practitioner and who prescribed controlled substances without determining whether they were medically necessary."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States will produce the following responsive non-privileged document: First Amended Complaint and Settlement Agreement and Order, In the Matter of Charges and Complaint Against ████████████, M.D., Board of Medical Examiners of the State of Nevada, Case No. ████████, 11/03/2021.

**REQUEST 13:**  All Documents relied upon by You to support Your allegations in Paragraph 168 that "[c]ompliance team members knew… that the compliance team had the ability to slow or stop, or by contrast, encourage the stream of invalid prescriptions by their policies" and that "[t]he fewer controls they put in place, the more likely it was that invalid prescriptions would continue to be presented at their pharmacies."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DOJ_000516879, which relied upon to support the referenced allegations in Paragraph 168 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the

United States will not reproduce this document, which was previously produced by Defendants to the United States.

**REQUEST 14:**  All Documents relied upon by You to support Your allegations in Paragraph 168 that Walmart's policies were "more liberal" compared to those of other retail chain pharmacies.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_DOJ_000516879, which was relied upon to support the referenced allegations in Paragraph 168 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this document, which was previously produced by Defendants to the United States.

**REQUEST 15:**  All Documents relied upon by You to support Your allegation in Paragraph 177 that "the compliance team chose to make little use of refusal-to-fill information, even though they recognized the value in the information."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_DOJ_000045119, WMT_DOJ_000060543, WMT_DOJ_000038703, WMT_DOJ_000038985, and WMT_EDTX_00127345, which were relied upon to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 16:**  All Documents relied upon by You to support Your allegation in Paragraph 184 that the compliance team "generally did nothing to investigate individual Prescribers" and "failed to retrieve readily available public information showing that certain reported pill-mill prescribers faced administrative actions by state medical licensing boards and

criminal prosecutions by state and federal authorities," including the "public information" that
was allegedly "readily available" to the compliance team.

**RESPONSE:** The United States incorporates by reference the objections to the
definitions and instructions as if fully set forth herein. The United States further objects to this
Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First
Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or
relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support
Your allegation," which, depending on how it is interpreted, potentially renders this Request
unduly burdensome and disproportionate to the needs of the case. For example, the phrase could
be read to include any document on which the United States relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to
require the United States to produce any document on which it might rely in the future to support
the referenced allegation and to identify the documents as supportive specifically of the
allegation on an ongoing basis as discovery continues. The United States construes this Request
as seeking documents on which the United States actually relied to support the referenced
allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects
to this Request as unduly burdensome to the extent it seeks to require the United States to
produce any other documents it identifies during the course of discovery on which it might rely
to support the referenced allegation and to do so by identifying the documents specifically as
supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers
Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and

First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DOJ_000067837, which was relied upon to support the referenced allegation in Paragraph 184 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this document, which was previously produced by Defendants to the United States.

**REQUEST 17**:  All Documents relied upon by You to support Your allegation in Paragraph 184 that the compliance team "often failed to contact other non-Walmart pharmacies that had decided not to fill prescriptions for reported pill-mill prescribers."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced

allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States expects that additional documents responsive to this request will be protected by the attorney work-product doctrine and will be listed on the United States' privilege log.

**REQUEST 18:** All Documents relied upon by You to support Your allegation in Paragraph 189 of the Complaint that the compliance team "did nothing to ensure that they would learn the details of the pill-mill prescribers before any pharmacist decided to blanket refuse those prescribers."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could

be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_EDTX_00115346, WMT_DOJ_000018967, and WMT_DOJ_000154084, which were relied upon to support the referenced allegation in Paragraph 189 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 19:** All Documents relied upon by You to support Your allegation in Paragraph 190 of the Complaint that "members of the compliance team were uninterested in the details of government investigations of certain prescribers."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DOJ_000154084,

WMT_EDTX_00064709, MDL Trial Exh. P-08069_00001, WMT_MDL_001203706, MDL Trial Exh. P-26882_00001, and WMT_MDL_001468783, which were relied upon to support the referenced allegation in Paragraph 190 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

      **REQUEST 20:**  All Documents relied upon by You to support Your allegation in Paragraph 190 of the Complaint that "[e]ven when DEA asked Walmart to voluntarily stop filling for a prescriber, B.N. believed that Walmart should not comply."

      **RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

      The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced

allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_MDL_001468784, which was relied upon to support the referenced allegation in Paragraph 190 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this document, to which Defendants already have access from the MDL litigation.

**REQUEST 21:**  All Documents relied upon by You to support Your allegation in Paragraph 195 of the Complaint that "since a pill-mill prescriber practices outside the usual course, all prescriptions from such a prescriber are invalid."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects that this request seeks information that will be addressed by an expert or experts later in litigation.  The United States will provide responsive non-privileged documents when they are available.  The United States relied on 21 C.F.R. § 1306.04 and case law interpreting that regulation, and objects to this Request to the extent that it seeks legal authority, which is beyond the proper scope of Rules 26 and 34.

**REQUEST 22:** All Documents relied upon by You to support Your allegation in Paragraph 195 of the Complaint that "the compliance team, for years, acted to keep the information about pill-mill prescribers to themselves."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers

Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and

First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024

Initial Disclosures.  The United States further refers to WMT_EDTX_00007753,

WMT_DOJ_000009018, WMT_DOJ_000211683, WMT_DOJ_000211682,

WMT_DOJ_000038703 at WMT_DOJ_000038731, WMT_DOJ_000249184,

WMT_DOJ_000013641, WMT_DOJ_000013641, WMT_DCO_00000061, WMT_000053434,

WMT_DOJ_000417801, WMT_DOJ_000170727, and MDL Exh. P-26705_00001 at

WMT_MDL_000508416, which were relied upon to support the referenced allegation in

Paragraph 195 at the time the Second Amended Complaint was filed on February 1, 2024.

Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which

were previously produced by Defendants to the United States or are documents to which

Defendants already have access from the MDL litigation.

    **REQUEST 23:** All Documents relied upon by You to support Your allegation in

Paragraph 198 of the Complaint that the compliance team "did not consider the need to be

urgent" to disseminate refusal-to-fill information to its pharmacists.

    **RESPONSE:** The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects to this

Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or

relied upon by [the United States] in drafting the Complaint."

    The United States further objects to the vague phrase "relied upon by You to support

Your allegation," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_DOJ_000038703 and WMT_DOJ_000038731, which were relied upon to support the referenced allegation in Paragraph 198 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 24:** All Documents relied upon by You to support Your allegation in Paragraph 207 of the Complaint that "the compliance team not only chose for years not to adequately distribute refusal-to-fill information but also affirmatively refused specific requests for the information."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_EDTX_00007646, which was

relied upon to support the referenced allegation in Paragraph 207 at the time the Second

Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the

United States will not reproduce this document, which was previously produced by Defendants

to the United States.

      **REQUEST 25:**  All Documents relied upon by You to support Your allegation in

Paragraph 213 of the Complaint that, "[b]y clearly prohibiting blanket refusals, the compliance

team members knew they were creating a bias toward filling prescriptions, thus making it more

probable that pharmacists would fill invalid prescriptions."

      **RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects to this

Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or

relied upon by [the United States] in drafting the Complaint."

      The United States further objects to the vague phrase "relied upon by You to support

Your allegation," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegation and to identify the documents as supportive specifically of the

allegation on an ongoing basis as discovery continues.  The United States construes this Request

as seeking documents on which the United States actually relied to support the referenced

allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects

to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegation and to do so by identifying the documents specifically as

supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers

Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and

First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024

Initial Disclosures.  The United States further refers to WMT_EDTX_00007646,

WMT_DOJ_000340366, WMT_DOJ_000580151, WMT_DOJ_000114923,

WMT_DOJ_000008754, and WMT_DOJ_000206689, which were relied upon to support the

referenced allegation in Paragraph 213 at the time the Second Amended Complaint was filed on

February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these

documents, which were previously produced by Defendants to the United States.

**REQUEST 26:**  All Documents relating to or relied upon by You to support Your

allegation in Paragraph 216 of the Complaint that "[t]his prohibition against blanket refusals was

not … required by law" and Your allegation in Paragraph 218 that "blanket refusals were

permitted under state law."

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects that this

request seeks information that will be addressed by an expert or experts later in litigation.  The

United States will provide responsive non-privileged documents when they are available.  The

United States further objects that responsive documents include information equally available to

Defendants, that is, the text of the laws of each of the fifty states governing the practice of

pharmacy.

**REQUEST 27:**  All Documents relied upon by You to support Your allegation in Paragraph 219 of the Complaint that, "[b]y forbidding blanket refusals, Walmart's compliance team knew they were encouraging pharmacists to fill, rather than question, prescriptions."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers Walmart to MDL Trial Exh. P-26882_00001 and WMT_MDL_001468784, which were relied upon to support the referenced allegation in Paragraph 219 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

**REQUEST 28:**  All Documents relating to the DEA investigation of the unidentified Prescriber You reference in Paragraph 219 of the Complaint.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States will search for and produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.  The United States furthers refers to WMT_MDL_001468784 for the communications described in paragraph 219 of the Complaint.

**REQUEST 29:** All Documents relied upon by You to support Your allegation in Paragraph 221 of the Complaint that "[t]he compliance team chose to withhold…information that would have revealed to its pharmacists that certain prescribers were pill mills," and Documents sufficient to show the information that You allege was withheld.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this

Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_MDL_001017453, WMT_DOJ_000383768, WMT_DOJ_000008751, WMT_DOJ_00012648, WMT_DOJ_000041922 at WMT_DOJ_000041949, WMT_EDTX_00063225,

WMT_EDTX_000063223, and MDL Trial Exh. P-08037_00001, which were relied upon to support the referenced allegation in Paragraph 219 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

**REQUEST 30:**  All Documents relied upon by You to support Your allegation in Paragraph 227 of the Complaint that "[t]he decisions regarding refusal-to-fill information, blanket refusals, and corporate blocks all reflected a decision to leave pharmacists on their own."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects

to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_EDTX_00007646, WMT_EDTX_00012648, WMT_EDTX_00063306, WMT_EDTX_00063403, WMT_MDL_001017453, WMT_MDL_001764118, WMT_MDL_000508416, WMT_DOJ_000120925, WMT_DOJ_000417801, and WMT_DOJ_000170727, which were relied upon to support the referenced allegation in Paragraph 227 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

**REQUEST 31:**  All Documents relied upon by You to support Your allegation in paragraph 227 of the Complaint that "the compliance team regularly declined specific requests for help."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DOJ_000340366, WMT_DOJ_000120925, WMT_DOJ_000544427, WMT_EDTX_00063306, WMT_EDTX_00063403, and MDL Trial Exh. P-14643_00001, which were relied upon to support the referenced allegation in Paragraph 227 at the time the Second Amended Complaint

was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

**REQUEST 32:**  All Documents relating to the unidentified Prescriber You reference in Paragraphs 229 and 230 of the Complaint, including Documents relating to the one-year suspension of that Prescriber, and the referenced investigation by the Oregon State Board of Nursing.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  Subject to and without waiving those objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.  The United States further refers to the Stipulated Order for Suspension of RN License and Adult Nurse Practitioner Certificate with Conditions Followed by Probation, Oregon State Board of Nursing, *In the Matter of* ███████████████████, Case No. ████████ and MDL Plaintiffs' Trial Exhibit P-14643_00001, to which Defendants already have access from the MDL litigation.

**REQUEST 33:**  All Documents relied upon by You to support Your allegations regarding ████████ in Paragraphs 159 and 236-244 of the Complaint, including:

(a)  Your allegation in Paragraph 159 that ██████ "prescribing habits violated the Delaware Medical Practices Act."

(b)  Your allegations in Paragraph 236 of the Complaint that ████: (i) "prescribed excessive doses of opioids without appropriately discussing the risks with his patients, monitoring his patients, or incorporating other treatments," and (ii) "was known for prescribing

Percocet (oxycodone-acetaminophen) after performing what one person described as the 'most

trivial' of exams."

(c)  Your allegations in Paragraphs 243 and 244 of the Complaint regarding the

investigation of ███ by the Delaware Division of Public Health, the "multi-day hearing"; and

███ suspension by the Delaware Secretary of State.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  Further, the United States no longer

intends to rely on prescriptions written by ███████ to support the Second Claim of the

Complaint.  Should Defendants still seek documents responsive to this Request, the United

States would specifically object that the Request seeks documents that are irrelevant to the

parties' claims and pled defenses.

**REQUEST 34:**  All Documents relied upon by You to support Your allegations

regarding ███████ in Paragraphs 128 and 245-254 of the Complaint, including:

(a)  Your allegations in Paragraph 245 of the Complaint that ███: (i) "prescribed

massive quantities of controlled substances, including the trinity combination of an opioid, a

benzodiazepine, and carisoprodol"; (ii) "prescribed this dangerous cocktail more frequently to

Medicare patients than did any other physician in the United States"; (3) "accepted only cash for

his office visits"; (iii) "falsely claimed to work for the Department of Justice and displayed a

fake police badge to intimidate patients"; and "exploited female patients and coerced some of

them into providing sexual favors in exchange for controlled substances."

(b)  Your allegation in Paragraph 251 of the Complaint that "[a]s other pharmacies in

Savannah stopped filling ███ prescriptions, individuals turned to Walmart to get them

filled."

51

(c)  Your allegations in Paragraph 254 of the Complaint regarding ▇▇▇▇ 2019 trial, conviction, and sentencing.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and

52

WMT_DOJ_000011630, WMT_EDTX_00047861, WMT_EDTX_00048371,

WMT_EDTX_00058720, WMT_EDTX_00065205, WMT_EDTX_00246484,

WMT_EDTX_00047862, WMT_EDTX_00062429, WMT_EDTX_00058720,

WMT_EDTX_00065205, and WMT_EDTX_00137766, which were relied upon to support the

referenced allegations in Paragraphs 128 and 245-254 at the time the Second Amended

Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States

will not reproduce these documents, which were previously produced by Defendants to the

United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Law Enforcement Executive Summary, Person of Interest: █████████,

Walmart Global Investigations, 09/30/2019; (2) CDC Clinical Practice Guideline for Prescribing

Opioids for Pain - United States, 2022; (3) Jury Trial Transcripts (Witnesses Mariangeli

Hamilton, Angela Coleman, Rob Gibbons, Jessica Davis, Christy Lynn Smith Ward, Jennie

Marie Thomas, Jessica Hope Peterson, Ginger Lago), █████████████ (S.D.G.A.), Case

No. █████████, Docket Entries 171, 172, 01/31/2020; (4) Judgment, ██████████████

(S.D.G.A.), Case No. ██████████, Docket Entry 185, 2/19/2020; (5) Verdict Form, █████

█████████ (S.D.G.A.), Case No. ███████████, Docket Entry 152, 10/10/2019.

**REQUEST 35:**  All Documents relied upon by You to support Your allegations

regarding ██████████ in Paragraphs 162, 255-262, and 531-537 of the Complaint, including:

(a)  Your allegation in Paragraph 255 of the Complaint that █████ "rarely conducted

physical or diagnostic examinations of his patients, ignored signs of drug diversion, and

prescribed excessive amounts of opiates, including oxycodone, hydrocodone, hydromorphone,

and morphine."

(b)  Your allegations in Paragraph 256 of the Complaint that "[d]uring the investigation

of █████": (i) "he and his business partner asked an undercover agent to smuggle a Hungarian

national into the United States"; (ii) "[i]n return, █████ prescribed the agent an increased

amount of oxycodone and hydromorphone, and █████ business partner paid the agent $5,000

in cash"; and (iii) "█████ instructed the agent to fabricate an injury to justify the increased

amounts of opioids and explained to the agent how to falsify his patient history."

(c)  Your allegations in Paragraph 262 of the Complaint regarding █████ 2017 trial,

conviction, and sentencing.

**RESPONSE:** The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects to this

Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production

and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support

Your allegations," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues.  The United States construes this Request

as seeking documents on which the United States actually relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

objects to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 11 related to Paragraph 162 of the Complaint.  The United States further refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_DOJ_000296686, WMT_EDTX_00040459, WMT_EDTX_00055128, WMT_DOJ_000160889, WMT_DOJ_000297186, WMT_DOJ_000296454, WMT_DOJ_000296584, WMT_DOJ_000296648, WMT_EDTX_00045598, WMT_EDTX_00141696, WMT_DOJ_000283112, and WMT_EDTX_00130993, which were relied upon to support the referenced allegations in Paragraphs 128 and 245-254 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Trial Transcript (Expert Witness Dr. Mark Rubenstein), ▮▮▮▮▮▮▮▮▮▮ (M.D. Fla.), Case No. ▮▮▮▮▮▮▮▮, Docket Entry 255, 03/09/2018; (2) Trial Transcript (Witness Brian Zdrojewski), ▮▮▮▮▮▮▮▮ (M.D. Fla.), Case No. ▮▮▮▮▮▮ ▮▮, Docket Entries 251, 252, 03/09/2018; and (3) Verdict, ▮▮▮▮▮▮▮▮ (M.D. Fla.), Case No. ▮▮▮▮▮▮, Docket Entry 143, 7/20/2017.

**REQUEST 36:**  All Documents relied upon by You to support Your allegations regarding ▮▮▮▮▮ in Paragraphs 162 and 263-275 of the Complaint, including:

(a)    Your allegations in Paragraph 263 of the Complaint that: (i) ▮▮▮ "has a record of criminal and professional misconduct going back to 2005";

(ii) the Medical Licensing Board of Indiana ("MLBI") suspended ▮▮▮ in 2005; (iii) the MLBI found "that his practice would present a 'clear and immediate danger to the public health and safety' if allowed to continue because he had allowed an unlicensed individual to prescribe drugs using ▮▮▮ DEA registration number and to treat ▮▮▮ patients"; and (iv) "▮▮▮ had hired that individual knowing that the individual was not licensed to practice medicine and had paid him $20 per hour."

(b)    Your allegation in Paragraph 264 of the Complaint that the "indefinite probation" of ▮▮▮ medical license in 2006 "did not have a substantial effect on his ability to practice medicine or prescribe controlled substances."

(c)    Your allegations in Paragraph 265 of the Complaint that in May 2011, "in an interview with law enforcement officers," ▮▮▮ admitted "providing medical treatment to his live-in housekeeper, with whom he was in a romantic relationship" and "also admitted knowing that she was addicted to controlled substances and prescribing hydrocodone to her when she experienced withdrawal symptoms."

(d)    Your allegation in Paragraph 266 of the Complaint regarding the MLBI's 2015 suspension of ▮▮▮ license and finding, "among other things, that ▮▮▮ 'prescribed and/or administered narcotic controlled substances to [the housekeeper], a known drug addict and other patients without objective evidence of medical necessity for the prescribed narcotic medications'; and that he prescribed and/or administered narcotic controlled substances to

patients, including the housekeeper, 'outside the safe and generally accepted medical principles and protocols regulating the practice of medicine.'"

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 11 related to Paragraph 162 of the Complaint. The United States further refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for

Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to Defendants' dispensing data and WMT_DOJ_000215420, WMT_DOJ_000270823, WMT_EDTX_00155749, WMT_EDTX_00155741, WMT_DOJ_000214620, WMT_EDTX_00264235, WMT_EDTX_00210388, WMT_EDTX_00212032, and WMT_EDTX_00135539, which were relied upon to support the referenced allegations in Paragraphs 162 and 263-275 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Testimony of █████████████, Administrative Hearing, *State of Indiana v.* ███ Case No. ███████████, 0014, Medical Licensing Board of Indiana, 09/24/2015 ; (2) Office of the Indiana Attorney General Consumer Complaint Form completed by ████████, Compliance Officer, 09/05/2011; (3) Petition for Summary Suspension, ███████████, Case No. ████████, 03/15/2005; (4) Administrative Complaint, *In the Matter of the License of* ███████████, Medical Licensing Board of Indiana, Cause No. ███████████, 05/28/2015; (5) Findings of Fact, Conclusions of Law, and Final Order, *In the Matter of the License of:* ██████████ Medical Licensing Board of Indiana, Case No. ███████████, ████████, 10/01/2015; and (6) Office of the Indiana Attorney General Consumer Complaint Form completed by ████████, Compliance Officer, 09/05/2011.

**REQUEST 37:** All Documents relied upon by You to support Your allegations regarding ███████ and ███████ in Paragraphs 222, 276-289, and 455-457 of the Complaint, including:

(a)     Your allegations in Paragraph 276 of the Complaint that ███ "admitted that he managed the clinic 'like a pill mill that herded patients through . . . and prescribed [controlled and dangerous substances] in large quantities based upon little to no physical examination or with no legitimate medical purpose.'"

(b)     Your allegations in Paragraph 276 of the Complaint that: (i) [l]ocal law enforcement reported that a lot of prescriptions found "on the street" came from the clinic; (ii) patients recalled being asked by other patients whether they wanted to sell their pills; and (iii) the clinic's patients came from at least 10 states, some traveling as far as 1,800 miles round- trip.

(c)     Your allegations in Paragraph 277 of the Complaint that ███ : (1) "would see 50 to 60 patients a day"; (2) "made no attempt to treat pain through means other than prescribing controlled substances, and he would not attempt to decrease the dosages of controlled substances prescribed to his patients"; and (3) "ignored warning signs that patients were abusing their prescriptions."

(d)     Your allegations in Paragraph 279 of the Complaint that "other pharmacies had stopped filling for the clinic."

(e)     Your allegations in Paragraphs 288 and 289 of the Complaint regarding the 2014 Oklahoma State Board of Medical Licensure and Supervision complaints against ███ and ███, ███ subsequent surrender of his license, and the 2015 revocation of ███ license.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_DOJ_000258287, WMT_DOJ_000258309, WMT_DOJ_000258705, WMT_EDTX_00241899, WMT_DOJ_000008751, WMT_EDTX_00241913, and MDL Trial Exh. P-26892_00001, which were relied upon to support the referenced allegations in Paragraphs 128 and 245-254 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which

were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Complaint, ███████████, Oklahoma State Board of Medical Licensure and Supervision, Case No. ████████, 07/25/2014; (2) Amended Complaint, ██████████████, Oklahoma State Board of Medical Licensure, Case No. ██████████, 08/22/2014; (3) Voluntary Surrender in Lieu of Prosecution, ███████████, Oklahoma State Board of Medical Licensure and Supervision, Case No. █████████, 05/14/2015; (4) Complaint, █████████ ██████ Oklahoma State Board of Medical Licensure and Supervision, Case No. ██████████, 08/01/2014; (5) Amended Citation, █████████████, Oklahoma State Board of Medical Licensure and Supervision, Case No. █████████, 04/15/2015; and (6) Order of Revocation of License, ████████████, Oklahoma State Board of Medical Licensure and Supervision, Case No. ██████████, 08/28/2015.

**REQUEST 38:**  All Documents relied upon by You to support Your allegations regarding ████████████ in Paragraphs 290-302, 458-460, 498-499, and 506 of the Complaint, including:

(a)  Your allegations in Paragraph 290 of the Complaint that "[i]n 2016, █████████ ranked second in the State of Texas for the number of doses of hydrocodone prescribed and seventh for the number of oxycodone doses."

