IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20-cv-01744-CFC-EGT |
| WALMART INC. and WAL-MART STORES EAST, LP, | ) **CONFIDENTIAL** ) **FILED UNDER SEAL** |
| Defendants. | ) |

**PLAINTIFF UNITED STATES OF AMERICA'S
OPPOSED MOTION FOR EXTENSION OF DISCOVERY DEADLINES**

Pursuant to Federal Rule 16(b)(4), Plaintiff United States of America respectfully moves the Court to extend the remaining deadlines in the Scheduling Order, (D.I. 124), for a period of twelve months. The United States has conferred with counsel for Defendants, who oppose this motion.

**I.     Argument**

    **A.     The Court has broad discretion to modify
        the Scheduling Order for good cause.**

This Court has broad discretion regarding discovery and case management. *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 100 (3d Cir. 2015) (citations omitted). The scheduling order may be modified "only for good cause." Fed. R. Civ. P. 16(b)(4). To demonstrate the good cause necessary to allow for modification of a scheduling order, the moving party must demonstrate that, despite its own diligent efforts, scheduling deadlines cannot be met. *See Siemens Med. Sols. USA, Inc. v. Humedica, Inc.*, Civil Action No. 14-880-LPS-CJB, 2015 WL 1738186, at *1 (D. Del. Apr. 8, 2015) (citations omitted).

Whether the movant meets the good cause requirement depends on the "diligence of the movant, and not on the prejudice to the non-moving party." *Id.* (citations omitted).

Good cause exists to extend the discovery deadlines because of factors that the United States could not reasonably have foreseen and did not contemplate when the parties agreed on the existing Scheduling Order (D.I. 124). First, Walmart seeks a scope and volume of documents disproportionate to the needs of the case and to the 25 trial days that the parties negotiated and to which Walmart agreed. Walmart also seeks to control not only *what* is produced but *how* the United States identifies and collects potentially responsive, non-privileged documents. Second, while taking an expansive view of relevance for purposes of its own requests for production, Walmart construes relevance narrowly—and inconsistently—in responding to the United States' discovery requests, making it impossible to complete discovery negotiations and document production within the existing timeline. Given these factors, document productions cannot be accomplished within the current deadline for substantial completion, despite the United States' diligent efforts to both fulfill its own discovery obligations and negotiate with Walmart regarding the United States' discovery requests.

> **B.** **Walmart negotiated deadlines without regard to the expansive discovery it intended to seek or control it has sought to exert.**

In its discovery requests to the United States, Walmart construes relevance extraordinarily broadly without considering the proportionality of its requests. Walmart has served 145 requests for production, many of which include subparts. These requests sought an enormous volume of information regarding controlled substance prescribing and dispensing from numerous federal government agencies. Walmart seeks, for example, documents encompassing essentially all of DEA's regulatory oversight of registrants who prescribe controlled substances. *See, e.g.*, D.I. 220 at Ex. B, RFP 85 ("All Documents relating to past or present processes,

2

policies, or trainings applicable to Your registration, regulation, oversight, investigation, or discipline of Prescribers relating to their prescribing of Controlled Substances, and Your development, issuance, application, enforcement, revision, and repeal of such processes, policies, or trainings."). Walmart has made similarly broad requests seeking documents from not just DEA but all the federal agencies that have been designated as parties to this litigation, which, in addition to DEA, include FDA, CDC, and various components of DOJ, including more than a dozen U.S. Attorney's Offices. *See id.* at Ex. B, RFP 80 (seeking all documents related to "red flags").

In response to Walmart's overly broad requests, the United States has been working diligently to identify, collect, review, and produce discoverable documents. Each federal agency or component has its own document storage practices and its own document collection and review challenges. Accordingly, the United States confers regularly with DEA, CDC, FDA, and the various DOJ components regarding document data sources and custodians to understand what potentially relevant documents exist, where those documents are located, and how to collect them for review and potential production. The United States has collected millions of documents from these federal entities and anticipates collecting still more documents. A team of full-time attorneys is continuously reviewing these documents for production.

