# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 20-1744-CFC-EGT |
| ) | |
| WALMART INC. AND WAL-MART ) | **REDACTED** |
| STORES EAST, LP, ) | **PUBLIC VERSION** |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S DISCOVERY DISPUTE LETTER

OF COUNSEL:

William G. Laxton, Jr.
Jeffrey R. Johnson
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Karen P. Hewitt
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134

Jason S. Varnado
Andrew J. Junker
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2172

Laura Jane Durfee
JONES DAY
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215-2673

James W. Carlson
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514

Dated: November 10, 2025

Robert W. Whetzel (#2288)
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
whetzel@rlf.com
farnan@rlf.com

*Attorneys for Defendants Walmart Inc. and Wal-Mart Stores East, LP*

Dear Judge Tennyson:

The government seeks (1) to add as custodians three Home Office associates (including two senior executives) with no relevance to its claims and (2) for Walmart to run an unworkable search term for a narrow RFP that is plainly irrelevant. These requests should be denied.

Discovery is limited to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In Count I, the government alleges prescriptions violated the CSA based on the dispensing pharmacist's knowledge of so-called "red flags" or of certain Identified Prescribers named in the Complaint. D.I. 109 ¶ 71–76. Count I, thus, is about the knowledge of Walmart pharmacists and has nothing to do with employees at Walmart's Home Office. *Id.* ¶ 761. Count II, on the other hand, does involve Home Office associates but only particular ones. As this Court explained, Count II turns on the government's allegation that "specific compliance team members knew that specific doctors prescribed invalid prescriptions that were continually presented to Walmart pharmacies." D.I. 116, at 24 n.2. For Count II the question is what did those specific "compliance team members" know about the Identified Prescribers. D.I. 109 ¶ 90  The government loses sight of its own theories when it references "Walmart's knowledge" derived from "executive-level communications central to this litigation," Mot. 1, as it expressly disclaimed a "collective mens rea" theory in order to survive Walmart's motion to dismiss. 1/18/2024 Hearing Tr. 109:3–18 (Ex. 1); *see id.* 113:2–114:3, 116:13–24, 135:4–9. The government does not connect the three requested custodians to any of the "pharmacist knowledge" prescriptions under Count I nor knowledge of any of the Identified Prescribers in Count II. For that reason alone, the motion should be denied.

Nor do the government's citations suggest there is a gap in Walmart's productions without the inclusion of these three custodians. The government has access to 725,000 documents from over 170 custodians in Walmart's MDL productions. Walmart also has agreed to run over 100 additional searches specific to this case in the files of 27 custodians. That includes 14 Practice Compliance members and the two individuals who oversaw Practice Compliance. Indeed, *every* Home Office associate the government alleges had knowledge of the Identified Prescribers is a custodian. 11/21/2024 DOJ ROG Resp. No. 3 (Ex. 2). As a result, each of the topics the government references, be it refusal to fill policies, corporate blocks, Opioid Stewardship, CDC guidance, NACDS, or DUR alerts, is already addressed by *thousands* of documents in Walmart's productions. The disputed custodians were not members or even direct supervisors of the Practice Compliance group that the government asserts is "at the core of" its case. Mot. 1.

**George Riedl:** was President and Senior Vice President of Walmart's Health and Wellness business, which spans many products and services not at issue here. He did *not*, as the government claims, oversee Practice Compliance. *Id.* (citing a March 2014 document, but Mr. Riedl did not join Walmart until December 2015). And the "central" information the government claims it will find in his "executive discussions" was provided to him by other individuals *who are already custodians*. (Ex. 3) (custodian ▇▇▇▇ providing the information in Gov. Ex. C); (Ex. 4) (custodian ▇▇▇▇ providing the information in Gov. Ex. F).