(b)  Your allegations in Paragraph 291 of the Complaint that "[b]etween 2010 and 2017, seven overdose deaths were connected to prescriptions written by ███████."

(c)  Your allegations in Paragraph 291 of the Complaint that: (i) "[a] medical assistant from ██████████ Paris, Texas, office recalled that the office would receive calls from

individuals expressing concern about their family members misusing their prescriptions"; (ii) "[w]hen ███████ was not in the office, he instructed his medical assistant to issue electronic prescriptions, including prescriptions for Schedule II controlled substances, as if they were being prescribed by ███████";

(iii) "[a]nother medical assistant viewed posts on ███████ clinic's Facebook page in which patients discussed selling drugs"; and (iv) "[a]nother employee reported that she encountered patients who came to the office and appeared to be 'under the influence.'"

(d)  Your allegations in Paragraphs 302 and 499 of the Complaint regarding ███████ 2017 indictment, trial, conviction, and sentencing.

(e)  Your allegations in Paragraph 506 of the Complaint regarding ███████ investigation by the Texas Medical Board.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced

CONFIDENTIAL

allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to Defendants' dispensing data and WMT_EDTX_00063287, WMT_EDTX_00064254, WMT_DOJ_000553438, WMT_EDTX_00070511, WMT_DOJ_000545535, and WMT_DOJ_000544937, which were relied upon to support the referenced allegations in Paragraphs 290-302, 458-460, 498-499, and 506, at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) DEA analysis of Texas doctors' prescribing of oxycodone and hydrocodone; (2) Second Superseding Indictment, ███████████ (E.D. Tex.), No. ████████, Docket Entry 61, 4/18/2018; (3) Plea Agreement, ███████████ (E.D. Tex.), No. ████, ███, Docket Entry 80, 10/5/2018; (4) Factual Basis, ███████████ (E.D. Tex.), No. ████████, Docket Entry 82, 10/5/2018; (5) Findings of Fact and Recommendation on Guilty Plea, ███████████ (E.D. Tex.), No. ████████, Docket Entry 85, 10/16/2018; (6) Judgment in a Criminal Case, ███████████ (E.D. Tex.), No. ████████, Docket



CONFIDENTIAL

Entry 94, 5/10/2019; (7) Transcript of Video Sentencing Hearing, ████████████ (E.D. Tex.), Docket Entry 114, 10/26/2022; (8) Report of interview of ████████; (9) Report of interview of ██████; (10) Report of interview of ██████████; and (11) Final Panel Report, Texas Medical Board, ██████████, Case ██████.

**REQUEST 39:**  All Documents relied upon by You to support Your allegations regarding ██████ in Paragraphs 303-311 and 496 of the Complaint, including:

(a)  Your allegations in Paragraph 303 of the Complaint that ████ "practice exhibited numerous signs of a pill-mill operation" and that ████: (i) "prescribed large dosages of opioids to 680 patients in 2015 alone"; (ii) "prescribed controlled substances to patients from nine states outside New Mexico"; (iii) "prescribed the trinity combination of an opioid, a benzodiazepine, and carisoprodol"; and (iv) "ignored evidence that his patients were abusing and/or diverting controlled substances."

(b)  Your allegations in Paragraph 303 of the Complaint that "[m]edical records for many of his patients were incomplete or appeared to be templates, and, in many instances, the patient files did not include any records to corroborate the diagnoses of chronic pain conditions for which ██████ prescribed controlled substances."

(c)  Your allegations in Paragraph 310 of the Complaint that a patient with the initials S.B. "died from the toxic effects of multiple drugs, including oxycodone, alprazolam, and morphine."

(d)  Your allegations in Paragraphs 310 and 311 of the Complaint regarding the New Mexico Medical Board's investigation of ██████, the 2016 suspension of ██████ license, and ██████ voluntary surrender of his medical license in 2017.

64

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_EDTX_00044719, WMT_EDTX_00138024, WMT_EDTX_00138148, WMT_EDTX_00045598, WMT_EDTX_00046471, WMT_DOJ_000214235,

WMT_EDTX_00247930, WMT_DOJ_000265105, WMT_EDTX_00171520,

WMT_EDTX_00260794, WMT_DOJ_000266245, WMT_EDTX_00045728,

WMT_EDTX_00013673, WMT_EDTX_00166927, WMT_EDTX_00224892,

WMT_EDTX_00254994, WMT_EDTX_00209546, WMT_EDTX_00136210, and

WMT_DOJ_000273337, which were relied upon to support the referenced allegations in

Paragraphs 303-311 and 496 at the time the Second Amended Complaint was filed on February

1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these

documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Notice of Summary Suspension, ███████████████, License

No. ██████, New Mexico Medical Board, 05/12/2016; (2) Expert Report, Graves T. Owen,

M.D., New Mexico Medical Board, Re: ██████████ Respondent, NMMB Case Number:

████████ 05/19/2016; (3) Stipulation and Order for Voluntary Surrender of License, ██████

████████████████, License No. ████████, New Mexico Medical Board,

05/22/2017; and (4) Report of Findings, UNM Health Sciences Center Office of the Medical

Investigator, Case No. ████████, Belfon, Shanna R., 06/24/2015.

**REQUEST 40:**  All Documents relied upon by You to support Your allegations

regarding ███████████ in Paragraphs 162, 312-320, and 495 of the Complaint, including:

(a)  Your allegations in Paragraph 312 of the Complaint that: (1) "███ would write

prescriptions for patients whom she did not meet or examine and who did not even come to her

office"; (2) "patients' family members and/or friends would go to ████ office to pick up

prescriptions written by ████ in the patients' names for large quantities of controlled

substances"; (3) "[p]atient records were largely identical for each visit and did not reflect the

66

individualized analysis that would be expected from visit to visit"; and (4) "patients … traveled long distances to her clinic from cities in Florida, including Port Saint Lucie (202 miles), Tamarac (263 miles), Ft. Lauderdale (270 miles), and Graceville (383 miles)."

(b)  Your allegations in Paragraph 313 of the Complaint relating to DEA's revocation of ██████ registration in 2006 "after she prescribed controlled substances to three undercover law enforcement officers who had admitted to her that they actually were not suffering from any pain," the later restoration of her registration, and any monthly reporting provided pursuant to that revocation.

(c)  Your allegations in Paragraph 313 of the Complaint that "[i]n three separate administrative complaints filed in 2013, the Florida Department of Health alleged that ██████ prescribed excessive and/or inappropriate amounts of opioids without adequate justification."

(d)  Your allegations in Paragraph 320 of the Complaint regarding ██████ guilty plea, sentencing, and ██████ "admi[ssion] that she wrote prescriptions, including prescriptions for controlled substances, in the name of certain individuals but then gave the prescriptions to their family members, never having seen or examined the individuals ██████ knew would be the ultimate users of the drugs."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if set forth fully herein.  Further, the United States no longer intends to rely on prescriptions written by ████████████ to support the Second Claim of the Complaint.  Should Defendants still seek documents responsive to this Request, the United States would specifically object that the Request seeks documents that are irrelevant to the parties' claims and pled defenses.

**REQUEST 41:**  All Documents relied upon by You to support Your allegations

regarding ███████████████ in Paragraphs 321-334 of the Complaint, including:

(a)  Your allegations in Paragraph 321 of the Complaint that ██████ (i) "was a

Prescriber primarily to United States military personnel in the TRICARE network"; (ii) "was

known for prescribing the trinity combination of an opioid, a benzodiazepine, and a muscle

relaxant"; (iii) in 2012, "was the nation's number-seven prescriber of the trinity combination";

and (iv) was described by a former patient, a military veteran, "as a 'pill pusher' and 'upscale

dope dealer.'"

(b)  Your allegation in Paragraph 322 of the Complaint that "██████ received a

January 2013 admonition by the Colorado State Board of Nursing for prescribing 'excessive'

dosages of OxyContin that were inconsistent with the patient's underlying condition."

(c)  Your allegations in Paragraph 334 of the Complaint regarding ██████

disciplinary action and 2017 surrender of his nursing license and Your allegation that he

"admitted that his treatment plans for 12 patients were 'inappropriate' and that he had continued

opioid therapy in cases where the patient was not benefiting and despite a patient's violation of

an opioid agreement" and that "his documentation was 'substandard.'"

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States specifically objects that

this Request to the extent it seeks documents protected by the attorney work-product doctrine.

The United States further objects to this Request as duplicative of Requests 5 and 7 of

Defendants' First Set of Requests for Production.

The United States further objects to the vague phrase "relied upon by You to support

Your allegations," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues.  The United States construes this Request

as seeking documents on which the United States actually relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

objects to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegations and to do so by identifying the documents specifically as

supportive of those allegations.

 Subject to and without waiving the foregoing objections, the United States refers to its

responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set

of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial

Disclosures.  The United States further refers to Defendants' dispensing data and

WMT_EDTX_00123434, WMT_DOJ_000271206, WMT_EDTX_00205526, and

WMT_EDTX_00137184, which were relied upon to support the referenced allegations in

Paragraphs 128 and 245-254 at the time the Second Amended Complaint was filed on February

1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these

documents, which were previously produced by Defendants to the United States.

 Additionally, the United States will produce the following responsive non-privileged

documents: (1) Report of investigation regarding case initiation; (2) Letter to ███████████

re Case Number ███████, Colorado State Board of Nursing, 01/02/2013; and (3) Stipulation and Final Agency Order, Case Nos. █████████ and ██████, Colorado State Board of Nursing, 01/25/2017.

**REQUEST 42:**  All Documents relied upon by You to support Your allegations in Paragraphs 328-330 and 552 of the Complaint regarding a patient with the initials A.D., including:

(a)  Your allegation in Paragraph 330 of the Complaint that "[a]ccording to A.D., Walmart pharmacists never asked her any questions about her prescriptions, and she did not recall Walmart contacting █████████ to discuss her prescriptions."

(b) Your allegations in Paragraph 552 of the Complaint that "A.D. later admitted, she was addicted to the opioids, but Walmart pharmacists always filled her prescriptions without asking her any questions" and "[s]he also did not recall Walmart contacting her Prescriber to discuss her prescriptions."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if set forth fully herein.  The United States specifically objects that this Request seeks documents protected by the attorney work-product doctrine. The United States will provide a privilege log for any documents withheld in accordance with Section IV of the ESI Order.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

**REQUEST 43:**  All Documents relied upon by You to support Your allegations in Paragraphs 331-333 and 553 of the Complaint regarding a patient with the initials M.H., including:

(a)  Your allegation in Paragraph 333 of the Complaint that "M.H. … does not recall any Walmart pharmacists calling ███████████ office to ask questions about her prescriptions."

(b)  Your allegations in Paragraph 553 of the Complaint that "M.H. did not recall any Walmart pharmacists ever calling her Prescriber's office to ask questions about her prescriptions, and Walmart never refused to fill any of her prescriptions."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if set forth fully herein.  The United States specifically objects that this Request seeks documents protected by the attorney work-product doctrine. The United States will provide a privilege log for any documents withheld in accordance with Section IV of the ESI Order.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

**REQUEST 44:** All Documents relied upon by You to support Your allegations regarding ███████████ in Paragraphs 162, 335-344, 481, and 503 of the Complaint, including:

(a) Your allegations in Paragraph 335 of the Complaint that ████ : (i) had a "medical practice [with] all the features of a classic pill-mill operation"; (ii) "falsified medical records to justify prescriptions for dangerously excessive amounts of controlled substances"; (iii) "permitted his patients to choose their opioid medications during their brief encounters with him"; (iv) "prescribed medications that he knew would be diverted"; and (v) "prescribed the trinity combination frequently and in large doses."

(b)  Your allegations in Paragraph 336 of the Complaint regarding ███ arrest, guilty plea, and sentencing.

(c)  Your allegations in Paragraphs 336, 337, and 344 of the Complaint regarding the three Florida Department of Health administrative complaints filed against ███, the 2013 amended complaint, and the April 2016 voluntary relinquishment of his license.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 11 related to Paragraph 162 of the Complaint. The United States further refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to Defendants' dispensing data and WMT_DOJ_000249254, WMT_EDTX_00008498, WMT_EDTX_00008502, WMT_DOJ_000212509, WMT_DOJ_000212509, WMT_EDTX_00047861, and WMT_DOJ_000249255, which were relied upon to support the referenced allegations in Paragraphs 162, 335-344, 481, and 503 at the time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Administrative Complaint, ███████████████████, Case No. ███████, 10/14/2011; (2) Administrative Complaint, █████████████████████, Case No. ████████, 10/14/2011; (3) Administrative Complaint, ████████████████████, ██████, Case No. ██████████, 10/14/2011; (4) Amended Administrative Complaint, ████████, ████████████████████, Case No. █████████████████; (5) Final Order, ████████, ████████████████████, Case No: █████████, █████████, █████████, 04/25/2016; (6) Operation Pain Killer: 172 Arrested, 20,000 Pills Seized, West Orlando News, June 3, 2010; and (7) Plea, ████████████████ In the Circuit Court In and For, Orange County, Florida, Case No ████████████, 02/04/2013.

**REQUEST 45:**  All Documents relied upon by You to support Your allegations regarding ████████████████████ referenced in Paragraphs 345-354, 529-530, and 555 of the Complaint, including:

(a)  Your allegations in Paragraph 345 of the Complaint that: (1) ████████████ "flooded his community with opioids"; (2) "[f]rom January 2013 through March 19, 2018, ████████████ wrote prescriptions totaling more than seven million dosage units" and "[m]ore than 60 percent of those prescriptions were for Schedule II controlled substances, and less than two percent of the prescriptions were for non- scheduled drugs"; (3) "[t]he top-10 drugs he prescribed were all opioids"; and (4) "[t]he most common drug he prescribed was hydrocodone-acetaminophen 10/325mg, and the second-most common was oxycodone 30mg."

(b)  Your allegations in Paragraph 346 of the Complaint that: (1) "████████████ practice bore many other signs of being a pill mill"; (2) "[h]is patients' medical records were often cut-and-paste from one visit to another and contained no medical justification for the large quantities of Schedule II controlled substances he prescribed; (3) his "appointments were very short"; "typically [he] saw 80 to 90 patients per day, and each follow-up appointment lasted for just a few minutes"; (4) "[e]mployees … recalled receiving multiple calls a day from his patients' family members expressing concern about ████████████ treatment; and (5) "[e]mployees observed patients in the waiting room who appeared intoxicated, with one employee recalling an instance where a patient fell asleep on the toilet while giving a urine sample."

(c)  Your allegations in Paragraph 351 of the Complaint that "[o]ne of ████████████ former employees who worked at his office in 2015 observed that office staff told patients where to fill ████████████ prescriptions, usually instructing them to go to Walmart Store 2036."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_EDTX_00202845, WMT_EDTX_00139110, WMT_EDTX_00202845, WMT_DOJ_000170694, and WMT_DOJ_000396760, which were relied upon to support the

referenced allegations in Paragraphs 345-354, 529-530, and 555 at the time the Second Amended

Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States

will not reproduce these documents, which were previously produced by Defendants to the

United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) List of refusals to fill, Walmart Response to Administrative Subpoena; (2) Report

of intelligence regarding analysis of PDMP for ████████; (3) Reports of interview of

████████████████; (4) Report of interview of ██████████; (5) Report of interview of

██████████████; (6) Report of interview of ████████████; (7) Indictment, ██████████

██████████ (S.D. W. Va.) Case No. ██████, Docket Entry 1, 07/26/2018; (8) Trial

Transcript (Expert witness Dr. Gene Kennedy), ████████████████████ (S.D. W. Va.),

██████████ Docket Entries 145, 147, 149, 4/23/2019, 4/24/2019, 4/25/2019; (9) Plea

Agreement, ██████████████████ (S.D. W. Va.) Case No. ██████, Docket Entry

291, 08/22/2019; and (10) Judgment, ████████████████████ (S.D. W. Va.) Case No.

██████, Docket Entry 320, 07/08/2020.

**REQUEST 46:**  All Documents relied upon by You to support Your allegations

regarding ██████████ in Paragraphs 146, 162, 355-366, 461-465, and 549 of the Complaint,

including:

(a)  Your allegations in Paragraph 355 of the Complaint that: "[a]lthough ██████ was not

trained or certified in pain management, 75 to 80 percent of ██████ patients came to him for

pain management" and "[r]oughly half of his patients paid in cash."

(b)  Your allegations in Paragraph 356 of the Complaint that: (1) "██████ was well

known in Delaware for overprescribing opioid medications"; (2) "[t]wo former employees of

███████ practice said that people would frequently refer to ██████ as "Candy Man" because of the number of opioid pills he prescribed"; (3) "[a] pharmacist at a non- Walmart pharmacy in Milford, Delaware, reported that, immediately after opening in 2013, they began to receive a deluge of prescriptions from ██████," described ████ as "operating the 'Disneyland for opiates' and concluded, based on his corresponding responsibility as a pharmacist, that he should not fill any prescriptions from ██████"; and (4) "[a]n emergency room doctor told investigators that the emergency room would see five to 10 patients a night experiencing opioid withdrawal and that these were largely patients who had been seen by ██████."

(c) Your allegations in Paragraph 365 of the Complaint that "Walmart had filled three of the specific prescriptions for which ██████ was convicted" and that "[o]f the 13 patients whose prescriptions formed the basis of ██████ conviction, eight had filled other prescriptions from ██████ at Walmart stores for the same drugs."

(d) Your allegation in Paragraph 463 of the Complaint that a "pharmacy manager reported ██████ unprofessional practices to others."

(e) Your "survey" and interview of the pharmacists in the Milford area described in Paragraphs 463 and 464 of the Complaint, or relied upon by You to support Your allegations in Paragraphs 463 and 464, including that: (1) "DEA diversion investigators… spoke with the manager and another pharmacist at Store 1741"; (2) "[t]he manager  explained that she knew that ██████ did not have credentials to practice as a pain management physician"; (3) "[s]he reported that there was an influx of ██████ patients on Thursdays, probably because ██████ office was closed on Fridays"; (4) "[s]he observed that his patients arrived within three minutes of one another and 'if the pharmacy does not have the medication . . . the word spreads in the parking lot and patients attempt to go to other pharmacies to get their prescriptions filled'"; (5) "[s]he

told the investigators that most patients paid cash for their prescriptions even though they had Medicaid"; and (6) "[s]he and the other pharmacist explained that many individuals from the same family received the same medication in the same quantity from ██████, and that multiple people from the same address received the same medications."

 **RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production and Request 11 above.

 The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

CONFIDENTIAL

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 11 related to Paragraph 162 of the Complaint.  The United States further refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_DOJ_000206689, WMT_EDTX_00040322, WMT_DOJ_000206689, WMT_DOJ_000397061, WMT_EDTX_00061226, and WMT_EDTX_00244182, which were relied upon to support the referenced allegations in Paragraphs 146, 162, 355-366, 461-465, and 549 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Jury Verdict, ████████████ (D. De.), Case No. ████████, Docket Entry 101, 07/21/2021; (2) Judgment, ████████████ (D. De.), Case No. ████████, Docket Entry 137, 03/08/2022; (3) Report of interview of ████████████; (4) Report of interview of ████████; (5) Report of interview of ████████████; (6) Report of interview of ████████; (7) Report of interview of ████████████; and (8) Report of interview of ████████ and ████████████.

**REQUEST 47:**  All Documents relied upon by You to support Your allegations regarding ████████████ in Paragraphs 367-380 and 466-469 of the Complaint, including:

(a)  Your allegations in Paragraph 367 of the Complaint that: (1) "[i]n 2014, 2015, and 2016, ████████ was the top Prescriber of opioids in the Commonwealth of Pennsylvania"; and

(2) "[f]rom January 2014 to July 31, 2017 ███████ prescribed approximately 9.5 million units of oxycodone, hydrocodone, oxycontin, and fentanyl to his patients."

(b)  Your allegations in Paragraph 368 of the Complaint that: (1) "[i]t was common knowledge in Mt. Carmel and Shamokin that patients could easily get narcotics from ███████" (see also Paragraph 466); (2) "███████ was the 'go to' for pain pills" (see also Paragraph 466); (3) [s]ome patients referred to him as "the Maniac" because of the large number of controlled-substance prescriptions he wrote; and (4) "[a] police detective from Coal Township, which surrounds Shamokin, reported in mid-2015 that ███████ had prescribed most of the narcotic pills that ended up being sold and used on the streets of the township."

(c)  Your allegations in Paragraph 373 of the Complaint that a patient with the initials R.C. died of an overdose on May 3, 2015, and that "███████ … prescribed the drugs on which R.C. overdosed."

(d)  Your allegations regarding Your August 25, 2015, interview of the Walmart pharmacy manager at Store 2481 in Coal Township, Pennsylvania, described in Paragraph 467 of the Complaint, or relied upon to support Your allegations in Paragraph 467, including that: (1) "[t]he pharmacy manager explained that most of the prescriptions that were refused at Store 2481 were issued by ███████ and that "many patients attempted to refill narcotic prescriptions early and that ███████ wrote many narcotic prescriptions for the same patient just days apart"; and (2) "[t]he pharmacy manager later stated that the four pharmacists who worked at the store consulted with each other."

(e)  Your allegations regarding an August 28, 2015, report by a Walmart pharmacist from Store 2481 described in Paragraph 467 of the Complaint, or relied upon to support Your allegations in Paragraph 467, including that: (1) a pharmacist reported that "it was not

uncommon for the pharmacy to sell out of narcotics on the weekends because of the high volume of narcotics that ███████ patients were attempting to fill"; and (2) "[o]n Saturday mornings, ███████ patients would line up outside the pharmacy before it opened."

      **RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production.

      The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

      Subject to and without waiving the foregoing objections, the United States refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial

CONFIDENTIAL

Disclosures.  The United States further refers to Defendants' dispensing data and WMT_EDTX_00207706, WMT_DOJ_000307758, WMT_EDTX_00220651, WMT_EDTX_00223775, WMT_EDTX_00242161, WMT_EDTX_00064910, WMT_DOJ_000476204, and WMT_EDTX_00108383, which were relied upon to support the referenced allegations in Paragraphs 367-380 and 466-469 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Report regarding intelligence on Walmart and ████████; (2) Report of interview of ████████ and ████████; (3) Report of interview of ████████; (4) Report on intelligence from a source of information; (5) Report of interview of ████████; (6) Report regarding acquisition of oxycodone prescription for deceased patient ████████ and interview of Walmart Pharmacist; (7) Coroner's Summary Report, Office of the Coroner, Schuylkill County, Pennsylvania; (8) Trial Transcript (Witness Francis O'Neil), ████████ (M.D. Pa.), Case No. ████████, Docket Entry 262, 7/27/2022; (9) Trial Transcript (Witness Paul Short), ████████ (M.D. Pa.), Case No. ████████, Docket Entry 266, 7/27/2022; (10) Trial Exhibit 29, ████████ (M.D. Pa.), Case No. ████████; (11) Trial Exhibit 30.01, ████████ (M.D. Pa.), Case No. ████████.