The United States has made 20 productions totaling more than 620,000 documents to date in response to Walmart's discovery requests.[1] This includes hundreds of thousands of documents from the files of the U.S. Attorney's Offices that conducted the criminal investigations of the prescribers identified in Section II.B.1.c of the Complaint ("Identified Prescribers"), documents

---

[1] By comparison, Walmart has produced approximately 15,200 documents (apart from making available documents Walmart previously produced in the opioid MDL, *In re National Prescription Opiate Litig.*, Case No. 1:17-md-02804-DAP (N.D. Ohio) ("opioid MDL")).

from DEA's central files and custodians, including documents related to the DEA's investigation of Walmart that preceded this litigation, and documents from FDA's central files. The United States also has provided nine privilege logs associated with these productions. Moreover, there are 227 United States custodians across the party-agencies, and the United States is collecting, reviewing, and producing from these custodians' materials.

The United States has attempted to compromise and move discovery forward by producing documents over its multiple objections, including as to relevance. For example, the United States has produced documents from civil actions under the Controlled Substances Act that are unrelated to Walmart or any Identified Prescriber. The United States also has agreed to apply very broad search terms across numerous custodians from the CDC and FDA, despite the minimal relevance of these custodial documents. *See* Ex. A. In producing documents that have minimal, if any, relevance to this litigation, the United States has attempted to minimize the number of disputes in an effort to advance discovery, but, at the same, doing so has increased the number of documents to be collected, reviewed, and produced.

On the other hand, Walmart remains unwilling to reasonably narrow its document requests in the interest of progressing discovery. A significant number of disputes therefore remain that rest primarily on the parties' disagreement about the scope of relevant discovery. For example, Walmart requests that the United States apply broad search terms across 77 DOJ custodians' files to identify documents related to any discussions of prescription red flags, early prescription refills, pharmacy shopping, and trinity combinations—unrelated to Walmart, any Identified Prescriber, or any guidance potentially relevant to this litigation. *See* Ex. B. The United States explained during a meet-and-confer meeting that these search terms would pick up a significant volume of attorneys' privileged, non-discoverable emails related to other opioid-

4

related investigations and lawsuits. Ex. C at 46:16-47:15. But Walmart has not withdrawn its proposal and continues to reject the United States' searches tailored to identify the discoverable materials Walmart purports to seek—public-facing presentations made by DOJ attorneys regarding the Controlled Substances Act. *See* Ex. B.

As another example, Walmart seeks all internal CDC communications regarding its guidance on prescribing controlled substances from 2011 to 2020, even though those internal CDC communications are not public and do not represent the agency's positions, and even though any actual CDC guidance on which Walmart or Identified Prescribers may have relied is publicly available. As mentioned above, the United States agreed to apply very broad search strings to 13 CDC custodians and has agreed to produce external documents and communications, as well as any non-privileged internal documents and communications that relate to the facts at issue in this litigation (*i.e.*, related to Walmart or an Identified Prescriber). *See* Ex. A. But Walmart continues to insist—even though the case law clearly disagrees, *see United States v. AmerisourceBergen Corp.*, Civ. No. 22-5209, D.I. 89, at 1 (E.D. Pa. Jan. 31, 2025); *United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004)—that all internal CDC communications are discoverable, claiming any such internal documents are relevant to the "standard of care" for determining whether prescriptions are valid. There are similar disagreements between the parties regarding the relevance and discoverability of both DEA and FDA internal documents.

Walmart also seeks documents related to the United States' prosecutions of the Identified Prescribers beyond the discovery to which the Identified Prescribers were entitled in their criminal cases. In other words, Walmart seeks every scrap of material the government obtained or generated—including emails among prosecutors and agents—even if the documents were not

5

produced to the Identified Prescribers pursuant to the government's *Brady*, *Giglio*, and obligations under Rule 16 of the Federal Rules of Criminal Procedure. The government has agreed to produce nearly all of the discovery produced to the defendants in these criminal cases, and yet, Walmart continues to push for every document associated with the criminal cases—regardless of potential relevance to this case. *See* Ex. C at 13:1-17:3.