**Phyllis Harris:** was Senior Vice President and Chief Compliance Officer for Walmart U.S. She had broad responsibilities across Walmart's U.S. business including product and food safety, employment, operations, and environmental matters. She did not directly oversee Practice Compliance, rather her closest connection to that group was overseeing ▇▇▇▇, who is

already a custodian, and who oversaw all of Health and Wellness Compliance (including Practice Compliance). (Ex. 5) (11/2014 H&W Compliance org chart); (Ex. 6) (3/2017 H&W Compliance org chart). Like Mr. Riedl, Ms. Harris relied on other individuals who are already custodians to inform her. Gov. Ex. L (Ms. Harris asks custodian ▮▮▮▮ for information). The "monthly reporting" the government cites was prepared for Ms. Harris by custodians and was produced from those custodians' files where relevant. (Ex. 7) (custodians drafting Gov. Ex. I). The government's proposed fishing expedition for documents reflecting what Ms. Harris may or may not have passed along from those reports to "leadership above her" is irrelevant to any claim and should be rejected.

**Brian Richard:** held several roles in Walmart's operations and quality improvement groups—not Practice Compliance. Nevertheless, the government seeks broad searches through Mr. Richard's files because he was a "point of contact with Walmart's DUR vendor" (Wolters Kluwer) and may have something in his files about "red flag" prescriptions. Mot. 2 But the "red flag" theory is about what pharmacists knew, not the knowledge of Home Office associates or Wolters Kluwer. Moreover, Walmart's ROG 2 asked the government to identify "the reason(s) You contend dispensing of the prescription violated 21 C.F.R. § 1306.04(a)" and nowhere in five amended responses has the government mentioned DURs. Even if the government is now saying DURs informed the standard of care generally, it already subpoenaed Wolters Kluwer. D.I. 171. And Walmart has produced expansive discovery related to DUR alerts from the existing custodians. For example, even the largely irrelevant DUR training document the government touts in its motion was already produced multiple times years ago, including at least one version involving a custodian being specifically searched for this case. (Ex. 8) (custodian ▮▮▮▮ receiving the training materials at issue in Gov. Exs. P & Q).

**RFP 20:** is a narrow inquiry about a single document that the government has badly misconstrued. Gov. Ex. S. The government's cursory argument on RFP 20 underscores its irrelevance. As Walmart explained during meet and confers, the cited email discusses a Walgreens settlement about a Massachusetts Medicaid requirement that "locks in" certain patients deemed by MassHealth as "high risk" to only filling controlled substances at a single pharmacy and prevents them from paying out-of-pocket (i.e., in "cash") to avoid the single pharmacy restriction. 10/21/25 M&C Tr. 11:17–13:12 (Ex. 9); Walgreens Assurance of Discontinuance (Ex. 10). The "system solution" the document references concerns how Walmart's systems address compliance with state Medicaid requirements. It has nothing to do with this case. The government refused to accept that explanation and apparently still has done none of its own research about the Walgreens settlement or Medicaid requirements despite Walmart's suggestion. 10/21/25 M&C Tr. 13:13–15:4 (Ex. 9). And even if the discussion were broadly about "cash payments" as the government speculates, cash payments are not "red flags" in this case. The government has never contended in numerous interrogatory responses that the form of payment used by a patient is relevant to either the prescription's invalidity or a pharmacist's knowledge. In fact, the government served multiple RFPs addressing red flags, none of which referenced cash payments. Gov. Ex. R (RFPs 1–3). Equally untethered to this case is the search term the government demands for RFP 20. As Walmart has explained to the government, with common words like "cash" and "controlled substance" the term will return legions of irrelevant hits and improperly reaches well beyond the specific scope of the RFP.

Walmart respectfully requests the government's motion be denied.

        Respectfully,

        */s/ Kelly E. Farnan*

        Kelly E. Farnan (#4395)

Attachments

cc: All Counsel of Record (w/e) (By E-Mail)

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Dylan Steinberg
Elizabeth F. Vieyra
Assistant United States Attorney
U.S. Attorney's Office
Hercules Building
1313 N. Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Kathleen B. Brunson
Katherine M. Ho
U.S. Department of Justice
Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044

**BY ELECTRONIC MAIL**
Carolyn B. Tapie
USDOJ - Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602

**BY ELECTRONIC MAIL**
Elliot M. Schachner
USDOJ - Eastern District of New York
U.S. Attorney's Office
Eastern District of NY
271 Cadman Plaza East
7th Floor
Brooklyn, NY 11201

**BY ELECTRONIC MAIL**
Andrew Kasper
USDOJ - Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
farnan@rlf.com