**REQUEST 48:**  All Documents relied upon by You to support Your allegations regarding ████████ in Paragraphs 162, and 381-394 of the Complaint, including:

(a)  Your allegations in Paragraph 381 of the Complaint that ███ practice "exhibited numerous signs of pill-mill activity," including that:  (1) it "operated on a cash-only basis and did not accept insurance"; (2) "[n]umerous 'patients' who came to ███ traveled to his Miami clinic from other states, including large numbers of individuals travelling in groups from southeastern Kentucky"; (3) "[m]any of these individuals were sponsored by drug dealers in Kentucky, who paid for their travel costs in exchange for receiving a portion of the pills"; (4) "[t]he waiting room of ███ practice was crowded, and, at times, standing-room only; and (5) "███ would prescribe opioids to patients after spending only a few minutes with them, without performing any type of physical examination, and without requesting or reviewing patients' previous medical or prescription records."

(b)  Your allegations in Paragraph 383 of the Complaint that ███ patients "fanned out across the United States" to fill their prescriptions.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 11 related to Paragraph 162 of the Complaint.  The United States further refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_DOJ_000398521, WMT_EDTX_00064884, WMT_DOJ_000398521, WMT_DOJ_000227721, WMT_EDTX_00129230, WMT_DOJ_000309819, WMT_DOJ_000418534, WMT_EDTX_00064800, WMT_EDTX_00008221, WMT_EDTX_00068901, WMT_EDTX_00212342, and WMT_EDTX_00054778, which were relied upon to support the referenced allegations in Paragraphs 162, and 381-394 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Superseding Indictment, ███████████████ (E.D. Ky.), Case No. ████████████, Docket Entry 82, 03/24/2016; (2) Transcript of Jury Trial (Witnesses

Richard Dalrymple, Donna Sexton), ███████████ (E.D. Ky.), Case No. █████,
█████, Docket Entries 319, 320, 01/11/2019; and (3) Memorandum Opinion and Order on
Motion for Judgment of Acquittal, ███████████ (E.D. Ky.), Case No. █████,
█████, Docket Entry 337, 03/13/2019.

**REQUEST 49:** All Documents relied upon by You to support Your allegations
regarding █████ in Paragraphs 124, 213, 395-402, and 470-475 of the Complaint,
including:

(a) Your allegations in Paragraph 395 of the Complaint that a DEA investigation of
███ revealed that: (1) "for a period of time, █████ prescribed most of his patients
hydrocodone, Xanax, and Soma," and that █████ referred to this "as the 'cocktail'"; (2) "'mules'
recruited patients from out of town to obtain substances from █████, purportedly for illicit use'";
(3) "a number of patients sold controlled substances prescribed by █████ on the street"; and (4)
a patient interviewed by DEA "said that she began seeing █████ after being told he would
prescribe anything she wanted."

(b) Your allegations regarding Your December 2016 interview of the Walmart employee
at Store 206 in McKinney, Texas, described in Paragraph 399 of the Complaint, including that:
(1) "the employee observed the number of █████ prescriptions filled by her pharmacy had
significantly increased from 2014 to 2016, while competitor pharmacies had stopped filling
█████ prescriptions"; (2) "she stated that she had observed multiple red flags in █████
prescribing habits: prescriptions for cocktails of drugs that she knew were abused, for high- dose
opioids for long periods of time, and for excessive quantities of opioids"; and (3) "she also stated
she believed several of █████ patients did not need the medications for medical purposes,

based on their disruptive behavior, including their complaints that they could not get early refills and their demands that they needed their medications 'NOW!'"

(c)  Your allegations regarding Your December 2016 interview of the Walmart employee at Store 206 in McKinney, Texas, described in Paragraph 400 of the Complaint, including that: (1) "she told DEA agents that, in retrospect, she would not have filled several of ██████ prescriptions"; and (2) "[s]he admitted to continuing to fill his prescriptions despite the concerns triggered by the number of the prescriptions he wrote for the same cocktail of drugs, the number of individuals who traveled long distances to get their prescriptions filled at her pharmacy, and the fact that other area pharmacies had stopped filling ██████ prescriptions."

(d)  Your allegations regarding Your interview of R.P. described in Paragraph 401 of the Complaint, including that: (1) "[i]n May 2015, R.P. was arrested for selling hydrocodone and Xanax prescribed to her by ██████ and filled at Walmart"; (2) "[i]n an interview with DEA, R.P. said that she filled her prescriptions at Walmart because it was one of the only pharmacies that would fill ██████ prescriptions"; and (3) "[i]n August 2017, R.P. was indicted by a grand jury for illegally conspiring with ██████ to distribute controlled substances."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_DOJ_000282735, EDTX_WM0030366, WMT_DOJ_000545535, WMT_EDTX_00000062, WMT_EDTX_00000097, WMT_DOJ_000544073, WMT_DOJ_000213919, WMT_DOJ_000273136, WMT_DOJ_000273078, WMT_DOJ_000217659, EDTX_WM0037295, and EDTX_WM0037346, which were relied upon to support the referenced allegations in Paragraphs 124, 213, 395-402, and 470-475 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Superseding Indictment, ███████████████████████ (E.D.



Tex.), No. ███████████, Docket Entry 47, 08/09/2017; (2) Judgment, ███████████

███████████ (E.D. Tex.), No. ███████████, Docket Entry 116,

02/01/2018; (3) Report of interview of ████████; (4) Reports of interview of ████

████; (5) Report of interview of ████████; (6) Report of interview of ████████

████; and (7) 11/05/2015 Gunter Police Department Incident Report Regarding Arrest of

████████.

**REQUEST 50:**  All Documents relied upon by You to support Your allegations

regarding ████████ in Paragraphs 146, 156, 162, 228, 403-415, and 551 of the Complaint,

including:

(a)  Your allegations in Paragraph 403 of the Complaint that ████ practice "exhibited

numerous signs of pill-mill activity"; "[f]or example, ████ business hours typically began

at 4:00 p.m. or later and he would see the patients until late in the evening."

(b)  Your allegations in Paragraph 404 of the Complaint that: (1) "████ patient

examinations, when he conducted examinations at all, were perfunctory and standardized and not

necessarily relevant to the patients' complaints"; (2) "[d]iagnostic tests, even if ordered, rarely

resulted in any change in treatment or pain management"; and (3) "████ prescribed opioids,

typically in a set monthly dosage of 120 pills, at the first visit and every subsequent visit, without

accounting for differences in patient history, without exploring alternative treatment options,

without conducting legitimate urine drug screenings, without conducting random pill counts, and

all the while ignoring warning signs of addiction and abuse in favor of continuing opioid

prescribing."

(c)  Your allegations in Paragraph 405 of the Complaint that: (1) "████ ran a cash-

based clinic and generally charged a flat rate of $200 cash per patient visit"; (2) "[e]ven patients

who carried insurance paid for their prescriptions in cash"; and (3) "██████ business grew by word of mouth within the pill-seeking community around New Bern, North Carolina."

(d)  Your allegation in Paragraph 408 of the Complaint that "██████ began sending patients to more distant pharmacies when local pharmacies started rejecting his prescriptions."

(e)  Your allegation in Paragraph 409 of the Complaint that "██████ was, however, available late at night and answered his own phone to validate prescriptions."

(f)  Your allegations in Paragraph 413 of the Complaint that "██████ gave one of his patients—who was at that time working as a confidential source for law enforcement—a list of pharmacies that he believed would still fill his prescriptions," and that "Walmart was second from the top of that list."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  Further, the United States no longer intends to rely on prescriptions written by ██████ to support the Second Claim of the Complaint.  Should Defendants still seek documents responsive to this Request, the United States would specifically object that the Request seeks documents that are irrelevant to the parties' claims and pled defenses.

**REQUEST 51:**  All Documents relied upon by You to support Your allegations regarding ██████ in Paragraphs 162, 416-425, and 486 of the Complaint, including:

(a)  Your allegations in Paragraph 416 of the Complaint that: (1) "[u]pon retiring from his gynecology practice, ██████ worked part-time at a pain clinic"; (2) "[t]he pain clinic actively advertised to cash patients, highlighted quick service, and called over-the-counter aspirin 'useless and awful for your body'"; and (3) the clinic "publicly solicited names of pharmacists

and pharmacies in Bradenton and Sarasota that refused to fill ███████ prescriptions and
advised patients to use two specific mail-in pharmacies to fill Schedule II pain medications."

**RESPONSE:**  The United States incorporates by reference the objections to the
definitions and instructions as if fully set forth herein.  The United States further objects to this
Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production
and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support
Your allegations," which, depending on how it is interpreted, potentially renders this Request
unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could
be read to include any document on which the United States relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to
require the United States to produce any document on which it might rely in the future to support
the referenced allegations and to identify the documents as supportive specifically of those
allegations on an ongoing basis as discovery continues.  The United States construes this Request
as seeking documents on which the United States actually relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, and
objects to this Request as unduly burdensome to the extent it seeks to require the United States to
produce any other documents it identifies during the course of discovery on which it might rely
to support the referenced allegations and to do so by identifying the documents specifically as
supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its
response to Request 11 related to Paragraph 162 of the Complaint.  The United States further
refers Walmart to its responses to Requests 5 and 7 of Defendants' First Set of Requests for

Production and First Set of Interrogatories, which references documents listed in Exhibit A of its

May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing

data and WMT_EDTX_00045728, WMT_EDTX_00141285, WMT_DOJ_000270593,

WMT_DOJ_000268668, WMT_DOJ_000269697, WMT_DOJ_000270593, WMT_

EDTX_00245596, WMT_DOJ_000267860, WMT_DOJ_000213913, WMT_DOJ_000269101,

WMT_DOJ_000268287, WMT_EDTX_00221319, WMT_DOJ_000271450,

WMT_DOJ_000266706, WMT_DOJ_000266519, WMT_DOJ_000266708,

WMT_DOJ_000269623, WMT_DOJ_000269703, WMT_DOJ_000268760,

WMT_DOJ_000268339, WMT_EDTX_00147954, and WMT_DOJ_000281374, which were

relied upon to support the referenced allegations in Paragraphs 162, 416-425, and 486 at the time

the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶

53, the United States will not reproduce these documents, which were previously produced by

Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Johns Hopkins Class Notes, Fall 2015; and (2) Yellow Place Advertisement for

Florida Personal Injury Physicians.

**REQUEST 52:**  All Documents relied upon by You to support Your allegations

regarding ▮▮▮▮▮▮▮▮ in Paragraphs 162, 426-435, and 525-528 of the Complaint,

including:

(a)  Your allegations in Paragraph 426 of the Complaint that: (1) prior to 2013,

"▮▮▮▮▮▮ served as the director of an unlicensed pain clinic in Knoxville, Tennessee"; (2)

at that clinic, "▮▮▮▮▮ was supposed to supervise advanced practice nurses, but he gave

the nurses 'no guidance' whatsoever and did not review patient charts"; (3) the clinic "engaged

in egregious prescribing habits, including continuing to prescribe a patient opiates and benzodiazepines after a positive urine drug screen for cocaine"; and (4) "[i]n 2013, ███████ also prescribed controlled substances from a clinic in Pikeville, Kentucky."

(b)  Your allegations in Paragraph 432 and 435 of the Complaint that "the Tennessee Board of Medical Examiners revoked ███████ medical license in January 2014 as a result of his failure to supervise nursing staff in what the board described as 'egregious prescribing habits' related to controlled substances"; "███████ licenses to practice medicine in Colorado, Kentucky, Washington, and Florida were later suspended or revoked"; and "[o]n June 15, 2015, the Florida Board of Medicine suspended his license, and DEA thereafter revoked his registration."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

objects to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegations and to do so by identifying the documents specifically as

supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its

response to Request 11 related to Paragraph 162 of the Complaint. The United States further

refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production

and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15,

2024 Initial Disclosures. The United States further refers to Defendants' dispensing data and

WMT_EDTX_00264847, WMT_DOJ_000235584, WMT_EDTX_00057634,

WMT_EDTX_00059125, WMT_EDTX_00046859, WMT_EDTX_00264847,

WMT_EDTX_00041421, WMT_EDTX_00055482, WMT_EDTX_00087738,

WMT_EDTX_00104919, WMT_EDTX_00061226, WMT_EDTX_00054907,

WMT_EDTX_00040459, WMT_EDTX_00107430, WMT_EDTX_00123484,

WMT_DOJ_000268993, WMT_DOJ_000267230, and WMT_EDTX_00104891, which were

relied upon to support the referenced allegations in Paragraphs 162, 426-435, and 525-528 at the

time the Second Amended Complaint was filed on February 1, 2024. Pursuant to the ESI Order,

*see* ¶ 53, the United States will not reproduce these documents, which were previously produced

by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Final Order, ███████████████████████ Tennessee Board of

Medical Examiners, Docket No. ██████████ 01/29/2014; (2) Final Board Order, *In the*

*Matter of the Disciplinary Proceedings Regarding* ███████████████, Case No. ███, ███████, Colorado Medical Board, 02/19/2016; (3) Order of Revocation, *In re: the License to Practice Medicine in the Commonwealth of Kentucky Held by* ██████████████, Case No. ███ Commonwealth of Kentucky Board of Medial Licensure, 04/21/2015; (4) Findings of Fact, Conclusions of Law and Final Order of Default, *In the Matter of the License to Practice as a Physician and Surgeon of*: ███████████, No. ████████, State of Washington Medical Quality Assurance Commission; (5) Final Order, ████████████████, ███████, DOH Case No. ████████, 06/15/2015; (6) Report of surrender of registration for cause, ████████████; and (7) Report of decision and order to revoke DEA registration ████████.

**REQUEST 53:** All Documents relied upon by You to support Your allegations regarding ████████ in Paragraphs 162 and 436-445, including:

(a) Your allegations in Paragraph 436 of the Complaint that: (1) ███ had a "cluttered, disheveled office [that] had all the outward features of a stereotypical 'pill mill' clinic, with large numbers of patients who drove in groups for long distances to appointments"; (2) "[t]he great majority of ██████ patients had criminal histories, and approximately half of his patient population had criminal drug histories"; (3) "[p]atients in the crowded waiting area could be seen sleeping, losing consciousness, and falling out of their chairs, and they could be overheard openly discussing illegal narcotics"; (4) "[p]atients paid cash for excessively high dosages of opioids that were prescribed after little to no clinical evaluation"; and (5) "███ kept a pet Cockatoo named 'Cyrus' in his exam room and often spent more time talking to his bird than to patients."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Requests 5 and 7 of Defendants' First Set of Requests for Production and Request 11 above.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 11 related to Paragraph 162 of the Complaint.  The United States further refers to its responses to Requests 5 and 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and

WMT_EDTX_00061226, WMT_DOJ_000310119, WMT_DOJ_000310523,

WMT_DOJ_000272006, WMT_DOJ_000214367, WMT_DOJ_000310119,

WMT_EDTX_00145568, WMT_EDTX_0013089, WMT_EDTX_00044293,

WMT_EDTX_00222080, WMT_DOJ_000307557, WMT_DOJ_000307263,

WMT_EDTX_000242373, WMT_DOJ_000296916, WMT_DOJ_000386497,

WMT_DOJ_000264317, and WMT_DOJ_000217009 , which were relied upon to support the

referenced allegations in Paragraphs 162 and 436-445 at the time the Second Amended

Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States

will not reproduce these documents, which were previously produced by Defendants to the

United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Report of acquisition of non-drug exhibits N-40 thru N-42, during a UC visit at

██████████████ office, (2) Report of interview of ██████████, and (3) Report of

interview of ██████████████████.

**REQUEST 54:**  Documents sufficient to define or inform the meaning of the phrase

"obvious combinations of red flags," as used in Paragraph 447 of the Complaint.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects that this

Request seeks information that will be addressed by an expert or experts later in litigation.  The

United States will provide responsive non-privileged documents when they are available.

Subject to and without waiving the foregoing objections, the United States refers to its

response to Request 7 of Defendants' First Set of Requests for Production and First Set of

Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial

Disclosures and which includes responsive documents.  The United States specifically refers to
WMT_DOJ_000553670, WMT_EDTX_00064659, WMT_EDTX_00008417,
WMT_EDTX_00135058, WMT_EDTX_00252996, WMT_EDTX_00248844, and
WMT_DCO_00000031, which support the referenced allegations.  Pursuant to the ESI Order,
*see* ¶ 53, the United States will not reproduce these documents, which were previously produced
by Defendants to the United States.

**REQUEST 55:**  All Documents relied upon by You to support Your allegations in the
Complaint regarding the practice of pharmacy, including:

(a)  Your allegation in Paragraph 449 of the Complaint that "schools of pharmacy
generally included, in their standard curricula, courses covering red flags";

(b)  Your allegation in Paragraph 450 of the Complaint that "it was recognized in the
pharmacy profession that pharmacists had an obligation to assess red flags and determine whether
a prescription was valid";

(c)  Your allegations in Paragraph 545 of the Complaint that "[i]t has long been
recognized in the professional field of pharmacy that a pharmacist presented with a controlled-
substance prescription has to take certain fundamental steps to review the prescription" and
"[p]harmacists who do not take such steps fail to follow the usual course of professional
practice";

(d)  Your allegation in Paragraph 547 of the Complaint that "the basic professional
obligations of pharmacists require a pharmacist, when presented with a controlled-substance
prescription bearing a red flag, to—as part of the usual course of professional pharmacy practice—
take three basic steps: (a) identify the red flag, (b) investigate and resolve the red flag or refuse to
fill the prescription, and (c) if the red flag is resolved, document the resolution"; and

(e)  Your allegation in Paragraph 548 of the Complaint that "[e]ven if a prescription turns out to be valid, a failure to take these basic steps [listed in Paragraph 547 of the Complaint] violates the usual course of professional practice for pharmacists".

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint," and is partially duplicative of Request 2 above.

The United States further objects that this Request seeks documents protected by the attorney work-product doctrine, including documents related to the work of consulting experts.  The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures. The United States further refers to WMT_DCO_00000031 and WMT_DOJ_000136298, which support the referenced allegations. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 56:** All Documents relied upon by You to support Your allegations regarding ▉▉▉▉ in Paragraphs 180 and 474-475 of the Complaint, including:

(a) Your allegations in Paragraph 475 of the Complaint that "[t]he pharmacy manager admitted that, notwithstanding the knowledge that ▉▉▉ was not adhering to the usual course of professional practice, the pharmacy filled seven Schedule II controlled-substance prescriptions by ▉▉▉ between September 2015 and November 2015".

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to WMT_EDTX_00008417, which was relied upon to support the referenced allegations in Paragraphs 180 and 474-475 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this document, which was previously produced by Defendants to the United States.

101

Additionally, the United States will produce the following responsive non-privileged document: Disciplinary Order, ████, Missouri State Board of Registration for the Health Arts, Case No. ████ 06/16/2020.

**REQUEST 57:** All Documents relied upon by You to support Your allegation in Paragraph 476 of the Complaint that some Walmart "pharmacists were willfully blind to the prescriptions' invalidity" and "chose not to resolve the obvious red flags before filling the prescriptions, despite their subjective awareness of the high probability that the prescriptions were invalid."

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegation," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegation and to identify the documents as supportive specifically of the allegation on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegation at the time the Second Amended Complaint was filed on February 1, 2024, and objects

to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegation and to do so by identifying the documents specifically as supportive of the allegation.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures, and to its response to Request 55 above. The United States also relied on case law regarding the legal term "willful blindness" and objects to this Request to the extent that it seeks legal authority, which is beyond the proper scope of Rules 26 and 34.

The United States further objects that this Request seeks documents protected by the attorney work-product doctrine, including documents related to the work of consulting experts. The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI. The United States further objects that this request seeks information that will be addressed in part by an expert or experts later in litigation. The United States will provide responsive non-privileged documents when they are available.

**REQUEST 58:** All Documents relied upon by You to support Your allegations in the following Paragraphs of the Complaint that "trained pharmacists were aware" that the following prescriptions or combination of prescriptions "presented obvious red flags" or otherwise contained characteristics You contend demonstrate that the prescriptions or combination of prescriptions were written for other than "a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice":

(a) "multiple immediate-release opioids prescribed together or close in time" (Paragraph

479);

(b)  "immediate-release opioid and methadone" (Paragraph 484);

(c)  "classic trinity," defined by You as "(a) an opioid; (b) a benzodiazepine; and (c) the
muscle-relaxer carisoprodol (brand name Soma)" (Paragraph 494);

(d)  "zolpidem trinity," defined by You as "(a) an opioid, (b) a benzodiazepine, and (c)
the sedative zolpidem (brand name Ambien)" (Paragraph 497);

(e)  "stimulant trinity," defined by You as "(a) an opioid, (b) a benzodiazepine, and (c) a
stimulant" (Paragraph 500);

(f)  "trinity plus," defined by You as "(a) two or more different immediate- release opioids
(including different strengths of the same opioid); (b) a benzodiazepine; and (c) either
carisoprodol or zolpidem" (Paragraph 504);

(g)  "extraordinarily high dosages of opioids" or "high-MME prescriptions" (Paragraphs
510, 513);

(h)  "an individual's request to fill a controlled-substance prescription early" (Paragraph
514);

(i)  "early refills" (Paragraph 517);

(j)  "prescriptions [] paid for in cash" (Paragraph 521);

(k)  "old prescriptions" (Paragraph 528);

(l)  patient "shared part of a surname with" Prescriber (Paragraphs 530, 555);

(m)  "high dosage," "large dosage," or "high dose" (Paragraphs 530, 533, 534);

(n)  "long history of such prescriptions" (Paragraph 534);

(o)  "out-of-state prescriptions" (Paragraphs 521, 539).

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein. The United States further objects that this request seeks information that will be addressed by an expert or experts later in litigation. The United States will provide responsive non-privileged documents when they are available. The United States further objects that this Request seeks documents protected by the attorney work-product doctrine, including documents relate to the work of consulting experts. The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case. For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues. The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of

Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures and which includes responsive documents. The United States specifically refers to WMT_DCO_00000031, WMT_DCO_00000061, WMT_EDTX_00130993, MDL Trial Exh. P-26892_00001, WMT_EDTX_00064910 , WMT_EDTX_00047861, WMT_EDTX_00135031, WMT_DOJ_000296584, WMT_DOJ_000296648, WMT_EDTX_00252868, WMT_EDTX_00248844, WMT_EDTX_00138148, WMT_DOJ_000398521 , WMT_DOJ_000002623, WMT_EDTX_00130993, WMT_EDTX_00241899, WMT_DOJ_000307758, WMT_EDTX_00128908, WMT_EDTX_00135539, WMT_EDTX_00070511, WMT_EDTX_00242161, WMT_EDTX_00123434, WMT_EDTX_00242265, WMT_EDTX_00137184, WMT_EDTX_00064910, WMT_EDTX_00241899, WMT_EDTX_00046471, and WMT_EDTX_00040322, WMT_DOJ_000309819, which support the referenced allegations. Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 59:** All Documents relied upon by You to support Your allegations regarding ███████ in Paragraphs 483 and 505 of the Complaint, including Documents relating to the surrender of the ██████ medical license.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories.  The United States further refers to Defendants' dispensing data, which was relied upon to support the referenced allegations in Paragraphs 483 and 505 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce this data, which were previously produced by Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged documents: (1) Joint Notice of Dismissal without Prejudice, ███████████████



████████████████████████, Case No. ██████████, 07/25/2017; and (2) Amended

Verified Complaint, ████████████████████████████████████████████████,

Case No. ████████, 05/30/2017.