Walmart not only has sought broad discovery but also seeks to dictate the United States' process of identifying and collecting responsive documents, which has significantly slowed the government's progress. For instance, Walmart has insisted on detailed information about the government's process of identifying custodians. As just one illustration of this, in a February 2025 letter, Walmart asked the government to identify all individuals who held numerous positions in multiple DEA Headquarters offices for a 10-year period. *See* Ex. D at 6-8. The United States provided a detailed response and explained, among other things, that to the best of its knowledge, a certain section—the Pharmaceutical Investigations Section, within DEA's Office of Diversion Control—is not responsible for communicating with prescribers, pharmacies, or other third parties and therefore would not likely have unique, responsive, discoverable materials. As the government explained, this section coordinates national cases with field divisions and thus does not communicate with prescribers, pharmacies, or other third parties. *See* Ex. E. at 7-8. Walmart subsequently requested more information about this Section and demanded that the government add a custodian from this Section. *See* Ex. F at 2-3. The United States accordingly had to devote resources simply to reaffirm that discovery from the section is not warranted. *See* Ex. G at 2. Walmart finally agreed to withdraw its request for this custodian in early August. *See* Ex. H at 7-8. This is just one example of Walmart's approach to discovery that has and continues to prolong discovery unnecessarily.

6

   **C.** **In responding to the United States' requests, Walmart has resisted reasonable compromises and needlessly prolonged the time needed to complete discovery.**

  In contrast to the expansive discovery it seeks, Walmart has narrowly construed its own discovery obligations and has been largely unwilling to change its position without court intervention. The government thus has spent and continues to spend undue resources and considerable time attempting to obtain clearly discoverable material. A few examples illustrate this point. Walmart has consistently relied on its prior document productions from the opioid MDL as a basis to refuse to produce relevant documents in this litigation. *See, e.g.*, D.I. 193 at Ex. 2. However, while Walmart wants to stand on its MDL document productions, for more than seven months, Walmart refused to produce or make available the de-identified dispensing data it produced in the MDL, despite virtually no burden associated with doing so. After numerous meet-and-confers and letter exchanges, the United States was forced to file a motion to compel production of this data. *See* D.I. 214. When Magistrate Judge Tennyson heard the Motion, she determined that Walmart must produce the data because this Court already had concluded that it was relevant. *See* D.I. 228 at 46:13–24. Once Walmart was ordered to produce it, Walmart simply granted the United States access to obtain the majority of the data directly from the MDL data repository, and produced the remaining data in approximately two weeks (only further evidencing the lack of associated burden). Walmart continues to refuse to produce any additional dispensing data beyond that produced in the opioid MDL and the roughly 86,000 prescriptions Walmart believes are explicitly referenced in the Complaint.

  Further, Walmart has agreed to only 18 custodians, [2] compared to 227 United States

---

[2] Walmart also has agreed to run only certain search terms related to the Identified Prescribers across 5 additional custodians, which would yield few, if any, "hits" let alone relevant, discoverable documents.

7

custodians.  Since March, the United States has attempted, without success, to negotiate a modest and reasonable request to add a limited number of additional custodians.  At this time, the United States seeks to add 16 custodians, bringing the total to only 34 Walmart custodians, less than a sixth the number of government custodians.  *See* Ex. I.  Of these 34 custodians, 26 were custodians in the MDL, such that Walmart already has collected most of their documents and therefore any associated burden is significantly minimized.  Most recently, Walmart stated that it would "consider a narrow proposal if you have one to make" regarding additional custodians. Ex. J at 18:17-18.  The United States' request of 34 total custodians was not only narrow but also supported by citations to documents showing the proposed custodians' participation in matters related to Walmart's controlled substance dispensing.  *See* Ex. K.  Walmart's arguments resisting the United States' reasonable request are not well-founded for reasons explained in the United States' most recent correspondence related to this issue. *See* Ex. I.

Walmart also has refused to produce clearly relevant documents related to certain combinations of prescriptions that raise "red flags."  Walmart has lodged numerous improper objections, including that these requests are "unrelated to whether any particular pharmacist at a Walmart pharmacy knowingly filled any prescription . . . that serves as the basis for Plaintiff's claims in this case" and because the request "does not concern the dispensing of controlled substances by pharmacists who worked at Walmart pharmacies." *See*  Ex. L.  Judge Tennyson already rejected Walmart's contention that discovery is limited to the particular prescriptions Walmart believes are explicitly referenced in the Complaint, (D.I. 228, 46:13–24), and Walmart itself has served numerous discovery requests and subpoenas seeking documents related to dispensing controlled substances by non-Walmart pharmacies.