**REQUEST 60:** All Documents relating to or relied upon by You to support Your

allegations in Paragraph 499 of the Complaint that a patient with the initials T.H. "died from an

overdose on July 25, 2014"; that "[t]he cause of death on the toxicology report was listed as

probable morphine toxicity"; and that "[a] federal grand jury later indicted ███████████████

for causing the dispensing of controlled substances to T.H. without a legitimate medical purpose

and not in the usual course of professional practice."

**RESPONSE:** The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein. The United States further objects to this

Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or

relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support

Your allegations," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case. For example, the phrase could

be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues. The United States construes this Request

as seeking documents on which the United States actually relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

objects to this Request as unduly burdensome to the extent it seeks to require the United States to

produce any other documents it identifies during the course of discovery on which it might rely

to support the referenced allegations and to do so by identifying the documents specifically as

supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its

response to Request 7 of Defendants' First Set of Requests for Production and First Set of

Interrogatories.  Additionally, the United States will produce the following responsive non-

privileged documents: (1) Second Superseding Indictment, ███████████████ (E.D.

Tex.), Case No. ███████, Docket Entry 61, 04/18/2018; (2) Report of Investigation by

Medical Examiner, Office of the Chief Medical Examiner.

**REQUEST 61:**  All Documents relied upon by You to support Your allegations

regarding ████████ referenced in Paragraphs 501, 502, and 615 of the Complaint.

**RESPONSE:** The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects to this

Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or

relied upon by [the United States] in drafting the Complaint."  The United States further objects

that Paragraph 615 of the Complaint does not relate to ████████ and is an allegation in support

of the Fourth Claim, which was were dismissed on March 11, 2024.  *See* D.I. 117.

The United States further objects to the vague phrase "relied upon by You to support

Your allegations," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to
require the United States to produce any document on which it might rely in the future to support
the referenced allegations and to identify the documents as supportive specifically of those
allegations on an ongoing basis as discovery continues.  The United States construes this Request
as seeking documents on which the United States actually relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, and
objects to this Request as unduly burdensome to the extent it seeks to require the United States to
produce any other documents it identifies during the course of discovery on which it might rely
to support the referenced allegations and to do so by identifying the documents specifically as
supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its
response to Request 7 of Defendants' First Set of Requests for Production and First Set of
Interrogatories.  The United States further refers to Defendants' dispensing data, which was
relied upon to support the referenced allegations in Paragraphs 501 and 505 at the time the
Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53,
the United States will not reproduce the dispensing data, which was previously produced by
Defendants to the United States.

**REQUEST 62:**  All Documents relied upon by You to support Your allegations
regarding ████████████ referenced in Paragraph 507 of the Complaint.

**RESPONSE:** The United States incorporates by reference the objections to the
definitions and instructions as if fully set forth herein.  The United States further objects to this
Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_DOJ_000213050, which were relied upon to support the referenced allegations in Paragraph 507 at the time the Second Amended Complaint was filed on February 1, 2024.

Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 63:**  All Documents relating to or relied upon by You to support Your allegations in Paragraphs 531-537 of the Complaint regarding a patient with the initials M.I., including:

(a)   Your allegations in Paragraph 535 of the Complaint that (i) "M.I. lived in Sarasota, Florida, nearly an hour from ███████ Tampa office and 30 minutes from the Punta Gorda office"; (ii) "████ performed a brief physical examination on M.I.'s first visit but did not physically examine her during any other appointments"; (iii) "[s]he paid for █████ appointments in cash"; (iv) "[o]ver time, ██████ increased the amount of opioids prescribed to M.I."; (v) "[i]n 2015, M.I. was admitted to the emergency room, and the emergency room doctor told her that █████ was 'going to kill her with everything he was prescribing her'"; and (vi) "M.I. admitted that she was addicted to opioids when she was █████ patient."

(b)   Your allegations in Paragraph 536 of the Complaint that (i) "M.I. had first tried filling her prescriptions from █████ at a competing retail pharmacy, but she was told the pharmacy did not have the quantity or dosage in stock"; and (ii) "M.I. tried another pharmacy, but she could not afford the prescriptions there since she was paying in cash" and "then began filling at Walmart."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States specifically objects that this Request seeks documents protected by the attorney work-product doctrine.  The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.  The United States further objects to this Request as duplicative of Request 7 of Defendants'

First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures.  The United States further refers to Defendants' dispensing data and WMT_EDTX_00130993, which were relied upon to support the referenced allegations in Paragraphs 531-37 at the time the Second Amended Complaint was filed on February 1, 2024.

Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

      **REQUEST 64:**  All Documents relating to or relied upon by You to support Your allegations in Paragraph 551 of the Complaint regarding a patient with the initials R.F., including Your allegations that "R.F., a customer, stated that despite numerous red flags, including that he drove considerable distances across North Carolina to get heavy doses of opioids and almost always bought his opioids from Walmart with cash, the Walmart pharmacist on duty never asked R.F. any questions about his prescriptions and never contacted his doctor to verify them."

      **RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

      The United States further objects to the vague phrase "relied upon by You to support Your allegations," which, depending on how it is interpreted, potentially renders this Request unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could be read to include any document on which the United States relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to require the United States to produce any document on which it might rely in the future to support the referenced allegations and to identify the documents as supportive specifically of those allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and

CONFIDENTIAL

objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its response to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures, and will produce responsive non-privileged documents, including a report of the interview of Reginald Fulmore.  The United States also refers to Defendants' dispensing data, which were relied upon to support the referenced allegations in Paragraphs 551 at the time the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States.

**REQUEST 65:**  All Documents relied upon by You to support Your allegations in Paragraphs 552 and 553 of the Complaint that Walmart filled controlled-substance prescriptions "without checking and resolving red flags."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects to this Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or relied upon by [the United States] in drafting the Complaint."

The United States further objects that this Request seeks documents protected by the attorney work-product doctrine, including documents related to the work of consulting experts.

The United States will provide a log of documents withheld based on privilege pursuant to
Section IV of the ESI.

The United States further objects to the vague phrase "relied upon by You to support
Your allegations," which, depending on how it is interpreted, potentially renders this Request
unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could
be read to include any document on which the United States relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to
require the United States to produce any document on which it might rely in the future to support
the referenced allegations and to identify the documents as supportive specifically of those
allegations on an ongoing basis as discovery continues.  The United States construes this Request
as seeking documents on which the United States actually relied to support the referenced
allegations at the time the Second Amended Complaint was filed on February 1, 2024, and
objects to this Request as unduly burdensome to the extent it seeks to require the United States to
produce any other documents it identifies during the course of discovery on which it might rely
to support the referenced allegations and to do so by identifying the documents specifically as
supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its
response to Request 7 of Defendants' First Set of Requests for Production and First Set of
Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial
Disclosures.  The United States further refers to Defendants' dispensing data and
WMT_DOJ_000264317, WMT_DOJ_000008751, WMT_EDTX_00008417,
WMT_DOJ_000391631, WMT_EDTX_00010607, WMT_DCO_00008481, and
WMT_DCO_00008492, which were relied upon to support the referenced allegations at the time

the Second Amended Complaint was filed on February 1, 2024.  Pursuant to the ESI Order, *see* ¶

53, the United States will not reproduce these documents, which were previously produced by

Defendants to the United States.

Additionally, the United States will produce the following responsive non-privileged

documents: (1) Report regarding acquisition of oxycodone prescription for deceased patient

███████████ and interview of Walmart Pharmacist; and (2) Report of interview of ██████

███████████.

**REQUEST 66:**  All Documents relied upon by You to support Your allegations in

Paragraph 555 of the Complaint that "in many instances Walmart pharmacists filled controlled-

substance prescriptions showing a combination of obvious red flags and there is reason to believe

the pharmacist did not resolve the red flags before filling the prescription."

**RESPONSE:** The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects to this

Request as duplicative of Request 7 of Defendants' First Set of Requests for Production and First

Set of Interrogatories, which sought "[a]ll Documents referenced in, cited in, referred to, or

relied upon by [the United States] in drafting the Complaint," and Request 65 above.

The United States further objects to the vague phrase "relied upon by You to support

Your allegations," which, depending on how it is interpreted, potentially renders this Request

unduly burdensome and disproportionate to the needs of the case.  For example, the phrase could

be read to include any document on which the United States relied to support the referenced

allegations at the time the Second Amended Complaint was filed on February 1, 2024, or to

require the United States to produce any document on which it might rely in the future to support

the referenced allegations and to identify the documents as supportive specifically of those

allegations on an ongoing basis as discovery continues.  The United States construes this Request as seeking documents on which the United States actually relied to support the referenced allegations at the time the Second Amended Complaint was filed on February 1, 2024, and objects to this Request as unduly burdensome to the extent it seeks to require the United States to produce any other documents it identifies during the course of discovery on which it might rely to support the referenced allegations and to do so by identifying the documents specifically as supportive of those allegations.

Subject to and without waiving the foregoing objections, the United States refers to its responses to Request 7 of Defendants' First Set of Requests for Production and First Set of Interrogatories, which references documents listed in Exhibit A of its May 15, 2024 Initial Disclosures, and Request 65 above.

**REQUEST 67:**  All Documents relating to Your past or present guidance or policies, whether formal or informal, related to the dispensing of Controlled Substances; Your development, issuance, application, revision, or repeal thereof; and Your receipt of and response to requests for guidance or recommendations on such issues, including:

(a)  All versions of the Pharmacist's Manual published by DEA since 2010, including DEA's development, issuance, application, revision, or repeal of all such versions.  The start date for this Request, as it relates to the Pharmacist's Manual published by DEA, is January 1, 2009;

(b)  Recommendations, publications, Statements, or presentations that You have provided related to the dispensing of Controlled Substances, including DEA presentations to State Agencies;

(c)  Guidance or other Communications provided by You to any pharmacy or pharmacist regarding the dispensing of Controlled Substances, "red flags" indicative of potential diversion,

or "corresponding responsibility" under 21 C.F.R. § 1306.04; and

(d)  Guidance or other Communications provided by You to any pharmacy or pharmacist

regarding the dispensing of Controlled Substances, "red flags" or other characteristics of a

prescription indicative of potential diversion, or "acting in the usual course of his professional

practice" under 21 C.F.R. § 1306.06.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objections to Definition 24

("You" and "Your") and, with respect to Requests 67(b), 67(c), and 67(d), Instruction 1 (absence

of time limitation).  The United States further objects that Requests 67(c) and 67(d) are overly

broad, unduly burdensome, and disproportionate to the needs of the case in seeking documents

related to "any" pharmacy and pharmacist, without limitation, and related to the "dispensing of

Controlled Substances," which is an overly broad category that includes issues irrelevant to the

parties' claims and pled defenses, such as dispensing based on an electronic prescription under

21 C.F.R. § 1306.08 or partially filling a prescription under 21 C.F.R.§ 1306.13.  The United

States further objects that this Request seeks documents protected by the deliberative process

privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement

privilege.

Subject to and without waiving the foregoing objections, the United States will produce

responsive non-privileged documents from the Dispensing Violations Period, to the extent they

relate to a pharmacist's "corresponding responsibility" under 21 C.F.R. § 1306.04, within its

possession, custody, or control following a reasonable inquiry of reasonably accessible sources

that the United States has reason to believe contain relevant and unique documents.

**REQUEST 68:**  All Documents relating to processes, policies, or trainings applicable to

Your regulation, oversight, investigation, or discipline of any pharmacy or pharmacist relating to
their dispensing of Controlled Substances, including:

(a)  Your development, issuance, application, enforcement, revision, and repeal of such
processes, policies, or trainings;

(b)  Your review of and action upon DEA registration or renewal applications submitted
by pharmacies;

(c)  Your inspection, audit, or investigation of pharmacies; and

(d)  Your evaluation and determination of whether a pharmacy or pharmacist filled a
prescription or prescriptions for a Controlled Substance in compliance with the CSA.

**RESPONSE:**  The United States incorporates by reference the objections to the
definitions and instructions as if fully set forth herein, including the objections to Definition 24
("You" and "Your") and Instruction 1 (absence of time limitation).  The United States further
objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs
of the case in seeking documents related to the "dispensing of Controlled Substances," which is
an overly broad category that includes issues irrelevant to the parties' claims and pled defenses,
such as dispensing based on an electronic prescription under 21 C.F.R. § 1306.08 or partially
filling a prescription under 21 C.F.R.§ 1306.13.  The United States further objects that this
Request seeks documents protected by the deliberative process privilege, attorney-client
privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will produce
responsive non-privileged documents from the Dispensing Violations Period, to the extent they
relate to a pharmacist's "corresponding responsibility" under 21 C.F.R. § 1306.04, within its
possession, custody, or control following a reasonable inquiry of reasonably accessible sources

that the United States has reason to believe contain relevant and unique documents.

**REQUEST 69:**  All Documents relating to any Allegedly Invalid Prescription filled by a Walmart pharmacist.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects that this Request duplicates Requests 5 and 7 in Defendants' First Set of Requests for Production and Request 1 above.

Given Definition 1 ("Allegedly Invalid Prescription"), this Request seeks all documents related to the First and Second Claims of the Complaint and, thus, the entire case file of the United States related to This Litigation.  The United States thus objects that this Request fails to satisfy Rule 34's requirement to identify a subject matter with reasonable particularity.

The United States further objects to the extent that this Request seeks information that will be addressed by an expert or experts later in litigation.  The United States will provide responsive non-privileged documents when they are available.  The United States further objects that this Request seeks documents protected by the attorney work-product doctrine, including documents related to the work of consulting experts.  The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

Subject to and without waiving the foregoing objections, the United States responds by incorporating by reference its responses to Requests 5 and 7 in Defendants' First Set of Requests for Production and Request 1 above.

**REQUEST 70:**  All Documents relating to any patient for whom a Walmart Pharmacist filled any Allegedly Invalid Prescription.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects that this Request is duplicative because it is encompassed within the scope of Requests 5 and 7 in Defendants' First Set of Requests for Production and Request 1 above.  The United States further objects that this Request seeks documents protected by the attorney work-product doctrine.  The United States will provide a log of documents withheld based on privilege pursuant to Section IV of the ESI.

Subject to and without waiving the foregoing objections, the United States responds by incorporating by reference its responses to Requests 5 and 7 in Defendants' First Set of Requests for Production and First Set of Interrogatories and Request 1 above.

**REQUEST 71:**  For each Walmart prescription you contend was filled with knowledge that the prescription was written not for a legitimate medical purpose, data sufficient to show all relevant information about prescriptions bearing the same characteristics written by You, dispensed by You, or for which any Government Payor provided coverage.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 9 ("Government Payor") and Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, and seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.  The United States further objects to the vague and undefined terms "same characteristics" and "all relevant information," which render the Request vague and not reasonably particular.  The United States further objects to the Request as it purports to require the United States the conduct an analysis of prescriptions to identify "prescriptions bearing the same characteristics."

**REQUEST 72:** All Documents relating to any inspections, audits, visits, subpoenas, inspection warrants, orders to show cause, or immediate suspension orders to any Walmart pharmacy where You contend any Allegedly Invalid Prescription was filled. This includes requests for records or transcripts from any undercover operations targeting such Walmart pharmacy.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation). The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses by its use of the terms "all" and "any." In seeking "any" documents in the broad categories of "inspections, audits, visits, subpoenas, inspection warrants, orders to show cause, or immediate suspension orders," without limitation, the Request does not meet Rule 34's reasonable particularity requirement and seeks documents that are irrelevant to the parties' claims and pled defenses. In its breadth, the Request seeks documents arising from inspections or actions concerning Walmart pharmacies whether or not that investigation or action arose from their controlled-substance prescribing. Responsive, but irrelevant, documents would include, for example, documents from an inspection by a state occupational agency addressing postage of signage regarding local workplace ordinances in a pharmacy, or documents from a DEA audit related to compliance with 21 C.F.R. § 1304.11's inventory requirements. The United States further objects to this Request as overly broad and unduly burdensome to the extent it purports to require the identification and production of information that is not within the possession, custody, or control of the United States and is equally available to Defendants.

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.  Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents from the Dispensing Violations Period, to the extent they relate to inspections, audits, visits, subpoenas, inspection warrants, orders to show cause, or immediate suspension orders concerning Defendants' compliance with 21 C.F.R. § 1306.04, that are in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 73:**  All Documents relating to Your review or analysis of Walmart's policies or processes relating to dispensing Controlled Substances.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You" or "Your") and Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses because it seeks "all" documents related to the United States' review of Walmart's policies or processes relating to the overly broad category of "dispensing Controlled Substances," without any limitation to policies and processes that impact the Defendants' compliance with 21 C.F.R. § 1306.04.  A responsive, but irrelevant, document would include, for

example, documents related to a review of the Defendants' policies governing the handling of protected health information when dispensing Controlled Substances.

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e). The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents from the Dispensing Violations Period, to the extent they relate to DEA's review or analysis of Walmart's policies or processes relating to Defendants' compliance with 21 C.F.R. § 1306.04, that are in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 74:** All Documents relating to any instance in which You considered or acted upon a DEA registration or renewal application for any Walmart pharmacy where You contend any Allegedly Invalid Prescription was filled.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation). The United States specifically objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents from the Dispensing Violations Period in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 75:**  All Documents relating to any instance in which You investigated, prosecuted, or brought a disciplinary or enforcement action against Walmart or a Walmart employee for violations of the CSA related to the dispensing of Controlled Substances.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses because it seeks "all" documents related to the United States' investigation, prosecution, or other action against Walmart or a Walmart employee for violations of the CSA related to the overly broad category of "dispensing of Controlled Substances."  Such violations could include, for example, violations of 21 C.F.R. § 1306.08, governing electronic prescriptions, and 21 C.F.R.§ 1306.13, relating to partial fills, neither of which are relevant to the parties' claims and pled defenses.

The United States further objects that this Request is unduly burdensome to the extent that it requires DEA to identify Walmart employees when DEA's records do not classify the targets of disciplinary and enforcement actions by employer.

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  The United States further

objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents from the Dispensing Violations Period relating to any instance in which the United States investigated, prosecuted, or brought a disciplinary or enforcement action against Walmart or a Walmart employee for violations of 21 C.F.R. § 1306.04, that are in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 76:**  All Documents relating to a Refusal to Fill or Blanket Refusal to Fill by Walmart's pharmacists or a Central Block implemented by Walmart.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  Subject to and without waiving these objections, the United States responds that Defendants have produced responsive documents pursuant to DEA Subpoenas MW-19-322366, MW-18-817060, MW-18-817014, MW-18-816990, and MW-18-768156.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents to the extent they are documents previously produced by Defendants to the United States.

**REQUEST 77:**  All Documents relating to determinations made by non-Walmart pharmacists not to fill an individual Controlled Substance prescription written by a certain Prescriber or to no longer fill any Controlled Substance prescriptions written by a certain Prescriber.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and because of its breadth, seeks documents irrelevant to the parties' claims and pled defenses.   In particular, the Request sets no limitations regarding the category of pharmacists (and thus includes non-Walmart pharmacists), the type of controlled substance, or the identity of the prescriber.  Given these broad categories, the Request also fails to meet Rule 34's reasonable particularity requirement.  Subject to and without waiving these objections, the United States refers to WMT_EDTX_00202845, WMT_EDTX_00061809, and WMT_DOJ_000310523 as responsive to this Request.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents.

**REQUEST 78:**  All Documents relating to the determination made by a non-Walmart pharmacy, company, or entity to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber by that pharmacy, which is then imposed on all pharmacists within that pharmacy, company, or entity.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and because of its breadth, seeks documents irrelevant to the parties' claims and pled defenses.  In particular, the Request sets no limitations regarding the category of "pharmacy, company, or other entity" (and thus includes non-Walmart pharmacies), the type of controlled substance, or the identity of the

prescriber.  Given these broad categories, the Request also fails to meet Rule 34's reasonable particularity requirement.  Subject to and without waiving these objections, the United States refers to WMT_EDTX_00137795, WMT_EDTX_00155749, WMT_EDTX_00139174, WMT_DOJ_000214620, WMT_DOJ_000206689, WMT_DOJ_000282735, WMT_DOJ_000545535, and WMT_MDL_001764245 as responsive to this Request.  Pursuant to the ESI Order, *see* ¶ 53, the United States will not reproduce these documents, which were previously produced by Defendants to the United States or are documents to which Defendants already have access from the MDL litigation.

**REQUEST 79:**  All Documents relating to any instance in which You provided guidance, recommendations, direction, instruction, or advice to a pharmacy or pharmacist relating to:

(a)  The determination by a pharmacist not to fill an individual Controlled Substance prescription written by a certain Prescriber;

(b)  the determination by a pharmacist to no longer fill any Controlled Substance prescription written by a certain Prescriber; and

(c)  the determination made by a pharmacy, company, or entity to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber by that pharmacy, which is then imposed on all pharmacists within that pharmacy, company, or entity.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation).  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and because of its breadth, seeks documents irrelevant to the parties' claims and pled defenses.

In particular, the Request sets no limitations regarding the category of pharmacy or pharmacists (and thus includes non-Walmart pharmacies and pharmacists), the type of controlled substance, or the identity of the prescriber.  Given these broad categories, the Request also fails to meet Reule 34's reasonable particularity requirement.  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents during the Dispensing Violations Period relating to any instance in which DEA provided guidance, recommendations, direction, instruction, or advice to a Walmart pharmacy or pharmacist relating to the topics enumerated in the request, that are in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 80:**  All Documents relating to "red flags" as that term is used in the Complaint, including:

(a)  Any presentation by You that discusses or identifies "red flags";

(b)  Reports, presentations, and declarations of expert witnesses retained by You in any Opioid Litigation that discuss or identify "red flags";

(c)  Deposition transcripts and trial testimony of expert and fact witnesses that discuss or identify "red flags" in matters where You are a party; and

(d)  Correspondence with third parties, including pharmacies, that discuss or identify "red flags."

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objections to Definitions 13 ("Opioid Litigation") and 24 ("You") and to Instruction 1 (absence of time limitation). These definitions and the absence of a time limitation render this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

Based on Definitions 13 and 24 and Instruction 1, the United States would be required to identify every criminal prosecution and civil case against every prescriber, pharmacist, and pharmacy involving prescription opioids, without any time limitation, in which the presence of red flags was part of the basis for the prosecution, and then review the case file for each to determine if the presence of red flags was part of the basis for the United States' suit. The documents that would be discovered from such an extensive inquiry are not within the scope of the boundaries of Rule 26(b).