In taking these and other positions, Walmart has sought to obstruct discovery rather than negotiate in good faith. As a result, the parties have not reached agreement on Walmart's custodians, and some disputes regarding the search terms Walmart will apply to its document sources also remain outstanding. While the underlying discovery disputes are not now before this Court, the tenor and pace of the parties' negotiations directly impact the pace of discovery and necessitate the United States' request for additional time.

### D. The United States requires additional time to comply with the Court's order following a prior discovery dispute.

In addition to the challenges described above, the scope of discovery from DOJ custodians has expanded beyond what the United States initially anticipated. On May 13, 2025, Magistrate Judge Tennyson ordered the United States to designate 88 Department of Justice employees as document custodians.[3] *See* D.I. 221, 228. The Court's Order significantly expanded the number of DOJ custodians whose files the United States must search for responsive, non-privileged documents. The United States' process of identifying and collecting documents from a subset of these DOJ custodians had already begun at the time of the hearing. However, compliance with the Court's Order required that the United States revise and redo parts of that identification and collection process. And while the parties continue to negotiate regarding the search terms to be applied to these custodians' files, they have not yet reached agreement. More time is needed to finalize search terms and collect, search, and produce the relevant, non-privileged documents of DOJ custodians included in Judge Tennyson's May 13 order.

---

[3] After the May 13, 2025, hearing, the parties agreed to narrow the list to 77 Department of Justice custodians.

9

II.    **Conclusion**

For the reasons discussed above, despite its diligent efforts, the United States cannot complete substantial discovery by the September 5, 2025 deadline. The parties have met over 35 times since the Court entered the Scheduling Order in April 2024. And, yet, the parties have not reached agreement on the government's custodians for DEA and DOJ or central data sources from these entities. Likewise, despite the United States' best efforts, the parties have not agreed on the final lists of search terms that the United States will apply to its DEA custodians and central document sources, DOJ custodians or central sources, CDC central sources, or FDA central sources. A twelve-month extension would allow the parties to continue their negotiations and complete the production of documents. The United States seeks this extension not for purposes of delay or due to lack of diligence.

WHEREFORE, the United States of America respectfully requests the Court grant this Motion and modify the Scheduling Order as set forth herein and in the attached Exhibit M.

Dated: August 11, 2025

| | |
|---|---|
| JULIANNE E. MURRAY<br>United States Attorney<br>District of Delaware | LISA K. HSIAO<br>Acting Director<br>Consumer Protection Branch |
| ELIZABETH F. VIEYRA<br>Assistant U.S. Attorney<br>1313 N. Market Street<br>Wilmington, DE 19801<br>Elizabeth.Vieyra@usdoj.gov<br>302-573-6148 | AMY L. DELINE<br>Assistant Director<br><br>*/s/ Katherine M. Ho*<br>KATHERINE M. HO<br>KATHLEEN G. BRUNSON<br>KIMBERLY R. STEPHENS<br>Trial Attorneys<br>U.S. Department of Justice, Civil Division<br>Consumer Protection Branch<br>P.O. Box 386<br>Washington, DC 20044<br>katherine.ho@usdoj.gov<br>202-353-7835 |

GREGORY W. KEHOE
United States Attorney for the
Middle District of Florida

CAROLYN B. TAPIE
Special Attorney to the Attorney General
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Carolyn.b.tapie@usdoj.gov
813-274-6000

JOSEPH NOCELLA, JR.
United States Attorney for the Eastern
District of New York

ELLIOT M. SCHACHNER
MEGAN FREISMUTH
Special Attorneys to the Attorney General
271 Cadman Plaza East
Brooklyn, NY 11201
Elliot.schachner@usdoj.gov
718-254-7000

DANIEL P. BUBAR
Acting United States Attorney for the
Eastern District of North Carolina

ANDREW KASPER
Special Attorney to the Attorney General
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Michael.anderson7@usdoj.gov
919-856-4619

*Counsel for Plaintiff*
*United States of America*