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, and law enforcement privilege. Further, this Request seeks information that will be addressed by an expert or experts later in litigation. The United States will produce responsive non-privileged information when it is available.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged DEA presentations during the Dispensing Violations Period discussing or identifying "red flags" following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 81:**  All Documents relating to Walmart's November 2020 petition to the DEA to promulgate rules clarifying the obligations of Prescribers, pharmacists, and pharmacies under the CSA.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.  The United States further objects that this Request seeks documents disproportionate to the needs of This Litigation.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in DEA's possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 82:**  All Documents relating to Controlled Substances and the following third- party healthcare associations:

(a)  National Association of Boards of Pharmacy (NABP) and/or Carmen Catizone;

(b)  American Medical Association (AMA);

(c)  National Community Pharmacists Association;

(d)  National Association of State Controlled Substance Authorities;

(e)  National Association of Chain Drug Stores (NACDS) (*e.g.*, the letter sent by Thomas W. Prevoznik, Deputy Assistant Administrator, Diversion Control Division, to Kevin N.

Nicholson, Vice President, Public Policy and Regulatory Affairs, NACDS, regarding DEA's
position on the medical basis of specific prescription drug therapies);

(f)  Independent Retail Pharmacy Association;

(g)  American Pharmacists Association (APhA); and

(h)  state or local associations of pharmacists, doctors, or other medical professionals.

**RESPONSE:**  The United States incorporates by reference the objections to the
definitions and instructions as if fully set forth herein, including the objection to Instruction 1
(absence of time limitation).  The absence of a time limitation renders this Request overly broad,
unduly burdensome, and disproportionate to the needs of the case.  The United States further
objects that, in seeking "All Documents relating to Controlled Substances," the Request is overly
broad, unduly burdensome, and disproportionate to the needs of the case in that the Request
seeks documents without any limitation as to subject matter beyond the broad category of
"Controlled Substances" and thus seeks documents irrelevant to the parties' claims and pled
defenses.

Subject to and without waiving the foregoing objections, the United States will produce
responsive non-privileged documents from DEA during the Dispensing Violations Period related
to the entities named in the Request and a pharmacist's corresponding responsibility under 21
C.F.R. § 1306.04 following a reasonable inquiry of reasonably accessible sources that the United
States has reason to believe contain relevant and unique documents.

**REQUEST 83:**  All Documents relating to Your past and present guidance or policies,
whether formal or informal, relating to the prescribing of Controlled Substances; Your
development, issuance, application, revision, or repeal thereof; and Your receipt of and response
to requests for guidance or recommendations relating to such issues, including:

(a) CDC's 2016 Guideline for Prescribing Opioids for Chronic Pain;

(b) CDC 2016 Pharmacists: On the Front Lines. Addressing Prescription Opioid Abuse and Overdose;

(c) CDC Advises Against Misapplication of the Guideline for Prescribing Opioids for Chronic Pain (April 24, 2019);

(d) CDC's 2022 Clinical Practice Guideline for Prescribing Opioids for Pain;

(e) CDC (National Center for Injury Prevention and Control) Presentation titled "Draft Updated CDC Guideline for Prescribing Opioids: Background, Overview, and Progress" (July 16, 2021);

(f) CDC (National Center for Injury Prevention and Control) Presentation titled "Overview of the Process for Updating the CDC Guideline for Prescribing Opioids" (July 16, 2021);

(g) CDC (National Center for Injury Prevention and Control) Presentation titled "Observations of the Opioid Workgroup of the Board of Scientific Counselors of the National Center for Injury Prevention and Control on the Updated CDC Guideline for Prescribing Opioids" (July 16, 2021);

(h) The May 6, 2019, Draft Final Report of the Pain Management Best Practices Inter-Agency Task Force;

(i) The May 2022 VA/DoD Clinical Practice Guideline for the Use of Opioids in the Management of Chronic Pain;

(j) CMS' August 2023 "A Prescriber's Guide to Medicare Prescription Drug (Part D) Opioid Policies";

(k) CMS' April 2, 2018, NOTE TO: Medicare Advantage Organizations, Prescription Drug Plan Sponsors, and Other Interested Parties, Announcement of Calendar Year (CY) 2019 Medicare Advantage Capitation Rates and Medicare Advantage and Part D Payment Policies and Final Call Letter; and

(l) Recommendations, publications, Statements, or presentations that You have provided related to the prescribing of Controlled Substances, including DEA presentations to State Agencies.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 24 ("You" or "Your").  The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses because it seeks "all" documents related to the United States' present guidance or policies, whether formal or informal, relating to the overly broad category of "prescribing of Controlled Substances."

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.  The United States further objects that this Request seeks documents disproportionate to the needs of This Litigation.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a

reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 84:**  All Documents related to the implementation or contemplated implementation of opioid-specific prescribing policies for Medicare Part D sponsors, including, for example, safety alerts, safety edits, hard safety edits, Drug Management Programs, opioid overutilization policies, opioid care coordination edits, or any similar opioid-specific policy or practice. This includes, by way of example only, the implementation of safety edits to alert pharmacists about duplicative opioid therapies or concurrent use of opioids and benzodiazepines, or the implantation of hard safety edits or opioid care coordination edits set at specific MME levels.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 85:**  All Documents relating to past or present processes, policies, or trainings applicable to Your registration, regulation, oversight, investigation, or discipline of Prescribers relating to their prescribing of Controlled Substances, and Your development, issuance, application, enforcement, revision, and repeal of such processes, policies, or trainings.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation). The absence of a time limitation renders this Request overly broad, unduly burdensome, and disproportionate to the needs of the case. The United States further objects that, in seeking "All Documents" relating to the broad category of "processes, policies, or training" in the equally broad category of "registration, regulation, oversight, investigation, or discipline of Prescribers relating to their prescribing of Controlled Substances," the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case in that the Request appears to seek documents comprising a significant percentage of the DEA's regulatory activities without any limitation to the issues relevant to the parties' claims and pled defenses. Because of the breadth of the category "prescribing of Controlled Substances," the Request fails to seek documents with reasonable particularity.

**REQUEST 86:** All Documents, from January 1, 2006, to the present, relating to any Identified Prescriber, including:

(a) Documents relating to any complaint, audit, investigation, enforcement, or disciplinary action concerning any such Prescriber, including without limitation all related Communications, Investigative Reports, interviews, notes, data, and data analyses;

(b) Documents relating to Walmart's cooperation in any complaint, audit, investigation, or enforcement or disciplinary action concerning any such Prescriber;

(c) Documents relating to any instance in which You considered or acted upon a DEA registration or renewal application for any such Prescriber, including any investigatory and due diligence efforts conducted as part of such consideration;

(d) Documents relating to whether You included or considered including any such

Identified Prescriber in HHS OIG's "Exclusions Program" for individuals who are excluded from federally-funded health care programs;

    (e)  Communications involving DEA personnel regarding any such Prescriber;

    (f)  Communications between You and any such Prescriber;

    (g)  Presentence Report(s) and Sentencing Memoranda regarding any such Prescriber;

    (h)  Communications with local, state, or federal law enforcement agencies regarding any such Prescriber;

    (i)  Communications with Walmart regarding any such Prescriber;

    (j)  Communications with third parties, including non-Walmart pharmacies and pharmacists regarding any such Prescriber;

    (k)  Documents relating to Your consideration of whether to issue an Order to Show Cause or Immediate Suspension Order with respect to any such Prescriber; and

    (l)  Documents relating to any criminal proceedings You brought against any such Prescriber.

    **RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation).  The absence of a time limitation renders this Request overly broad, unduly burdensome, and disproportionate to the needs of the case. For example, the Request seeks all documents related to the registration and renewal applications of Prescribers, regardless of how long those applications preceded the Prescribers' criminal activity and proceedings.  The United States further objects that this Request in part duplicates Request 5 in Defendants' First Set of Requests for Production.  By this reference, the United States incorporates its response to Request 5.

The United States further objects that the Request seeks documents not in the possession, custody, or control of the litigation team responsible for this case in that Presentence Reports are filed under seal and may not be released absent court order by the Department of Justice personnel responsible for the criminal proceeding. The United States further objects that the Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, and law enforcement privilege because it seeks, for example, documents reflecting the deliberations about HHS-OIG's exclusion program and DEA's administrative decisions regarding orders to show cause and immediate suspension orders.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents relating to any prescriber identified in Section II.B.1.c of the Complaint or any prescriber whose prescriptions serve as the basis for the United States' Second Claim, in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 87:** All Documents relating to Your decision to make or not make information about the DEA registration status for Prescribers publicly available, including, for instance, through the "Cases Against Doctors" page that was previously accessible on DEA's website or through the "Cases Against Doctors" publication previously issued by DEA's Diversion Control Division.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States specifically objects that this Request seeks documents or information not relevant to the United States' claims or

Defendants' pled defenses as applied against the United States. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 88:** All Documents relating to actions You have taken after receiving notice that a DEA registrant has had Controlled Substance prescriptions blocked or otherwise refused by Walmart or any other pharmacy.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States specifically objects that this Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, because of its breadth, potentially seeks documents irrelevant to the parties' claims and pled defenses because it seeks "all" documents related to the United States' actions after receiving notice of a refusal that a DEA registrant has had Controlled Substance prescriptions blocked or otherwise refused by any pharmacy, not limited to Walmart.

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e). The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents during the Dispensing Violations Period relating to actions the DEA has taken after receiving notice that a DEA registrant has had Controlled Substance prescriptions blocked or otherwise refused by Walmart, that are in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 89:**  All Documents relating to the Supreme Court's June 2022 decision in *Ruan v. United States* and *Kahn v. United States*, 142 S. Ct. 2370 (June 27, 2022).

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States specifically objects that this Request is overly broad, unduly burdensome, and disproportionate to the needs of the case. The United States further objects that the Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 90:**  All Documents relating to Government Payors' past or present processes, policies, or trainings to identify "invalid prescriptions" for Controlled Substances as that term is used in the Complaint (*see, e.g.*, Paragraphs 11, 13, 15), including Documents relating to Your development, issuance, application, enforcement, revision, or repeal of such processes, policies, or trainings.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 9 ("Government Payor") and Instruction 1 (absence of time limitation).  The United States

specifically objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States. The policies adopted by Government Payors has no bearing on Defendants' liability as alleged in the Complaint. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege. The United States will not search for or produce documents responsive to this request.

**REQUEST 91:** All Documents relating to Government Payors' past or present processes, policies, or trainings to identify Prescribers that were prescribing controlled substances "outside the usual course of professional practice," as that term is used in the Complaint (*see, e.g.*, Paragraphs 11, 16), including:

(a) Your past or present processes, policies, or trainings related to the identification of such Prescribers; and

(b) Your development, issuance, application, enforcement, revision, or repeal of such processes, policies, or trainings.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 9 ("Government Payors"). The United States specifically objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States. The policies adopted by Government Payors has no bearing on Defendants' liability as alleged in the Complaint. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client

privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 92:**  All Documents relating to any Government Payor's consideration of limitations on or changes to coverage for Controlled Substances, such as limitations based on dosage, duration, concurrent use with other Controlled Substances, or receipt of Controlled Substances from multiple Prescribers or pharmacies.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 9 ("Government Payor").  The United States specifically objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.  The policies adopted by Government Payors has no bearing on Defendants' liability under the Controlled Substances Act.  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 93:**  All Documents related to the implementation or contemplated implementation of prior authorization requirements on Medicare Part D participants for Controlled Substance prescriptions.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States further objects that the Request is

overly broad, unduly burdensome, and disproportionate to the needs of the case in seeking

documents in the broad category of "Controlled Substance prescriptions," without any limitation

to those relevant to the parties' claims and pled defenses.

Subject to and without waiving the foregoing objections, the United States will produce

responsive non-privileged documents in its possession, custody, or control following a

reasonable inquiry of reasonably accessible sources that the United States has reason to believe

contain relevant and unique documents.

**REQUEST 94:**  All Documents relating to any Government Payor's consideration of the

inclusion or exclusion of any Controlled Substances from federal prescription drug plan

formularies.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objection to Definition 9

("Government Payor").  The United States specifically objects that this Request seeks documents

or information not relevant to the United States' claims or Defendants' pled defenses as applied

against the United States.  The United States further objects that this Request seeks documents

protected by the deliberative process privilege, attorney-client privilege or attorney work-product

doctrine, or law enforcement privilege.  The United States will not search for or produce

documents responsive to this request.

**REQUEST 95:**  Claims data, and any compilations thereof, sufficient to show all

prescriptions, both for Controlled Substances and non-Controlled Substances, written by an

Identified Prescriber for which any Government Payor provided coverage.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objection to Definition 9

("Government Payor").  The United States specifically objects that this Request seeks documents
or information not relevant to the United States' claims or Defendants' pled defenses as applied
against the United States.  Payment or denial of a claim for payment for a controlled substance
by a Government Payor has no bearing on Defendants' liability as alleged in the Complaint.  The
United States will not search for or produce documents responsive to this request.

**REQUEST 96:**  All Documents relating to processes, policies, or trainings implemented at
any Government Healthcare Facility applicable to prescribing or dispensing Controlled
Substances including Documents relating to:

(a)  The determination by a pharmacist to fill or not to fill an individual Controlled
Substance prescription written by a certain Prescriber;

(b)  the determination by a pharmacist to no longer fill any Controlled Substance
prescriptions written by a certain Prescriber;

(c)  the determination made by a Government Healthcare Facility—or a pharmacy within
a Government Healthcare Facility—to prohibit the filling of any Controlled Substance
prescription written by a certain Prescriber, which is then imposed on all pharmacists within that
Government Healthcare Facility;

(d)  the identification, resolution, or documentation of any "red flags";

(e)  record-keeping policies of information related to Controlled Substance prescriptions,
including the implementation and audit of any such policies;

(f)  the filling or non-filling of Controlled Substance prescriptions that present any of the
"red flags" or characteristics identified by You in the following Paragraphs of the Complaint:
479, 482-484, 493-494, 497-498, 489, 500, 504, 508, 509-510, 513, 514, 517, 521-525, 528-
529, 530, 531-534, 539, 555;

(g)    the use of the Opioid Therapy Risk Report published by the Department of Veterans Affairs as part of its Opioid Safety Initiative; and

(h)  the referral, recommendation, permission, or guidance by You to your patients to use Walmart pharmacies for the dispensing of prescribed medications.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 10 ("Government Healthcare Facility") and Instruction 1 (absence of time limitation).  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 97:**  All Documents relating to the provision of guidance, recommendations, direction, instruction, or advice to a pharmacy or pharmacist at a Government Healthcare Facility regarding:

(a) The determination by a pharmacist to fill or not to fill an individual Controlled Substance prescription written by a certain Prescriber or prescriptions that present any of the "red flags" or characteristics identified by You in the Complaint (*see e.g.,* Paragraphs 479, 482-484, 493-494, 497-498, 489, 500, 504, 508, 509-510, 513, 514, 517, 521- 525, 528-529, 530, 531-534, 539, 555);

(b) the determination by a pharmacist to no longer fill any Controlled Substance prescriptions written by a certain Prescriber (*see e.g.,* Paragraph 132 of the Complaint);

(c) the determination made by a Government Healthcare Facility—or a pharmacy within a Government Healthcare Facility—to prohibit the filling of any Controlled Substance prescription written by a certain Prescriber, which is then imposed on all pharmacists within the Government Healthcare Facility; and

(d) the identification, resolution, or documentation of any "red flags."

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 10 ("Government Healthcare Facility") and Instruction 1 (absence of time limitation).  The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 98:**  All Documents relating to any instance in which:

(a) A pharmacist working at a Government Healthcare Facility made a determination not to fill an individual Controlled Substance prescription written by a certain Prescriber;

(b) a pharmacist working at a Government Healthcare Facility made a determination to no longer fill any Controlled Substance prescriptions written by a certain Prescriber;

147

(c) a Government Healthcare Facility—or a pharmacy within a Government Healthcare Facility—made the determination to prohibit the filling of any Controlled Substance prescriptions written by a certain Prescriber, which was then imposed on all pharmacists within that Government Healthcare Facility.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 10 ("Government Healthcare Facility"). The United States specifically objects that this Request is overly broad, unduly burdensome, and disproportionate to the need, in part because it seeks documents related to the broad category of "Prescriber" without limitation. The United States further objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States. Whether or not a pharmacist working at a Government Healthcare Facility or a Government Healthcare Facility itself made the referenced determinations has no bearing on Defendants' liability as alleged in the Complaint. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e). The United States will not search for or produce documents responsive to this request.

**REQUEST 99:** All Documents relating to any instance in which You considered or implemented any limitations on the prescribing or dispensing of Controlled Substances at a Government Healthcare Facility, such as limitations based on dosage, duration, concurrent use with other prescription medications, or receipt of Controlled Substances from multiple Prescribers or pharmacies.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 10 ("Government Healthcare Facility") and Instruction 1 (absence of time limitation). The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 100:** Data, and any compilations thereof, sufficient to show all prescriptions, both Controlled Substances and non-Controlled Substances, written by an Identified Prescriber and that were filled by a pharmacist working at a Government Healthcare Facility or filled at a pharmacy at a Government Healthcare Facility.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 10 ("Government Healthcare Facility"). The United States specifically objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States. Whether or not a pharmacist working at a Government Healthcare Facility or a Government Healthcare Facility's pharmacy filled a prescription written by an Identified Prescriber has no bearing on Defendants' liability as alleged in the Complaint. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine,

or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 101:**  All Documents relating to any complaint, inspection, audit, investigation, Investigative Report, or enforcement or disciplinary action concerning improper prescribing or dispensing of Controlled Substances, or refusal to prescribe or dispense such prescription medications, by any Prescriber, pharmacy, or pharmacist at a Government Healthcare Facility, including the following:

(a) All reports concerning the prescribing practices of ███████████████ at the Tomah VA Medical Center in Tomah, Wisconsin (*e.g.*, VA OIG Report No. 15-02131-471);

(b) VA OIG Healthcare Inspection: Opioid Management Practice Concerns John J. Pershing VA Medical Center, Poplar Bluff, Missouri (VA OIG Report No. 16-01077-255);

(c) VA OIG Healthcare Inspection: Review of Opioid Prescribing Practices Clement J. Zablocki VA Medical Center, Milwaukee, Wisconsin (VA OIG Report No. 15-02156-346);

(d) VA OIG Healthcare Inspection: Alleged Inappropriate Opioid Prescribing Practices Chillicothe VA Medical Center, Chillicothe, Ohio (VA OIG Report No. 14-00351-53);

(e) U.S. Department of Defense, Inspector General: Audit of Defense Health Agency Controls to Monitor Prescription Compliance with Federal and DoD Opioid Safety Standards (December 7, 2023) (Report No. DODIG-2024-036); and

(f) U.S. Department of Defense, Inspector General: Evaluation of the DoD Internal Controls Related to Patient Eligibility and Pharmaceutical Management Within the National Capital Region Executive Medicine Services (January 8, 2024) (Report No. DODIG-2024-044).

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 10

("Government Healthcare Facility"). To the extent that the Request seeks documents beyond the Request's subparts, the United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case in seeking documents related to "All" documents related to the collectively broad category consisting of "complaint[s], inspection[s], audit[s], investigation[s], Investigative Report[s], or enforcement or disciplinary action[s]" and concerning the equally broad category of **"**improper prescribing or dispensing of Controlled Substances." The United States specifically objects that this Request seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States. The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege. The United States will not search for or produce documents responsive to this request.

     **REQUEST 102:** All Documents relating to Your receipt, handling, analysis or use of any Refusal to Fill forms that You received from Walmart.

     **RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States specifically objects that this Request duplicates Request 8(c). The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e). The United States further objects to this Request to the extent it seeks documents or information not relevant to the United States' claims or Defendants' pled defenses as applied against the United States.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 103:** All PDMP data in Your possession related to any Identified Prescriber and all Documents relating to Your attempts to access, ability to access, and utilization of such PDMP data in connection with Your regulatory and enforcement authority.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation). The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents relating to any prescriber identified in Section II.B.1.c of the Complaint or any prescriber whose prescriptions serve as the basis for the United States' Second Claim, that are in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents and that the United States is not prohibited from distributing under applicable state law.

**REQUEST 104:** All Documents relating to Your collection, analysis, utilization, and sharing of PDMP data—including within the Prescription Drug Monitoring Program Analytics System (PDMPAS) and any predecessor or successor systems—to support Your investigations

and cases (including This Litigation), identification of pharmaceutical drug diversion, and any other purposes for which You utilize such data.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation). The United States further objects that the Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses. The Request seeks, for example, documents reflecting a DEA field office's access to PDMP data during a 2005 investigation that did not lead to criminal prosecution or a civil suit of a prescriber whose prescriptions are irrelevant to the parties' claims and pled defenses as applied against the United States.

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e). The United States will not search for or produce documents responsive to this request.

**REQUEST 105:** All Documents relating to Your collection, analysis, utilization, and sharing of CDC Wonder and National Vital Statistics System Databases data, AHRQ All Payer Claims Databases and Medical Expenditure Panel Survey data, IQVIA Prescription data, or Market Scan Commercial Claims and Encounters data to support Your investigations and cases related to pharmaceutical drug diversion (including This Litigation).

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation).  The definition of "Your" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States further objects that the Request seeks documents related to a subject matter that is irrelevant to the parties' claims and pled defenses as applied against the United States.

The United States further objects that this Request seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  The United States will not search for or produce documents responsive to this request.

**REQUEST 106:**  All testimony and expert reports You proffered in any case regarding the determination of whether a Controlled Substance prescription was invalid or otherwise issued outside the course of legitimate medical practice.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation).  The definition of "You" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during

the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects that, in seeking testimony and expert reports proffered in "any case" regarding whether a prescription was effective under 21 U.S.C. § 1306.04, the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case. The Request seeks testimony and expert reports proffered in all criminal prosecutions and civil suits brought by all 94 U.S. Attorney's Offices in which the United States alleged a violation of 21 C.F.R. § 1306.04. The United States further objects to the vague term "proffered." If broadly defined to include the presentation by the United States to an investigation's target as part of Fed. R. Crim. P. 11 plea discussions or civil settlement negotiations, regardless of the outcome of the investigation, the Request would become even more objectionably broad, unduly burdensome, and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control from criminal and civil actions against any prescriber specifically referenced in Section II.B.1.c of the Complaint or whose prescriptions serve as the basis for the United States' Second Claim.

**REQUEST 107:** All Documents relating to patient access to Controlled Substance prescriptions, including Documents relating to:

(a)      Complaints or concerns received from patients, healthcare providers, patient advocacy groups, professional medical associations, or State Agencies, including efforts to mitigate or respond to any such complaints or concerns;

(b)      Internal training materials, presentations, or manuals;

(c)      Studies, reports, or analyses that You conducted, commissioned, or funded;

(d)      Initiatives, programs, or outreach efforts;

(e)    External Statements or presentations—such as Statements presented by DEA

personnel at meetings of the Florida Board of Pharmacy (or committees thereof) on or around

June 5, 2012, June 4, 2013, October 7, 2014, and August 10, 2015—including all drafts thereof;

(f)    Congressional inquiries; and

(g)    Reports to Congress required under the Ensuring Patient Access and Effective

Drug Enforcement Act of 2016.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objections to Definition 24

("You") and Instruction 1 (absence of time limitation).  The definition of "You" and the absence

of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the

needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation

that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during

the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents

protected by the deliberative process privilege, attorney-client privilege or attorney work-product

doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will produce

responsive, non-privileged documents from DEA that are within its possession, custody, or

control following a reasonable inquiry of reasonably accessible sources that the United States has

reason to believe contain relevant and unique documents.

**REQUEST 108:**  All Documents related to Statements from Janet Woodcock, Director

of the Center for Drug Evaluation and Research at FDA; Patrizia Cavazzoni, Acting Director of

the Center for Drug Evaluation and Research at FDA; or any other FDA or CDC personnel

regarding the need for individualized patient assessments with respect to Controlled Substance

prescribing or dispensing, including:

(a)    Correspondence dated September 10, 2013, from Janet Woodcock, Director of the

Center for Drug Evaluation and Research at FDA, to Dr. and Mrs. Van Rooyan;

(b)    Correspondence dated 2019 from Janet Woodcock, Director of the Center for

Drug Evaluation and Research at FDA, to Hon. Maggie Hassan; and

(c)    Correspondence dated September 10, 2013 from Janet Woodcock, Director of the

Center for Drug Evaluation and Research at FDA, to Dr. Kolodny.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects that this

Request is overly broad, unduly burdensome, disproportionate to the needs of the case, and, to

the extent that the Request seeks documents unrelated to the allegation that Defendants

unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing

Violations Period, irrelevant to the parties' claims and pled defenses as applied against the

United States.

Further, while the Request specifies three particular statements by Janet Woodcock, the

Request is not limited to those three statements and, in seeking "all" documents without

limitation, the Request does not meet Rule 34's reasonable particularity requirement in failing to

identify documents, beyond the statements themselves, that are relevant.

The United States further objects to this Request to the extent it seeks documents

protected by the deliberative process privilege, attorney-client privilege or attorney work-product

doctrine, or law enforcement privilege.  Subject to and without waiving the foregoing objections,

the United States will produce responsive, non-privileged documents within its possession,

custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 109:**  All Documents regarding Your Statements about the establishment of limits by You or any entity on the maximum recommended daily dosages for Controlled Substances or on the duration of use for opioid therapies.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You" and "Your") and Instruction 1 (absence of time limitation).  The definition of "You" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States further objects that the Request does not meet Rule 34's reasonable particularity requirement in asking for documents from "any entity" and in asking for documents regarding unspecified "Statements."  The United States further objects that, in seeking "all" documents without limitation, the Request does not meet Rule 34's reasonable particularity requirement in failing to identify documents, beyond the statements themselves, that are relevant.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  Subject to and without waiving the foregoing objections, the United States will produce responsive, non-privileged documents from DEA that are within its possession, custody, or control following a reasonable inquiry of reasonably accessible

sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 110:** All Documents relating to the implementation, potential implementation, or removal of hard limits on Controlled Substance dispensing at pharmacies, including any such efforts with respect to Controlled Substance prescriptions filled under Medicare Part D.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation). The United States further objects that this Request is duplicative of Requests 83 and 84 above. The absence of a time limitation renders the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege. Subject to and without waiving the foregoing objections, the United States will produce responsive, non-privileged documents from DEA that are within its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 111:** All Documents relating to "Dear Healthcare Professional" and "Dear Registrant" correspondence from You or required by You to Controlled Substance Prescribers regarding the prescribing or dispensing of opioid medications.

**RESPONSE:** The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation).  The definition of "You" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case because of the breadth of the subject matter, that is, "the prescribing or dispensing of opioid medications."

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, law enforcement privilege, or Federal Rule of Criminal Procedure 6(e).  Subject to and without waiving the foregoing objections, the United States will produce responsive, non-privileged documents from DEA that are within its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 112:**  All Documents relating to any studies or publications conducted, commissioned, cited, or funded by You regarding the impact of labeling changes for any Controlled Substance medication on the number of prescriptions dispensed for Controlled Substances in the United States.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation).  The definition of "You," the absence of a

time limitation, and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case because of the breadth of the category of "any Controlled Substance medication," which includes medications irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 113:**  All Documents regarding Your Statements about whether Controlled Substance prescriptions are appropriate for the treatment of non-acute pain and should not be limited for use in treating only acute pain.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation).  The definition of "Your" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents

unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents in DEA's possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 114:**  All Documents regarding Your Statements about whether Controlled Substance prescriptions are appropriate for the treatment of acute pain.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation).  The definition of "Your" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 115:**  All Documents relating to any studies or publications regarding the use of opioid analgesics for the treatment of non-acute pain, including studies or publications conducted, commissioned, or funded by You.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation).  The definition of "Your" and the absence of a time limitation render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.

Subject to and without waiving the foregoing objections, the United States will search for and produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 116:**  All Documents relating to any FDA committee meeting or discussion regarding the safety, efficacy, or abuse and misuse potential of any Controlled Substance medication, including meetings and discussions held by the Anesthetic and Life Support Drugs Advisory Committee, the Drug Safety and Risk Management Advisory Committee, or any Advisory Committee.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The absence of a time limitation and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 117:**  All Documents relating to any actual, proposed, or contemplated Risk Evaluation and Mitigation Strategy (REMS), Safety Labeling Change, Post- Marketing Requirement, abuse-deterrent formulation, safety related manufacturer certification, or other FDA drug safety program for Controlled Substance medications, including the expansion in 2018 of the REMS for extended-release and long-acting opioid products.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1

(absence of time limitation).  The absence of a time limitation and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in DEA's possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 118:**  All education, information, or training materials provided by opioid analgesic companies pursuant to any Risk Evaluation and Mitigation Strategy (REMS) for opioid analgesics, including Documents relating to the provision, review, approval, or denial of such education, information, or training.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The absence of a time limitation and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege. The United States will not search for or produce documents responsive to this request.

**REQUEST 119:** All Documents relating to communications or coordination efforts amongst the Drug Safety Oversight Board and any federal agency or body regarding Controlled Substance prescribing and dispensing or any safety-related actions regarding opioid analgesics.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation). The absence of a time limitation and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses. The United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case because of the breadth of the category of "Controlled Substance prescribing and dispensing," which includes prescribing for controlled substances that are irrelevant to the parties' claims and pled defenses given the broad definition of Controlled Substances (Definition 6).

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege. The United States will not search for or produce documents responsive to this request.

**REQUEST 120:**  All Documents from the Defense and Veterans Center for Integrative Pain Management, the National Pain Management Program, or the Veterans Health Administration Opioid Safety Initiative relating to the safety, efficacy, or abuse and misuse potential of any Controlled Substance medication, including documents regarding "toolkits" or other resources for prescribers with respect to Controlled Substance prescribing.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The absence of a time limitation and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case because of the breadth of the category of "any Controlled Substance medication," which includes medications that are irrelevant to the parties' claims and pled defenses.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 121:**  All Documents referenced by or relied on by the Use of Opioids in the Management of Chronic Pain Work Group in drafting the Guideline for the Use of Opioids in the Management of Chronic Pain published by the Department of Defense and the Department of Veterans Affairs.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects that, in seeking documents related to policies of the Department of Defense and Department of Veterans Affairs, the Request seeks documents disproportionate to the needs of the case. The United States further objects that, in seeking "all" documents without limitation, the Request does not meet Rule 34's reasonable particularity requirement in failing to identify documents, beyond the Guideline itself, that are relevant.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege. The United States will not search for or produce documents responsive to this request.

**REQUEST 122:** All Documents relating to the White House Medical Unit's Controlled Substance Inventory and Management Policy (WHMU SOP 20-08), including documents regarding the creation and implementation of such policy, and adherence to such policy by the White House Medical Unit.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein. The United States further objects that, in seeking documents related to the White House's policies, the Request seeks documents disproportionate to the needs of the case. The United States further objects that, in seeking "all" documents without limitation, the Request does not meet Rule 34's reasonable particularity requirement in failing to identify documents, beyond the policy itself, that are relevant. The United States further objects that, in seeking documents related to the White House Medical Unit's adherence to the policy, the Request seeks documents irrelevant to the parties' claims and

pled defenses as applied against the United States.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 123:** All Documents relating to any Statements by You that the effective management of pain and the alleviation of suffering through the use of Controlled Substance medications are public health priorities in the United States.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and Instruction 1 (absence of time limitation).  The definition and absence of a time limitation and the subject matter render the Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States further objects that, in seeking "all" documents without limitation, the Request does not meet Rule 34's reasonable particularity requirement in failing to identify documents, beyond the statements themselves, that are relevant.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents from DEA in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the

United States has reason to believe contain relevant and unique documents.

**REQUEST 124:**  Documents sufficient to identify individuals at any DEA division office who either (i) held the title of "Diversion Program Manager" or "Special Agent in Charge" (or equivalent thereof) or, (ii) were otherwise responsible for overseeing Controlled Substance diversion initiatives and enforcement efforts regarding retail pharmacies.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation).  The absence of a time limitation renders the Request overly broad, unduly burdensome, and disproportionate to the needs of the case.  The United States further objects that the Request seeks documents disproportionate to the needs of the case in seeking the identity of all Special Agents in Charge, regardless of whether their responsibilities were relevant to the parties' claims and pled defenses.  The United States further objects that the term "otherwise responsible for overseeing Controlled Substances diversion initiatives and enforcement efforts regarding retail pharmacies" is vague and potentially renders the Request overly broad, unduly burdensome, and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents sufficient to identify individuals at any DEA division office who held the title of "Diversion Program Manager" for the Dispensing Violations Period in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 125:**  All Documents and communications You produced under the Freedom of Information Act in response to the West Virginia Attorney General Patrick Morrisey's document requests dated June 1, 2017 and March 15, 2019.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  Subject to and without waiving those objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.  Responsive documents are available to the public at this website:

https://ago.wv.gov/publicresources/Pages/Investigation-Into-The-DEA.aspx#:~:text=The%20Office%20conducted%20its%20investigation,DEA%20granted%20are%20available%20below.

**REQUEST 126:**  All Documents and communications provided to or received from the U.S. Department of Justice Office of the Inspector General ("OIG") and the U.S. Government Accountability Office ("GAO") in connection with the investigations resulting in the following reports (collectively, "Reports"):

(a)  February 2015 GAO Report titled DRUG SHORTAGES:  Better Management of the Quota Process for Controlled Substances Needed; Coordination between  DEA  and FDA Should  Be Improved (https://www.gao.gov/assets/670/668252.pdf) ("GAO Report 15- 202");

(b)  June 2015 GAO Report titled Prescription Drugs: More DEA Information about Registrants' Controlled Substances Roles Could Improve Their Understanding and Help Ensure Access (https://www.gao.gov/assets/680/671032.pdf) ("GAO Report 15- 471");

(c)  June 2016 GAO Report titled Additional Actions Needed to Address Prior GAO Recommendations (https://www.gao.gov/assets/680/677939.pdf) ("GAO Report 16- 737T);

(d)  September 2019 OIG Report titled Review of the Drug Enforcement Administration's Regulatory and Enforcement Efforts to Control the Diversion of Opioids (https://oig.justice.gov/reports/2019/e1905.pdf) ("DOJ-OIG Report 19-05"); and

(e)  January 2020 GAO Report titled Drug Control:  Actions Needed to Ensure Usefulness of Data on Suspicious Opioid Orders ("GAO Report 20-118").

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects that, in seeking documents related to OIG's and GAO's investigations, beyond the reports themselves, the Request seeks documents disproportionate to the needs of the case.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 127:**  All Documents relating to the Reports, including communications regarding Your draft or actual responses to allegations or conclusions in the Reports, and communications referencing or addressing allegations or conclusions in the Reports.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein.  The United States further objects that, in seeking documents related to OIG's and GAO's investigations, beyond the reports themselves, the Request seeks documents disproportionate to the needs of the case.

The United States further objects to this Request to the extent it seeks documents protected by the deliberative process privilege, attorney-client privilege or attorney work-product doctrine, or law enforcement privilege.  The United States will not search for or produce documents responsive to this request.

**REQUEST 128:**  All Documents reflecting presentations made by the DEA to pharmacies, pharmacists, or any State Agency regarding the prescribing or dispensing of

Controlled Substances.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation). The absence of a time limitation renders the Request overly broad, unduly burdensome, and disproportionate to the needs of the case. The United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs of the case because of the breadth of the category of "prescribing or dispensing of Controlled Substances," which potentially includes issues irrelevant to the parties' claims and pled defenses. The United States further objects that this Request duplicates Requests 67(b) and 83(1).

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents from the Dispensing Violations Period relating to a pharmacist's corresponding responsibility under 21 C.F.R. § 1306.04, in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 129:** All Documents reflecting presentations regarding the prescribing or dispensing of Controlled Substances made by the DEA at any conference relating to Controlled Substances, including any National Prescription Drug Abuse Conference and Pharmacy Diversion Awareness Conference.

**RESPONSE:** The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Instruction 1 (absence of time limitation). The absence of a time limitation renders the Request overly broad, unduly burdensome, and disproportionate to the needs of the case. The United States further objects that the Request is overly broad, unduly burdensome, and disproportionate to the needs

of the case because of the breadth of the category of "prescribing or dispensing of Controlled

Substances," which potentially includes issues irrelevant to the parties' claims and pled defenses.

Subject to and without waiving the foregoing objections, the United States will produce

responsive non-privileged documents from the Dispensing Violations Period in its possession,

custody, or control following a reasonable inquiry of reasonably accessible sources that the

United States has reason to believe contain relevant and unique documents.

**REQUEST 130:**  All Documents relating to the determination and setting of Opioid

Production Quotas and Opioid Procurement Quotas during the Relevant Time Period, including

all policies and protocols You utilize to set quotas, communications with any agency regarding

the quotas, and any documents and communications regarding any perceived need for an

increase in said quotas to meet legitimate medical or scientific needs.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein.  The United States further objects that the

subject matter of the Request renders it overly broad, unduly burdensome, and disproportionate

to the needs of the case because it seeks documents that are irrelevant to the parties' claims and

pled defenses.  The United States will not search for or produce documents responsive to this

request.

**REQUEST 131:**  All Documents relating to the termination, demotion, or other adverse

employment action taken by You against any individual based on that individual's views,

Statements, actions, or inactions related to their opinions on the use, regulation, prescribing, or

dispensing of Controlled Substances.

**RESPONSE:**  The United States incorporates by reference the objections to the

definitions and instructions as if fully set forth herein, including the objections to Definition 24

("You") and to Instruction 1 (absence of time limitation).  The breadth of the definition, the absence of a time limitation, and the subject matter render this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  The United States will not search for or produce documents responsive to this request.

**REQUEST 132:**  All Documents relating to Communications between You and any state, city, town, municipality, county, or other governmental entity, or their departments or agencies, concerning This Litigation or concerning any lawsuit or potential lawsuit by such other governmental entity related to prior Opioid Litigation.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("You") and to Instruction 1 (absence of time limitation).  The breadth of the definition, the absence of a time limitation, and the subject matter render this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.

Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

**REQUEST 133:**  All Documents relating to Your Communications with any current or former Walmart pharmacist or other employee regarding This Litigation or the dispensing of Controlled Substances.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24 ("Your") and Instruction 1 (absence of time limitation).  The breadth of the definition, absence of a time limitation, and breadth of the category "This Litigation or the dispensing of Controlled Substances" render this Request overly broad, unduly burdensome, disproportionate to the needs of the case, and, to the extent that the Request seeks documents unrelated to the allegation that Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  A responsive, but irrelevant, document would include a report of a routine inspection conducted at a Walmart pharmacy that includes a description of a discussion with a Walmart pharmacist during the inspection.

Subject to and without waiving the objections to the definitions and instructions, the United States will produce responsive non-privileged documents in its possession, custody, or control, related to current or former Walmart pharmacists or other employees who were contacted regarding This Litigation.

**REQUEST 134:**  All Documents relating to Your Communications with any patient who filled one or more Controlled Substance prescriptions at Walmart regarding This Litigation or the dispensing of Controlled Substances.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objections to Definition 24

("Your") and Instruction 1 (absence of time limitation).  The definition, absence of a time

limitation, and breadth of the category "This Litigation or the dispensing of Controlled

Substances"  render this Request overly broad, unduly burdensome, disproportionate to the needs

of the case, and, to the extent that the Request seeks documents unrelated to the allegation that

Defendants unlawfully dispensed controlled substances as alleged in the Complaint during the

Dispensing Violations Period, irrelevant to the parties' claims and pled defenses.  A responsive,

but irrelevant, document would include a report of interview of a person who received controlled

substances from Walmart based on a prescription written by a prescriber who was prosecuted by

a U.S. Attorney's Office in 2005 but who is not an Identified Prescriber and whose prescriptions

are irrelevant to the parties' claims and pled defenses.

Subject to and without waiving the objections to the definitions and instructions, the

United States will produce responsive non-privileged documents in its possession, custody, or

control, related to individuals who were known by the United States to have filled a prescription

a Walmart and who were contacted regarding This Litigation.

**REQUEST 135:**  All Documents provided to, reviewed by, considered, or relied upon by

any expert witnesses You intend to use in This Litigation.

**RESPONSE:**  The United States objects that this Request seeks documents related to

expert testimony and thus is premature.  Responsive documents will be available in forthcoming

discovery materials and are available in materials to which Defendants already have access,

including, but not limited to, Defendants' own dispensing data.

**REQUEST 136:**  All Documents You intend to use in connection with any motion or

during trial in This Litigation.

**RESPONSE:**  The United States objects on the grounds that this Request is premature

and cannot now produce documents related to future events.

**REQUEST 137:**  All Documents relating to the article published by ProPublica on March 25, 2020, entitled, "Walmart Was Almost Charged Criminally Over Opioids. Trump Appointees Killed the Indictment," including:

(a)  Communications relating to the article, including any Communications between You and Jesse Eisinger or James Bandler.

(b)  Documents regarding any investigation You undertook to determine who provided the information and documents referenced in the article to ProPublica.

**RESPONSE:**  The United States incorporates by reference the objections to the definitions and instructions as if fully set forth herein, including the objection to Definition 24 ("You").  The United States further objects that this Request seeks documents irrelevant to the parties' claims and pled defenses.  Subject to and without waiving the foregoing objections, the United States will produce responsive non-privileged documents from DEA in its possession, custody, or control following a reasonable inquiry of reasonably accessible sources that the United States has reason to believe contain relevant and unique documents.

Dated: June 28, 2024

DAVID C. WEISS
United States Attorney for the
District of Delaware

DYLAN STEINBERG
Chief, Civil Division
ELIZABETH F. VIEYRA
Assistant United States Attorney
1313 N. Market Street
Wilmington, DE 19801
Elizabeth.vieyra@usdoj.gov
302-573-6148

*/s/ Katherine M. Ho*

AMANDA N. LISKAMM
Director
Consumer Protection Branch

RACHAEL DOUD
Assistant Director

KATHLEEN B. BRUNSON
KATHERINE M. HO
KIMBERLY R. STEPHENS
Trial Attorneys
U.S. Department of Justice, Civil Division

Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
katherine.ho@usdoj.gov
202-353-7835

ROGER B. HANDBERG
United States Attorney for the
Middle District of Florida

CAROLYN B. TAPIE
LINDSAY S. GRIFFIN
Special Attorneys to the Attorney General
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Carolyn.b.tapie@usdoj.gov
813-274-6000

BREON PEACE
United States Attorney for the Eastern
District of New York

ELLIOT M. SCHACHNER
MEGAN FREISMUTH
Special Attorneys to the Attorney General
271 Cadman Plaza East
Brooklyn, NY 11201
Elliot.schachner@usdoj.gov
718-254-7000

MICHAEL F. EASLEY, JR.
United States Attorney for the Eastern
District of North Carolina

C. MICHAEL ANDERSON
ANDREW KASPER
Special Attorneys to the Attorney General
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Michael.anderson7@usdoj.gov
919-856-4619

*Counsel for Plaintiff*
*United States of America*

EXHIBIT E

| From: | Stephens, Kimberly R. |
|---|---|
| To: | Carlson, James W.; Ho, Katherine; Brunson, Kathleen G; Vieyra, Elizabeth (USADE); Steinberg, Dylan (USADE); Sarria, Alexandra L |
| Cc: | Hewitt, Karen P.; Varnado, Jason S.; Laxton, Jr., William G.; Junker, Andrew J.; Leathers, William; Farnan, Kelly E. |
| Subject: | RE: U.S. v. Walmart - March 19 Meet and Confer |
| Date: | Tuesday, April 8, 2025 6:35:00 PM |
| Attachments: | DEA Custodian Proposal 2025.04.08.pdf |

James –

Please see below for responses to the questions you raise in your email. We have attached an updated custodian list incorporating the additional custodians whose files we agree to search, as described below.

Thanks,
Kim

**From:** Carlson, James W. <jamescarlson@jonesday.com>
**Sent:** Friday, March 28, 2025 12:30 PM
**To:** Ho, Katherine <Katherine.Ho@usdoj.gov>; Brunson, Kathleen G <Kathleen.G.Brunson@usdoj.gov>; Stephens, Kimberly R. <Kimberly.R.Stephens@usdoj.gov>; Vieyra, Elizabeth (USADE) <Elizabeth.Vieyra@usdoj.gov>; Steinberg, Dylan (USADE) <Dylan.Steinberg@usdoj.gov>
**Cc:** Hewitt, Karen P. <kphewitt@jonesday.com>; Varnado, Jason S. <jvarnado@jonesday.com>; Laxton, Jr., William G. <wglaxton@jonesday.com>; Junker, Andrew J. <ajunker@jonesday.com>; Leathers, William <wleathers@jonesday.com>; Farnan, Kelly E. <Farnan@RLF.com>
**Subject:** [EXTERNAL] RE: U.S. v. Walmart - March 19 Meet and Confer

Kate, Kim,

I am writing to follow-up on items from our last meet and confer and to confirm the items for which the parties are at impasse.  We had asked for a response by last Friday to several of these items, but have not received anything.  We ask the government promptly advise us as to when it will have a response.

- **DOJ Custodians:**  During the meet and confer we discussed that Walmart is not willing to agree to having DOJ custodians search their own files.  However, as we also discussed, subject to a proper collection and search process, Walmart would be willing to consider a more limited set of DOJ-specific search terms and a narrowing of the government's proposed DOJ custodian list to accommodate the government's burden objections.  Walmart also requested information about whether the government has files for the former employees on its September 20 custodian list, such as Josh Russ, and a description of how the DOJ proposes to search those files.  When can we expect the government's response?  We can discuss this at

tomorrow's meet and confer.

- **DEA Prescriber Investigation Custodians:** As Walmart explained on the meet and confer, Walmart is willing to table its request for ▮▮▮▮▮▮▮ as a document custodian if the government agrees to include ▮▮▮▮▮. We provided additional information about Mr. ▮▮▮ last week and asked the government to respond to Walmart's proposal by the end of that week, but have not received a response. When can we expect the government's response? Walmart has proposed ▮▮▮▮▮ as a custodian in connection with the ▮▮▮ ▮▮▮ investigation based on its receipt of a 2012 subpoena seeking documents relating to prescriptions issued by ▮▮▮ from June 13, 2011 through June 13, 2012. Although DEA has no record of ▮▮▮▮ involvement in the ▮▮▮ investigation, which was not opened until 2015, we have continued investigating the subpoena that Walmart referenced: The case number on the 2012 subpoena issued to Walmart is affiliated with a different DEA investigation—not that of ▮▮▮▮. The subpoena, moreover, requests prescription information for June 13, 2011 through June 13, 2012, while ▮▮▮ was indicted based on conduct that occurred from 2015-2017. As such, ▮▮▮ would not have unique, responsive, discoverable materials regarding the ▮▮▮▮▮ investigation. In any event, ▮▮▮ left DEA in 2013, and DEA does not have any custodial data for him.

- **DEA WMT Investigation Custodians:** During the meet and confer we stated that we would agree to table our request for Higgins, Goldman, Martin, Bostick, and Doherty if the government agrees to add Ferry, Carrillo, and Capstraw as custodians. We also provided additional information for those custodians and asked for a response last week, but have not received one. When can we expect the government's response? Thanks for sending us the dates of the meetings that Ferry, Carrillo, and Capstraw attended. It remains our understanding that these meetings were attended by a significant number of other DEA individuals, and that attendance at one (or even several) of these meetings does not suffice to establish that an individual is likely to have responsive, unique, discoverable materials. Still, in the spirit of compromise, we will accept Walmart's proposal that it will drop its request for Higgins, Goldman, Martin, Bostick, and Doherty as custodians and that we will add Michael Ferry, Deborah Carrillo, and Jason Capstraw as custodians.

- **Tom Prevoznik:** We explained that we do not agree with the government's removal of Tom Prevoznik as a document custodian. Mr. Prevoznik was substantively involved in the investigation of Walmart leading to this complaint, wrote a letter regarding the DEA's enforcement of the CSA that Walmart presented to the Court at our March 7, 2025 hearing, testified in at least two opioid litigations involving Walmart or other pharmacy defendants, and testified before congress regarding the opioid crisis. We asked for a response last week,

but have not received one.  When can we expect the government's response? We appreciate
Walmart's explanation as to why it believes Tom Prevoznik may have unique, responsive,
discoverable documents. We will include Tom Prevoznik as a custodian.

- **Search Terms:**  With respect to the search terms for RFPs 2 & 5, we understand that the
  parties are currently at impasse on the following:  (1) running Walmart and Sam's Club as
  terms without additional limiters; (2) running the search terms for RFPs 2&5 across all DEA
  custodians, rather than excluding "headquarters" custodians; and (3) running witness names
  as search terms.

  As for the witness search terms, Walmart proposed a compromise in its March 12 email,
  whereby the government could limit its witness name searches to the 71 witnesses
  identified as having been interviewed in its 12/16/24 discovery response, and then only for
  those custodians (DEA or DOJ) who attended that particular interview.  The government has
  not responded to Walmart's proposal.  When can Walmart expect a response?

  1. We have conducted additional testing regarding the Walmart and Sam's Club search
     terms that Walmart proposed in rows 1-2 of its October 4, 2024 letter. While these terms
     still result in a significant number of mishits, as a compromise, we will run the terms in
     these two rows as Walmart proposed.
  2. To clarify, we have not taken the position that we would exclude all headquarters
     custodians. We have agreed to run the search terms for RFPs 2 and 5 across
     approximately 100 DIs as well as those at DEA who held the position of Assistant
     Administrator for Diversion Control from 2011-2020. As a compromise, we will run the
     RFP 2 and 5 terms across the remaining headquarters custodians as well.
  3. As we understand Walmart's most recent request, Walmart is proposing that we add as
     search terms the names of the Walmart employees or former employees who were
     interviewed in connection with this case, as reflected in Exhibit A to our December 16,
     2024 discovery response, and apply these search terms only to the documents of those
     custodians who attended the relevant interview or interviews. Could you please confirm
     that our understanding is correct? Does Walmart have any reason to believe that these
     search terms target discoverable materials? To the extent this search yields unique,
     responsive hits, we expect that such documents would be litigation-related work product
     or otherwise privileged.

- **Interim Deadlines:**  Walmart proposed interim production deadlines in its March 12 email, to
  which the government has not responded beyond stating in its March 17 letter that it "plans"
  to make rolling productions "every three to four weeks."  That ignores Walmart's proposal to
  have the government certify it has completed approximately half of its review by June 16 and

three quarters by August 1.  When can Walmart expert a response to its interim deadline proposal? In the absence of agreement on search terms and custodians, it is not possible to determine what would constitute half or three-quarters of our total production or to assess whether producing a given percentage by the dates Walmart has proposed would be feasible. The United States will continue to make rolling productions.

We have removed from our dispute list the CDC and FDA search terms, based upon the email we received Wednesday.  We have also removed from our dispute list the government's proposed search terms for Walmart's second set of RFPs based on the letter Walmart received on March 19 proposing terms.  We will follow-up on those items as well as the remainder of the government's March 17 custodian letter separately.

James W. Carlson
Partner
**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Office +1.412.394.9503

---

**From:** Carlson, James W.
**Sent:** Friday, March 21, 2025 4:10 PM
**To:** Ho, Katherine <Katherine.Ho@usdoj.gov>; Brunson, Kathleen G <Kathleen.G.Brunson@usdoj.gov>; Stephens, Kimberly R. <Kimberly.R.Stephens@usdoj.gov>; Vieyra, Elizabeth (USADE) <Elizabeth.Vieyra@usdoj.gov>; Steinberg, Dylan (USADE) <Dylan.Steinberg@usdoj.gov>
**Cc:** Hewitt, Karen P. <kphewitt@jonesday.com>; Varnado, Jason S. <jvarnado@jonesday.com>; Laxton, Jr., William G. <wglaxton@JonesDay.com>; Junker, Andrew J. <ajunker@jonesday.com>; Leathers, William <wleathers@jonesday.com>; Farnan, Kelly E. <Farnan@RLF.com>
**Subject:** U.S. v. Walmart - March 19 Meet and Confer

Kate, Kim,

I write regarding three requests the government made during our March 19 meet and confer.

First, as requested, we have attached here a copy of a subpoena the government sent to Walmart in 2012 requiring the production of data regarding prescriptions filled for Dr. ████████ from 2011 to 2012, which identified ████████ as the contact.

Second, as also requested, we have listed the dates of meetings attended by certain DEA agents Walmart has proposed as custodians related to the government's investigation of Walmart.  The dates referenced below have been slightly revised based on further review of our records and may not capture all of the meetings these individuals attended as DEA personnel attending meetings often did not identify themselves.

- Tom Prevoznik: ██████████████████████████
- Jason Capstraw: ████████████████████████
- Michael Ferry: ███████████████████████
- Deborah Carrillo: █████████████████

Third, the government requested that we provide Walmart's position about whether it will provide additional information about the MDL and state court dispensing data productions.  We will get back to you next week on that request.


James W. Carlson
Partner
**JONES DAY® - One Firm Worldwide**<sup>SM</sup>
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Office +1.412.394.9503


***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

April 8, 2025

### DEA CUSTODIANS



April 8, 2025



April 8, 2025



April 8, 2025



April 8, 2025



EXHIBIT F

# JONES DAY

500 GRANT STREET, SUITE 4500 • PITTSBURGH, PENNSYLVANIA 15219.2514

TELEPHONE: +1.412.391.3939 • JONESDAY.COM

DIRECT NUMBER: +1.412.394.9503
JAMESCARLSON@JONESDAY.COM

April 18, 2025

BY E-MAIL

| | |
|---|---|
| Dylan J. Steinberg | Kimberly R. Stephens |
| Chief, Civil Division | Trial Attorney |
| United States Attorney's Office | U.S. Department of Justice Civil Division, |
| 1313 N. Market Street | Consumer Protection Branch |
| Wilmington, DE 19801 | P.O. Box 386 |
| Dylan.steinberg@usdoj.gov | Washington, DC 20044 |
| | Kimberly.R.Stephens@usdoj.gov |

Re:    *United States of America v. Walmart Inc., et al.*, Case No. 1:20-cv-01744-CFC (D. Del.)

Counsel,

I write on behalf of Walmart in response to the government's March 19, 2025, letter ("March 19 Letter") proposing search terms to respond to Walmart's Second Set of Requests for Production ("2nd RFPs"), the government's April 8, 2025, email regarding, *inter alia*, search terms for RFPs 2 and 5, and the government's April 10, 2025 email regarding CDC and FDA search terms and custodians.

## I.    Applicable Custodians

Walmart's search term responses identify the specific groups of custodians over which each search discussed herein should be run. Those consist of the following groups, which are more fully identified in **Attachment A**:

- *DOJ Walmart Investigation*: Custodians from DOJ related to the Investigation of Walmart, identified in the parties' September 20, 2024, October 30, 2024, and April 18, 2025 correspondence.

- *DOJ Prescriber Investigation*: Custodians from DOJ related to the Prescriber Investigations, identified in the parties' September 20, 2024 and October 30, 2024 correspondence.

- *DEA Headquarters*: Agreed-upon custodians from DEA headquarters, identified most recently in the government's April 8, 2025 list, as well as custodians proposed in Walmart's April 18, 2025 custodian letter.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 2

- *DEA Walmart Investigation*:  Agreed-upon custodians from DEA related to the DEA's investigation of Walmart, identified most recently in the government's April 8, 2025 list, as well as custodians proposed in Walmart's April 18, 2025 custodian letter.

- *DEA Prescriber Investigation*:  Agreed-upon custodians from DEA related to the Identified Prescriber investigations, identified most recently in the government's April 8, 2025 list.

- *DEA Regional*:  Agreed-upon custodians from DEA regional offices, which the parties continue to discuss.

- *CDC*:  Agreed-upon custodians within the CDC, identified in the government's April 10, 2025 letter.[1]

- *FDA*:  Agreed-upon custodians within the FDA, identified in the government's April 10, 2025 letter.

Walmart will separately respond to the government's March 17, 2025, letter concerning custodians.

## II.     Walmart's First Set of Requests for Production Nos. 2 and 5

### A.     Search Terms

Following the government's April 8, 2025, email, we understand that, except for witness name searches and the additional search noted below, the parties have agreed to search terms for RFPs 2 and 5 from Walmart's First Set of Requests for Production, dated April 23, 2024 ("1st RFPs").  Those terms are set out in **Attachment B**.  We also understand that the government agrees to run those terms over all DEA custodians, as reflected in the attachment.  We ask that the government confirm as much.  Walmart asserts the terms should also be run over the DOJ custodians, but that dispute will be addressed separately with the Court.

Related to RFP 5, we understand that the government is relying on Dr. John Ure's identity as a basis for invalidity under its pharmacist knowledge claim.  *See* Compl. ¶¶ 474-475.  We also understand that the government does not have an investigative file related to Dr. ▇ either at DEA or DOJ (including the applicable USAO).  We ask the government confirm as much.  To the extent the government does have an investigative file related to Dr. ▇, Walmart asks that the government produce it and that the government identify custodians related to that investigation.

---

[1] The parties have also separately agreed to agency-specific search terms for CDC and FDA.  **Attachment C** includes a handful of general terms that Walmart requests be applied to all agencies, including CDC and FDA.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 3

Walmart has, in any event, proposed an additional search related to Dr. ███ as Search #20 in
**Attachment B**.

Regarding the witness name searches, as discussed during the April 9 meet and confer, the
government's April 8 email correctly described Walmart's latest proposal—to run the names of
Walmart employees or former employees identified as having been interviewed by the government
in Exhibit A to the government's December 16, 2024 interrogatory responses, over the files of the
DOJ and DEA custodians that attended an interview of that witness. Walmart would further agree
to limit these searches to external communications. This proposal is set out as Search #23 in
**Attachment B**. Walmart requests the government confirm whether it agrees to this proposal.

### B.  FCA Investigation Files

The parties previously discussed that the government's collections do not appear to include
all materials related to the FCA claims that were part of the government's investigation of
Walmart. During a meet and confer, Walmart asked the government to confirm: (1) that it will
collect and produce any central files maintained by DOJ Civil Frauds related to the potential FCA
claims; (2) that it will collect and produce any files from the USAO offices related to the potential
FCA claims, to the extent that was not already done; and (3) that there is no separate DEA Impact
file or similar central source at the DEA related to the potential FCA claims, or if there is, that the
government will produce it.

### C.  Prescriber Investigation Files

As discussed during the parties' April 9 meet and confer, Walmart understands that the
government has or will search for and produce any DEA Impact file or USAO central file related
to an investigation of an Identified Prescriber regardless of the result of the investigation. Walmart
requests the government confirm promptly if Walmart's understanding is incorrect.

Further, the parties discussed a subpoena Walmart received in 2012 seeking prescription
data for Dr. ███████. The government stated that Dr. ████ was not a target of the
investigation and therefore that the investigation is irrelevant. The government was unable to
provide information about the subject of the investigation, however. Walmart noted that it had
difficulty understanding how an investigation that included a specific request for Dr. █████'
dispensing data is not relevant and requested additional information about the investigation so that
Walmart can assess its relevance, which the government agreed to provide.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 4

III.   **Search Terms for Walmart's 2nd RFPs**

A. **Government's Proposed Search Terms and Walmart's Revisions**

As noted above, Walmart has revised the government's proposed searches for the 2nd RFPs in **Attachment C**. Many of Walmart's revisions address the government's use of overly narrow terms that would eliminate large swaths of potentially relevant documents before they were even reviewed for responsiveness.

For example, the government's proposed terms would only hit on "legitimate medical purpose" if that phrase is preceded within two words or less by "no," "without," or "absent." *See, e.g.,* **Attachment C**, RFPs 2, 9, 10. That too narrowly constricts the search, because documents discussing "legitimate medical purpose" are as relevant to key issues in this case like the standard of care as documents discussing the alleged absence of a "legitimate medical purpose." Similarly, some of the government's proposed searches require document-type terms—*e.g.*, "presentation," "pamphlet," "brochure," "handout" or "publication." However, many presentations, pamphlets, brochures, "handouts," and publications do not label themselves as such and therefore would not be captured by the government's proposed searches. It should be more than sufficient to search for the subject matter of the guidance materials Walmart seeks without requiring the document to include a specific buzz word describing itself.

Some of the government's proposed searches require specific words from Walmart's requests—*e.g.*, "complian*," "non-complian*," "patient access," ("Public Health" and "United States"), "hard limit," "controlled substance*"—without appropriate synonyms to capture responsive materials that use language beyond the literal words in Walmart's request. And some searches target only an example category or type of document identified in Walmart's requests—*e.g.*, "Cases Against Doctors," "DEA registration," "renewal application"—instead of the fuller scope of the request. In each of these cases, Walmart has either struck the overly limiting terms or added synonyms.

B. **RFPs for which the Government did not Propose Search Terms**

In its March 19 Letter, the government states that it has not proposed search terms for RFPs (i) for which it has not agreed to produce documents, (ii) that it claims are duplicative of RFPs in Walmart's 1st RFPs, (iii) that it represents it will address "entirely by non-custodial sources," and (iv) specifically, RFPs 72 and 75. March 19 Letter at 1-2.

Walmart does not agree with the government's limitations on discovery in response to many of these RFPs. Accordingly, we have proposed in **Attachment C** additional searches to

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 5

capture materials responsive to certain of the RFPs in the above categories. *See* **Attachment C**, Search #s 30-40. This includes:

- **RFPs 69, 70, 134.** *Documents relating to any allegedly invalid prescriptions filled by Walmart and patients for whom Walmart filled an allegedly invalid prescription, including communications with those patients.* The government has agreed to run searches related to the Identified Prescribers, but has not agreed to any searches targeted at the so-called red flag prescriptions identified in paragraphs 545-556 of the Complaint. To remedy that deficiency, Walmart proposes searching the names of the doctors who wrote prescriptions identified in Exhibit A to Walmart's February 21, 2025 dispute letter, as well as those prescribers' DEA Numbers, to the extent they are not already being searched as Identified Prescribers. *See* **Attachment C**, Search #30. Walmart estimates that would include approximately 8 prescribers. Should Walmart agree to produce or the Court otherwise order discovery on additional prescriptions, this search should expand to cover all of those prescribers as well.

- **RFP 72.** *Documents relating to inspections and audits of Walmart pharmacies the government alleges filled invalid prescriptions.* The government previously agreed to produce materials responsive to this RFP. *See* 2nd RFPs O&Rs. It now claims this RFP is unreasonably burdensome and seeks irrelevant documents. *See* March 19 Letter at 1-2. As the government previously acknowledged in agreeing to produce responsive documents, this RFP seeks materials relevant to the government's allegations that Walmart pharmacies and pharmacists filled thousands of prescriptions in violation of the CSA and Walmart's related defenses. As Walmart has previously stated, it is willing to limit this request to inspections and audits conducted by those Field Divisions covering the states where the Identified Prescribers primarily practiced.[2] That would include the search of central sources as well as the search terms Walmart proposes to be run over DEA Regional custodial files to identify responsive materials. *See* **Attachment C**, Search #31.

- **RFP 74.** *Documents relating to consideration or action upon a DEA registration or renewal application for any Walmart pharmacy that filled an allegedly invalid prescription.* The government previously agreed to produce materials responsive to this RFP, *see* 2nd RFPs O&Rs, but did not propose corresponding search terms to capture communications relevant to this topic. We understand from earlier meet-and-confers that the government is collecting DEA registration and renewal materials for the stores at which

---

[2] The Identified Prescribers primarily practiced in Colorado, Delaware, Florida, Georgia, Indiana, Missouri, New Mexico, Oklahoma, Pennsylvania, Texas, and West Virginia. Relevant Field Divisions for those states include Dallas, Miami, El Paso, Philadelphia, Rocky Mountain, Chicago, Louisville, Atlanta, St. Louis, and Houston.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 6

the government contends Walmart filled invalid prescriptions, and we ask that the government confirm that understanding. In addition, Walmart proposes search terms to be run over DEA Regional custodial files to identify responsive materials. *See* **Attachment C**, Search #33.

- **RFPs 77, 78, 98, & 100.** *Documents relating to determinations by non-Walmart pharmacists to issue RTFs, BRTFs, or corporate blocks.* Walmart understands that the government has agreed to produce documents responsive to these RFPs that relate to the Identified Prescribers whose identities are the basis for the government's invalidity assertions. Walmart proposes search terms to be run over DEA custodial files to identify responsive materials, including materials related to actions taken by pharmacists at governmental facilities with respect to the Identified Prescribers. *See* **Attachment C**, Search #35.

- **RFPs 83 & 85.** *Guidance related to Controlled Substance prescribing and the government's oversight of Controlled Substance prescribing.* The government agreed to produce documents responsive to RFP 83 in its 2nd RFPs O&Rs and previously agreed to meet and confer regarding a search of DEA's files for documents responsive to RFP 85 from January 1, 2011 to December 22, 2020. The government's proposed search terms do not adequately address these RFPs. The government should confirm whether materials responsive to these RFPs are stored in central locations within the DEA and, if so, whether the government is searching those sources. In addition, Walmart proposes search terms to be run over DEA, CDC, and FDA custodial files to identify responsive materials. *See* **Attachment C**, Search #37.

- **RFPs 86, 103, & 106.** *Documents and data relating to any Identified Prescriber, including expert testimony and reports proffered by the government in an Identified Prescriber case.* In its 2nd RFPs O&Rs, the government agreed to produce documents responsive to RFPs 86, 103, and 106 that concern Identified Prescribers whose identities are the basis for the government's invalidity assertions. *See* 2nd RFPs O&Rs. We understand that the government has already produced—or will produce—materials responsive to these RFPs from the Identified Prescribers' case files at the DEA and the relevant USAOs. In addition, Walmart proposes search terms to run on DOJ and DEA files to identify responsive materials. *See* **Attachment C**, Search #38.

- **RFPs 126 & 127.** *Documents and communications provided to or received from the DOJ OIG or GAO related to the Reports and documents regarding the Reports.* Walmart is willing to narrow these RFPs to documents in the possession of DEA that (i) are referenced in the Reports or relied upon in reaching the conclusions in the Reports or (ii)

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 7

evidence any changes to policies or procedures made by DEA as a result of the Reports. Those materials are relevant and proportional to the needs of the case and Walmart has proposed search terms for the government to run. *See* **Attachment C**, Search #39.

- **RFP 130.** ***Documents relating to the determination and setting of Opioid Production Quotas and Opioid Procurement Quotas.*** Walmart would consider tabling this RFP if the government would enter a stipulation that the government will not, at any point, reference the number of opioid medications being dispensed in the U.S. as a whole, in a given geographic area, by Walmart generally, or by a specific Walmart store (including any reference to the volume of opioid dispensing being relevant to Walmart dispensing policies). Otherwise, the government should produce the documents requested regarding its setting of opioid production quotas that were informed by the medical necessity of those medications. Walmart proposes search terms to run on DEA and FDA files to identify responsive documents. *See* **Attachment C**, Search #40.

### C. Improper Exclusion of Non-Privileged Internal Communications

In its March 19 Letter, the government agreed to (1) "search for and produce responsive, non-privileged DEA materials that document, discuss, or otherwise reflect external DEA communications" and (2) search for and "produce responsive internal communications if they pertain specifically to Walmart or the problem prescribers and are not privileged." March 19 Letter at 2. Walmart requests the government confirm that it will log, as required by the ESI Order, any documents under category (2) that it contends are "privileged." D.I. 132 ¶ 17.

The government has refused, however, to search for and produce any other "[i]nternal DEA drafts and communications that are otherwise responsive to these requests." March 19 Letter at 2. The government has taken the same position with respect to FDA and CDC materials, stating most recently in an April 10 letter that "[i]nternal CDC and FDA communications and drafts that are otherwise responsive to Walmart's requests are not relevant to this case," and that "many" such "documents are likely protected by the deliberative process privilege." April 10 Letter at 1. During the parties' April 9, 2025 meet-and-confer, the government clarified that communications between agencies (*e.g.*, communications between employees of CDC and DEA) are not "internal" and will therefore be searched, reviewed, and produced if responsive and non-privileged. We ask the government clarify immediately if that is not correct for any of the government agencies.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 8

The government's position that large swaths of responsive internal agency communications are categorically irrelevant is improper and unfairly limits Walmart's ability to conduct meaningful discovery.  To take just one aspect of the government's case, the government contends that certain categories of prescriptions and prescription combinations are illegal in all but a few limited circumstances.[3]  As a standard setters and regulators, the CDC, DEA, and FDA not only have visibility into nationwide prescribing and dispensing practices but also play a role in influencing those practices.  Documents within the files of custodians from these agencies will demonstrate that the same prescriptions the government now contends are illegal were in fact regularly prescribed and dispensed by doctors and pharmacists across the country.  Those and other documents will also show that the agencies knew those prescriptions were regularly prescribed and dispensed, but took no action, whether through industry guidance, clinical guidance, labeling requirements, revoking prescriber or dispenser registrations, or otherwise prohibiting the medication or combination of medications from being dispensed, suggesting to pharmacists and others that they were not illegal.  Likewise, Walmart expects there are likely to be communications from leadership within these agencies to others within each agency that reflect the agencies' positions on the alleged "red flags" or the so-called "exceptions" to the "red flag" categories the government alleges here.  All of those documents bear directly on the contemporaneous standard of care and the government's claims of invalidity in this litigation.

Those types of internal communications are also routinely produced by the government in litigation.  For instance, in *Coeur Alaska, Inc. v. Southeast Alaska Conservation Council*, the Supreme Court relied on an internal EPA memorandum sent by an agency department head to a regional director with instructions on how to apply regulations related to the Clean Water Act to conclude that a mine discharge permit was lawful.  557 U.S. 261, 283–86 (2009).  In *United States v. Cooper*, the judge ordered a new trial finding that he had "substantially prejudiced" the defendant by preventing the cross examination of a DEA agent with an internal DEA memorandum titled, "Sampling, Submission and Storage of Fresh Marijuana Plant Material Seized as Evidence by DEA from Grow Operations."  No. 1:06-CR-00064, 2010 WL 2622963, at *2, 4 (W.D. Va. June

---

[3] The government recently informed Walmart that it does not intend to pursue civil penalties for certain "red flag" prescriptions if information available to the government indicates that the prescriptions were issued for treatment of "(1) uncontrolled pain attributable to cancer, (2) uncontrolled pain for patients receiving end-of-life palliative care, (3) short-term treatment for uncontrolled post-surgical pain, or (4) as part of an effort to transition a patient from an improper, high-dose opioid treatment regimen to a medically accepted treatment regimen."  Pl.'s Fourth Amend. and Suppl. Objs. and Resps. to Defs.' First and Second Set of Interrogs. at 2 (Mar. 28, 2025).

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 9

28, 2010). And in *United States v. Akinyoyenu*, the court cited an internal memorandum from the DEA's associate chief counsel to a diversion group supervisor providing guidance on the application of the Controlled Substances Act to hold that prosecution of a pharmacist for distribution of Fioricet was unwarranted. 199 F. Supp. 3d 106, 116 (D.D.C. 2016). Similarly, in responding to an opioid-related FOIA request from the West Virginia Attorney General in 2019, the DEA responded by producing dozens of internal memoranda and e-mails from the DEA, including internal quota procurement memos and follow-up correspondence among Diversion Control personnel, and communications reflecting purely internal discussions and information-sharing about diversion, legislation introduced in Congress, and other internal matters. *See generally* DEA's Production in Response to WV Attorney General's. 2019 FOIA Requests.[4]

The government has cited *United States v. Amerisourcebergen Corp.*, 22-cv-5209, D.I. 89 (Jan. 31, 2025) ("ABDC") as supporting its position. Such reliance is misplaced. There the court ruled that "DEA personnel's purely private views on the industry's reporting obligations" were not relevant. *Id.* at 5. The ABDC court's narrow definition of relevance is not consistent with the Federal Rules, which another court considering similar discovery requests correctly noted are "broadly construed" especially where "[t]he Government is seeking an award that may exceed a billion dollars." *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. 16-8697, 2018 WL 8459926, at *11 (C.D. Cal. Dec. 14, 2018). But, more fundamentally, as discussed above, Walmart's requests seek far more than "agency personnel's interpretation" of caselaw, statutes or regulations. The ABDC case, therefore, is not relevant here.

The government has also pointed to the deliberative process privilege as a justification for not searching for responsive internal agency materials. None of the examples listed above, however, would be covered by the deliberative process privilege, which narrowly applies to material that is "pre-decisional and deliberative," *Bayliss v. New Jersey State Police*, 622 F. App'x 182, 185 (3d Cir. 2015); *see also Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (privilege applies to "documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice'") (citations omitted). Further, the burden for establishing whether the deliberative process privilege applies in the first place rests

---

[4] Publicly available at https://ago.wv.gov/publicresources/Pages/Investigation-Into-The-DEA.aspx.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 10

on the government and "is not absolute." *Redland*, 55 F.3d at 854. Walmart may overcome the privilege by "showing that its need for the documents outweighs the government's interest." *Id.*

The government's categorical refusal to produce or log internal communications is particularly improper because it would make it impossible for Walmart or the Court to assess the government's privilege assertions and would deprive Walmart of the ability to argue for disclosure even if the privilege applied. It would also sidestep procedural safeguards that constrain application of the privilege. *See, e.g.*, *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (holding that "the head of the agency claiming the privilege must personally review the material, there must be a specific designation and description of the documents' claimed to be privileged, and there must be precise and certain reasons for preserving the confidentiality of the communications") (cleaned up).

Walmart is entitled to responsive internal agency communications that are not privileged. If the government invokes the deliberative process privilege (or any other privilege or protection) in this case, it must provide an adequate log pursuant to the terms of the Protective Order and ESI Order in this case. Categorically refusing to even search for these materials—let alone conduct a proper review for privilege purposes—is wholly insufficient.

Walmart requests the government clarify its definition of "internal documents" and whether they would result in the types of documents Walmart describes herein being withheld and not logged.

### D. RFPs Requiring Targeted Collection

Based on our previous meet-and-confers, we understand that the government has or will perform targeted collections for documents responsive to RFPs 1-66. We understand based on the government's March 19 letter that it also proposes search terms and custodians for several RFPs in this category, including:

- **RFP 8. *Documents related to the Walmart Memorandum of Agreement.*** We understand that Search #1 relates to RFP 8. The government has not explained why it believes the current custodians are sufficient to cover this RFP and requests the government confirm which individuals are likely to have responsive materials. Walmart also requests that the government identify any central sources the government has searched or intends to search to respond to this request.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 11

- **RFPs 28 & 32.  *Documents related to the Unidentified Prescribers in Paragraphs 219 and 229-230 of the Complaint.*** We understand that Search #s 7 and 8 relate to RFPs 28 and 32 and the unidentified prescribers referenced in Paragraphs 219 and 229-230 of the Complaint, and that the government intends to use search terms to identify documents responsive to these RFPs.  The government has not explained, however, why it believes the current custodians are likely to have responsive materials and Walmart requests the government do so.  Walmart also requests the government confirm it will search for and produce any DEA Impact files or central USAO files for these two prescribers.

Walmart has also identified certain categories of documents for which it believes the government should conduct a targeted search in addition to the use of search terms.

- **RFP 67.  *Guidance or policies regarding dispensing Controlled Substances.*** In its March 17, letter, the government agrees to produce the Pharmacist's Manual but objects to producing *drafts* of the Pharmacist's Manual.  Walmart asks that the government confirm it will collect and produce all final versions of the Pharmacist's Manual, starting with the first version published in 2010.  Walmart has also proposed search terms to capture communications related to the Pharmacists' Manual, which are responsive to this RFP.  *See* **Attachment C**, Search #34.

- **RFP 68.  *Documents relating to processes, policies, or trainings applicable to regulation, investigation, or discipline of pharmacies or pharmacists relating to Controlled Substance dispensing.*** In its March 17 letter, the government refuses to produce final or draft versions of the DEA Diversion Investigators Manual, seemingly claiming that they are irrelevant internal communications that are protected by deliberative process and other privileges.  However, as discussed during the April 9 meet and confer, the government has produced the Diversion Investigators Manual before, including in October 2013 pursuant to a FOIA request.  That copy of the Manual—which was 383 pages and included Chapters 50-53 along with various appendices—was then re-produced in the MDL.  *See* Letter from K. Myrick, DEA FOI/Records Management Section to R. Giacalone, Oct. 2013 (CAH_MDL2804_02145395).  The Manual's guidance regarding investigation into and discipline related to controlled substance dispensing is unquestionably relevant to this case.  Walmart thus reiterates its request that the government produce all versions of the Diversion Investigators Manual in effect from 2011 to 2020.

- **RFP 80.  *Documents relating to "red flags," including (a) any presentations, (b) reports and declarations of experts proffered by the government, (c) deposition and trial testimony of expert and fact witnesses for the government, and (d) correspondence with third parties.*** The government previously agreed to collect and produce expert reports

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 12

prepared as part of the prosecutions of Identified Prescribers, as well as those expert reports prepared in the following pharmacy cases: *United States v. Ridley's Family Markets*, No. 1:20-cv-00173 (D. Utah); *United States v. Howen*, No. 1:21-cv-00106 (E.D. Cal.); and *United States v. Bacaner*, No. 8:21-cv-0391 (M.D. Fla.). During the April 9 meet and confer the government stated it expected to produce these materials before the end of April.

This RFP, however, is not limited to pharmacy cases. Walmart has also identified the following CSA cases where it appears the government did or may have served relevant expert reports. Walmart requests that the government collect and produce expert reports prepared in the following cases: (1) *United States v. Okafor*, No. 23-116 (JDB) (D.C. Columbia); (2) *United States v. Anderson*, No. 2:19-cr-00067 (S.D. Oh.); (3) *United States v. Ruan*, No. 1:15-cr-00088 (S.D. Ala.); (4) *United States v. Orusa*, No. 3:18-cr-00342 (M.D. Tenn.); (5) *United States v. Mirilishvili*, No. 1:14-cr-00810 (S.D.N.Y.); (6) *United States v. Clark*, No. 4:13-cr-00028 (S.D. Ga.); (7) *United States v. Bourlier*, No. 3:10-cr-00030 (N.D. Fla.); and (8) *United States v. Naylor*, No. 3:19-cr-60 (E.D. Tenn.).

Walmart has also proposed revised search terms for this RFP. *See* **Attachment C**, Search #11.

### E. Responsiveness Criteria

In a number of its Responses and Objections to the 2nd RFPs, the government has improperly narrowed its criteria for identifying responsive documents. Walmart seeks confirmation as to whether the government intends to withhold documents on the basis of those definitions. Specifically:

- Where Walmart has requested government guidance or policies related to the dispensing of controlled substances, the government has stated that it would only produce materials to the extent they relate to "a pharmacist's 'corresponding responsibility' under 21 C.F.R. § 1306.04[.]" November 8, 2024 Letter at 8 (responding to RFPs 67 and 68). It is unclear whether this includes documents related to a prescription's legitimate medical purpose or a prescriber's usual course of practice. Walmart therefore requests that the government confirm it will produce the non-privileged documents returned by the agreed search terms that relate to any portion of 21 C.F.R. § 1306.04(a).

- Similarly, multiple of Walmart's RFPs seek information related to controlled substances dispensing guidance, controlled substances prescribing guidance, refusals to fill, and blanket refusals to fill regardless of whether or not the document or communication specifically involved Walmart. The government's position on those materials is unclear.

JONES DAY

Dylan J. Steinberg
Kimberly R. Stephens
April 18, 2025
Page 13

Walmart requests that the government confirm it will not withhold otherwise responsive, non-privileged documents that are returned by the agreed search terms on the grounds that they pertain to other pharmacies or prescribers. *See, e.g.*, RFPs 76-79, 83, 98.

- RFP 129 seeks presentations "regarding the prescribing or dispensing of Controlled Substances made by the DEA at any conference relating to Controlled Substances, including any National Prescription Drug Abuse Conference and Pharmacy Diversion Awareness Conference." The government's response suggests it is limiting the scope of its review to only presentations related to controlled substances dispensing. Walmart requests that the government confirm it will also include presentations related to the prescribing of controlled substances.

\*    \*    \*

Walmart is available to meet and confer.

Regards,

*/s/ James W. Carlson*

James W. Carlson

cc:    Katherine Ho, Consumer Protection Branch
       Kate Gilchrist Brunson, Consumer Protection Branch
       Meredith Reiter, Consumer Protection Branch
       Kelly Farnan, Richards, Layton & Finger, P.A.
       Karen P. Hewitt, Jones Day
       Jason S. Varnado, Jones Day
       William G. Laxton, Jr., Jones Day

## DOJ

Custodians proposed by the government and by Walmart.

| Custodian | Custodian Group | Status |
|---|---|---|
| Aloisio, Giovan | DOJ Walmart Investigation | Originally Government Proposed |
| Anderson, Michael | DOJ Walmart Investigation | Originally Government Proposed |
| Apicella, Jolie | DOJ Walmart Investigation | Originally Government Proposed |
| Arbeit, Susan | DOJ Walmart Investigation | Originally Government Proposed |
| Armstrong, Nicholas | DOJ Walmart Investigation | Originally Government Proposed |
| Baeza, Daniel | DOJ Prescriber Investigation | Walmart Proposed |
| Baker, Melissa | DOJ Walmart Investigation | Originally Government Proposed |
| Behe, William A. | DOJ Prescriber Investigation | Originally Government Proposed |
| Brown, Joe | DOJ Walmart Investigation | Walmart Proposed |
| Bunn, Candace Haley | DOJ Prescriber Investigation | Originally Government Proposed |
| Burnette, Charles | DOJ Walmart Investigation | Originally Government Proposed |
| Chappel [or Chappell], Julie | DOJ Walmart Investigation | Walmart Proposed |
| Chupik, James | DOJ Walmart Investigation | Originally Government Proposed |
| Clarkson, J. Thomas | DOJ Prescriber Investigation | Originally Government Proposed |
| Codol, Kevin | DOJ Walmart Investigation | Walmart Proposed |
| Cornfeld, Benjamin | DOJ Walmart Investigation | Originally Government Proposed |
| Crockett, David | DOJ Walmart Investigation | Originally Government Proposed |
| DeCastro, Arturo | DOJ Walmart Investigation | Originally Government Proposed |
| Deline, Amy | DOJ Walmart Investigation | Originally Government Proposed |
| Dotson, William Samuel | DOJ Prescriber Investigation | Originally Government Proposed |
| Doud, Rachael | DOJ Walmart Investigation | Originally Government Proposed |
| Eyler, Gustav | DOJ Walmart Investigation | Originally Government Proposed |
| Falgowski, Edmond | DOJ Prescriber Investigation | Originally Government Proposed |
| Foster, Sarah | DOJ Walmart Investigation | Originally Government Proposed |
| Fowkes, Joshua | DOJ Walmart Investigation | Originally Government Proposed |
| Gammons, Carlton Curtiss | DOJ Prescriber Investigation | Originally Government Proposed |
| Gaugush, Simon | DOJ Prescriber Investigation | Walmart Proposed |
| Gerard, Eric | DOJ Walmart Investigation | Originally Government Proposed |
| Gillingham, James | DOJ Walmart Investigation | Originally Government Proposed |
| Graf, Amanda | DOJ Walmart Investigation | Originally Government Proposed |
| Gray, Anita | DOJ Walmart Investigation | Walmart Proposed |
| Griffin, Lindsay | DOJ Walmart Investigation | Originally Government Proposed |
| Harlow, James | DOJ Walmart Investigation | Originally Government Proposed |
| Harris, John | DOJ Walmart Investigation | Originally Government Proposed |
| Hartley, Karen | DOJ Prescriber Investigation | Originally Government Proposed |
| Harwell, Randy | DOJ Walmart Investigation | Originally Government Proposed |
| Hatcher, Laura | DOJ Walmart Investigation | Originally Government Proposed |
| Heinrach, Mark | DOJ Walmart Investigation | Originally Government Proposed |
| Herrald, Jennifer Rada | DOJ Prescriber Investigation | Originally Government Proposed |
| Hong, Haeji | DOJ Walmart Investigation | Originally Government Proposed |
| Howard-Allen, Kelley Clement | DOJ Prescriber Investigation | Originally Government Proposed |
| Hsueh, Yi-Fun | DOJ Walmart Investigation | Originally Government Proposed |
| Josephson, Matthew | DOJ Prescriber Investigation | Originally Government Proposed |
| Kaplan, Amy | DOJ Walmart Investigation | Originally Government Proposed |
| Kappakas, Elizabeth | DOJ Walmart Investigation | Walmart Proposed |
| Keegan, Ruth | DOJ Walmart Investigation | Walmart Proposed |

Attachment A to Walmart 4/18/2025 Letter

Agency Custodians
DOJ

| Custodian | Custodian Group | Status |
|---|---|---|
| Keelin, Terry | DOJ Walmart Investigation | Originally Government Proposed |
| Knapp, James | DOJ Walmart Investigation | Originally Government Proposed |
| Knott, Dianne | DOJ Prescriber Investigation | Originally Government Proposed |
| Lange, Alexander | DOJ Walmart Investigation | Originally Government Proposed |
| Levy, Joshua | DOJ Walmart Investigation | Originally Government Proposed |
| Loew, Steven L. | DOJ Prescriber Investigation | Originally Government Proposed |
| Lyons, Adam | DOJ Walmart Investigation | Originally Government Proposed |
| Marsh, Kirt | DOJ Walmart Investigation | Walmart Proposed |
| Matz, Harry | DOJ Walmart Investigation | Walmart Proposed |
| McGonigal, Alan G. | DOJ Prescriber Investigation | Originally Government Proposed |
| Mock, Jasand | DOJ Walmart Investigation | Originally Government Proposed |
| Mooney, James Philip | DOJ Prescriber Investigation | Originally Government Proposed |
| Pizzo, Gregory Davis | DOJ Prescriber Investigation | Originally Government Proposed |
| Priore, Shana | DOJ Walmart Investigation | Originally Government Proposed |
| Quinn, Matthew | DOJ Walmart Investigation | Walmart Proposed |
| Rattan, Heather | DOJ Prescriber Investigation | Originally Government Proposed |
| Reed, Jenna E. | DOJ Prescriber Investigation | Walmart Proposed |
| Remis, Aleza | DOJ Prescriber Investigation | Originally Government Proposed |
| Reynolds, Brett | DOJ Walmart Investigation | Walmart Proposed |
| Robers, Brandon | DOJ Walmart Investigation | Originally Government Proposed |
| Rocktashel, George J. | DOJ Prescriber Investigation | Originally Government Proposed |
| Rocque, Amanda | DOJ Walmart Investigation | Originally Government Proposed |
| Rowley, Stephen | DOJ Prescriber Investigation | Originally Government Proposed |
| Russ, Joshua | DOJ Walmart Investigation | Originally Government Proposed |
| Russell, Randi | DOJ Walmart Investigation | Walmart Proposed |
| Sanders, Kim | DOJ Prescriber Investigation | Walmart Proposed |
| Schachner, Elliott | DOJ Walmart Investigation | Originally Government Proposed |
| Schwada, Amanda | DOJ Walmart Investigation | Originally Government Proposed |
| Sempa, Francis P. | DOJ Prescriber Investigation | Walmart Proposed |
| Smith, Maureen | DOJ Walmart Investigation | Originally Government Proposed |
| Smith, Maureen | DOJ Prescriber Investigation | Originally Government Proposed |
| Sobczak, Claire | DOJ Prescriber Investigation | Originally Government Proposed |
| Soeffing, Paul | DOJ Walmart Investigation | Walmart Proposed |
| Sohn, Deborah | DOJ Walmart Investigation | Originally Government Proposed |
| Soudrette, Mary | DOJ Walmart Investigation | Originally Government Proposed |
| Stamatelos, Paulina | DOJ Walmart Investigation | Originally Government Proposed |
| Stout, Taylor | DOJ Prescriber Investigation | Originally Government Proposed |
| Tapie, Carolyn | DOJ Walmart Investigation | Originally Government Proposed |
| Thomas, Meredith George | DOJ Prescriber Investigation | Originally Government Proposed |
| Thrope, Jonathan | DOJ Walmart Investigation | Walmart Proposed |
| Traskos, Kevin | DOJ Walmart Investigation | Originally Government Proposed |
| Visosky, Bradley | DOJ Walmart Investigation | Walmart Proposed |
| Waites, Natalie | DOJ Walmart Investigation | Walmart Proposed |
| Walsh, Jennifer | DOJ Prescriber Investigation | Originally Government Proposed |
| Watkins, Lena | DOJ Walmart Investigation | Walmart Proposed |
| Winkelspecht, Stacey | DOJ Walmart Investigation | Originally Government Proposed |
| Wolf, Lesley | DOJ Prescriber Investigation | Originally Government Proposed |
| Woodard, Justin | DOJ Prescriber Investigation | Originally Government Proposed |

## DEA

Agreement to DEA custodians confirmed in the government's April 8, 2025 correspondence and
Walmart proposals in April 18, 2025 custodian letter.

| Custodian | Custodian Group | Status |
|---|---|---|
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters | Agreed |
| | DEA Headquarters | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters | Walmart Proposed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| DEA Field Division Custodians | DEA Regional | Under negotiation |

| Custodian | Custodian Group | Status |
|---|---|---|
| ███████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ████████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ████████ | DEA Headquarters | Agreed |
| ████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |

Case 1:20-cv-01744-CFC-EGT    Document 220    Filed 05/14/25    Page 308 of 313 PageID
#: 6905
Attachment A to Walmart 4/18/2025 Letter

Agency Custodians
DEA

| Custodian | Custodian Group | Status |
|---|---|---|
| ███████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Headquarters | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| █████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ███████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| ██████████ | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |

Attachment A to Walmart 4/18/2025 Letter

Agency Custodians
DEA

| Custodian | Custodian Group | Status |
|---|---|---|
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Headquarters | Walmart Proposed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Headquarters | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Headquarters | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Headquarters / DEA Walmart Investigation | Agreed |
|  | DEA Headquarters | Agreed |
|  | DEA Headquarters | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Headquarters | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Headquarters | Agreed |
|  | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
|  | DEA Walmart Investigation | Walmart Proposed |

Attachment A to Walmart 4/18/2025 Letter

Agency Custodians
DEA

| Custodian | Custodian Group | Status |
|---|---|---|
| | DEA Headquarters | Agreed |
| | DEA Headquarters | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters | Walmart Proposed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Headquarters / DEA Walmart Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |
| | DEA Walmart Investigation | Walmart Proposed |
| | DEA Walmart Investigation / DEA Prescriber Investigation | Agreed |

## CDC

Agreement to CDC custodians confirmed in the government's April 10, 2025 correspondence.

| Custodian | Custodian Group | Status |
|---|---|---|
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |
| ███████████ | CDC | Agreed |

## FDA

Agreement to FDA custodians confirmed in the government's April 10, 2025 correspondence.

| Custodian | Custodian Group | Status |
|---|---|---|
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |
|  | FDA | Agreed |

Attachments B and C
Filed Under Seal